UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LYNNE L. ROY,<br><br>Plaintiff,<br><br>vs.<br><br>COLGATE-PALMOLIVE CO.; CHANEL, INC.; COTY, INC., Individually and as Successor in Interest to NOXZEMA CHEMICAL COMPANY; CYPRUS AMAX MINERALS CO., Individually and as Successor in Interest to SIERRA TALC COMPANY, UNITED SIERRA DIVISION OF CYPRUS MINES, CYPRUS INDUSTRIAL MINERALS COMPANY, AMERICAN TALC COMPANY, METROPOLITAN TALC COMPANY, INC., CHARLES MATHIEU, INC., RESOURCE PROCESSORS, INC., and WINDSOR MINERALS, INC.; CYPRUS MINES CORPORATION; JOHNSON & JOHNSON CONSUMER, INC.; JOHNSON & JOHNSON; K&B LOUISIANA CORPORATION (d/b/a RITE AID CORPORATION) Individually and as Successor in Interest to KATZ & BESTOFF, INC.; KAISER GYPSUM COMPANY, INC.; PFIZER, INC.; WHITTAKER CLARK & DANIELS, INC.<br><br>Defendants. | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | CASE NO.<br><br>JUDGE:<br><br>MAGISTRATE: |

* * * * * * * * * * * * * * *

# NOTICE OF REMOVAL

**TO: THE JUDGES OF THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF LOUISIANA**

Pursuant to 28 U.S.C. § 1446, Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc. (collectively, "the J&J Defendants"), with full reservation of any and all defenses, objections, and exceptions, provide Notice of Removal of this civil action to the United States District Court for the Eastern District of Louisiana, and respectfully represent:

1.

Lynne L. Roy ("Decedent") commenced an action against Defendants Colgate-Palmolive Co.; Chanel, Inc.; Coty, Inc., Individually and as Successor in Interest to Noxzema Chemical Company; Cyprus Amax Minerals Co.; Cyprus Mines Corporation; Johnson & Johnson Consumer Inc.; Johnson & Johnson; K&B Louisiana Corporation (d/b/a RITE AID CORPORATION), Individually and as Successor in Interest to Katz & Bestoff, Inc.; Kaiser Gypsum Company, Inc.; Pfizer, Inc.; and Whittaker Clark & Daniels, Inc., on March 19, 2020, in the Civil District Court for the Parish of Orleans, State of Louisiana, entitled *Lynne L. Roy v. Colgate-Palmolive Company, et al.*, No. 2020-02718 on the docket of said court.

2.

Service of process was effected on the J&J Defendants on May 27, 2020, via service under the Louisiana Long-Arm Statute. Pursuant to 28 U.S.C. § 1446(a), a copy of the state court record is attached *in globo* as Exhibit A to this Notice of Removal. After Lynne L. Roy's death on May 29, 2020, her surviving children, Melissa Lynne Roy Kaiser and Melanie C. Roy, substituted themselves into the action to pursue survival and wrongful death actions against all defendants.[1]

[1] Exhibit A, First Supplemental and Amended Petition.

3.

As will be shown more fully below, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00, and there is complete diversity of citizenship between Plaintiffs and all properly joined Defendants. Thus, this action may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

## GROUNDS FOR REMOVAL

### I. THE J&J DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

4.

The United States District Court for the Eastern District of Louisiana embraces the parish in which the state court action was filed and thus this case is properly removed to this Court under 28 U.S.C. §§ 98(c) and 1441(a).

5.

This removal is timely under 28 U.S.C. § 1446 because it is filed within thirty days of the receipt of Melissa Kaiser's deposition transcript on December 16, 2020.[2] *See Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 612 (5th Cir. 2018).

6.

All properly joined and served defendants consent to the removal of this action.[3]

---

[2] Exhibit B, December 16, 2020 e-mail from Goucher Parker Spivey, LLC to Claire Noonan.

[3] *See* Exhibit C, Defendant Colgate-Palmolive Co.'s Consent to Notice of Removal; *see also* Exhibit D, Defendant Chanel, Inc.'s Consent to Notice of Removal; Exhibit E, Defendant Coty, Inc.'s Consent to Removal; Exhibit F, Defendants Cyprus Amax Minerals Co. and Cyprus Mines Corporation's Consent to Notice of Removal; Exhibit G, Defendant Kaiser Gypsum Company's Consent to Notice of Removal; Exhibit H, Defendant Pfizer, Inc.'s Consent to Notice of Removal; and Exhibit I, Defendant Whittaker Clark & Daniels, Inc.'s Consent to Notice of Removal.

7.

While removals based on diversity jurisdiction ordinarily require the consent of all served parties and are improper where a "properly joined" defendant is a "citizen of the State in which such action is brought," *see* 28 U.S.C. § 1441(b), neither of these requirements applies here because Defendant K&B is improperly joined as noted *infra*. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

8.

No previous application has been made for the relief requested herein.

9.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for all parties and a copy is being filed with the Civil District Court for the Parish of Orleans, State of Louisiana.[4]

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

10.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which complete diversity of citizenship exists between all properly joined parties, and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

### A. Diversity of Citizenship Exists Between All Properly Joined Parties

11.

Plaintiffs Melissa Lynne Roy Kaiser and Melanie C. Roy are, and were at the time the state

[4] *See* Exhibit J, Notice of Removal to State Court.

court action was commenced, citizens of the State of Louisiana.[5]

12.

The J&J Defendants are, and were at the time Plaintiffs commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey. They are thus citizens of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

13.

Defendant Colgate-Palmolive Company is a Delaware corporation with its principal place of business in New York, and therefore, is a citizen of Delaware and New York for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

14.

Defendant Chanel, Inc. is a New York corporation with its principal place of business in New York, and therefore, is a citizen of New York for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

15.

Defendant Cyprus Amax Minerals Company is a Delaware corporation with its principal place of business in Arizona, and therefore, is a citizen of Delaware and Arizona for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

16.

Defendant Cyprus Mines Corporation is a Delaware corporation with its principal place of business in Arizona, and therefore, is a citizen of Delaware and Arizona for the purposes of

[5] *See* Exhibit A, First Supplemental and Amended Petition for Damages, at ¶ 1(A)-(B).

determining diversity. 28 U.S.C. § 1332(c)(1).

17.

Defendant Coty Inc. is a Delaware corporation with its principal corporate offices located in New York and is therefore a citizen of New York and Delaware for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

18.

Defendant Whittaker, Clark, & Daniels, Inc. is a New Jersey corporation with its principal place of business in Connecticut, and therefore, is a citizen of New Jersey and Connecticut for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

19.

Defendant Kaiser Gypsum Company, Inc. is a North Carolina corporation with its business address in Texas, and therefore, is a citizen of North Carolina and Texas for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

20.

Defendant Pfizer, Inc. is a Delaware corporation with its principal place of business in New York, and therefore, is a citizen of Delaware and New York for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

21.

Although Defendant K&B Louisiana Corporation d/b/a Rite Aid Pharmacy ("K&B") is believed to be a citizen of Louisiana, its citizenship must be disregarded by the Court because it is improperly joined.[6] *See Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 323 (5th Cir. 2001)

---

[6] The term "improper joinder" is used interchangeably with "fraudulent joinder," as the Fifth Circuit has noted "there is no substantive difference between the two." *Smallwood v. Illinois Cent. R. Co*., 385 F.3d, 568, 571, n.1 (5th Cir. 2004).

(improper joinder of a defendant will not operate to defeat diversity jurisdiction). "In resolving fraudulent joinder claims, courts may 'pierce the pleadings' and take into consideration summary judgment-type evidence, including affidavits and depositions." *Kepler v. C.G.F. Helmets, Inc.*, No. CIV. A. 98-1678, 1998 WL 690983, at *2 (E.D. La. Oct. 2, 1998) (citing *Cavallini v. State Farm Mutual Auto Insurance Co*., 44 F.3d 256, 263 (5th Cir.1995)).

22.

Under the improper-joinder doctrine, a court should disregard the citizenship of an in-state defendant where, as here, "there is no reasonable basis for predicting that plaintiffs might establish liability . . . against the in-state defendants." *Badon v. R J R Nabisco Inc*., 224 F.3d 382, 393 (5th Cir. 2000). Moreover, a mere theoretical possibility of recovery against a defendant is not enough to defeat removal. *Id*., at 286 n.4. Rather, an in-state defendant is improperly joined where there is not "arguably a reasonable basis for predicting that state law would allow recovery." *Id.* (emphasis omitted); *accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (affirming district court's finding of fraudulent joinder and recognizing that a "reasonable" basis to predict that plaintiff could prevail on his or her claims against the in-state defendants requires more than a "theoretical" basis).

23.

Here, there is no reasonable basis to predict that Plaintiffs can prevail on any of their claims against the in-state Defendant, K&B, because Plaintiffs do not allege a sufficient factual basis for their claims and because several of their claims are clearly invalid as a matter of law. *See, e.g.*, *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (finding fraudulent joinder where plaintiff referred to the in-state defendant only "in passing" and directed specific allegations toward the diverse defendants). Indeed, a complaint fails to state a claim when the pleading offers

mere "labels and conclusions" and tenders "naked assertions[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).[7]

24.

In an effort to destroy diversity jurisdiction, Plaintiffs have joined K&B and asserted claims of strict liability and negligence[8], failure to warn[9], breach of warranty[10], defective design[11], civil conspiracy[12], and redhibition[13] against K&B. These claims are insufficient to defeat removal because there is no reasonable basis for predicting that liability could be imposed on K&B for any of them.

25.

Plaintiffs lumped all of the Defendants together, including K&B, and asserted conclusory allegations against all Defendants on the grounds that they were "in the business of mining, researching, designing, developing, testing, manufacturing, packaging, distributing, promoting,

---

[7] In *Iqbal*, the Supreme Court explained that, "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." *Iqbal*, 129 S.Crt. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Thus, bald unsupported allegations such those found in plaintiff's complaint, so "not nudge, [plaintiff's] claims . . . across the line from conceivable to plausible." *Id.* at 1951.

[8] *See* Exhibit A, Original Petition for Damages, at ¶¶ 53-71

[9] *Id.* at ¶¶ 79-88

[10] *Id.* at ¶¶ 89-95

[11] *Id.* at ¶¶ 96-103

[12] *Id.* at ¶¶ 116-127

[13] *Id.* at ¶¶ 128-135

marketing, supplying and/or selling"[14] the talcum powder products at issue. Specific to K&B, however, Plaintiffs alleged that "K&B Defendant repackaged, rebranded and/or sold the Johnson & Johnson Defendants' talcum powder products and sold them as its own, which Plaintiff purchased from K&B pharmacy stores in Orleans Parish."[15] Plaintiff Melissa Kaiser's sworn deposition testimony, however, refutes the allegations that the Decedent ever used K&B brand talcum powder products.[16] Further, Plaintiffs' bare and conclusory allegations collectively against all defendants fail to state a claim against K&B.

26.

The Decedent's alleged exposure period is from approximately the 1940s through the late 1990s,[17] and the Louisiana Products Liability Act ("LPLA") did not become effective until September 1, 1988. *See* 1988 La. Acts No. 64, § 1. Therefore, pre-LPLA law applies to Plaintiffs' claims. Under pre-LPLA law, however, Plaintiffs have failed to allege facts sufficient to state a claim against K&B. To establish a right to damages and attorney fees on a redhibition claim, over and above the claim for return of the sale price or a reduction in the sale price, Plaintiffs must show that K&B was in bad faith, *i.e*. "a seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have." La. Civ. Code art. 2545. Further, Louisiana courts have held that "a non-manufacturing seller . . .

---

[14] *See* Exhibit A, Original Petition for Damages, at ¶ 27.

[15] *See* Exhibit A, Original Petition for Damages, at ¶ 30.

[16] *See* Exhibit L, Deposition Transcript of Melissa Kaiser, Vol. III, at 464:16-18. Although Defendants are not yet in possession of the transcript, Melanie Roy similarly testified that her mother never purchased K&B brand talcum powder products.

[17] *See* Exhibit A, Original Petition for Damages, at ¶ 20

is not liable for damages in negligence unless it knew or should have known that the product sold was defective and failed to declare it." *Diaz v. Goodyear Tire & Rubber Co*., No. 07-353, 2008 WL 4528186, at *6 (M.D. La. Oct. 1, 2008) (emphasis added); *see also Hudgens v. Interstate Battery Sys., Inc*., 393 So. 2d 940, 945 (La. App. 3d Cir. 1981) (holding, under pre-LPLA law, that a seller was not liable in negligence when "the record is devoid of any evidence tending to show that [the seller] knew or should have known that [the product] was defective"); *State Farm v. Norcold Inc*., No. CIV.A. 07-1024, 2008 WL 4853030, at *2 (W.D. La. Oct. 17, 2008) (*citing Wilson v. State Farm*, 654 So.2d 385 (La.App. 3rd Cir. 1995), *reh'g den., writ den*., 661 So.2d 476 (La. 1995)). "However, unlike the manufacturer, [a seller] is not presumed to have knowledge of defects and a seller is not required to inspect a product to determine the possibility of non-apparent defects." *Kelley v. Price-Macemon, Inc*., 992 F.2d 1408 (5th Cir. 1993), *cert. den*., 114 S.Ct. 688 (1994); *Hopper v. Crown*, 555 So.2d 46 (La. App. 1st Cir. 1989). Therefore, K&B can only be liable if it had actual knowledge that the talc products that it sold were allegedly defective and failed to warn the Decedent of the defect. But Plaintiffs made no such factual allegation of K&B's actual knowledge of a defect. Although Plaintiffs pled generally in Paragraph 135 of the original complaint that "the Defendants are liable as bad faith sellers for selling defective PRODUCTS with knowledge of the defect(s)," Plaintiffs did not allege any facts indicating how K&B, as a simple seller of drugstore products, would have actual knowledge of a product defect. To the contrary, the sworn declaration of Derrick Shaffer (Category Interim Lead for Health and Beauty for the merchandizing department of Rite Aid Hdqtrs. Corp., an affiliate of K&B Louisiana Corporation d/b/a Rite Aid Pharmacy), confirms that: (1) K&B had no knowledge or reason to

believe that the talc products at issue were defective as alleged by Plaintiffs,[18] (2) K&B did not test, design, evaluate, manufacture, remanufacture, recondition, or refurbish the cosmetic talc products in question,[19] and (3) K&B did not exercise any control or influence over the preparation of any instructions or warnings for the cosmetic talc products in question.[20]

27.

Moreover, this Court has recognized that "a retail vendor becomes a 'professional vendor' only where the vendor is capable of controlling the quality of the manufactured product due to its size and volume of business. In effect, a professional vendor is a retailer who does more than simply sell a product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that courts are justified in treating the retailer like the manufacturer. In addition, a professional vendor is one who holds the manufacturer's product out as its own." *Barrett v. R.J. Reynolds Tobacco Co*., No. CIV A 99-1195, 1999 WL 460778, at *3 (E.D. La. June 29, 1999). In *Walker v. Phillip Morris Inc.*, this Court denied the plaintiff's motion to remand where, as here, "[e]ach of the [in-state] defendants ... attested in a sworn affidavit that it ha[d] never engaged in designing, manufacturing, packaging, or labeling [the products in question]; ha[d] never labeled, packaged, or advertised [the products in question] as its own product, or otherwise held itself out as the manufacturer of [the products in question]." No. CIV.A. 02–2995,

---

[18] *See* Exhibit K, Declaration of Derrick Shaffer, at ¶ 10.

[19] *Id.* at ¶ 9.

[20] *Id.* at ¶ 12.

2003 WL 21914056, at *4 (E.D. La. Aug. 8, 2003)].")[21] Similarly, here, the sworn declaration of Derrick Shaffer affirms that K&B did not test, design, manufacture, remanufacture, recondition or refurbish the cosmetic talc products at issue, nor did K&B evaluate those products prior to selling them to customers.[22] Further, Derrick Shaffer affirmatively states that: (1) K&B did not exercise any control or influence over the design of the cosmetic talc products at issue,[23] and (2) K&B did not label the cosmetic talc products in question as its own, did not represent that it was the manufacturer of those products, and did not re-package them.[24] Additionally, Melissa Kaiser gave sworn deposition testimony that the Decedent never used K&B brand talcum powder products.[25]

28.

The crux of Plaintiffs' Petition as to K&B is an alleged failure to adequately warn of risks associated with the use of the alleged cosmetic talc products used by the Decedent, yet notably absent from Plaintiffs' Petition are any specific allegations explaining how K&B knew or could have known of the alleged risks. According to the United States Supreme Court, a complaint does not state a claim for relief if it merely offers "labels and conclusions," nor does it "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *See Ashcroft v. Iqbal*, 556 U.S.

---

[21] The instant matter is distinguishable from a recent order entered by the U.S. District Court for the District of New Jersey granting the plaintiff's remand motion on the basis that the "Defendants ha[d] failed to dispute Plaintiff's allegations that K&B held itself out as a manufacturer of the J&J talcum products or played some role in the repackaging of the J&J talcum products." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Litig.*, No. CV 16-7891(FLW), 2017 WL 4570289, at *8 (D.N.J. Oct. 12, 2017).

[22] *See* Exhibit K, Declaration of Derrick Shaffer, at ¶ 9.

[23] *Id.* at ¶ 11.

[24] *Id.* at ¶¶ 6, 9, 13.

[25] *See* Exhibit L, Deposition Transcript of Melissa Kaiser, Vol. III, at 464:16-18.

662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In attempting to state a claim for relief, a plaintiff merely "saying it doesn't make it so." *Carter v. Godfrey*, No. 02-0079, 2002 WL 31780161, at *3 (E.D. La. Dec. 10, 2002), aff'd, 108 F. App'x 850 (5th Cir. 2004). Factual detail of the basis of the claim is required. *Id.* Here, Plaintiffs merely made the "naked assertion" that K&B knew that the products at issue were defective, without alleging any factual details. But Plaintiffs failed to allege how K&B had actual knowledge about the unspecified products' alleged deficiencies. Plaintiffs' allegations constituted nothing more than an "unadorned, the-defendant-unlawfully- harmed-me accusation." *Iqbal*, 556 U.S. at 678. Further, the sworn declaration of Derrick Shaffer affirmatively states that K&B had no knowledge or reason to believe that the cosmetic talc products at issue were defective as alleged by Plaintiffs.[26]

29.

Plaintiffs cannot gloss over this gaping hole in their pleading by simply relying on allegations directed toward all "Defendants" alone. *See In re Phenylpropanolamine Prods. Liab. Litig. ("In re PPA")*, No. MDL 1407, C032-423R, 2002 WL 34418423, at *2 (W.D. Wash. Nov. 27, 2012) (allegations directed toward "defendants" or "all defendants" insufficient).

30.

Moreover, Plaintiffs' allegations that K&B was aware of the defect allegedly associated with the cosmetic talc products it sold are undermined and contradicted by the allegations that the

---

[26] *See* Exhibit K, Declaration of Derrick Shaffer, at ¶ 7.

Defendants responsible for manufacturing the talc products at issue actively concealed and misrepresented the same information.[27] *In re Phenylpropanolamine Prods. Liab.Litig*. ("In re PPA"), No. MDL 1407, C02-423R, 2002 WL 34418423, at *3 (W.D. Wash. Nov. 27, 2012) (allegations that the "manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods . . . directly undermines and contradicts the idea that [the resident retail defendant] had knowledge or reason to know of alleged defects."); *Baisden v. Bayer Corp*., 275 F. Supp. 2d 759 (S.D. W. Va. 2003) (physician fraudulently joined where plaintiff alleged manufacturer concealed and misrepresented facts regarding drug, yet also asserted that doctor knew or should have known of same risks in spite of manufacturer's misrepresentations).

31.

The allegations of the talc manufacturers' purported failure to warn of the alleged risks associated with the cosmetic talc products at issue belie any inference that K&B, who relied on the talc manufacturers to provide them with all such information, had knowledge of that which was allegedly concealed.[28]

---

[27] *See* Exhibit A, Original Petition for Damages, at ¶ 51 ("[T]he Johnson & Johnson Defendants … procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding the safety of talc, with or without asbestos or asbestiform mineral content."), ¶¶ 105-106 ("[T]he Johnson & Johnson Defendants and Colgate-Palmolive intentionally, willfully, and/or recklessly, with the intent to deceive, fraudulently misrepresented and/or fraudulently concealed material facts to consumers and users, including Plaintiff, with respect to their PRODUCTS. . . . [T]he Johnson & Johnson Defendants and Colgate-Palmolive fraudulently misrepresented and/or concealed material facts, concerning the increased risks of cancer posed by their talc PRODUCTS."), and ¶ 109 ("[T]he Johnson & Johnson Defendants and Colgate-Palmolive actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use their talc PRODUCTS.").

[28] *See* Exhibit K, Declaration of Derrick Shaffer, at ¶¶ 6-10.

32.

Therefore, Plaintiffs have failed to allege facts sufficient to impose liability on K&B and have no chance of success on their claims against it. K&B is thus joined fraudulently, and its Louisiana citizenship cannot bar removal.

33.

For these reasons, this action involves "citizens of different states." 28 U.S.C. § 1332(a)(1). Plaintiffs are Louisiana citizens, and all properly joined Defendants are citizens of other states. Accordingly, removal of this action is proper under 28 U.S.C. § 1441(b) because no Defendant properly joined and served is a citizen of the State of Louisiana.

**B. Amount-in-Controversy Requirement is Satisfied**

34.

Louisiana law prohibits a plaintiff from specifying a numerical dollar amount in the complaint. La. Code. Civ. Proc. art. 893A(1); *Earl v. Myers*, 2010 WL 4875656, at *2 (E.D. La. Nov. 23, 2010). The Fifth Circuit has instructed that, in such a situation, the removing defendant must prove by a preponderance of the evidence that the amount-in-controversy exceeds $75,000. *DeAguilar v. Boeing*, 11 F.3d 55, 58 (5th Cir. 1993). A review of the Petition's allegations proves, by a preponderance of the evidence, that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

35.

The monetary jurisdictional prerequisite to federal jurisdiction under 28 U.S.C. § 1332(a) is satisfied. The Petition for Damages complains that as a result of alleged exposure to asbestos-containing materials alleged to have been mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, tested, purchased, promoted, or by the various

defendants, Lynne L. Roy developed malignant mesothelioma. *See* Exhibit A, Original Petition for Damages, at ¶ 1; *compare with* Vail v. Owens Corning Fiberglas; GAF Corporation, et al., JVR No. 186550*;* 1996 WL 778049 (La.Dist.Ct. 18th Judicial District, Parish of Iberville, 10/1/96) (Louisiana trial court verdict of over $2 million for damages related to mesothelioma due to prolonged exposure to asbestos-containing products); *Morvant v. Asbestos Corp. Ltd*., 2012-11900, 2013 WL 11255698 (La. Dist. Ct., Orleans Parish Civil District Court, 11/20/13) (Louisiana jury verdict of over $6 million for mesothelioma caused by asbestos exposure throughout childhood and adult life).

36.

Although the Petition for Damages seeks an unspecified amount of compensatory damages, it is apparent from the Petition for Damages that the amount in controversy necessarily exceeds the sum or value of $75,000. Plaintiffs allege that defendants are liable for causing the Decedent to have contracted a debilitating illness from which she suffered physically, financially, mentally, and emotionally.[29] Specifically, Plaintiffs allege that defendants are obligated to compensate for past, present, and future medical costs and expense; past, present, and future physical pain and suffering and mental anguish; fear of dying; loss of quality and enjoyment of life; and all other forms of relief or categories of damages provided by law together with interest from the date of injury until paid, plus costs of these proceedings.[30] Plaintiffs have in no way limited their damages in the Petition. Moreover, the Louisiana Court of Appeals for the Fourth Circuit, which encompasses the Civil District Court for the Parish of Orleans, recently held that the lowest reasonable amount of general damages in a

---

[29] *See* Exhibit A, Original Petition for Damages, at ¶ 23.

[30] *See* Exhibit A, Original Petition for Damages, at ¶ 144.

mesothelioma case was $1.5 million.[31] Given that, and the nature of decedent's alleged disease, the amount in controversy in this matter clearly exceeds the jurisdictional threshold of $75,000.

37.

The Petition fails to include a general allegation that Plaintiffs' claims are less than the required jurisdictional amount for federal diversity jurisdiction. Accordingly, the Petition fails to show that there is a "lack of jurisdiction of federal courts due to insufficiency of damages" as required by La. Code Civ. Proc. 893. *Pelas v. EAN Holdings, LLC*, 2012 WL 85841, at *2, n.4 (E.D. La. Jan. 11, 2012).

38.

Based on the allegations of the Petition, including the complaint of severe and long-term injury, as well as Plaintiffs' failure to plead that damages were less than the amount required for federal jurisdiction, it is facially apparent that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

39.

WHEREFORE, Johnson & Johnson and Johnson & Johnson Consumer, Inc. respectfully remove this action from the Civil District Court for the Parish of Orleans, State of Louisiana, bearing Case No. 2018-01136 to this Court pursuant to 28 U.S.C. § 1441.

---

[31] *Romano v. Metro. Life Ins. Co.*, 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So. 3d 176, 184, writ denied, 2017-1072 (La. 10/9/17), 228 So. 3d 74. ("Mr. Romano, like most of the individuals who contracted mesothelioma…will most likely die from the reoccurrence of his mesothelioma. Considering that fact in combination with our review of the other cases, a general damages award of only $500,000.00 appears far too low. Our review of the other cases indicates that Mr. Romano's general damages award should be somewhere in the $1.5 million to $2 million range. Since we are instructed by jurisprudence that we should only raise a general damage award to the lowest reasonable amount that a trier of fact could have awarded, we will raise the amount of general damages awarded to the plaintiff from $500,000.00 to $1,500,000.00."). *Id.*

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

BY: */s/ Claire A. Noonan*
KIM E. MOORE (La. Bar No. 18653)
JOHN W. SINNOTT (La. Bar No. 23943)
LEILA A. D'AQUIN (La. Bar No. 18884)
MEERA U. SOSSAMON (LA Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101
kmoore@irwinllc.com
jsinnott@irwinllc.com
ldaquin@irwinllc.com
msossamon@irwinllc.com
cnoonan@irwinllc.com

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all known counsel for parties to this proceeding by electronic mail or a copy of same to each by First Class United States mail, properly addressed and postage prepaid, on this 21st day of December 2020.

*/s/ Claire A. Noonan*