FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

A
Section 16

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. SECTION DIVISION " "**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:** ____________________ ____________________
**DEPUTY CLERK**

**ORIGINAL PETITION FOR DAMAGES**

**COMES NOW** Petitioner, Lynne L. Roy (also referred to herein as Plaintiff), by and through undersigned counsel, who respectfully represents as follows:

**INTRODUCTION**

1. This action arises out of Plaintiff, Lynne L. Roy's, diagnosis of malignant epithelioid mesothelioma and resulting injuries and damages, which were directly and proximately caused by her regular use and prolonged exposure to various asbestos-containing/contaminated talc- or talcum-power products and other products, including without limitation Johnson & Johnson Baby Powder, Cashmere Bouquet talcum powder product(s), Coty talcum powder product(s), Chanel talcum powder products and Kaiser Gypsum joint compound, that were mined, researched, designed, developed, tested, manufactured, produced, packaged, distributed, promoted, marketed, supplied, and/or sold by the Defendants named herein.

2. All claims in this action arise out of the Defendants' negligent, willful, and wrongful conduct in connection with mining, researching, designing, developing, testing, manufacturing, producing, packaging, distributing, transporting, storing, handling, promoting, marketing, supplying and/or selling of asbestos-containing/contaminated talcum powder and joint compound products, and other products, including without limitation Johnson & Johnson Baby Powder, Cashmere Bouquet talcum powder product(s), Coty talcum powder product(s), Chanel talcum powder products and Kaiser Gypsum joint compound, which were purchased by and used by Plaintiff and/or were used in close proximity to Plaintiff.

APR 1 3 2020
VERIFIED



E-Filed

EXHIBIT A

**PARTIES, JURISDICTION, AND VENUE**

3. Plaintiff, Lynne L. Roy, is resident person of the full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

4. Made Defendants herein are:

A. **COLGATE-PALMOLIVE COMPANY**, a Delaware corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

B. **CHANEL, INC.**, a New York corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: CT Corporation System, 28 Liberty Street, New York, NY 10005.

C. **COTY, INC., individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY**, a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Corporation Service Company, 80 State Street, Albany, NY 12207.

D. **CYPRUS AMAX MINERALS COMPANY, individually, d/b/a, and as successor-in-interest to SIERRA TALC COMPANY, UNITED SIERRA DIVISION OF CYPRUS MINES, CYPRUS INDUSTRIAL MINERALS COMPANY, AMERICAN TALC COMPANY, METROPOLITAN TALC COMPANY, INC., CHARLES MATHIEU INC., RESOURCE PROCESSORS, INC., and WINDSOR MINERALS, INC.**, a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Registered Agent Solutions, Inc., 300 W. Clarendon Avenue, Suite 240, Phoenix, AZ 85013.

E. **CYPRUS MINES CORPORATION, individually, d/b/a, and successor to SIERRA TALC COMPANY, AMOCO MINERALS CO., CYPRUS INDUSTRIAL MINERALS CO., and CYPRUS GEORESEARCH CO. a wholly-owned subsidiary of CYPRUS MINES CORP. and successor to CHARLES MATHIEU INC. (d/b/a CHARLES MATHIEU & CO. and CHAS. MATHIEU INC.), AMERICAN TALC COMPANY INC., METROPOLITAN TALC COMPANY INC., IMPERIAL PRODUCTS CO. INC., and RESOURCE PROCESSORS INC.**, a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Registered Agent Solutions, Inc., 300 W. Clarendon Avenue, Suite 240, Phoenix, AZ 85013.

F. **JOHNSON & JOHNSON**, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Steven M. Rosenberg, One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

G. **JOHNSON & JOHNSON CONSUMER INC., f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.**, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

H. **K&B LOUISIANA CORPORATION (d/b/a RITE AID CORPORATION), individually and as successor-in-interest to KATZ & BESTHOFF, INC.**, a Louisiana corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

I. **KAISER GYPSUM COMPANY, INC.**, a North Carolina corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Corporate Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

J. **PFIZER INC.**, a Delaware corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

K. **WHITTAKER CLARK & DANIELS, INC.**, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Joe Cobuzio, Esq., Tompkins, McGuire, Wachenfeld & Barry, LLP, 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068.

5. Orleans Parish is the proper venue for this action based on the following:

A. Venue is proper in Orleans Parish pursuant to Louisiana Civil Code of Civil Procedure Article 42(4) because Defendant Colgate-Palmolive Company is a foreign corporation licensed to do business in Louisiana and maintains its principal business establishment in Louisiana in Orleans Parish according to its Louisiana Secretary of State business filings.

B. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 74 because Orleans Parish is the parish where the wrongful conduct occurred ***and*** the parish where the Plaintiff sustained injuries and damages. Specifically:

i. Defendant **Colgate-Palmolive Company**, Defendant **Chanel, Inc.**, Defendant **Coty, Inc.**, Defendant **Cyprus Amax Minerals Company**, Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division Of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc., Defendant **Cyprus Mines Corporation**, individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., Defendant **Johnson & Johnson**, and Defendant **Johnson & Johnson Consumer, Inc.**, f/k/a Johnson & Johnson Consumer Companies, Inc., Defendant **K&B Louisiana Corporation** (d/b/a RiteAid Corporation) individually and as successor-in-interest to Katz & Besthoff, Inc., Defendant **Kaiser Gypsum Company, Inc.**, Defendant **Pfizer Inc.**, Defendant **Whittaker Clark & Daniels, Inc.**, (all of the above-listed Defendants collectively referred to as "Defendants") each committed and engaged in wrongful conduct in Orleans Parish by distributing, promoting, marketing, supplying, and selling defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish to the Plaintiff.

ii. As a result of each of the Defendants' aforementioned wrongful conduct, Plaintiff purchased the Defendants' defective talcum powder products from various K&B pharmacy locations in Orleans Parish, then applied to her person and was exposed to the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products while she was situated in and/or living in Orleans Parish.

iii. Plaintiff suffered injuries and damages in Orleans Parish each and every time she used and applied to her person the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish.

C. Venue is proper in Orleans Parish pursuant to Louisiana Revised Statute §22:1269(B)(1) because Orleans Parish is the parish where Plaintiff's injury occurred.

D. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 73 because each of the Defendants named herein caused and/or contributed to Plaintiff's purchase, use, and application of defective talcum powder products (specifically Avon talcum powder products, Cashmere Bouquet talcum powder, Chanel talcum powder products, Coty talcum powder products, Desert Flower talcum powder products, Elizabeth Arden talcum powder products, Faberge talcum powder products, Johnson & Johnson Baby Powder, Johnson & Johnson Shower-to-Shower talcum powder, K&B talcum powder products, Revlon talcum powder products, and Kaiser Gypsum joint compound) and her resulting injuries and damages (i.e., malignant epithelioid mesothelioma) as a result of these Defendants' negligent, willful, and wrongful conduct in connection with mining, researching, designing, developing, testing, manufacturing, producing, packaging, distributing, transporting, storing, handling, promoting, marketing, supplying and/or selling of their defective talcum powder products. Each of the Defendants named herein are therefore jointly and/or solidarily liable to the Plaintiff.

6. This Court has jurisdiction over Defendant **K&B Louisiana Corporation** (d/b/a RiteAid Corporation) individually and as successor-in-interest to Katz & Besthoff, Inc. (hereafter, "K&B") because K&B is domiciled in, and is a resident of, Louisiana.

7. This Court has jurisdiction over Defendant **Chanel, Inc.** (hereafter, "Chanel") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Chanel transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Chanel could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Chanel's marketing practices.

8. This Court has jurisdiction over Defendant **Coty, Inc.**, individually and as successor-in-interest to Noxzema Chemical Company (hereafter, "Coty") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Coty transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or

component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Coty could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Coty's marketing practices.

9. This Court has jurisdiction over Defendants **Cyprus Amax Minerals Company,** Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division Of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc. (hereinafter, "CAMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CAMC transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CAMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and CAMC's marketing practices.

10. **Cyprus Mines Corporation**, individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., (hereafter, "CMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CMC transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the CMC's marketing practices.

11. This Court has jurisdiction over Defendants **Johnson & Johnson** and **Johnson & Johnson Consumer, Inc.**, f/k/a Johnson & Johnson Consumer Companies, Inc., (hereafter, "Johnson & Johnson" or "Johnson & Johnson Defendants") pursuant to Louisiana Revised Statute



E-Filed

§13:3201(A)(1)-(3) and (8) because the Johnson & Johnson Defendants transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the Johnson & Johnson Defendants could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the Johnson & Johnson Defendants' marketing practices.

12. This Court has jurisdiction over Defendant **Kaiser Gypsum Company, Inc.** (hereafter, "Kaiser Gypsum") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Kaiser Gypsum transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Kaiser Gypsum could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Kaiser Gypsum's marketing practices.

13. This Court has jurisdiction over Defendant **Pfizer, Inc.** (hereafter, "Pfizer") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Pfizer transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Pfizer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Pfizer's marketing practices.

14. This Court has jurisdiction over Defendant **Whittaker Clark & Daniels, Inc.** (hereafter, "WC&D") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because WC&D transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, WC&D could have

foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and WC&D's marketing practices.

15. This Court has jurisdiction over Defendant **Colgate-Palmolive Company** (hereafter, "Colgate-Palmolive") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Colgate-Palmolive transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Colgate-Palmolive could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Colgate-Palmolive's marketing practices.

16. The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

**BACKGROUND**

17. Ms. Roy was born on or around August 24, 1943. From as early as she can understand and remember until at least the 1990s, Ms. Roy used Johnson & Johnson Baby Powder talc or talcum powder products on herself on a regular basis and she also used the products on her three children during their upbringing. At other times, and on a regular basis during those times, Ms. Roy purchased, used, applied, and was exposed to Colgate-Palmolive's Cashmere Bouquet talcum powder, Chanel's talcum powder products and Coty's talcum powder products. On several remodeling projects between mid-1960s and mid-1970s, she (and others around her) purchased, used, applied, and was exposed to Kaiser Gypsum joint compound. Hereinafter, the products referred to above are referred to as the "PRODUCTS". These PRODUCTS were often purchased by the Plaintiff in Orleans Parish and used by the Plaintiff in Orleans Parish.

18. Plaintiff has spent much all of her life as a resident of Louisiana. She has lived nearly all of her life in the greater New Orleans area, including substantial parts of her life in Orleans Parish.

19. During the time Plaintiff lived in the greater New Orleans area, Plaintiff purchased Johnson & Johnson, Cashmere Bouquet, Coty and Chanel talc or talcum powder products from K&B pharmacy locations in Orleans Parish, subsequently used and applied said products to her

person and her children in Orleans Parish, and consequently became exposed to said PRODUCTS in Orleans Parish.

20. From the 1940s to at least the 1990s, Plaintiff used, applied, and/or was exposed to the Defendants' PRODUCTS on a consistent basis through the normal and foreseeable use and application of the PRODUCTS based on the Defendants' advertising, marketing, and labeling of said PRODUCTS.

21. Plaintiff sustained significant tortious exposures to the Defendants' PRODUCTS prior to 1988.

22. On or about January 7, 2020, Plaintiff was diagnosed with malignant mesothelioma, which was proximately caused by her regular use of, application of and exposure to Johnson & Johnson, Colgate-Palmolive, Coty, Chanel and Kaiser Gypsum PRODUCTS at various times from the 1940s to at least the 1990s.

23. As a direct and proximate result of Plaintiff's purchase, use, and application of the Defendants' unreasonably dangerous and defective talcum powder and joint compound PRODUCTS—which resulted in her unavoidable exposure to and resultant ingestion of talcum powder fibers and asbestos and asbestiform substances contained therein—and the Defendants' wrongful, willful, and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, supply and/or sale of such PRODUCTS, Plaintiff developed malignant mesothelioma and has suffered mentally, emotionally, financially, and physically.

24. Because of the latency period between Plaintiff's use of and exposure to Johnson & Johnson, Colgate-Palmolive, Coty, Chanel and Kaiser Gypsum PRODUCTS and the onset of malignant mesothelioma, and because of these Defendants' active concealment of the causes and effects of exposure to their PRODUCTS as well as the Defendants' continued representations that their PRODUCTS are safe for use, Plaintiff only recently discovered her injuries and the cause thereof, less than one year preceding this filing of this suit.

25. Plaintiff alleges that her exposure to the Defendants' PRODUCTS caused and/or contributed to her injuries, such that the Defendants' are jointly, severally, and *in solido* liable to Plaintiff for her resultant malignant mesothelioma diagnosis and damages alleged herein.

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

## FACTS COMMON TO ALL COUNTS

26. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

27. At all times relevant hereto, including but not limited to, before, during, and even after Plaintiff's exposure period, the Defendants were in the business of mining, researching, designing, developing, testing, manufacturing, packaging, distributing, promoting, marketing, supplying and/or selling talcum powder for use in their talcum powder-based PRODUCTS, and introduced such PRODUCTS into the stream of interstate commerce knowing that such PRODUCTS possessed unreasonably dangerous qualities in the manner that they were marketed, advertised, and used.

28. At all times relevant hereto, the Johnson & Johnson Defendants, CAMC, CMC, Colgate-Palmolive Defendants, Coty Defendants, Chanel Defendants, K&B Defendants, WC&D Defendants and Kaiser Gypsum Defendants regularly transacted, solicited, and conducted business in all States of the United States, including in the State of Louisiana.

29. At all times relevant hereto, Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, K&B, Colgate-Palmolive and Kaiser Gypsum sold large volumes of defective talcum powder and joint compound PRODUCTS throughout the State of Louisiana.

30. At all times relevant hereto, Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, Colgate-Palmolive and Kaiser Gypsum manufactured and/or held themselves out as manufacturers of the PRODUCTS, and upon information and belief, the K&B Defendant repackaged, rebranded and/or sold the Johnson & Johnson Defendants' talcum powder products and sold them as its own, which Plaintiff purchased from K&B pharmacy stores in Orleans Parish.

31. For many years, CAMC, Pfizer, WC&D, Johnson & Johnson and Colgate-Palmolive mined the talc contained in their PRODUCTS. Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. Talc is regularly contaminated with asbestos and/or asbestiform contaminants that distinctly give rise to an increased risk in the potential for cancer. However, each of the Defendants continually advertised and marketed talc and their talcum PRODUCTS as safe for human use.

32. At all times relevant hereto, a feasible alternative to the Defendants' PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with


E-Filed

2020-02718 FILED
2020 MAR 19 A 11:12
A
Section 16
CIVIL
DISTRICT COURT

no known health effects. Cornstarch powders have been sold and marketed for the same uses with the same, or nearly the same, effectiveness.

33. Certain raw talc miners and suppliers provided customers, which included CAMC, CMC, Pfizer Defendants, WC&D Defendants and Johnson & Johnson Defendants, with material safety data sheets for raw mineral talc. These material safety data sheets were supposed to convey adequate health and warning information to its customers.

34. Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Johnson & Johnson Defendants induced women through advertisements to dust themselves with this product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

35. During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan: "A sprinkle a day keeps odor away"; through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day"; and "SHOWER to SHOWER can be used all over your body."

36. Historically, Colgate-Palmolive's Cashmere Bouquet talcum powder was advertised as healthy for babies, children and adults to be applied at least once daily to maintain freshness, keep skin soft, mask odors with a floral fragrance, prevent chaffing and absorb moisture. Colgate-Palmolive manufactured Cashmere Bouquet talcum powder from approximately 1871 through and including 1985, and continued marketing the product until at least 1995, which is approximately when the United States Environmental Protection Agency reported that the presence of asbestos in talc makes it a human carcinogen. Based on present information and belief, the raw mineral talc that Defendant Colgate-Palmolive used in its Cashmere Bouquet talcum powder came from three different sources: the Val Chisone mine in Italy; a mine in Regal, North Carolina; and the Willow Creek mine, in Montana. Any individual using and/or applying Colgate-Palmolive's Cashmere Bouquet talc from the mid-1940s through at least 1985 would have used


E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

and been exposed to talc that originated from one or all of those locations. Numerous releaseability tests have been performed with Cashmere Bouquet talcum powder, and those tests have repeatedly demonstrated that significant concentrations of airborne asbestos, including the same three asbestos mineral species that have been historically identified, chrysotile, anthophyllite, and tremolite asbestos, are released when these historic products were used/applied in the same manner as they were used/applied by Plaintiff.

37. Colgate-Palmolive did not begin to test its products to determine whether asbestos was present until an FDA inquiry began in the 1970s, and by 1976, its own internal testing, conducted at the behest of Joseph Simko, head of Colgate-Palmolive's Research and Development Analytical Department, concluded that samples of its finished product Cashmere Bouquet as well as "preshipment" samples from suppliers, contained anthophyllite, tremolite and chrysotile in varying amounts. Colgate-Palmolive failed to report to the FDA tests performed both internally and by an outside laboratory confirming the presence of asbestos in both their finished products as well as talc shipments from their suppliers and other sources that were used to produce finished products, including Cashmere Bouquet talcum powder.

38. After 1976, Colgate-Palmolive continued to obtain results of testing performed internally and externally indicating the presence of asbestos in talc being used to manufacture the talcum powder product Cashmere Bouquet. Colgate-Palmolive received such a result regarding one of the sources of its talc in 1977, yet continued to use the contaminated source of this talc in its Cashmere Bouquet products. While infrequently performing its own testing after 1978, Colgate-Palmolive nevertheless received positive results for asbestos in samples it labeled "finished product" as late as 1984. Shortly after this result, Colgate-Palmolive delegated the entire manufacturing process for its Cashmere Bouquet brand to an outside contractor who continued to produce Cashmere Bouquet brand talcum powder on behalf and for the profit of Colgate-Palmolive using the same asbestos-containing talc sources from the same suppliers until the brand was sold in 1995.

39. In 1971, the first study was conducted that suggested an association between talc and cancer. This study was conducted by Dr. W. J. Henderson and others in Cardiff, Wales. In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk



E-Filed

2020-02718
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

of cancer in women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson visited Dr. Cramer to speak about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the cancer risks so that women could make an informed decision about their health. The Johnson and Johnson Defendants failed to do so.

40. Johnson & Johnson began receiving results of tests showing tremolite, anthophyllite, actinolite and/or chrysotile asbestos and/or fibers in its own talc products and the talc ore from which the talc came from since at least the 1950s.

41. Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and cancer. Nearly all of these studies have reported an elevated risk for cancer associated with genital talc use in women.

42. In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers. In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to cancer.

43. On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O. Ralph Larson, informing his company that studies as far back as the 1960s "...show[ ] conclusively that the frequent use of talcum powder in the genital area pose[ ] a



E-Filed

2020-02718 FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

serious health risk" of cancer. The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about the cancer risk they pose.

44. In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of cancer.

45. In February of 2006, the International Association for the Research of Cancer (IARC)— part of the World Health Organization—published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of cancer in women from perineal use of talc.

46. In 2006, the Canadian government, under The Hazardous Products Act and associated Controlled Products Regulations, classified talc as a "D2A," "very toxic," "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

47. In 2006, a miner/supplier of raw mineral talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to customers, including the Johnson & Johnson Defendants, regarding the talc it sold for use in the Defendants' PRODUCTS. These MSDSs not only provided the warning information about the IARC classifications, but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc.

48. The Defendants knew or should have known through industry and medical studies, the existence of which were unknown to Plaintiff, of the health hazards inherent in the PRODUCTS they were manufacturing, marketing, testing, promoting, distributing and/or selling.

49. The Defendants had a duty to warn about the health hazards associated with the use of their PRODUCTS, but failed to inform customers and the end users of their PRODUCTS of



E-Filed

known catastrophic health hazards, including but not limited to the development of cancers like malignant mesothelioma, associated with the use of their PRODUCTS.

50. Instead of warning Plaintiff and the general public about these dangers, the Defendants ignored and/or actively concealed such information, and/or condoned such concealment, in order to sell their PRODUCTS and to avoid litigation by those who were injured from use of their PRODUCTS.

51. In addition, the Johnson & Johnson Defendants took a step further and procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding the safety of talc, with or without asbestos or asbestiform mineral content.

52. Because of the latency period between exposure and use of these PRODUCTS, and the onset of malignant mesothelioma, and because of the active and intentional concealment of their PRODUCTS's defects by the Defendants; Defendants' suppression of reports and adverse information; procurement and dissemination of false, misleading, and biased information regarding the safety of their PRODUCTS; and the fact that Defendants' continue to refute and deny reports and studies questioning the safety of its PRODUCTS and fail to warn about the health hazards inherent in their PRODUCTS, Defendants are estopped from relying on any statute of limitations defense.

## <u>COUNT ONE: STRICT LIABILITY and NEGLIGENCE</u>
**(All Defendants)**

53. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

54. At all times relevant hereto, the Defendants were miners, sellers, users, distributors, suppliers, manufacturers, and/or held themselves out as manufacturers of the talcum powder PRODUCTS and/or were professional vendors of the talcum powder PRODUCTS that were purchased by, used by, and applied by Plaintiff.

55. At all times relevant hereto, the talcum powder PRODUCTS were expected to and did reach the retailer/supplier Defendants including, but not limited to, the K&B Defendant, from which Plaintiff purchased said PRODUCTS in Louisiana, including in Orleans Parish.

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

A
Section 16

56. The PRODUCTS manufactured, distributed, used, sold and/or supplied by the Defendants were defective, unreasonably dangerous, and unreasonably dangerous per se to Plaintiff who was an intended and foreseeable user and who was exposed to said PRODUCTS. These defects include, without limitation, the following:

a. the mining, manufacture, sale, supply, distribution and use of the PRODUCTS that are unreasonably dangerous, or unreasonably dangerous per se;

b. the mining, manufacture, sale, supply, distribution and use of the PRODUCTS that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as gynecological disease, cancer, and other health problems to the Plaintiff who would be foreseeably exposed in her regular use of said PRODUCTS;

c. lack of warning or of sufficient warning of the hazards these PRODUCTS would present in the course of their normal foreseeable use or intended use;

d. The Defendants' failure to warn consumers that if their PRODUCTS are used for a specific purpose, that purpose may have risks associated with that use such as illness or even death that were not obvious to consumers;

e. The Defendants' failure to provide a warning on their PRODUCTS that was and/or is understandable to the average user of the product, and is visible in such a way that an expected user would see the warning on their PRODUCTS;

f. The Defendants' failure to stay knowledgeable about a product that it is selling by failing to do reasonable research, testing, and investigation;

g. The Defendants' failure to recall their PRODUCTS once put on notice of the increased health risks associated with their use; and

h. Other defects or fault as may be revealed in discovery or at trial.

57. The Defendants are each liable to Plaintiff in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to the Plaintiff.

58. The defective conditions of the Defendants' PRODUCTS and their negligent acts and omissions as noted above, are a proximate cause of Plaintiff's injuries and damaged complained of herein.

## COUNT TWO: SUPPLIER/DISTRIBUTOR/MANUFACTURER/SELLER LIABILITY
**(All Defendants)**

59. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:



E-Filed

2020-02718
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

60. At all times relevant hereto, were each distributors, suppliers, sellers, manufacturers and/or facilitated the manufacture of, and/or held itself out as a manufacturer of the talcum powder PRODUCTS and/or were each a professional vendor of the talcum powder PRODUCTS that were purchased, used and applied by Plaintiff.

61. At all times relevant hereto, the Defendants each owed a duty to consumers, including Plaintiff herein, to exercise reasonable care in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, supply and/or sale of their PRODUCTS.

62. At all times relevant hereto, the Defendants each knew or should have known that the use of its talcum powder-based PRODUCTS in the perineal area significantly increases the risk of various cancers, including malignant mesothelioma, based upon scientific knowledge dating back to at least the 1960s, if not earlier.

63. At all times relevant hereto, the Defendants each knew or should have known that their raw mineral talc would be used in their PRODUCTS, and failed to take adequate steps to ensure that ultimate consumers of their PRODUCTS, including Plaintiff, received the information that the Defendants possessed on the carcinogenic properties of talc, including its risk of causing cancer, whether contaminated with asbestos (and/or asbestiform mineral content) or not.

64. At all times relevant hereto, the K&B Defendant knew or should have known that the Johnson & Johnson Defendants (directly and/or through subsidiaries) and Colgate-Palmolive were mining/producing raw mineral talc, and were not providing (and still has not provided) warnings to consumers of the PRODUCTS of the risk of cancer posed by talc contained therein.

65. At all times relevant hereto, the K&B Defendant knew or should have known that Colgate-Palmolive's Cashmere Bouquet and Johnson & Johnson's talcum powder products, which K&B distributed, manufactured and/or held itself out as the manufacturer of, marketed, and sold were defective and unreasonably dangerous.

66. The Defendants are each liable to Plaintiff as a professional vendor of the PRODUCTS, and as such, because of each Defendant's size, volume of business and merchandising practices, each Defendant knew or should have known of the defects of the PRODUCTS they sold, and are strictly liable and negligent for failing to warn the users, including Plaintiff, of potential health hazards from the use of their PRODUCTS.


E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

67. Further, the Defendants each knew the specific use for which their refined talc products would be incorporated into other products and had unique expertise into the physical and chemical properties of their specially refined talc products as well as the health hazards presented by exposure to such talc products.

68. While the Defendants marketed their talcum PRODUCTS as uniquely safe and non-carcinogenic, they knew or should have known such claims were false and/or without adequate scientific support.

69. At all times relevant hereto, the Defendants knew or should have known that their PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use, and their failure to communicate this information constitutes negligence and are therefore liable to Plaintiff.

70. As a direct and proximate result of the Defendants' fraudulent misrepresentations, which were detrimentally relied upon by Plaintiff, and Defendants' negligent acts and omissions, Plaintiff was deceived as to the true nature and extent of the health hazards posed by their PRODUCTS and consequently purchased, used and was exposed to said PRODUCTS which caused her to develop malignant mesothelioma and to incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

71. Each and all of the above-mentioned acts and omissions by the Defendants, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

**COUNT THREE: STRICT LIABILITY and NEGLIGENCE**
**(Johnson & Johnson Defendants)**

72. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

73. The Johnson & Johnson Defendants were miners, manufacturers, sellers, distributers and/or suppliers of asbestiform and asbestos-containing/contaminated talc PRODUCTS, and were engaged in the business of using, manufacturing and/or facilitating the manufacturing of said talc PRODUCTS, or was a professional vendor of talc PRODUCTS in and around the State of Louisiana.

74. The Johnson & Johnson Defendants sold and/or supplied for sale the asbestiform and asbestos-containing/contaminated talc PRODUCTS that were defective, unreasonably



E-Filed

2020-02718
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

dangerous, and unreasonably dangerous per se to Plaintiff who was an intended and foreseeable user and who was exposed to said PRODUCTS. The defects include, without limitation, the following:

a. The mining, manufacture, sale, supply, distribution and use of the PRODUCTS, including talc/talcum powder products, that are unreasonably dangerous and/or unreasonably dangerous per se;

b. The mining, manufacture, sale, supply, distribution and use of PRODUCTS that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as gynecological disease, cancer, and other health problems to Plaintiff, who would be foreseeably exposed to them as a result of their intended use;

c. Lack of warning or of sufficient warning of the hazards these PRODUCTS would present in the course of their normal foreseeable or intended use;

d. Lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these PRODUCTS;

e. Failure by the Johnson & Johnson Defendants to inspect these PRODUCTS to assure sufficiency and adequacy of warnings and safety cautions;

f. Failure to test or adequately test these PRODUCTS for defects or hazards that the Johnson & Johnson Defendants could have shown/presented the intended or foreseeable users;

g. Failure to truthfully report or adequately report the results of product testing and medical studies associated with the foreseeable hazards of these PRODUCTS by intended or foreseeable users;

h. Failure to properly design the PRODUCTS when the nature of the product did not require the use of asbestos minerals or where alternatively, equally suitable substitutes were readily available;

i. Defects in the composition and construction of the PRODUCTS;

j. Failure to recall these PRODUCTS mined, manufactured, sold, distributed and/or supplied;

k. Failure to properly package the PRODUCTS so that they could be safely transported, handled, stored, and/or disposed of;

l. Over warranting the safety of PRODUCTS that were manufactured, sold, supplied, and/or used by the Johnson & Johnson Defendants;

m. Liability to Plaintiff in strict liability for things in the Johnson & Johnson Defendants' garde, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to Plaintiff;

n. Knowing that the Johnson & Johnson Defendants' PRODUCTS caused harm, and failing to remove them from sale;

o. Knowing that the Johnson & Johnson Defendants' PRODUCTS contain(ed) asbestiform and asbestos-contaminated material and failing to remove the product from sale;



E-Filed

p. Knowing that the Johnson & Johnson Defendants' PRODUCTS cause(d) harm to the end user, and failing to remove the PRODUCTS from sale for the purpose of financial gain;

q. Knowing that the Johnson & Johnson Defendants' PRODUCTS cause(d) harm to the end user, and hiding that information from the general public, which resulted in the end user failing to know of the harmful nature of the Johnson & Johnson Defendants' PRODUCTS; and

r. Other defects or fault that may be revealed during discovery or at trial.

75. Each and every act and omission above, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

76. At all times relevant hereto, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

77. The Johnson & Johnson Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of the Johnson & Johnson Defendants' failure to exercise ordinary care in developing, designing, testing, manufacturing, marketing, and/or selling their PRODUCTS.

78. As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop malignant mesothelioma, and her resulting injuries and damages.

**<u>COUNT FOUR: FAILURE TO WARN</u>**
**(All Defendants)**

79. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

80. At all times relevant hereto, the Defendants were engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

81. At all times relevant hereto, the Defendants each knew or should have known that the use of and exposure to their PRODUCTS significantly increased the risk of cancer based upon scientific knowledge dating back until the 1960s.

82. At all times relevant hereto, the Defendants' PRODUCTS were defective and unreasonably dangerous because, despite the Defendants' knowledge that their PRODUCTS were

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT


carcinogenic and could lead to an increased risk of cancer when applied to the body, including the female perineal area, which was and is a reasonably foreseeable use of the PRODUCTS, the Defendants failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk of cancer when their PRODUCTS are applied to the body, including to the female perineal area.

83. At all times relevant hereto, Plaintiff used the Defendants' PRODUCTS to powder her body, including her perineal area, a use that was reasonably foreseeable and for which the PRODUCTS were marketed, supplied, and sold. Plaintiff also used the Defendants' PRODUCTS to powder her children and her boots/shoes.

84. At all times relevant hereto, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of cancer associated with the use of the PRODUCTS by women to powder their perineal, area. The Defendants failed to properly and adequately warn and instruct the public, including Plaintiff as to the risks and benefits of the PRODUCTS given the public's need for this information.

85. Had Plaintiff received warning and/or instruction from the Defendants regarding the increased risk of cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

86. The Defendants had a continuing duty to warn consumers and the public, including Plaintiff, of the dangers associated with its PRODUCTS, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, said Defendants breached their state law duty.

87. Due to the absence of any warning or instruction by the Defendants as to the significant health and safety risks posed by their PRODUCTS as described herein, Plaintiff was unaware that said Defendants' PRODUCTS created an increased risk of cancer, as this danger was not known to the general public.

88. As a direct and proximate result of the Defendants' failure to warn Plaintiff of the increased risk of cancer, including malignant mesothelioma, associated with their PRODUCTS when used and applied in a foreseeable manner, despite their actual knowledge of this material



E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

fact, Plaintiff developed malignant mesothelioma and has suffered injuries and damages, including pain, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**COUNT FIVE: BREACH OF WARRANTY**
**(All Defendants)**

89. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

90. At all times relevant hereto, the Defendants impliedly warranted that the talc and talcum-powder PRODUCTS in which they mined, manufactured, marketed, labeled, promoted, distributed and/or sold, and which the Plaintiff purchased and used, to be of merchantable quality and fit for its ordinary and intended uses, including for use by women, such as Plaintiff, in the perineal area.

91. At all times relevant hereto, the Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that their PRODUCTS were safe and effective for reasonably anticipated uses, including for use by women such as the Plaintiff, on their person. Moreover, each of the Defendants expressly warranted to consumers, including Plaintiff, that their PRODUCTS were safe and fit for the use intended; were well tested; were of merchantable quality, and that any side effects said PRODUCTS did produce were accurately reflected in the warnings.

92. In purchasing and using the Defendants' PRODUCTS, Plaintiff reasonably relied on these Defendants' express and implied warranties that their PRODUCTS were of merchantable quality and safe for their intended and foreseeable uses.

93. The Defendants breached the implied and express warranties of their PRODUCTS which were sold to and used by Plaintiff because the aforementioned warranties for said PRODUCTS were false, misleading, and inaccurate in that the said PRODUCTS were unsafe, unreasonably dangerous, not of merchantable quality, and not fit for their common, ordinary and intended uses.

94. The Defendants each knew or should have known that their implied and express warranties were false, misleading, and inaccurate because their PRODUCTS were in fact unsafe, unreasonably dangerous, and not fit for their common, ordinary and intended uses.

95. As a direct, foreseeable and proximate result of the Defendants' breaches of implied and express warranties as to the merchantable quality and safety of their PRODUCTS, Plaintiff



E-Filed

purchased and used said PRODUCTS which directly and proximately caused Plaintiff to develop malignant mesothelioma and suffer injuries and damages as alleged herein.

**COUNT SIX: DEFECTIVE DESIGN**
**(All Defendants)**

96. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

97. At all times relevant and material hereto, the Defendants each owed a duty of reasonable care to consumers, including Plaintiff, to design a reasonably safe product.

98. At all times relevant hereto, the Defendants each had a continuing duty to provide consumers, including Plaintiff, with warnings and other relevant information and data regarding the risks and dangers associated with the design of their PRODUCTS as it became or could have become available to said Defendants.

99. At all times relevant hereto, the Defendants' PRODUCTS were defectively designed by said Defendants in that, when the PRODUCTS left the hands of said Defendants, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

100. At all times relevant hereto, the PRODUCTS were defectively designed by the Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

101. At all times relevant hereto, the Defendants' PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

102. At all times relevant hereto, a reasonable and safer alternative design existed, which could have feasibly been employed by the Defendants to design a product with the same therapeutic purpose as the PRODUCTS. Despite knowledge of this reasonable and safer alternative design, J the Defendants failed to alter their PRODUCTS' design and formulation. The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

103. As a direct and proximate result of the defective design the Defendants' PRODUCTS, Plaintiff developed malignant mesothelioma and suffered injuries and damages alleged herein.

2020-02718
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

**COUNT SEVEN: FRAUD**
**(Johnson & Johnson Defendants and Colgate-Palmolive)**

104. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

105. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive intentionally, willfully, and/or recklessly, with the intent to deceive, fraudulently misrepresented and/or fraudulently concealed material facts to consumers and users, including Plaintiff, with respect to their PRODUCTS.

106. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive fraudulently misrepresented and/or concealed material facts, concerning the increased risks of cancer posed by their talc PRODUCTS, from Plaintiff.

107. The fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a. The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "A sprinkle a day keeps the odor away," "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

b. The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c. The Johnson & Johnson Defendants, through the advertisements described above, among others, misrepresented to consumers, including Plaintiff, that the PRODUCTS were safe for use all over the body, including the female perineal area.

d. Despite actual knowledge of the health risks of the PRODUCTS, The Johnson & Johnson Defendants failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer. The Johnson & Johnson Defendants failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled, and sold the PRODUCTS as safe for



E-Filed

2020-02718 FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

public consumption and usage, including for use by women to powder their perineal areas.

108. The fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by Colgate-Palmolive include, but are not limited to the following:

a. Colgate-Palmolive, through the advertisements described above, among others, mispresented to consumers, including Plaintiff, that the PRODUCTS, were safe for use all over the body, including the female perineal area.

b. Despite actual knowledge of the health risks of the PRODUCTS, Colgate-Palmolive failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

c. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer, the Colgate-Palmolive failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

d. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, Colgate-Palmolive falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

109. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use their talc PRODUCTS.

110. Plaintiff would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS to her person, including in the perineal area, if she had been informed of the increased health risks associated with the use of the PRODUCTS in the perineal area.

111. The Johnson & Johnson Defendants' and Colgate-Palmolive's fraudulent conduct violates Louisiana Civil Code Article 1953, which states that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

112. At all times relevant hereto, Plaintiff relied on the Johnson & Johnson Defendants' and Colgate-Palmolive's misrepresentations concerning the safety of the talc PRODUCTS when purchasing the PRODUCTS and using them on her person, including on her perineal area, and her reliance was reasonable and justified.


E-Filed

113. As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' and Colgate-Palmolive's fraudulent conduct, Plaintiff purchased, used, applied, and was exposed to said Defendants' talcum powder PRODUCTS.

114. The Johnson & Johnson Defendants' and Colgate-Palmolive's wrongful conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

115. As a proximate result of the Johnson & Johnson Defendants' and Colgate-Palmolive's fraudulent and deceitful conduct, upon which Plaintiff reasonably relied, Plaintiff suffered injuries and damages as alleged herein.

**COUNT EIGHT: CIVIL CONSPIRACY**
**(All Defendants)**

116. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

117. The Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiff's injuries, disease, and/or illnesses by exposing the Plaintiff to harmful and dangerous PRODUCTS. Additionally, the Defendants knowingly agreed, contrived, confederated and conspired to deprive the Plaintiff of the opportunity of informed free choice as to whether to use the PRODUCTS or to expose her to said dangers.

118. The Defendants willfully misrepresented and suppressed the truth as to the risks and dangers associated with the normal and foreseeable use of and exposure to their PRODUCTS.

119. In furtherance of said conspiracies, the Defendants performed the following overt acts:

a. For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

i. Withheld, concealed and suppressed said medical information regarding the increased risk of cancer from Plaintiff; In addition, on July 27, 2005 Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the

United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

ii. The Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, "…we believe these strategies paid off";

iii. Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicology consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c. By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose her to the dangers inherent in the use of and exposure to the PRODUCTS.

120. Plaintiff reasonably and in good faith relied upon the aforementioned false and fraudulent representations, omissions, and concealments made by the Defendants regarding the nature of their PRODUCTS and was deprived of an opportunity to make an informed decision concerning her use of, exposure to and contact with, Defendants' PRODUCTS.

121. Additionally, the fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a. The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

b. The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c. The Johnson & Johnson Defendants, through the advertisements described above, among others, misrepresented to consumers, including Plaintiff, that the PRODUCTS were safe for use all over the body, including the female perineal area.

2020-02718 FILED
2020 MAR 19 A 11:12
A
Section 16
CIVIL
DISTRICT COURT

d. Despite actual knowledge of the health risks of the PRODUCTS, the Johnson & Johnson Defendants failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer, the Johnson & Johnson Defendants failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

122. At all times relevant hereto, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use the talc PRODUCTS in the female perineal area.

123. Johnson & Johnson Defendants' fraudulent conduct violates Louisiana Civil Code Article 1953, which states that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

124. At all times relevant hereto, Plaintiff reasonably relied on Johnson & Johnson, Colgate-Palmolive, and K&B's fraudulent and deceitful conduct and misrepresentations concerning the safety of their PRODUCTS when purchasing the PRODUCTS and using said PRODUCTS.

125. Plaintiff would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS to her person, on her children, or in her shoes/boots if she had been informed of the increased health risks associated with the use of and exposure to the PRODUCTS.

126. By reason of the above, the Defendants are jointly and solidarily liable to Plaintiff for the injuries and damages sustained by virtue of industry-wide or enterprise liability. Alternatively, the Defendants are liable to Plaintiff for the injuries and damages sustained by virtue of their substantial share of the talcum products market within the area in which Plaintiff resides.

127. As a direct, foreseeable and proximate result of the Defendants' fraudulent and deceitful conduct and misrepresentations concerning the safety of their PRODUCTS, Plaintiff purchased, used, and was exposed to the Defendants' PRODUCTS, which directly and


E-Filed

proximately caused her to develop malignant mesothelioma, and consequently incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

**COUNT NINE: REDHIBITION**
**(All Defendants)**

128. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

129. Plaintiff purchased, used, and was exposed to the Defendants' PRODUCTS in the State of Louisiana.

130. The Defendants' talcum powder PRODUCTS contained a vice or defect which render(ed) it useless or its use so inconvenient that buyers would not have purchased it.

131. The Defendants placed into the stream of commerce, promoted, and sold their talcum powder PRODUCTS. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520.

132. The talcum powder PRODUCTS placed into the stream of commerce, promoted, and sold by Defendants possessed a redhibitory defect because they were not manufactured and marketed in accordance with industry standards and/or were (and still are) unreasonably dangerous, as described above, which rendered their talc PRODUCTS useless or so inconvenient that it must be presumed that a buyer would not have bought the them had she known of the defect. Pursuant to La. C.C. art. 2520, Plaintiff is entitled to obtain a rescission of the sale of the Defendants PRODUCTS.

133. The Defendants' talcum powder PRODUCTS alternatively possessed a redhibitory defect because the they were not manufactured and marketed in accordance with industry standards and/or are/were unreasonably dangerous, as described above, which diminished the value of the their talc PRODUCTS so that it must be presumed that a buyer would still have bought it but for a lesser price.

134. As a manufacturer of these PRODUCTS, under Louisiana law, the Johnson & Johnson Defendants; the K&B Defendant; and the Colgate-Palmolive Defendant are deemed to know that their PRODUCTS possess(ed) a redhibitory defect. La. C.C. art. 2545.

135. The Defendants are liable as bad faith sellers for selling defective PRODUCTS with knowledge of the defect(s), and thus, are liable to Plaintiff for the price of their PRODUCTS, with

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT
A
Section 16

interest from the purchase date, as well as reasonable expenses occasioned by the sale of the PRODUCTS, namely their cosmetic talc PRODUCTS, and attorneys' fees.

**COUNT TEN: PUNITIVE DAMAGES**
**(All Defendants)**

136. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

137. The Defendants all acted maliciously, wantonly and recklessly, and demonstrated a conscious indifference and utter disregard of the health, safety and rights of others, by acting with an improper motive or vindictiveness and with outrageous or oppressively intentional misconduct, such actions representing a high degree of immorality and showing wanton dishonesty as to imply a criminal indifference to civil obligations, in one or more of the following ways:

a. The Defendants acted with a wanton and reckless disregard for public safety in the storage, handling and transportation of hazardous or toxic substances, namely asbestos-containing talcum powder PRODUCTS;

b. The Defendants knew of the unreasonably high risk of cancer posed by its PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action; and

c. Despite their knowledge of the high risk of cancer associated with the PRODUCTS and the hazardous and toxic nature of asbestos, the Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling.

138. The Defendants' conduct was wanton and reckless because they proceeded in disregard of a high and excessive degree of danger known to them or that would have been apparent to a reasonable person in their position.

139. The danger created by the Defendants' wanton and reckless conduct threatened or endangered public safety, including the Plaintiff's safety.

140. Asbestos and asbestos-contaminated talc, as well as talc with or without the presence of asbestos are hazardous or toxic substances.

141. The Defendants' wanton and reckless conduct occurred, inter alia, in their storage, handling and/or transportation of hazardous or toxic substances.

142. Plaintiff's injuries were caused by Defendants' wanton and reckless conduct and disregard for public safety in the storage, handling and transportation of their asbestos-containing talcum powder PRODUCTS to which Plaintiff was exposed and which resulted in her injuries.



E-Filed

143. An award of punitive damages is therefore warranted against the Defendants pursuant to former Louisiana Civil Code Article 2315.3, which applies to Plaintiff's exposures to the Defendants' asbestos-containing talcum powder PRODUCTS that occurred between September 1, 1984 and April 16, 1996.

**WHEREFORE**, Plaintiff prays for a judgment for punitive damages against the Defendants in a fair and reasonable amount sufficient to punish each of said Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

**DAMAGES**

144. **WHEREFORE**, on the basis of all of the foregoing premises set out in the above paragraphs, Plaintiff requests that each of the Defendants be served with this Petition and that there be judgment against these Defendants jointly, severally and in solido in a sum sufficient to compensate Plaintiff for the following:

a. all past, present and future medical costs or expenses related thereto;

b. all past, present and future lost earnings;

c. all past, present and future mental suffering, anguish, and pain;

d. all past, present and future physical pain and suffering;

e. loss of quality of life;

f. exemplary damages;

g. punitive damages; and

h. all other forms of relief provided by law or equity together with interest from the date of judicial demand until paid, and costs of these proceedings.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**WHEREFORE,** Plaintiff demands judgment against each of the Defendants, and each of them, jointly and severally, for Damages, Special/Punitive Damages, for their costs expended herein, and for pre-judgment interest from the date of Plaintiff's filing this lawsuit, and for post-judgment interest at the rate allowed by law, and for such other relief, both at law and in equity, to which Plaintiff shows herself justly entitled.

Respectfully submitted,

Mickey P. Landry, Bar No. 22817
Frank J. Swarr, Bar No. 23322
Philip C. Hoffman, Bar No. 32277
Matthew C. Clark, Bar No. 31102
**LANDRY & SWARR, LLC**
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
T: (504) 299-1214
F: (504) 299-1215
Email: mlandry@landryswarr.com
Email: fswarr@landryswarr.com
Email: phoffman@landryswarr.com
Email: mclark@landryswarr.com
Other Email: thernandez@landryswarr.com

and

Mark J. Buha (MO No. 63737)
To Be Admitted *Pro Hac Vice*
**DEAN OMAR BRANHAM SHIRLEY, LLP**
302 N. Market Street, Suite 300
Dallas, Texas 75202
T: (214) 722-5990
F: (214) 722-5991
Email: mbuha@dobslegal.com
Other Email: tgilliland@dobslegal.com

**ATTORNEYS FOR PLAINTIFF**

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT



**PLEASE SERVE THE FOLLOWING:**

**COLGATE-PALMOLIVE COMPANY**
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**CHANEL, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
CT Corporation System
28 Liberty Street
New York, NY 10005

**COTY, INC.**
(individually and as successor-in-interest to Noxzema Chemical Company)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Corporation Service Company
80 State Street
Albany, NY 12207

**CYPRUS AMAX MINERALS COMPANY**
(individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

**CYPRUS MINES CORPORATION**
(individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

**JOHNSON & JOHNSON**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**JOHNSON & JOHNSON CONSUMER INC.**
(f/k/a Johnson & Johnson Consumer Companies, Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX 75201



E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT



**K&B LOUISIANA CORPORATION**
(d/b/a RITE AID CORPORATION), (individually and as successor-in-interest to KATZ & BESTHOFF, INC.)
A Louisiana Corporation
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**KAISER GYPSUM COMPANY, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Corporate Service Company
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

**PFIZER INC.**
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**WHITTAKER CLARK & DANIELS, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Joe Cobuzio, Esq.
Tompkins, McGuire, Wachenfeld & Barry, LLP
3 Becker Farm Road, 4th Floor
Roseland, NJ 07068



E-Filed

FILED
2020 MAY 05 P 01:13
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION: 16** **DIVISION: "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

**REQUEST FOR NOTICE**

In accordance with LSA - CCP Article 1572, defendants, **Cyprus Amax Minerals Company and Cyprus Mines Corporation** request that the Court give written notice, by certified mail, at least ten (10) days in advance of the date fixed for the trial or hearing of this case whether on exceptions, motions, rules or the merits.

Defendant requests immediate notice of all orders or judgment, whether interlocutory or final, made or rendered in this case upon the rendition thereof as provided by LSA - CCP Article 1913 and 1914, including notice of judgment, in the event this case be taken under advisement or if the judgment is not signed at the conclusion of the trial. Notice is to be mailed to or served upon **Cyprus Amax Minerals Company and Cyprus Mines Corporation** through undersigned counsel.

Respectfully submitted:

John D. Person

John D. Person, La. Bar No. 10531
W. Glenn Burns, La Bar No. 03698
Lezly L. Petrovich, La. Bar No. 25825
Anna A. Rainer, La. Bar No. 31531
***AARON & GIANNA, PLC***
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

***Attorneys for Cyprus Amax Minerals Company and Cyprus Mines Corporation***

VERIFIED
Yanley Salazar
2020 MAY 08 P 02:18

E-Filed

FILED
2020 MAY 05 P 01:13
CIVIL
DISTRICT COURT

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on the 5th day of May, 2020, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first-class postage prepaid and/or e-mail transmission.

John D. Person

John D. Person

E-Filed

FILED
2020 MAY 05 P 01:10
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION: 16** **DIVISION: "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

**MOTION FOR EXTENSION OF TIME IN WHICH TO FILE RESPONSIVE PLEADINGS**

Now into court, through undersigned counsel, come defendants, **Cyprus Amax Minerals Company (improperly named as "d/b/a and as successor-in-interest to Sierra Talc Company, Untied Sierra Division of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu, Inc., Resource Processors, Inc. and Windsor Minerals, Inc.") and Cyprus Mines Corporation (improperly named as "d/b/a and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Chas. Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company, Inc., Imperial Products Co. Inc. and Resource Processors Inc.)**, through undersigned counsel, appearing solely for the purpose of obtaining an extension of time within which to file responsive pleadings, and on suggesting to the court that defendant requires additional time to file responsive pleadings herein,

IT IS ORDERED by the court that defendants, **Cyprus Amax Minerals Company and Cyprus Mines Corporation**, be granted an additional thirty (30) days within which to file responsive pleadings herein.

New Orleans, Louisiana, this ______ day of MAY 12 2020, 2020.

VERIFIED

RECEIVED
DIVISION "A"

*Ellen M. Hazeur*
**DISTRICT COURT JUDGE**

(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

VERIFIED
Yanley Salazar
2020 MAY 08 P 02:12

E-Filed

FILED
2020 MAY 05 P 01:10
CIVIL
DISTRICT COURT

Respectfully submitted:

John D. Person, La. Bar No. 10531
W. Glenn Burns, La Bar No. 03698
Lezly L. Petrovich, La. Bar No. 25825
Anna A. Rainer, La. Bar No. 31531
***AARON & GIANNA, PLC***
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

***Attorneys for Cyprus Amax Minerals Company and Cyprus Mines Corporation***

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on the 5th day of May, 2020, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first-class postage prepaid and/or e-mail transmission.

John D. Person

E-Filed

FILED
2020 MAY 05 P 01:10
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION: 16** **DIVISION: "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

**MOTION FOR EXTENSION OF TIME IN WHICH TO FILE RESPONSIVE PLEADINGS**

Now into court, through undersigned counsel, come defendants, **Cyprus Amax Minerals Company (improperly named as "d/b/a and as successor-in-interest to Sierra Talc Company, Untied Sierra Division of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu, Inc., Resource Processors, Inc. and Windsor Minerals, Inc.") and Cyprus Mines Corporation (improperly named as "d/b/a and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Chas. Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company, Inc., Imperial Products Co. Inc. and Resource Processors Inc.)**, through undersigned counsel, appearing solely for the purpose of obtaining an extension of time within which to file responsive pleadings, and on suggesting to the court that defendant requires additional time to file responsive pleadings herein,

MOOT MOOT

IT IS ORDERED by the court that defendants, **Cyprus Amax Minerals Company and Cyprus Mines Corporation**, be granted an additional thirty (30) days within which to file responsive pleadings herein.

New Orleans, Louisiana, this ____ day of MAY 12 2020, 2020.

Ellen M. Hazeur
**DISTRICT COURT JUDGE**

(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

E-Filed

FILED
2020 MAY 05 P 01:10
CIVIL
DISTRICT COURT

Respectfully submitted:

John D. Person, La. Bar No. 10531
W. Glenn Burns, La Bar No. 03698
Lezly L. Petrovich, La. Bar No. 25825
Anna A. Rainer, La. Bar No. 31531
***AARON & GIANNA, PLC***
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

***Attorneys for Cyprus Amax Minerals Company and Cyprus Mines Corporation***

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on the 5th day of May, 2020, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first-class postage prepaid and/or e-mail transmission.

John D. Person

E-Filed

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO.: 2020-2718 SECTION " 16 " DIVISION " A "

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

ORIGINAL

FILED: ______________________ ______________________

DEPUTY CLERK

AFFIDAVIT RE: RETURN OF LONG ARM SERVICE

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

TARA B. HERNANDEZ

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A"; and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **Coty, Inc.**, by depositing same in the United States Mail on the 16[th] day of April, 2020, and that **Coty, Inc.**, did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 20[th] day of April, 2020.

CLERK, CIVIL DISTRICT COURT
421 LOYOLA AVENUE - ROOM 402
504-407-0000
Receipt Date 5/27/2020 3:37:00 PM
Receipt Number 819973
Cashier
Register
Case Number

TARA B. HERNANDEZ

| | |
|---|---|
| Grand Total | $ 2.00 |
| Amount Received | $ 2.00 |
| Balance Due | $ 0.00 |
| Over Payment | $ 0.00 |

Payment / Transaction List
Check # 57870 $2.00

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Affidavit of Service | $0.00 | $0.00 | $0.00 |
| Exhibits(Paper) | $2.00 | $2.00 | $0.00 |

SWORN TO AND SUBSCRIBED BEFORE ME THIS 26th DAY OF May 2020.

EMILY A. PRICE
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

**ATTORNEY'S NAME:** Hoffman, Philip C 32277
**AND ADDRESS:** 1010 Common Street, Suite 2050 , New Orleans, LA 70112

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
**STATE OF LOUISIANA**

**NO: 2020-02718** **DIVISION: A** **SECTION: 16**

**ROY, LYNNE**

**Versus**

**COLGATE-PALMOLIVE COMPANY**

**CITATION - LONG ARM**

TO: COTY, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO NOXZEMA CHEMICAL COMPANY)

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, CORPORATION SERVICE COMPANY
80 STATE STREET , ALBANY, NY 12207

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** Amber Darby
**Amber Darby, Deputy Clerk**

**SHERIFF'S RETURN**
(for use of process servers only)

DOMICILIARY SERVICE

On this ______ day of ______ served a copy of the within
Petition for Damages
ON COTY, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO NOXZEMA CHEMICAL COMPANY)
THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, CORPORATION SERVICE COMPANY
by leaving same at the dwelling house, or usual place of abode, in the hands of ______ a person of suitable age and

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*
For delivery information, visit our website at www.usps.com®.
OFFICIAL USE
Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Total
$
Sent To
Street
City,

COTY, INC.
Agent: Corporation Service Com
80 State Street
Albany, NY 12207

PS Form 3800, April 2015 PSN 7530-02-000-9047 See

7019 1120 0002 1625 6243

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

COTY, INC.
Agent: Corporation Service Company
80 State Street
Albany, NY 12207

2. Article Number (Transfer from service label) 7019 1120 0002 1625 6243

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature X ☐ Agent ☐ Addressee
B. Received by (Printed Name) C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No

APR 20 20
CSC
COURIER

3. Service Type
☒ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery
4. Restricted Delivery? (Extra Fee) ☐ Yes

ID: 10442606
VERIFIED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO.: 2020-2718 SECTION " 16 " DIVISION " A "

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

ORIGINAL

FILED: ______________________ ______________________
DEPUTY CLERK

## AFFIDAVIT RE: RETURN OF LONG ARM SERVICE

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

**TARA B. HERNANDEZ**

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A", and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **Cyprus Amax Minerals Company,** by depositing same in the United States Mail on the 16th day of April, 2020, and that **Cyprus Amax Minerals Company,** did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 20th day of April, 2020.

TARA B. HERNANDEZ

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 26th DAY
OF May 2020.

EMILY A. PRICE
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

CHELSEY RICHARD NAPOLEON
402 CIVIL COURTS BUILDING
NEW ORLEANS, LA 70112

| | |
|---|---|
| Receipt Date | 5/27/2020 |
| Receipt Number | |
| Cashier | |
| Register | CDC Cash Register 4 |
| Case Number | 2020-02718 |
| Grand Total | $2.00 |
| Amount Received | $2.00 |
| Balance Due | $0.00 |
| Over Payment | $0.00 |

Payment / Transaction List
Check # 67870 $2.00

| Item | Charged | Paid | Bal |
|---|---|---|---|
| | $0.00 | $0.00 | $0.00 |
| | $2.00 | $2.00 | $0.00 |

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

ATTORNEY'S NAME: Hoffman, Philip C 32277
AND ADDRESS: 1010 Common Street, Suite 2050 , New Orleans, LA 70112

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY

## CITATION - LONG ARM

TO: CYPRUS AMAX MINERALS COMPANY (INDIVIDUALLY, D/B/A, AND AS SUCCESSOR-IN-INTEREST TO SIERRA TALC COMPANY,

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, SOLUTIONS, INC.
300 W. CLARENDON AVENUE, SUITE 240, PHOENIX , AZ 85013

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** [signature]
**Amber Darby, Deputy Clerk**

## SHERIFF'S RETURN
(for use of process servers only)

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Total
$
Sent To

Postmark Here

CYPRUS AMAX MINERALS COMPANY
Registered Agent Solutions,
300 W. Clarendon Avenue, Su
Phoenix, AZ 85013

PS Form 3800, April 2015 PSN 7530-02-000-9047

7019 1120 0002 1625 6236

VERIFIED

ID: 10442607

DOMICILIARY SERVICE

On this ________ day of ____________ served a copy of the within

Petition for Damages

ON CYPRUS AMAX MINERALS COMPANY (INDIVIDUALLY, D/B/A, AND AS SUCCESSOR-IN-INTEREST TO SIERRA TALC COMPANY,

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, SOLUTIONS, INC.

by leaving same at the dwelling house, or usual place of abode, in the hands of ____________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected ...

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CYPRUS AMAX MINERALS COMPANY
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☒ Agent ☐ Addressee

B. Received by (Printed Name) Scott Boyer

C. Date of Delivery 4.20.2020

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7019 1120 0002 1625 6236

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO.: 2020-2718 SECTION " 16 " DIVISION " A "

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

ORIGINAL

FILED: ____________________ ____________________
DEPUTY CLERK

**AFFIDAVIT RE: RETURN OF LONG ARM SERVICE**

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

**TARA B. HERNANDEZ**

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A", and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **Cyprus Mines Corporation,** by depositing same in the United States Mail on the 16th day of April, 2020, and that **Cyprus Mines Corporation,** did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 20th day of April, 2020.

**TARA B. HERNANDEZ**

SWORN TO AND SUBSCRIBED BEFORE ME THIS 26th DAY OF May 2020.

**EMILY A. PRICE**
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-407-0000

Receipt Date ... PM
Receipt Number 813970
Cashier jhoe
Register CDC Cash Register 4

Case Number 2020-02718

Grand Total $ 2.00
Amount Received $ 2.00
Balance Due $ 0.00
Over Payment $ 0.00

Payment / Transaction List
Check # 57870 $2.00

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Affidavit of Service | $0.00 | $0.00 | $0.00 |
| Exhibits (Pages) | $2.00 | $2.00 | $0.00 |

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

ATTORNEY'S NAME: AND ADDRESS: Hoffman, Philip C 32277
1010 Common Street, Suite 2050, New Orleans, LA 70112

**CIVIL DI RICT COURT FOR THE PARISH OI RLEANS**
**STATE OF LOUISIANA**

NO: 2020-02718 DIVISION: A SECTION: 16

**ROY, LYNNE**
**Versus**
**COLGATE-PALMOLIVE COMPANY**

**CITATION - LONG ARM**

TO: CYPRUS MINES CORPORATION (INDIVIDUALLY, D/B/A AND SUCCESSOR TO SIERRA TALC COMPANY, AMOCO MINERALS CO., CYPRUS INDUSTRIAL MINERALS CO., AND CYPRUS GEORESEARCH CO. A WHOLLY-OWNED SUBSIDIARY OF CYPRUS MINES CORP. AND SUCCESSOR TO CHARLES MATHIEU INC. (D/B/A CHARLES MATHIEU & CO. AND CHAS. MATHIEU INC.) AMERICAN TALC COMPANY INC., METROPOLITAN TALC COMPANY INC.,IMPERIAL PRODUCTS CO. INC., AND RESOURCE PROCESSORS INC.)

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, SOLUTIONS, INC.
300 W. CLARENDON AVENUE, SUITE 240, PHOENIX, AZ 85013

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the
Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of The Civil District Court for the Parish of Orleans, State of LA**
**by** [signature]
**Amber Darby, Deputy Clerk**

**SHERIFF'S RETURN**
(for use of process servers only)

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*
For delivery information, visit our website at www.usps.com®.
OFFICIAL USE
Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Total
$
Sent To
Street
City
Postmark Here
04/16/20

CYPRUS MINES CORPORATION
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

7019 1120 0002 1625 6229

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

DOMICILIARY SERVICE

On this ______ day of ______________ served a copy of the within

**Petition for Damages**

**ON CYPRUS MINES CORPORATION (INDIVIDUALLY, D/B/A AND SUCCESSOR TO SIERRA TALC COMPANY, AMOCO MINERALS CO., CYPRUS INDUSTRIAL MINERALS CO., AND CYPRUS GEORESEARCH CO. A WHOLLY-OWNED SUBSIDIARY OF CYPRUS MINES CORP. AND SUCCESSOR TO CHARLES MATHIEU INC. (D/B/A CHARLES MATHIEU & CO. AND CHAS. MATHIEU INC.) AMERICAN TALC COMPANY INC., METROPOLITAN TALC COMPANY INC.,IMPERIAL PRODUCTS CO. INC., AND RESOURCE PROCESSORS INC.)**

**THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, SOLUTIONS, INC.**

by leaving same at the dwelling house, or usual place of abode, in the hands of ______________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said **CYPRUS MINES CORPORATION (INDIVIDUALLY, D/B/A AND SUCCESSOR TO SIERRA TALC COMPANY, AMOCO MINERALS CO., CYPRUS INDUSTRIAL MINERALS CO., AND CYPRUS GEORESEARCH CO. A WHOLLY-OWNED SUBSIDIARY OF CYPRUS MINES CORP. AND SUCCESSOR TO CHARLES MATHIEU INC. (D/B/A CHARLES MATHIEU & CO. AND CHAS. MATHIEU INC.) AMERICAN**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CYPRUS MINES CORPORATION
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

2. Article Number (Transfer from service label) 7019 1120 0002 1625 6229

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☒ Agent ☐ Addressee

B. Received by (Printed Name) Scott Royer

C. Date of Delivery 4.20.2020

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

VERIFIED

ID: 10442608

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**CASE NO.: 2020-2718** **SECTION " 16 "** **DIVISION " A "**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

ORIGINAL

**FILED:** ______________________ ______________________

**DEPUTY CLERK**

**AFFIDAVIT RE: RETURN OF LONG ARM SERVICE**

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

**TARA B. HERNANDEZ**

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A", and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **Whittaker Clark & Daniels, Inc.,** by depositing same in the United States Mail on the 16th day of April, 2020, and that **Whittaker Clark & Daniels, Inc.,** did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 23rd day of April, 2020.

[signature]

**TARA B. HERNANDEZ**

SWORN TO AND SUBSCRIBED BEFORE ME THIS 26th DAY OF May 2020.

[signature]

**EMILY A. PRICE**
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-407-0000
Receipt Date 5/27/2020 3:32:00 PM
Cashier jboe
CDC Cash Register 4
Case Number 2020-02718
Grand Total
Amount Received $2.00
Balance Due $0.00
Over Payment $0.00
Payment/Transaction List
Check # 57870 $2.00

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Affidavit of Service | $0.00 | $0.00 | $0.00 |
| Exhibits (Paper) | $2.00 | $2.00 | $0.00 |

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

ATTORNEY'S NAME: Hoffmann, Philip C 32277
AND ADDRESS: 1010 Common Street, Suite 2050 , New Orleans, LA 70112

CIVIL DIST...CT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY

CITATION - LONG ARM

TO: WHITTAKER CLARK & DANIELS, INC.

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, JOE COBUZIOM, ESQ.
TOMPKINS, MCGUIRE, WACHENFELD & BARRY, LLP, 3 BECKER FARM ROAD, 4TH FLOOR , ROSELAND , NJ 07068

YOU HAVE BEEN SUED:

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** [signature]
**Amber Darby, Deputy Clerk**

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only
For delivery information, visit our website at www.usps.com®.
OFFICIAL USE
Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
Postmark Here
6/4/16/20
WHITTAKER CLARK & DANIELS
Through Agent: Joe Cobuzio, E
Tompkins, McGuire, Wachenfeld & Barry
3 Becker Farm Road, 4th Floor
Roseland, NJ 07068
PS Form 3800, April 2015 PSN 7530-02-000-9047

7019 1120 0002 1625 6182

FF'S RETURN
rocess servers only)

DOMICILIARY SERVICE

On this ____ day of ____________ served a copy of the within
Petition for Damages
ON WHITTAKER CLARK & DANIELS, INC.
THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, JOE COBUZIOM, ESQ.
by leaving same at the dwelling house, or usual place of abode, in the hands of ____________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

WHITTAKER CLARK & DANIELS, INC.
Through Agent: Joe Cobuzio, Esq.
Tompkins, McGuire, Wachenfeld & Barry, LLP
3 Becker Farm Road, 4th Floor
Roseland, NJ 07068

VERIFIED

ID: 10442614

COMPLETE THIS SECTION ON DELIVERY

A. Signature X [signature] ☐ Agent ☐ Addressee
B. Received by (Printed Name) C. Date of Delivery 4-27
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7019 1120 0002 1625 6182

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO.: 2020-2718 SECTION "16" DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

ORIGINAL

FILED: ______________________ ______________________

DEPUTY CLERK

AFFIDAVIT RE: RETURN OF LONG ARM SERVICE

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

TARA B. HERNANDEZ

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A", and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **Johnson & Johnson,** by depositing same in the United States Mail on the 16th day of April, 2020, and that **Johnson & Johnson,** did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 21st day of May, 2020.

[signature]

TARA B. HERNANDEZ

SWORN TO AND SUBSCRIBED BEFORE ME THIS 26th DAY OF May 2020.

[signature]

EMILY A. PRICE
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-407-0000

Receipt Date 5/27/2020
Receipt No

| | |
|---|---|
| Cashier | jboe |
| Register | CDC Cash Register 4 |
| Case Number | 2020-02718 |
| Grand Total | $ 2.00 |
| Amount Received | $ 2.00 |
| Balance Due | $ 0.00 |
| Over Payment | $ 0.00 |

Payment / Transaction List
Check # 57870 $2.00

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Affidavit of Service | $0.00 | $0.00 | $0.00 |
| Exhibits (Paper) | $2.00 | $2.00 | $0.00 |

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

**ATTORNEY'S NAME:** Hoffman, Philip C 32277
**AND ADDRESS:** 1010 Common Street, Suite 2050 , New Orleans, LA 70112

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

**NO: 2020-02718** **DIVISION: A** **SECTION: 16**

**ROY, LYNNE**

**Versus**

**COLGATE-PALMOLIVE COMPANY**

## CITATION - LONG ARM

TO: JOHNSON & JOHNSON CONSUMER, INC. (F/K/A JOHNSON & JOHNSON CONSUMER COMPANIES, INC.)

THROUGH: THE LOUISIANA LONG ARM STATUTE

THE AGENT, CT CORPORATION, 1999 BRYAN STREET, SUITE 900, DALLAS , TX 75201

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of The Civil District Court for the Parish of Orleans State of LA**
**by** Amber Darby
**Amber Darby, Deputy Clerk**

**[SHER]IFF'S RETURN**
(for use of process servers only)

DOMICILIARY SERVICE

On this ______ day of ______________ served a copy of the within

**Petition for Damages**

**ON JOHNSON & JOHNSON CONSUMER, INC. (F/K/A JOHNSON & JOHNSON CONSUMER COMPANIES, INC.)**

**THROUGH: THE LOUISIANA LONG ARM STATUTE**

by leaving same at the dwelling house, or usual place of abode, in the hands of ______________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Postmark
Total
$
Sent To
JOHNSON & JOHNSON CONSUMER
Agent: CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX 75201

PS Form 3800, April 2015

7019 1120 0002 1625 6205

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOHNSON & JOHNSON
Thru Agent: Steven Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

VERIFIED

ID: 10442610

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee
B. Received by (Printed Name) [handwritten] C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

MAY 1 2 2020

3. Service Type
☒ Certified Mail ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7019 1120 0002 1625 6212

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO.: 2020-2718 SECTION "16" DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

ORIGINAL

FILED: ______________ ______________ DEPUTY CLERK

**AFFIDAVIT RE: RETURN OF LONG ARM SERVICE**

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

TARA B. HERNANDEZ

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A", and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **Johnson & Johnson Consumer, Inc.,** by depositing same in the United States Mail on the 16th day of April, 2020, and that **Johnson & Johnson Consumer, Inc.,** did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 12th day of April, 2020.

TARA B. HERNANDEZ

SWORN TO AND SUBSCRIBED BEFORE ME THIS 26th DAY OF May 2020.

EMILY A. PRICE
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE, ROOM 402
NEW ORLEANS, LA 70112
504-407-0000

| | | | |
|---|---|---|---|
| Affidavit of Service | $0.00 | $0.00 | $0.00 |
| Exhibits (Pages) | $2.00 | $2.00 | $0.00 |

| | |
|---|---|
| Receipt Date | 5/27/2020 3:33:00 PM |
| Receipt Number | 813067 |
| Cashier | jboe |
| Register | CDC Cash Register 4 |
| Case Number | 2020-02718 |
| Grand Total | $ 2.00 |
| Amount Received | $ 2.00 |
| Balance Due | $ 0.00 |
| OverPayment | $ 0.00 |

Payment / Transaction List
Check # 57870 $2.00

Charged Paid Bal

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

ATTORNEY'S NAME: Hoffman, Philip C 32277
AND ADDRESS: 1010 Common Street, Suite 2050, New Orleans, LA 70112

**CIVIL DIS ICT COURT FOR THE PARISH JF ORLEANS**
**STATE OF LOUISIANA**

**NO: 2020-02718** **DIVISION: A** **SECTION: 16**

**ROY, LYNNE**

**Versus**

**COLGATE-PALMOLIVE COMPANY**

**CITATION - LONG ARM**

TO: JOHNSON & JOHNSON

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT; STEVEN M. ROSENBURG
ONE JOHNSON & JOHNSON PLAZA, NEW BRUNSWICK, NJ 08933

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of The Civil District Court for the Parish of Orleans State of LA**
**by** [signature]
**Amber Darby, Deputy Clerk**

**SHERIFF'S RETURN**
(for use of process servers only)

DOMICILIARY SERVICE

On this ______ day of ______________ served a copy of the within
Petition for Damages
ON JOHNSON & JOHNSON
THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, STEVEN M. ROSENBURG
by leaving same at the dwelling house, or usual place of abode, in the hands of ______________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said JOHNSON & JOHNSON being absent from the domicile at

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only
For delivery information, visit our website at www.usps.com®.
OFFICIAL USE
Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Postmark Here 4/14/20
JOHNSON & JOHNSON
Thru Agent: Steven Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933
PS Form 3800, April 2015 PSN 7530-02-000-9047
7019 1120 0002 1625 6212

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOHNSON & JOHNSON CONSUMER INC.
Agent: CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX 75201

VERIFIED

ID: 10442609

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X [signature] ☐ Agent ☐ Addressee
B. Received by (Printed Name) Kim Hightower C. Date of Delivery APR 20 2020
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label) 7019 1120 0002 1625 6205
PS Form 3811

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO.: 2020-2718 SECTION "16" DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

ORIGINAL

FILED: ______________________ ______________________
DEPUTY CLERK

AFFIDAVIT RE: RETURN OF LONG ARM SERVICE

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

TARA B. HERNANDEZ

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A", and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **Kaiser Gypsum Company, Inc.**, by depositing same in the United States Mail on the 16th day of April, 2020, and that **Kaiser Gypsum Company, Inc.**, did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 21st day of April, 2020.

TARA B. HERNANDEZ

SWORN TO AND SUBSCRIBED BEFORE ME THIS 26th DAY OF May 2020.

EMILY A. PRICE
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-407-0000

Receipt Date 5/26/2020
Receipt N...

| | |
|---|---|
| Cashier | jboe |
| Register | CDC Cash Register 4 |
| Case Number | 2020-02718 |
| Grand Total | $2.00 |
| Amount Received | $2.00 |
| Balance Due | $0.00 |
| Over Payment | $0.00 |

Payment / Transaction List
Check # 57870 $2.00

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Affidavit of Service | $0.00 | $0.00 | $0.00 |
| Exhibits/Paper | $2.00 | $2.00 | $0.00 |

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

FILED
MAY 04 2020
CLERK'S OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO.: 2020-02718 DIV/SEC: "A-16"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:______________________ ______________________
DEPUTY CLERK

**DEFENDANT'S MOTION AND ORDER FOR EXTENSION OF TIME**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Kaiser Gypsum Company, Inc. ("Defendant"), who moves for an Order extending the time within which it must file pleadings responsive to Plaintiff's Original Petition for Damages for a period of thirty (30) days or until June 3, 2020, upon showing that Defendant requires additional time to formulate a response. Defendant has not previously requested an extension of time to answer.

**ORDER**

**IT IS HEREBY ORDERED** that the Motion for Extension of Time filed by Kaiser Gypsum Company, Inc. be and hereby is granted, allowing an extension of thirty (30) days, or until June 3, 2020, in which to file responsive pleadings.

Signed this 20th day of May 2020 in New Orleans, Louisiana.

Ellen M. Hazeur
**JUDGE**

(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

RECEIVED
MAY 2020
DIVISION "A"
VERIFIED

{42225.000002 / W1136083}

Respectfully submitted,

MARON MARVEL BRADLEY ANDERSON & TARDY, LLC

ROBERT E. DILLE (#23037)
REBECCA A. ZOTTI (#33446)
SHELLEY K. NAPOLITANO (#34692)
Place St. Charles
201 St. Charles Avenue, Suite 2411
New Orleans, Louisiana 70170
Telephone: (504) 684-5100
Facsimile: (504) 613-0067
*Attorneys for Defendant, Kaiser Gypsum Company, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all known counsel of parties to this proceeding by mailing a copy of same to each via hand, facsimile, electronic mail, Federal Express or by First Class U.S. mail, properly addressed and postage prepaid on this 4th day of May, 2020.

REBECCA A. ZOTTI

FILED
MAY 0 1 2020
CLERK'S OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO.: 2020-02718 DIV/SEC: "A-16"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:____________________ ____________________
DEPUTY CLERK

**REQUEST FOR NOTICE**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Kaiser Gypsum Company, Inc., ("Defendant"), who makes the following Request for Notice:

1. Pursuant to La. C. C. P. art. 1572, Defendant requests written notice ten (10) days in advance of the date fixed for the trial or hearing of any exceptions, motions and rules on the merits of the above-captioned and any other suit which has been or may hereafter be consolidated with said suit.

2. Pursuant to La. C. C. P. arts. 1913 and 1914, Defendant requests notice of all interlocutory orders and final orders and judgments on any exceptions, motions and rules on the merits of the above-captioned suit which has been or may hereafter be consolidated with said suit.

**WHEREFORE,** Defendant, Kaiser Gypsum Company, Inc., prays that it be provided with the above notices.

Respectfully submitted,

MARON MARVEL BRADLEY ANDERSON & TARDY, LLC

Rebecca A. Zotti
ROBERT E. DILLE (#23037)
REBECCA A. ZOTTI (#33446)
SHELLEY K. NAPOLITANO (#34692)
Place St. Charles
201 St. Charles Avenue, Suite 2411
New Orleans, Louisiana 70170
Telephone: (504) 684-5100
Facsimile: (504) 613-0067
*Attorneys for Defendant, Kaiser Gypsum Company, Inc.*

VE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all known counsel of parties to this proceeding by mailing a copy of same to each via hand, facsimile, electronic mail, Federal Express or by First Class U.S. mail, properly addressed and postage prepaid on this 4th day of May, 2020.

Rebecca A. Zotti

REBECCA A. ZOTTI

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CASE NO.: 2020-2718 SECTION " 16 " DIVISION " A "

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

ORIGINAL

FILED: ______________________ ______________________

DEPUTY CLERK

AFFIDAVIT RE: RETURN OF LONG ARM SERVICE

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

TARA B. HERNANDEZ

who, being duly sworn, did depose and state that:

She is the Legal Assistant to Philip C. Hoffman, attorney in the matter entitled *Lynne L. Roy versus Colgate-Palmolive Company., et al.* on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2020-2718, Division "A", and that she properly addressed and mailed service of process, with proper postage affixed to the defendant herein, namely **CHANEL, Inc.**, by depositing same in the United States Mail on the 16th day of April, 2020, and that **CHANEL, Inc.**, did receive, via certified mail, Plaintiff's Original Petition for Damages in this matter on the 12th day of May, 2020.

TARA B. HERNANDEZ

SWORN TO AND SUBSCRIBED BEFORE ME THIS 26th DAY OF May 2020.

EMILY A. PRICE
NOTARY PUBLIC, No. 148098
State of Louisiana, Parish of ~~Jefferson~~ St. Charles
My commission is for life.

CLERK, CIVIL DISTRICT COURT
421 LOYOLA AVENUE ROOM 402
504-407-0000
Receipt Date 5/27/2020 3:39:11 PM
Receipt Number 812...
Cashier
Register
Case Num

Grand Total $ 6.00
Amount Received $ 0.00
Balance Due $ 0.00
Over Payment $ 0.00

Payment/Transaction List
Check # 67870 $6.00

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Affidavit of Service | $0.00 | $0.00 | $0.00 |
| Exhibits(Paper) | $6.00 | $6.00 | $0.00 |

EMILY A. PRICE
Notary Public No. 148098
State of Louisiana
Parish of St. Charles
My commission is issued for life.

VERIFIED

ATTORNEY'S NAME: Hoffman, Ph, C 32277
AND ADDRESS: 1010 Common Street, Suite 2050 , New Orleans, LA 70112

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY

## CITATION - LONG ARM

TO: CHANEL, INC.

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, CT CORPORATION SYSTEM
28 LIBERTY STREET , NEW YORK, NY 10005

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the
Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** [signature]
**Amber Darby, Deputy Clerk**

## SHERIFF'S RETURN
(for use of process servers only)

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*
For delivery information, visit our website at www.usps.com®.
OFFICIAL USE
Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postmark Here
04/16/20

CHANEL, INC.
Through Agent:
CT Corporation System
28 Liberty Street
New York, NY 10005

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7019 1120 0002 1625 6250

DOMICILIARY SERVICE

On this ________ day of ____________________ served a copy of the within
Petition for Damages
ON CHANEL, INC.
THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, CT CORPORATION SYSTEM
by leaving same at the dwelling house, or usual place of abode, in the hands of ____________________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said CHANEL, INC. being absent from the domicile at time of said service.

Returned the same day
____________________ No. __________
Deputy Sheriff of ____________________

ID: 10442605

usps tracking - Google Search 5/21/20, 11:29 AM

www.usps.com › nationalpre... ounts › trackmailing
USPS - Track - USI... om
Additional tracking services available: USPS Tracking® - Track and confirm your mail and packages online.

www.trackingmore.com › usps-tracking

usps tracking - Google Search 5/21/20, 11:29 AM

usps tracking

All | Books | News | Shopping | Videos | More | Settings | Tools

About 56,700,000 results (0.40 seconds)

Track your package
Data provided by USPS

Tracking number 70191120000216256250

Delivered
May 12, 06:27AM
Wilmington, DE

View details on USPS

Call 1-800-275-8777

Track another package

tools.usps.com
USPS.com® - USPS Tracking®
USPS Tracking®. Tracking FAQs. Icon of a mailman. Track Packages ... What does my tracking number look like? ... Where do I find my tracking number?
USPS · USPS.com® - Sign In · Find USPS Locations · Find Locations | USPS

www.usps.com › manage
Track Packages and Manage Mail | USPS - USPS.com
Track USPS package deliveries, get tracking text and email notifications, forward mail, change your address, and learn about setting up PO boxes or home ...

www.usps.com
USPS: Welcome
Welcome to USPS.com. Find information on our most ... Use our quick tools to find locations, calculate prices, look up a ZIP Code, and get Track & Confirm info.

People also ask

Where is my package USPS tracking?

Does USPS have live tracking?

How long are USPS tracking numbers?

Why is USPS tracking down?

Feedback

faq.usps.com › article › USPS-Tracking-The-Basics
USPS Tracking® - The Basics - USPS FAQs
May 1, 2020 - USPS Tracking® service provides end-to-end item tracking. This article provides in-depth information on how to use the service, what ...

**ATTORNEY'S NAME:** Hoffman, Phi... 32277
**AND ADDRESS:** 1010 Common Street, Suite 2050, New Orleans, LA 70112

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

**NO: 2020-02718** **DIVISION: A** **SECTION: 16**

**ROY, LYNNE**

**Versus**

**COLGATE-PALMOLIVE COMPANY**

## CITATION

TO: PFIZER INC.

THROUGH: THE AGENT, CT CORPORATION SYSTEM
3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** [signature]
**Amber Darby, Deputy Clerk**

## SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this ____ day of ____ served a copy of the within | On this ____ day of ____ served a copy of the within |
| Petition for Damages | Petition for Damages |
| ON PFIZER INC. | ON PFIZER INC. |
| THROUGH: THE AGENT, CT CORPORATION SYSTEM | THROUGH: THE AGENT, CT CORPORATION SYSTEM |
| Returned the same day<br>____ No. ____ | by leaving same at the dwelling house, or usual place of abode, in the hands of ____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said PFIZER INC. being absent from the domicile at time of said service. |
| Deputy Sheriff of ____<br>Mileage: $ ____<br>/ ENTERED / | Returned the same day<br>____ No. ____ |
| 3 PAPER / RETURN / <br>SERIAL NO. DEPUTY PARISH | Deputy Sheriff of ____ |

RECEIVED

JUN 01 2020

E.B.R. SHERIFF'S OFFICE

I made service on the named party through the CT Corporation

JUN 03 2020

by tendering a copy of this document to
☐ Jeannine Beauregard ☐ Brenna Beauregard
☐ Allison Reed
E. Simmons
Deputy Sheriff, Parish of East Baton Rouge, Louisiana

VERIFIED
6-19-2020

ID: 10442613

ATTORNEY'S NAME: Hoffman, Ph... 32277
AND ADDRESS: 1010 Common Street, Suite 2050, New Orleans, LA 70112

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY

## CITATION

TO: K & B LOUISIANA CORPORATION (D/B/A RITE AID CORPORATION), INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION

THE AGENT, CT CORPORATION, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of The Civil District Court for the Parish of Orleans State of LA**
by [signature]
**Amber Darby, Deputy Clerk**

**SHERIFF'S RETURN**
(for use of process servers only)

PERSONAL SERVICE

On this ____ day of ____ served a copy of the within

**Petition for Damages**

**ON K & B LOUISIANA CORPORATION (D/B/A RITE AID CORPORATION), INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION**

THROUGH:

Returned the same day
No. ____

Deputy Sheriff of ____
Mileage: $ ____

/ ENTERED /

PAPER RETURN

SERIAL NO. DEPUTY PARISH

DOMICILIARY SERVICE

On this ____ day of ____ served a copy of the within

**Petition for Damages**

**ON K & B LOUISIANA CORPORATION (D/B/A RITE AID CORPORATION), INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION**

THROUGH:

by leaving same at the dwelling house, or usual place of abode, in the hands of ____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said K & B LOUISIANA CORPORATION (D/B/A RITE AID CORPORATION), INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION being absent from the domicile at time of said service.

Returned the same day
No. ____

Deputy Sheriff of ____

I made service on the named party through the CT Corporation

JUN 03 2020

by tendering a copy of this document to
☐ Jeannine Beauregard ☐ Brenna Beauregard
☐ Allison Reed

[signature]
Deputy Sheriff, Parish of East Baton Rouge, Louisiana

RECEIVED
JUN 01 2020
E.B.R. SHERIFF'S OFFICE

VERIFIED
6-19-2020

ID: 10442611

FILED
JUN 09 2020
CLERK'S OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No.: 2020-02718 DIV/SEC.: A-16

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, et al

JURY

FILED: ______________________ ______________________
DEPUTY CLERK

**KAISER GYPSUM COMPANY, INC.'S**
**ANSWER TO ORIGINAL PETITION FOR DAMAGES**

**NOW INTO COURT,** through undersigned counsel, comes Kaiser Gypsum Company, Inc. ("Kaiser" or "Defendant"), who answers the Original Petition for Damages ("Petition") filed on behalf of Plaintiff, Lynne L. Roy, as follows:

**ANSWER TO ORIGINAL PETITION FOR DAMAGES**

1.

The allegations contained within the unnumbered Paragraph of the Petition beginning with "COMES NOW" are denied for lack of sufficient information to justify a belief therein.

**INTRODUCTION**

2.

The allegations contained within Paragraphs 1 through 2 of the Petition call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 1 through 2 of the Petition are denied. The remaining allegations contained within Paragraphs 1 through 2 of the Petition are denied for lack of sufficient information to justify a belief therein.

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-407-0000
Receipt Date 6/12/2020 12:19:00 PM
Receipt Number 916707
Cashier jboe
Register CDC Cash Register 4
Case Number 2020-02718
Amount Received $1092.00
Over Payment $0.00

**PARTIES, JURISDICTION, AND VENUE**

3.

The allegations contained within Paragraph 3 of the Petition are denied for lack of sufficient information to justify a belief therein.

4.

In response to the allegations contained within Paragraph 4 of the Petition, including all subparts, Defendant admits that it is a foreign corporation. The remaining allegations contained



VERIFIED
6-16-20

within Paragraph 4 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

5.

The allegations contained within Paragraph 5 of the Petition, including all subparts, call for a legal conclusion, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraph 5 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

6.

The allegations contained within Paragraphs 6 through 11 of the Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraphs 6 through 11 of the Petition are denied for lack of sufficient information to justify a belief therein.

7.

The allegations contained within Paragraph 12 of the Petition call for a legal conclusion, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraph 12 of the Petition are denied for lack of sufficient information to justify a belief therein.

8.

The allegations contained within Paragraphs 13 through 15 of the Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraphs 13 through 15 of the Petition are denied for lack of sufficient information to justify a belief therein.

9.

The allegations contained within Paragraph 16 of the Petition call for a legal conclusion, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraph 16 of the Petition are denied for lack of sufficient information to justify a belief therein.

**BACKGROUND**

10.

The allegations contained within Paragraphs 17 through 18 of the Petition are denied for lack of sufficient information to justify a belief therein.

11.

The allegations contained within Paragraph 19 of the Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraph 19 of the Petition are denied for lack of sufficient information to justify a belief therein.

12.

The allegations contained within Paragraphs 20 through 25 of the Petition call for a legal conclusion, and thus the allegations do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 20 through 25 of the Petition are denied. Defendant specifically denies that it is jointly, severally, and *in solido* liable to Plaintiff. The remaining allegations contained within Paragraphs 20 through 25 of the Petition are denied for lack of sufficient information to justify a belief therein.

**FACTS COMMON TO ALL COUNTS**

13.

In response to the allegations contained within Paragraph 26 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in* □*xtensor* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

14.

The allegations contained within Paragraphs 27 through 30 of the Petition call for a legal conclusion, and thus the allegations do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 27 through 30 of the Petition are denied. The remaining allegations contained within Paragraphs 27 through 30 of the Petition are denied for lack of sufficient information to justify a belief therein.

15.

The allegations contained within Paragraphs 31 through 47 of the Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraphs 31 through 47 of the Petition are denied for lack of sufficient information to justify a belief therein.

16.

The allegations contained within Paragraphs 48 through 50 of the Petition call for a legal conclusion, and thus the allegations do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 48 through 50 of the Petition are denied. The remaining allegations contained within Paragraphs 48 through 50 of the Petition are denied for lack of sufficient information to justify a belief therein.

17.

The allegations contained within Paragraph 51 of the Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraph 51 of the Petition are denied for lack of sufficient information to justify a belief therein.

18.

The allegations contained within Paragraph 52 of the Petition call for a legal conclusion, and thus the allegations do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraph 52 of the Petition are denied. The remaining allegations contained within Paragraph 52 of the Petition are denied for lack of sufficient information to justify a belief therein.

COUNT I
STRICT LIABILITY and NEGLIGENCE
(All Defendants)

19.

In response to the allegations contained within Paragraph 53 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

20.

The allegations contained within Paragraphs 54 through 58 of the Petition, including all subparts, call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 54 through 58 of the Petition, including all subparts, are

denied. The remaining allegations contained within Paragraphs 54 through 58 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

**COUNT TWO: SUPPLIER/DISTRIBUTOR/MANUFACTURER/SELLER LIABILITY**

**(All Defendants)**

21.

In response to the allegations contained within Paragraph 59 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

22.

The allegations contained within Paragraphs 60 through 63 of the Petition call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 60 through 63 of the Petition are denied. The remaining allegations contained within Paragraphs 60 through 63 of the Petition are denied for lack of sufficient information to justify a belief therein.

23.

The allegations contained within Paragraphs 64 through 65 of the Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraphs 64 through 65 of the Petition are denied for lack of sufficient information to justify a belief therein.

24.

The allegations contained within Paragraphs 66 through 71 of the Petition call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 66 through 71 of the Petition are denied. The remaining allegations contained within Paragraphs 66 through 71 of the Petition are denied for lack of sufficient information to justify a belief therein.

**COUNT THREE: STRICT LIABILITY and NEGLIGENCE**

**(Johnson & Johnson Defendants)**

25.

In response to the allegations contained within Paragraph 72 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

26.

The allegations contained within Paragraphs 73 through 78 of the Petition, including all subparts, do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraphs 73 through 78 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

**COUNT FOUR: FAILURE TO WARN**

**(All Defendants)**

27.

In response to the allegations contained within Paragraph 79 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

28.

The allegations contained within Paragraphs 80 through 88 of the Petition call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 80 through 88 of the Petition are denied. The remaining allegations contained within Paragraphs 80 through 88 of the Petition are denied for lack of sufficient information to justify a belief therein.

**COUNT FIVE: BREACH OF WARRANTY**

**(All Defendants)**

29.

In response to the allegations contained within Paragraph 89 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

30.

The allegations contained within Paragraphs 90 through 95 of the Petition call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 90 through 95 of the Petition are denied. The remaining allegations contained within Paragraphs 90 through 95 of the Petition are denied for lack of sufficient information to justify a belief therein.

**COUNT SIX: DEFECTIVE DESIGN**

**(All Defendants)**

31.

In response to the allegations contained within Paragraph 96 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

32.

The allegations contained within Paragraphs 97 through 103 of the Petition call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 97 through 103 of the Petition are denied. The remaining allegations contained within Paragraphs 97 through 103 of the Petition are denied for lack of sufficient information to justify a belief therein.

**COUNT SEVEN: FRAUD**

**(Johnson & Johnson Defendants and Colgate-Palmolive)**

33.

In response to the allegations contained within Paragraph 104 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

34.

The allegations contained within Paragraphs 105 through 115 of the Petition, including all subparts, do not pertain to Defendant, and thus the allegations do not require a response from

Defendant. To the extent a response is required, the allegations contained within Paragraphs 105 through 115 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

**COUNT EIGHT: CIVIL CONSPIRACY**

**(All Defendants)**

35.

In response to the allegations contained within Paragraph 116 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

36.

The allegations contained within Paragraphs 117 through 127 of the Petition, including all subparts, call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 117 through 127 of the Petition, including all subparts, are denied. The remaining allegations contained within Paragraphs 117 through 127 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

**COUNT NINE: REDHIBITION**

**(All Defendants)**

37.

In response to the allegations contained within Paragraph 128 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

38.

The allegations contained within Paragraphs 129 through 135 of the Petition call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 129 through 135 of the Petition are denied. The remaining allegations contained

within Paragraphs 129 through 135 of the Petition are denied for lack of sufficient information to justify a belief therein.

**COUNT TEN: PUNITIVE DAMAGES**

**(All Defendants)**

39.

In response to the allegations contained within Paragraph 136 of the Petition, Defendant adopts and incorporates herein by reference as though copied here *in extenso* all exceptions, responses, answers, assertions and defenses contained in Defendant's answer to all previous Paragraphs of the Petition as though fully set forth herein.

40.

The allegations contained within Paragraphs 137 through 143 of the Petition, including all subparts, call for a legal conclusion and thus do not require a response from Defendant. To the extent a response is required and to the extent the allegations pertain to Defendant, the allegations contained within Paragraphs 137 through 143 of the Petition, including all subparts, are denied. The remaining allegations contained within Paragraphs 137 through 143 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

41.

To the extent the allegations contained within the unnumbered Paragraph of the Petition beginning with "WHEREFORE" pertain to Defendant, the allegations are denied. The remaining allegations contained within the unnumbered Paragraph of the Petition beginning with "WHEREFORE" are denied for lack of sufficient information to justify a belief therein.

**DAMAGES**

42.

To the extent the allegations contained within Paragraph 144 of the Petition, including all subparts, pertain to Defendant, these allegations are denied. The remaining allegations contained within Paragraph 144 of the Petition, including all subparts, are denied for lack of sufficient information to justify a belief therein.

43.

To the extent the allegations contained within the unnumbered prayer for relief Paragraph of the Petition beginning with "WHEREFORE" pertain to Defendant, these allegations are

denied, and Defendant denies that it is liable jointly, severally, or otherwise to Plaintiff. The remaining allegations contained within the unnumbered prayer for relief Paragraph of the Petition beginning with "WHEREFORE" are denied for lack of sufficient information to justify a belief therein.

44.

Any and all allegations contained within the Petition that are not specifically admitted herein are denied for lack of sufficient information to justify a belief therein.

**AFFIRMATIVE DEFENSES TO PLAINTIFF'S PETITION**

**AND NOW, IN FURTHER ANSWER TO THE PETITION, DEFENDANT AVERS AS FOLLOWS:**

**FIRST AFFIRMATIVE DEFENSE**

This Court lacks jurisdiction over Defendant and over the controversy forming the basis of this litigation. This Court lacks both general personal jurisdiction and specific personal jurisdiction over Kaiser in this matter. Kaiser does not have a sufficient presence in Louisiana to warrant the exercise of general personal jurisdiction over it. Furthermore, Plaintiff fails to allege any conduct by Kaiser in Louisiana that caused Plaintiff's alleged injury. Therefore, the exercise of specific personal jurisdiction is not warranted.

**SECOND AFFIRMATIVE DEFENSE**

There is insufficiency of process and service of process against Defendant.

**THIRD AFFIRMATIVE DEFENSE**

This Court lacks venue as alleged in the Petition.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's Petition against Defendant fails to state a cause of action upon which relief may be granted. Plaintiff has failed to plead facts sufficient to give rise to a cause of action against Kaiser. Further, Plaintiff has no cause of action to recover attorney fees or punitive damages from Kaiser.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the applicable statute of limitations and/or prescription.

**SIXTH AFFIRMATIVE DEFENSE**

Kaiser asserts that the Petition is impermissibly vague and ambiguous. Specifically, Petition fails to identify a particular product allegedly manufactured or distributed by Kaiser

and/or a location where their alleged use occurred which may have contributed to Plaintiff's purported injuries.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate her damages, if any.

EIGHTH AFFIRMATIVE DEFENSE

Defendant denies that Plaintiff ever used products manufactured by Defendant and further denies that she was ever in proximity to products manufactured by Defendant.

NINTH AFFIRMATIVE DEFENSE

Defendant avers that any injury or damage suffered by Plaintiff in connection with a product manufactured by Defendant, which injury or damage is specifically denied, did not result from the normal use of the product.

TENTH AFFIRMATIVE DEFENSE

Alternatively, Defendant pleads the contributory and/or comparative negligence or fault and assumption of the risk of Plaintiff with said negligence, fault and/or assumption of the risk acting as a complete bar to or, alternatively, in mitigation to Plaintiff's recovery.

ELEVENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff failed to observe warnings and instructions that were provided for their safety and protection and failed to use protective and safety equipment.

TWELFTH AFFIRMATIVE DEFENSE

Defendant manufactured its products with the highest degree of skill and care and in conformity with the knowledge and skills available to the industry at all times in question and adhered to all appropriate government and industry standards.

THIRTEENTH AFFIRMATIVE DEFENSE

If Plaintiff sustained injuries or damages, which is specifically and categorically denied, her injuries and damages are the result of negligence or fault on the part of others over whom Defendant has no responsibility or control.

FOURTEENTH AFFIRMATIVE DEFENSE

Defendant specifically pleads the "state-of-the-art" defense to each and every allegation of the Plaintiff. Defendant denies any defects in its products and avers that at all pertinent times, its products were reasonably fit and suited for the purpose for which they were manufactured and

intended and were delivered with such advises as were consistent with the state of the existing medical and industrial art.

FIFTEENTH AFFIRMATIVE DEFENSE

Defendant denies the existence of or breach of any actual or implied warranty.

SIXTEENTH AFFIRMATIVE DEFENSE

Defendant avers that as a result of the provisions of certain statutes including 11 U.S.C. Section 362(a), Plaintiff is prohibited from proceeding against certain parties liable for the damages and injuries complained of and Defendant reserves its right to so proceed.

SEVENTEENTH AFFIRMATIVE DEFENSE

Further, alternatively, Defendant avers that Plaintiff did not inhale asbestos fibers or dust emitted by the normal use of said products, proximately causing the results and/or related abnormalities or alternatively, any other asbestos related injury.

EIGHTEENTH AFFIRMATIVE DEFENSE

Further, alternatively, Defendant avers that Plaintiff's lung injury, if any, was caused by substances other than asbestos.

NINETEENTH AFFIRMATIVE DEFENSE

Defendant further adopts all affirmative defenses, if any, not specifically set out in this answer but asserted by any other defendant in this case.

TWENTIETH AFFIRMATIVE DEFENSE

Defendant affirmatively avers the affirmative defenses of La. R. S. 9:2800.51 *et seq.*, the Louisiana Products Liability Act.

TWENTY-FIRST AFFIRMATIVE DEFENSE

If Plaintiff has heretofore settled or should hereafter settle for any of their alleged injuries and damages with any parties, then this Defendant is entitled to a credit for any such settlement.

TWENTY-SECOND AFFIRMATIVE DEFENSE

In the alternative, to the extent that Plaintiff alleges exposure to products manufactured by Defendant for a government contract, the government had a contractual right to specify how the contract would be complied with, the government exercised that right and Defendant complied with those specifications; Defendant specifically asserts the "government contractor defense."

TWENTY-THIRD AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff's employers were responsible for her safety. Plaintiff's employers were knowledgeable and sophisticated users and/or purchasers of asbestos-containing products. A manufacturer or distributor of a product has no duty to warn a sophisticated user and/or purchaser of a danger in its product of which the user/purchaser knows or should have known.

TWENTY-FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek to recover punitive damages against this Defendant, these damages are improper, unwarranted, not authorized by law, and unconstitutional in the context of this litigation.

TWENTY-FIFTH AFFIRMATIVE DEFENSE

Defendant reserves the right to aver and allege any other affirmative defenses which may become known as discovery proceeds.

REQUEST FOR JURY TRIAL

Defendant hereby demands a trial by jury.

**WHEREFORE,** Defendant, Kaiser Gypsum Company, Inc., prays that its Answer to the Original Petition for Damages be deemed good and sufficient and that after all legal delays and due proceeding had, there be judgment herein in favor of Defendant, Kaiser Gypsum Company, Inc., and against Plaintiff, dismissing the Original Petition for Damages and all subsequent supplemental and amended petitions for damages, with prejudice and at Plaintiff's costs. Defendant further prays for all general and equitable relief. Defendant further requests a trial by jury.

Respectfully submitted,

MARON MARVEL BRADLEY ANDERSON & TARDY LLC

ROBERT E. DILLE (#23037)
REBECCA A. ZOTTI (#33446)
201 St. Charles Avenue, Suite 2411
New Orleans, Louisiana 70170
Telephone: (504) 684-5100
Facsimile: (504) 613-0067
*Attorneys for Kaiser Gypsum Company, Inc.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all known counsel of parties to this proceeding by mailing a copy of same to each via hand, facsimile, electronic mail, Federal Express or by First Class U.S. mail, properly addressed and postage prepaid on this 9th day of June, 2020.

Rebecca A. Zotti
REBECCA A. ZOTTI

FILED
JUN 18 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**DEFENDANT, COTY INC.'S,**
**ANSWER TO PLAINTIFF'S ORIGINAL PETITION**

COMES NOW Defendant Coty Inc., individually and as successor-in-interest to Noxzema Chemical Company (hereinafter referred to as "Defendant"), by and through its counsel, and hereby responds to the specific allegations of Plaintiff's Original Petition (hereinafter referred to as "Petition") and any and all Cross-Claims, if any, filed in this matter as follows:

**EXCEPTIONS**

Defendant adopts and incorporates by reference as if fully set forth herein the exceptions and memoranda in support filed by the other defendants in this action unless and until it opts out of a particular exception.

**ANSWER TO PETITION FOR DAMAGES**

**INTRODUCTION**

1-2.

Defendant denies the allegations contained in paragraphs 1 and 2 of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 1 and 2 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

VERIFIED
06/30/20

**PARTIES, JURISDICTION, AND VENUE**

3.

Defendant is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 3 of the Petition and accordingly denies same.

4.

Defendant is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 4 of the petition, including all subparagraphs contained therein, and accordingly denies same, except to admit that it is incorporated under the laws of a state other than the State of Louisiana.

5.

Defendant denies the allegations contained in paragraph 5 of the Petition, including all subparagraphs therein, as they apply to Defendant. To the extent that the allegations in paragraph 5 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

6-7.

The allegations contained in paragraphs 6 and 7 of the Petition are not directed toward Defendant, and therefore no response is required. To the extent any of the allegations in paragraphs 6 and 7 require a response from Defendant, such allegations are denied.

8.

Defendant denies the allegations contained in paragraph 8 of the Petition.

9-15.

The allegations contained in paragraphs 9 through 15 of the Petition are not directed toward Defendant, and therefore no response is required. To the extent any of the allegations in paragraphs 9 through 15 require a response from Defendant, such allegations are denied.

16.

Defendant is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 16 of the Petition and accordingly denies same.

## BACKGROUND

17 – 25.

Defendant denies the allegations contained in paragraphs 17 through 25 of the Petition as they apply to Defendant.[1] To the extent that the allegations in paragraphs 17 through 25 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same. Defendant further denies that Plaintiff is entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever.

## FACTS COMMON TO ALL COUNTS

26.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

27 – 52.

Defendant denies the allegations contained in paragraphs 27 through 52 of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 27 through 52 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

## COUNT ONE: STRICT LIABILITY and NEGLIGENCE
**(All Defendants)**

53.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

54 – 58.

Defendant denies the allegations contained in paragraphs 54 through 58 of the Petition, including all subparagraphs contained therein, as they apply to Defendant. To the extent that the allegations in paragraphs 54 through 58 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**COUNT TWO: SUPPLIER/DISTRIBUTOR/MANUFACTURER/SELLER LIABILITY**
**(All Defendants)**

59.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

60 – 71.

Defendant denies the allegations contained in paragraphs 60 through 71 of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 60 through 71 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**COUNT THREE: STRICT LIABILITY AND NEGLIGENCE**
**(Johnson & Johnson Defendants)**

72.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

73 – 78.

The allegations contained in paragraphs 73 through 78 of the Petition, including all subparagraphs therein, are not directed toward Defendant, and therefore no response is required. To the extent any of the allegations in paragraphs 73 through 78 require a response from Defendant, such allegations are denied.

**COUNT FOUR: FAILURE TO WARN**
**(All Defendants)**

79.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

80 – 88.

Defendant denies the allegations contained in paragraphs 80 through 88 of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 80 through 88 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**COUNT FIVE: BREACH OF WARRENTY**
**(All Defendants)**

89.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

90 – 95.

Defendant denies the allegations contained in paragraphs 90 through 95 of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 90 through 95 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**COUNT SIX: DEFECTIVE DESIGN**
**(All Defendants)**

96.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

97 - 103.

Defendant denies the allegations contained in paragraphs 97 through 103 of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 97 through 103 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**COUNT SEVEN: FRAUD**
**(Johnson & Johnson Defendants and Colgate-Palmolive)**

104.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

105 – 115.

The allegations contained in paragraphs 105 through 115 of the Petition, including all subparagraphs therein, are not directed toward Defendant, and therefore no response is required. To the extent any of the allegations in paragraphs 105 through 115 require a response from Defendant, such allegations are denied.

**COUNT EIGHT: CIVIL CONSPIRACY**
**(All Defendants)**

116.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

117 – 127.

Defendant denies the allegations contained in paragraphs 117 through 127 of the Petition, including all subparagraphs therein, as they apply to Defendant. To the extent that the allegations in paragraphs 117 through 127 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same. Defendant denies that Plaintiff is entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever.

**COUNT NINE: REDHIBITION**
**(All Defendants)**

128.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

129 – 135.

Defendant denies the allegations contained in paragraphs 129 through 135 of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 129 through 135 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**COUNT TEN: PUNITIVE DAMAGES**
**(All Defendants)**

136.

Defendant reiterates its answers and denials contained in the paragraphs above as if fully set forth herein.

137 – 143.

Defendant denies the allegations contained in paragraphs 137 through 143 of the Petition, including all subparagraphs therein, as they apply to Defendant. To the extent any claim for

relief in the Petition seeks to recover damages against this Defendant for alleged acts or omissions of predecessors or successors-in-interest to this Defendant of any kind or description, Defendant asserts that it is not legally responsible and cannot legally be held liable for punitive damages and/or exemplary damages that are or may attributable to the conduct of any predecessor or successor-in-interest. Further, this Defendant asserts that the conduct of any predecessor or successor-in-interest cannot, as a matter of law provide a legal basis for liability or the imposition of damages against this Defendant. To the extent that the allegations in paragraphs 137 through 143 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

Defendant denies the allegations contained in the unnumbered paragraph following paragraph 143 of the Petition insofar as they apply to this Defendant. Defendant further denies that Plaintiff is entitled to punitive damages against it, or any judgment against it jointly or severally in an amount to be determined at trial or in any amount whatsoever.

## DAMAGES

144.

Defendant denies the allegations contained in paragraph 144 of the Petition and demands strict proof thereof as they pertain to Defendant. To the extent that these allegations pertain to other defendants, Defendant is without knowledge or information sufficient to form a belief as to the truth of such allegations, and therefore, denies same.

Defendant denies the allegations contained in the unnumbered paragraph following paragraph 144 of the Petition insofar as they apply to this Defendant. Defendant further denies that Plaintiff is entitled to any judgment against it jointly or severally in an amount to be determined at trial or in any amount whatsoever.

Defendant denies all allegations of any and all cross-claims, cross-actions and third-party claims filed against it by other defendants in this case, or which may be filed by such other defendants or additional parties in the future, and states that it is not liable to any party in this case.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**

Plaintiff fails to state a claim upon which relief may be granted.

**Second Affirmative Defense**

The claims against Defendant are barred by lack of personal jurisdiction.

**Third Affirmative Defense**

The claims against Defendant are barred by lack of subject matter jurisdiction.

**Fourth Affirmative Defense**

The claims against Defendant are barred by insufficiency of process and/or insufficiency of service of process.

**Fifth Affirmative Defense**

Plaintiff's claims should be dismissed on grounds of improper venue and/or *forum non conveniens.*

**Sixth Affirmative Defense**

Any claim or cause of action Plaintiff may have is barred, in whole or in part, by the doctrines of laches, waiver, collateral estoppel, and/or *res judicata.*

**Seventh Affirmative Defense**

Plaintiff's claims and causes of action against Defendant are barred, in whole or in part, because Defendant owed no legal duty to Plaintiff or, if it owed such a legal duty, it did not breach such duty.

**Eighth Affirmative Defense**

The injuries allegedly sustained by Plaintiff, if any, were proximately caused by Plaintiff's free and voluntary acts of knowingly and voluntarily placing herself in a position of danger and thus assuming the risks ordinary incident to such acts.

**Ninth Affirmative Defense**

The injuries allegedly sustained by Plaintiff, if any, arose in whole or in part out of the risks, hazards, and dangers incident to the occupation of Plaintiff, all of which were open, obvious and well known to Plaintiff, and the action is barred by Plaintiff's assumption of the risks thereof.

**Tenth Affirmative Defense**

The negligent acts or omissions of Plaintiff were the sole proximate cause or proximate contributing cause of the injuries and damages of which Plaintiff complains.

**Eleventh Affirmative Defense**

Plaintiff contributed to her illnesses, either in whole or in part, by the use of other substances, products, medications and drugs. To the extent that Plaintiff used any tobacco products, any damages awarded should be reduced in whole or in part by the amount of her damages caused by smoking.

**Twelfth Affirmative Defense**

That the injuries and/or illnesses, if any, sustained by Plaintiff were caused or contributed to by the fault, neglect, and want of care on the part of Plaintiff or of others for whose acts or omissions or breach of legal duty Defendant is not liable.

**Thirteenth Affirmative Defense**

Plaintiff's alleged damages were negligently caused in whole or in part by persons, firms, corporations, or entities other than those parties before this Court and such negligence either bars or comparatively reduces any possible recovery by Plaintiff.

**Fourteenth Affirmative Defense**

If Plaintiff suffered damages as a result of the allegations set forth in the Complaint, then those damages were the result of intervening or superseding acts or omissions of persons other than Defendant or act of God for which Defendant is neither liable nor responsible.

**Fifteenth Affirmative Defense**

To the extent that Defendant conformed to the scientific knowledge and research data available throughout the industry and scientific community, Defendant fulfilled its obligations, if any, herein, and Plaintiff's claims shall be barred, in whole or in part.

**Sixteenth Affirmative Defense**

If Plaintiff sustained injuries as a result of exposure to any product manufactured by Defendant, the degree of such damage attributable to Defendant's product is negligible, and hence, *de minimis*.

**Seventeenth Affirmative Defense**

Defendant cannot be held jointly and severally liable for acts or omissions of other defendants because the acts and omissions of those other defendants were separate and distinct and the alleged harm caused by each defendant is divisible.

**Eighteenth Affirmative Defense**

Defendant is not liable for any damages alleged to have resulted from exposure to any of its products which were manufactured pursuant to Government specifications.

**Nineteenth Affirmative Defense**

To the extent that Plaintiff alleges rights assertedly derived from oral warranties or undertakings on the part of Defendant, the Petition is barred by the applicable statute of frauds.

**Twentieth Affirmative Defense**

To the extent Plaintiff alleges a cause of action for express and/or implied warranties and the alleged breaches thereof, such cause of action is legally insufficient by reason of the failure to allege privity of contract and/or privity of warranties between Plaintiff and Defendant.

**Twenty- First Affirmative Defense**

To the extent that any breach of warranty is alleged, Plaintiff has failed to give proper and prompt notice of any such breach to Defendant.

**Twenty- Second Affirmative Defense**

Plaintiff did not directly or indirectly purchase any asbestos-containing products or materials from Defendant, and thus Plaintiff did not receive or rely upon any representation or warranty allegedly made by Defendant.

**Twenty- Third Affirmative Defense**

To the extent that Plaintiff may recover damages from Defendant, Defendant is entitled to indemnification and/or contribution, in whole or in part, from each of the other defendants in this action.

**Twenty-Fourth Affirmative Defense**

To the extent Plaintiff seeks to hold Defendant liable retroactively for conduct that was not actionable at the time it occurred, Plaintiff's claims violate Defendant's right to be free from

*ex post facto* laws and Defendant's procedural and substantive due process rights under the Constitution of the United States.

**Twenty-Fifth Affirmative Defense**

Any claim for exemplary and/or punitive damages is barred because such damages are not recoverable or warranted in this action.

**Twenty-Sixth Affirmative Defense**

The imposition of punitive damages on the facts alleged in the Complaint is barred by the United States Constitution and the Constitution of the State of Louisiana.

**Twenty-Seventh Affirmative Defense**

The law of Louisiana and the Due Process Clause of the Fourteenth Amendment and the Supremacy Clause of Article VI of the United States Constitutions forbid punishing Defendant simply for lawfully selling a legal product.

**Twenty-Eighth Affirmative Defense**

Punitive damages are inappropriate to serve deterrence and punishment objectives because those will be fully served by past and future liability for the same conduct at issue in this case. Moreover, considerations of due process, comity, and state sovereignty bar any attempts to punish Defendant, except to the extent the alleged conduct has had an impact in this State.

**Twenty-Ninth Affirmative Defense**

Plaintiff has failed to plead the claims of fraud and conspiracy with proper specificity and, as such, all claims premised on fraud and/or conspiracy must be dismissed.

**Thirtieth Affirmative Defense**

Plaintiff's alleged injures, if any, were proximately and solely caused by an independent and/or intervening cause or causes, for whom or for which this defendant is neither liable nor responsible.

**Thirty-First Affirmative Defense**

Defendant reserves the right to assert any and all other affirmative defenses which discovery hereafter may reveal to be appropriate.

**Thirty-Second Affirmative Defense**

The claims against Defendant are barred, in whole or in part, by prescription, the applicable statute of limitations of the State of Louisiana and other states as may be applicable.

**Thirty-Third Affirmative Defense**

The claims against Defendant are barred, in whole or in part, by the applicable statute of repose of the State of Louisiana as well as other states as may be applicable.

**Thirty-Fourth Affirmative Defense**

Defendant denies that Plaintiff had any exposure to any asbestos-containing product allegedly designed, processed, marketed, manufactured, supplied, developed, tested, fashioned, packaged, distributed, delivered, sold, and/or otherwise placed in the stream of commerce by Defendant, and more particularly, denies, upon information and belief, that Defendant processed, manufactured, supplied, developed, tested, fashioned, packaged, distributed, delivered, sold and/or otherwise placed in the stream of commerce any asbestos-containing product at the times and upon the dates alleged in the Petition.

**Thirty-Fifth Affirmative Defense**

Defendant denies specifically that, during the periods of exposure alleged in the Petition by the Plaintiff, it processed, manufactured, marketed, designed, supplied, developed, tested, fashioned, packaged, distributed, delivered, sold and/or otherwise placed in the stream of commerce a substantial and/or any percentage of the asbestos-containing products to which Plaintiff was caused to come into contact and which Plaintiff was caused to breathe, inhale and digest and which thereby caused Plaintiff's injuries and resulting damages alleged in the Petition.

**Thirty-Sixth Affirmative Defense**

Defendant conformed to the scientific knowledge and data available to the industry and fulfilled its obligations, if any, and its activities and undertakings, if any, were conducted in a reasonable fashion, without recklessness, malice or wantonness, and Plaintiff may not recover herein any exemplary or punitive damages against Defendant.

**Thirty-Seventh Affirmative Defense**

Any alleged product of Defendant was designed, manufactured, and marketed in accordance with the state of scientific and technological knowledge and was not defective or unreasonably dangerous to Plaintiff in the normal, expected and intended use of the product, insofar as knowledge of the dangers of what Plaintiff complains was not known and could not reasonably have been discovered at the time such products were manufactured, sold or otherwise placed into the stream of commerce.

**Thirty-Eighth Affirmative Defense**

At all times material hereto, the state of the medical, industrial, and scientific arts, knowledge and technology was that there was no generally accepted or recognized knowledge of any unavoidably unsafe, inherently dangerous, hazardous or defective character or nature of talc products when used in the manner and for the purposes intended, so that there was no duty by Defendant to know of such character or nature or to warn Plaintiff or others similarly situated, and that, to the extent such duty arose, adequate warnings either were given or were not necessary under all circumstances.

**Thirty-Ninth Affirmative Defense**

At all times during the conduct of their corporate operations, the agents, servants and/or employees of Defendant complied with all applicable law, governmental and industry rules, regulations, standards, and specifications, as well as the available knowledge and technology of the medical, scientific and industrial communities.

**Fortieth Affirmative Defense**

Defendant has fully complied with all applicable governmental laws and regulations with regard to labeling and publishing cautionary instructions with respect to its products with the result that Defendant has breached no duty, if any duty ever existed, to warn and thus there can be no recovery against Defendant.

**Forty-First Affirmative Defense**

Defendant denies that any talcum powder product it manufactured and/or sold was defectively designed because the manufacturing specifications for Defendant's talcum powder products did not include asbestos.

**Forty-Second Affirmative Defense**

Plaintiff's claim that Defendant's products were capable of releasing asbestos fibers into the air is inconsistent with the science and must be considered speculative as a matter of law.

**Forty-Third Affirmative Defense**

Defendant specifically pleads the "state-of-the-art" defense to each and every allegation of the Plaintiff. Defendant denies any defects in its products and avers that at all pertinent times, its products were reasonably fit and suited for the purpose for which they were manufactured and intended and were delivered with such advises as were consistent with the state of the existing medical and industrial art. At all relevant times, Defendant was in compliance with the "state of the art" and could not, and did not, foresee the risks, injuries, or damages alleged by Plaintiff in this action.

**Forty-Fourth Affirmative Defense**

Defendant denies that it designed, manufactured, sold, or otherwise placed into the stream of commerce any talc products or materials which could have caused Plaintiff to be exposed to asbestos. Nonetheless, insofar as the Petition may be construed to allege claims against Defendant, any exposure of Plaintiff to talc products or materials for which Defendant is alleged to be liable was so minimal as to be insufficient to establish a reasonable degree of certainty or probability that the injuries and damages complained of resulted from any exposure to, or defects from, said talc products or materials.

**Forty-Fifth Affirmative Defense**

In the event it should be proven at the time of trial that all the defendants are subject to market share liability, then Defendant's share of such liability would be of such a *de minimus* amount as to make its contribution for damages negligible, and Defendant would be entitled to contribution, either in whole or in part, from the co-defendants not represented by this answer.

**Forty-Sixth Affirmative Defense**

The claims against Defendant are barred because any alleged exposure to any alleged product of Defendant was without sufficient frequency, regularity, and/or proximity.

**Forty-Seventh Affirmative Defense**

To the extent Plaintiff asserts any claim against Defendant as a seller of a product, Defendant had no knowledge of any defect in any product and could not have discovered any alleged defect in such product while exercising ordinary care.

**Forty-Eighth Affirmative Defense**

The claims against Defendant are barred, in whole or in part, because the injuries and damages allegedly sustained by Plaintiff were not proximately caused by any alleged product or conduct of Defendant, nor did any product or conduct of Defendant contribute to such alleged injuries and damages.

**Forty-Ninth Affirmative Defense**

The claims against Defendant are barred, in whole or in part, because, if it is judicially determined that the injuries and damages alleged in the Petition were caused by any alleged product or conduct of Defendant, which is denied, those alleged injuries and damages were caused by Plaintiff's idiosyncratic reaction to such product.

**Fiftieth Affirmative Defense**

The claims against Defendant are barred because, if Plaintiff sustained any alleged injuries and damages, which is denied, those alleged injuries and damages resulted from unrelated medical or genetic causes, not from any product or conduct of Defendant.

**Fifty-First Affirmative Defense**

The claims against Defendant are barred, in whole or in part, to the extent the federal government has preempted the field of law applicable to products alleged to have caused Plaintiff's injuries and damages. The granting of the relief demanded in the Petition would impede, impair, frustrate, and burden the effectiveness of federal law regulating such field of law in violation of the Supremacy Clause of the U.S. Constitution. Specifically, each and every claim against Defendant is preempted, in whole or in part, by the Federal Food, Drug & Cosmetics Act ("FFDA"), 21 U.S.C. §§ 301-399(a)(2009); in that the Food and Drug Administration ("FDA") has primary and exclusive jurisdiction over the safety of cosmetic talc containing products and primary and exclusive jurisdiction to determine whether any warning must accompany cosmetic talc containing products. The FDA has ruled, on multiple occasions,

the cosmetic grade talc is a safe substance when used as intended and further ruled that manufacturers need not provide any warnings on, or in connection with the sale of, cosmetic grade talc-containing products. Accordingly, each and every count of the Petition, to the extent that it pertains to Defendant's manufacture and/or sale of cosmetic grade talc containing products, is subject to the FDA's primary jurisdiction. Consequently, each and every count, to the extent that it pertains to Defendant, should be dismissed or stayed pending FDA review of whether cosmetic talc is generally recognized as safe and whether any warning must accompany, or other restrictions be placed on the manufacture and sale of cosmetic talc containing products.

**Fifty-Second Affirmative Defense**

Each and every count of the Petition, to the extent that it pertains to Defendant's manufacture and/or sale of cosmetic grade talc containing products is an unauthorized and improper attempt to enforce privately a claim under FFDCA, 21 U.S.C. §§ 301-309(a)(2009).

**Fifty-Third Affirmative Defense**

Defendant neither gave, made, nor otherwise extended any warranties, whether express or implied, upon which Plaintiff had a right to rely. Any claim against Defendant for alleged breach of warranty is barred because of the failure to set forth the language of any express warranty that allegedly was extended and breached, nor was a copy of any such alleged express warranty attached to the Petition.

**Fifty-Fourth Affirmative Defense**

Any oral warranties upon which Plaintiff allegedly relied are inadmissible and unavailable because of the provisions of the applicable Statute of Frauds.

**Fifty-Fifth Affirmative Defense**

As to all the causes of action pleaded in the Petition which may be based upon express or implied warranties and/or representations, such causes of action are legally insufficient, as against Defendant, by reason of Plaintiff's failure to allege privity of contract between the Plaintiff and Defendant, which is specifically denied.

**Fifty-Sixth Affirmative Defense**

In the event that any breach of express or implied warranty is proven, any such claim against Defendant is barred, in whole or in part, to the extent Defendant was provided with

neither proper nor prompt notice of any such breach nor an opportunity to cure any alleged defect and/or breach of warranty.

**Fifty-Seventh Affirmative Defense**

Plaintiff did not directly or indirectly purchase any asbestos-containing products from Defendant, and Plaintiff neither received nor relied upon any warranty or representation that may be alleged to have been made by Defendant.

**Fifty-Eighth Affirmative Defense**

To the extent to which the causes of action pleaded by Plaintiff fail to accord with the Uniform Commercial Code, including, but not limited to § 2-725 thereof, the Petition is time-barred.

**Fifty-Ninth Affirmative Defense**

The warranty-based claims against Defendant are barred or limited by applicable conditions, disclaimers, and/or lack of privity.

**Sixtieth Affirmative Defense**

The claims against Defendant are barred or limited by the Restatement (Second) and Restatement (Third) of Torts, and all rights, presumptions, and defenses available to Defendant pursuant thereto.

**Sixty-First Affirmative Defense**

The claims against Defendant are barred from by the doctrines of comparative negligence, contributory negligence, comparative responsibility, and/or comparative causation.

**Sixty-Second Affirmative Defense**

Defendant denies that it designed, manufactured, sold, or otherwise placed into the stream of commerce any talc products or materials which could have caused Plaintiff to be exposed to asbestos. Nonetheless, insofar as the Petition may be construed to allege product liability claims against Defendant on a theory of strict liability, the Plaintiff has no claim based upon allegations of strict liability arising from any alleged exposure to asbestos dust from any product containing asbestos prior to June 6, 1967, because no cause of action existed in Louisiana based upon strict liability in tort for exposure to a product, since the Supreme Court of Louisiana in *McKisson vs. Sales Affiliates, Inc.*, 416 S.W.2d 787, held that prior to 1967, it had

refused to extend "strict liability" to any manufacturer other than the manufacturers and packagers of food products for human consumption, and the rule of 402A was adopted for the first time in June, 1967. The Supreme Court of Louisiana would not apply the rule of strict liability retroactively to cover exposures prior to June, 1967; therefore, the Defendant pleads that no recovery can be had upon the theory of strict liability for exposures, if any, prior to June 6, 1967. Further, the application of strict liability on a retroactive basis would be violative of Article I, § 16, of the Louisiana Constitution.

**Sixty-Third Affirmative Defense**

Defendant alleges that Plaintiff's damages, if any, were caused by negligent acts or omissions or breach of warranty of third parties or other Defendants and/or exposure to certain products manufactured or distributed by said third parties or Defendants, and, under the Supreme Court of Louisiana opinion in *Duncan v. Cessna Aircraft Company II*, the Defendant is entitled to a comparative apportionment of fault, if any, as to the other Defendants and Cross-Defendants and/or third parties and is entitled to a judgment against them herein for contribution and/or indemnity or a percentage reduction in accordance with the apportionment of fault.

**Sixty-Fourth Affirmative Defense**

Defendant alleges, in the alternative, that the Plaintiff's claim of injury and damage, if any, was the result of an unavoidable accident or occurrence. Defendant alleges that any alleged defects in its product, if any, were beyond the scientific and medical knowledge available at the time of manufacturing, and the state-of-the-art prevented the Defendant from knowing any defect.

**Sixty-Fifth Affirmative Defense**

Plaintiff's claims for exemplary or punitive damages against Defendant violate Defendant's rights under Article 1, §§ 1, 10, and 19, as well as the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution, the Constitution of the State of Louisiana, and any other state's law that might apply, in that such damages deprive Defendant of procedural and substantive Due Process; subject Defendant to Double Jeopardy; deprive Defendant of Equal Protection; give the jury unfettered discretion to award punitive damages on vague grounds with

no objective standards, without the presumption of innocence, and improperly allows for joint and several liability resulting in different penalties for the same or similar acts.

**Sixty-Sixth Affirmative Defense**

To the extent Plaintiff's Petition asserts a demand for punitive damages, Defendant specifically incorporates by reference any and all standards of limitations regarding the determination and/or enforceability of punitive damage awards that arose in the decisions of *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1966); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

**Sixty-Seventh Affirmative Defense**

Any award for punitive damages in this action based on anything other than Defendant's conduct in connection with the distribution of the product that is subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution and Louisiana Constitution, and would be improper under the common law and public policies of the State of Louisiana because any other judgment for punitive damages in this case cannot protect Defendant against impermissible multiple punishment for the same wrong.

**Sixty-Eighth Affirmative Defense**

The Petition on its face shows a misjoinder of parties. Additionally, Plaintiff has failed to join proper, necessary, and indispensable parties to this action, some of whom cannot be made parties, including but not limited to: Amatex Corp., Aanco Holdings Inc., AC and S, Inc., American Shipbuilding, A.P.Green Services, Armstrong World Industries, The Artra Group including The Synkoloid Company, Asbestec Industries Inc., Asbestospray Corp., Asbestos Claims Management, Atlas Corp., Babcock & Wilcox, Baldwin Ehret Hill, Beadex Manufacturing Company Inc., Bethlehem Steel, Brunswick Fabrications, Inc., Burns & Roe Enterprises, Cassiar Mines, Combustion Engineering, Delaware Insulations, Eagle-Picher Industries, Eastco Industrial Safety Corp., E. J. Bartells, Federal-Mogul, Forty-Eight Insulations, Fuller-Austin Insulation, G-I Holdings (GAF), Gatke Corp., Hamilton Materials Inc., Harbison-Walker, Hillsborough Holdings, H.K. Porter Co., Johns Manville, Kaiser Aluminum & Chemical, Keene Corp., Kentile Floors, Lykes Brothers Steamship, M.H. Detrick, National

Gypsum Co., Nicolet/Keasby-Mattison, North American Refractories Company, North American Asbestos Corp., Owens Corning, Pacor, Plibrico Co., Pittsburgh Corning, Porter Hayden, Prudential Lines, Raybestos-Manhattan, Raymark Industries, Raytech Industries Corp., Rock Wool Manufacturing, Rutland Fire & Clay Co., Skinner Engine Company, SGL Carbon, Shook & Fletcher, Standard Asbestos Manufacturing and Insulation, Standard Insulations, Todd Shipyards, Unarco Industries Inc., United States Gypsum Corp., United States Mineral Co., United States Lines, UNR Industries Corp., U.S. Steel, Walter Industries, Washington Group International, and W.R. Grace & Co., Flintkote, Garlock Sealing Technologies, Bondex International, Inc., as well as the various manufacturers and sellers of the cigarettes and other tobacco products consumed or used by or around Plaintiff.

**Sixty-Ninth Affirmative Defense**

Defendant avers that as a result of the provisions of certain statutes including 11 U.S.C. Section 362(a), plaintiffs are prohibited from proceeding against certain parties liable for the damages and injuries complained of and Defendant reserves its right to so proceed.

**Seventieth Affirmative Defense**

Plaintiff contributed to her illness by the use, either in whole or in part, of other substances, products, medications and/or drugs.

**Seventy-First Affirmative Defense**

The claims against Defendant are barred, in whole or in part, by Plaintiff's failure to take reasonable action to mitigate the injuries and/or damages alleged in the Petition.

**Seventy-Second Affirmative Defense**

The claims against Defendant are barred, in whole or in part, by the doctrine of assumption of the risk if it should be determined that Plaintiff knowingly and voluntarily assumed the risks associated with the use of the products at issue.

**Seventy-Third Affirmative Defense**

The claims against Defendant are barred, in whole or in part, because, if it is judicially determined that the injuries and damages allegedly sustained by Plaintiff resulted from any alleged product of Defendant, which is denied, the alleged injuries and damages were caused, in

whole or in part, by the abuse, misuse, and/or alteration of said product, and/or the failure to use said product in accordance with provided warnings or instructions.

**Seventy-Fourth Affirmative Defense**

The claims against Defendant are barred, in whole or in part, because, if it is judicially determined that the injuries and damages allegedly sustained by Plaintiff resulted from any alleged product of Defendant, which is denied, such product was not defective or unreasonably dangerous at the time of sale, and/or was made defective or unreasonably dangerous by subsequent unforeseeable alterations, changes, improper maintenance, or misuse by others, and such subsequent unforeseeable alterations, changes, improper maintenance, or misuse acts as a bar to Plaintiff's claims.

**Seventy-Fifth Affirmative Defense**

To the extent shown by the evidence, Defendant raises the affirmative defenses of modification, alteration, and abuse of the product.

**Seventy-Sixth Affirmative Defense**

Defendant denies any and all liability to the extent that Plaintiff asserts this Defendant's alleged liability as a successor, successor in business, successor in product line, assignee, predecessor, predecessor in business, predecessor in product line, parent, alter ego, subsidiary, or other derivative status as a theory of liability.

**Seventy-Seventh Affirmative Defense**

In the further alternative, Defendant avers that the injuries allegedly sustained by Plaintiff, which are denied, occurred as the result of pre-existing medical conditions, causes or injuries which are completely unrelated to the incidents alleged by Plaintiff and the existence of these pre-existing or other medical conditions, causes or injuries bar and/or mitigate the recovery of Plaintiff.

**Seventy-Eighth Affirmative Defense**

To the extent that Plaintiff has released, settled, entered into an accord or satisfaction, or otherwise compromised the claims against Defendant in this action, such claims are barred or reduced by payment, accord, satisfaction, arbitration and award, release, and *res judicata*.

**Seventy-Ninth Affirmative Defense**

Defendant is entitled to a set-off from any and all recovery against it to the extent Plaintiff has received any benefits paid or payable to or on behalf of Plaintiff from any collateral sources.

**Eightieth Affirmative Defense**

If it is proven at the time of trial that Defendant is liable for damages, if any, to Plaintiff, and said liability is not sole but rather joint and several, Defendant is entitled to assignment of Plaintiff's bankruptcy trust claims to the extent such claims have not been asserted by Plaintiff. To the extent such bankruptcy trust claims have been asserted, Defendant is entitled to a set off for the amount of any such claim Defendant asserts its right to any set-off allowed under law.

**Eighty-First Affirmative Defense**

All defenses which have been or will be asserted by other defendants in this action are adopted and incorporated by reference as if fully set forth at length herein as defenses to the Petition to the extent same are applicable and consistent with positions taken by Defendant in this answer and are not adverse to Defendant.

**Eighty-Second Affirmative Defense**

Defendant affirmatively avers the affirmative defenses of La. R. S. 9:2800.51 et seq., the Louisiana Products Liability Act.

**Eighty-Third Affirmative Defense**

Plaintiff's employers were responsible for his safety. These employers were knowledgeable and sophisticated users and/or purchasers of asbestos-containing products. A manufacturer or distributor of a product has no duty to warn a sophisticated user and/or purchaser of a danger in its products of which the user/purchaser knows or should have known.

**Eighty-Fourth Affirmative Defense**

Any loss of consortium claim alleged is contrary to Louisiana law. *See Landry v. Avondale Industries, Inc.*, 2003- 0719 (La. 12/3/03), 864 So.2d 117 (reh'g. den.).

**Eighty-Fifth Affirmative Defense**

Defendant will rely upon any and all other further defenses which become available or appear during discovery proceedings in this action and hereby specifically reserves the right to

amend its answer for the purposes of asserting any such additional affirmative defenses as well as the right to add counterclaims, cross-claims, or to institute third-party actions which discovery hereafter may reveal to be appropriate.

**WHEREFORE,** Defendant Coty Inc. having responded to the Petition, requests that the Petition be dismissed, judgment be entered in its favor against Plaintiff, with costs assessed against Plaintiff.

**DEMAND FOR A JURY TRIAL**

Defendant Coty Inc. hereby demands a jury trial on all issues raised or potentially raised by the pleadings as such or as may be amended.

Respectfully submitted, this the 18th day of June 2020.

Respectfully submitted:

**COSMICH SIMMONS & BROWN, PLLC**

FORREST REN WILKES (LSBA No. 22897)
JASON K. ELAM (LSBA No. 34533)
650 Poydras Street, Suite 2215
New Orleans, Louisiana 70130
Telephone: (504) 262-0040
Facsimile: (504) 262-0041
Email: ren@cs-law.com

AND

**COSMICH SIMMONS & BROWN, PLLC**
Clint Hagaman
100 East River Center Blvd. Suite 480
Covington, KY 41011
Telephone: (859) 878-2502
Facsimile: (859) 261-0848
Email: clint@cs-law.com

***Attorneys for Coty Inc.***

**CERTIFICATE OF SERVICE**

I do hereby certify that I have served a copy of the foregoing pleading to all known counsel of record via United States mail, postage prepaid, facsimile transmission and/or electronic mail on this 18th day of June 2020.

FORREST REN WILKES

FILED
JUN 18 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION 16** **DIVISION "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:** ____________________ ____________________
**DEPUTY CLERK**

**REQUEST FOR NOTICE**

**NOW INTO COURT**, through undersigned counsel, comes defendant, Defendant, Coty Inc. (hereinafter referred to as "Coty" or "Defendant"), which pursuant to Louisiana Code of Civil Procedure article 1572, moves this Court for written notice ten (10) days in advance of the date fixed for the trial or hearing on any Exception, Motion, Rule, or Trial on the Merits in the captioned proceeding, and pursuant to Louisiana Code of Civil Procedure articles 1913 and 1914, requests immediate notice of all Interlocutory and Final Orders and Judgments on any Exception, Motion, Rule or the Trial on the Merits in the captioned proceeding.

Respectfully submitted,

**COSMICH SIMMONS & BROWN, PLLC**

FORREST REN WILKES (LSBA No. 22897)
JASON K. ELAM (LSBA No. 34533)
650 Poydras Street, Suite 2215
New Orleans, Louisiana 70130
Telephone: (504) 262-0040
Facsimile: (504) 262-0041
ren@cs-law.com
jason.elam@cs-law.com
la-asbestos@cs-law.com

AND

**COSMICH SIMMONS & BROWN, PLLC**
Clint Hagaman
100 East River Center Blvd. Suite 480
Covington, KY 41011
Telephone: (859) 878-2502
Facsimile: (859) 261-0848
clint@cs-law.com

*Attorneys for Coty Inc.*

VERIFIED

FILED
JUN 18 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**CERTIFICATE OF SERVICE**

I hereby certify that I have delivered a copy of the foregoing pleading to all counsel of record, via United States Mail, postage prepaid, and/or facsimile and/or electronic mail, this 18th day of June 2020.

FORREST REN WILKES

FILED BY
OPUS LEGALIS, LLC

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION " A "

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ____________________ ____________________
DEPUTY CLERK

**MOTION AND ORDER TO ENROLL CO-COUNSEL OF RECORD *PRO HAC VICE* FOR THE PLAINTIFF**

ON MOTION of Plaintiff, by and through undersigned counsel, and on suggesting to the Court that Plaintiff desires to enroll as co-counsel of record for Plaintiff in the captioned matter, MARK JOSEPH BUHA of DEAN OMAR BRANHAM SHIRLEY, LLP a member of the Illinois Bar and in good standing as demonstrated by the certificate attached as Exhibit "A", a member of the Missouri State Bar, and in good standing as demonstrated by the certificate attached as Exhibit "B", and a member of the California Bar, and in good standing as demonstrated by the certificate attached as Exhibit "C", an Application for *Pro Hac Vice* Admission in Louisiana for MARK JOSEPH BUHA as Exhibit "D", and a Letter of Approval from the Louisiana Disciplinary Board, as Exhibit "E".

Considering the foregoing, IT IS ORDERED that MARK JOSEPH BUHA is hereby enrolled as co-counsel of record for Plaintiff in the captioned matter and the Clerk of Court shall so indicate same on the pertinent court records. JUN 2 5 2020

New Orleans, Louisiana this the ____ day of ________, 2020.

APPROVED

____________________
DIVISION "A"

____________________
JUDGE

(Sgd.) Nakisha Ervin-Knott
Judge - Division "D"

VERIFIED
6/23/2020

Respectfully submitted,

**LANDRY & SWARR, L.L.C.**

MICKEY P. LANDRY, Bar No. 22817
FRANK J. SWARR, Bar No. 23322
PHILIP C. HOFFMAN, Bar No. 32277
MATTHEW C. CLARK, Bar No. 31102
1100 Poydras Street, Suite 2000
New Orleans, Louisiana 70163
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

~and~

MARK JOSEPH BUHA
JESSICA M. DEAN
CHARLES W. BRANHAM, III
DEAN, OMAR BRANHAM SHIRLEY LLP
302 N. Market Street, Suite 300
Dallas, Texas 75202

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon opposing counsel via one or more of the following methods, in accordance with the LOUISIANA CODE OF CIVIL PROCEDURE: by depositing same in the U. S. Mail, properly addressed and postage prepaid, by Certified Mail, electronic mail and/or facsimile transmission this the 23rd day of June, 2020.

PHILIP C. HOFFMAN

VERIFIED

FILED

CIVIL

# Certificate of Admission
# To the Bar of Illinois

I, Carolyn Taft Grosboll, Clerk of the Supreme Court of Illinois, do hereby certify that

Mark Joseph Buha

has been duly licensed and admitted to practice as an Attorney and Counselor at Law within this State; has duly taken the required oath to support the CONSTITUTION OF THE UNITED STATES and of the STATE OF ILLINOIS, and also the oath of office prescribed by law, that said name was entered upon the Roll of Attorneys and Counselors in my office on 05/10/2012 and is in good standing, so far as the records of this office disclose.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of said Court, this 29th day of April, 2020.

Carolyn Taft Grosboll

Clerk,
Supreme Court of the State of Illinois

VERIFIED

PLAINTIFF'S EXHIBIT A

FILED

CIVIL DISTRICT COURT

# *The Supreme Court of Missouri*

MDCCCXX

## *Certificate of Admission as an Attorney at Law*

I, Betsy AuBuchon, Clerk of the Supreme Court of Missouri, do hereby certify that the records of this office show that on 9/14/2011,

*Mark Joseph Buha*

was duly admitted and licensed to practice as an Attorney and Counselor at Law in the Supreme Court of Missouri and all courts of record in this state, and is, on the date indicated below, a member in good standing of this Bar.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of the Supreme Court of Missouri at my office in Jefferson City, Missouri, this 20th day of April, 2020.

Betsy AuBuchon

Clerk of the Supreme Court of Missouri

VERIFIED

PLAINTIFF'S EXHIBIT B

tabbies

The State Bar of California

OFFICE OF ATTORNEY REGULATION & CONSUMER RESOURCES

180 Howard Street, San Francisco, CA 94105 888-800-3400 AttorneyRegulation@calbar.ca.gov

FILED

CIVIL DISTRICT COURT

# CERTIFICATE OF STANDING

April 12, 2020

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, MARK JOSEPH BUHA, #307103 was admitted to the practice of law in this state by the Supreme Court of California on December 4, 2015 and has been since that date, and is at date hereof, an ACTIVE licensee of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Denise Velasco
Custodian of Records

VERIFIED

PLAINTIFF'S EXHIBIT C

FILED

CIVIL DISTRICT COURT

# APPLICATION FOR *PRO HAC VICE* ADMISSION IN LOUISIANA[1]

1. Full name of Applicant: Mark Joseph Buha

2. Full name, address and telephone number of law firm in which the applicant practices:

   DEAN OMAR BRANHAM SHIRLEY LLP

   302 N. Market Street, Suite 300

   Dallas, Texas. 75202. Telephone: 214-722-5990 Facsimile: 214-722-5991

3. Applicant's residence address and telephone number:

   1777 N. Record Street #4506

   Dallas, Texas 75202.

4. Name of case in which admission is sought: Lynne L. Roy v. Colgate Palmolive Company, et al.

5. Court or agency and docket number of case: Civil District Court for the Parish of Orleans State of Louisiana; No. 2020-02718; DIV/SEC: "A-16"

6. Name, address and phone number of each client sought be to represented:

   Lynne Ann Roy

   1 Esplanade Avenue

   Metairie, LA. 70005

   Telephone: 504-220-8006

---

1 If the spaces are not sufficient to allow for complete responses, please append any additional responses to this Application.

VERIFIED

PLAINTIFF'S EXHIBIT D

7. Please list every court before which you have been admitted to practice (excluding *pro hac vice* admissions); the respective period(s) of admission and your bar roll or other identifying number before the courts:

California – December 2015 SBN 307103

Illinois – May 2012 – SBN 6307691

Missouri – September 2011 – SBN63737

8. Please check the appropriate box indicating whether you:

(a) have been denied admission *pro hac vice* in this state
9 yes 9 no **XX**

(b) had admission *pro hac vice* revoked in this state
9 yes 9 no **XX**

(c) have otherwise formally been disciplined or sanctioned by any court in this state
9 yes 9 no. **XX**

If you answered affirmatively to these questions, please specify:

The nature of the allegations: N/A

The name of the authority bringing such proceedings: N/A

The caption of the proceedings: N/A

The date filed: N/A

What findings were made: N/A

What action was taken in connection with those proceedings: N/A

9. Have you ever been publicly disciplined by any lawyer disciplinary committee, state or federal court, or lawyer disciplinary agency in any other jurisdiction?
9 yes 9 no. **XX**

If you answered affirmatively, as to each such discipline, please provide the following:

A summary of the allegations against you: N/A

The name of the state or federal authority bringing such proceedings: N/A

The date the discipline was imposed: N/A

The style of the proceedings: N/A

The findings made and discipline imposed in connection with the proceedings: N/A

(A copy of any public Order of lawyer discipline imposed against the applicant shall be appended to this Application)

10. Please state whether you have been held formally in contempt or otherwise sanctioned by any court in a written order in the last five (5) years.
9 yes 9 no. **XX**

If you answered affirmatively, as to each occurrence, please provide the following:

The nature of the allegations: N/A

The name of the court before which such proceedings were conducted: N/A

The date of the contempt order or sanction: N/A

The caption of the proceedings: N/A

The substance of the court's rulings (a copy of the written order or transcript of the oral rulings shall be attached to this Application): N/A

11. Please state whether you have been convicted of any crimes (other than minor, non-alcohol related traffic violation

9 yes 9 no. **XX**

If you answered affirmatively, as to each occasion, please provide the following:

The substance of the criminal charge(s) N/A

The name of the court before which the proceeding was conducted: N/A

The approximate date the proceeding was concluded: N/A

The outcome of the proceeding: N/A

(A copy of any such Judgment or Order of Conviction shall be appended to this Application.)

12. Are there any criminal charges (other than minor, non-alcohol related traffic violations) or lawyer disciplinary complaints or proceedings presently pending against you?

9 yes 9 no. **XX**

If you answered affirmatively, as to each such pending criminal charge or lawyer disciplinary complaint or proceeding, please provide the following:

The name and address of the court or agency before which the criminal proceeding or lawyer disciplinary complaint or proceeding is pending: N/A

The substance and nature of any criminal charge or lawyer disciplinary complaint or proceeding pending against you: N/A

(A copy of any pending lawyer discipline complaint(s) or proceeding(s), or criminal charge(s), shall be appended to this Application.)

13. Please state the name and address of each court or agency and a full identification of each

proceeding in which the applicant has moved a Louisiana Court or agency, and/or filed an application to appear p[illegible]ac vice, or appeared *pro hac vice*, in th[illegible]ate within the preceding two years; the date of each application; and the outcome of the application.

**None.**

14. Please list the name, address, telephone number and bar number of an active member in good standing of the bar of this state who will sponsor your *pro hac vice* request. The bar member preferably will be the attorney of record for the client(s) you seek to represent.

Mickey P. Landry — Name

#22817 — Bar number

Landry & Swarr, LLC
1100 Poydras Street, Suite 2000
New Orleans, LA 70163 — Address

504-299-1214 — Telephone number

15. Please list your prior or continuing representation in other matters of one or more of the clients you propose to represent and any relationship between such other matter(s) and the proceeding for which you seek admission.

None.

16. Please list any special experience, expertise, or other factor deemed to make it particularly desirable that you be permitted to represent the client(s) you propose to represent.

My firm is dedicated to representing clients like Mrs. Roy, who has mesothelioma, an asbestos related disease.

17. ~~Please attach to this application a current (issued within 90 days) certificate of good~~ standing from every state you are presently licensed to practice in.

VERIFICATION

Our signatures serve as verification that (1) the information contained in this application is true and correct, to the best of our information and belief; (2) the application fee required by Louisiana's *pro hac vice* admission rule been remitted to the Louisiana Attorney Disciplinary Board (unless an exemption is applicable); (3) the out-of-state attorney is "temporarily present in this state" pursuant to R.S. 37:214; (4) in the event this application is approved, all documents requiring the signature of counsel for a party may not be signed solely by the out-of- state attorney, but also must bear the signature of the Louisiana associated counsel; (5) this application has been or will be served upon all parties and upon the Louisiana Attorney Disciplinary Board; and (6) we are familiar with the Louisiana Rules of Professional Conduct, the rules of discipline of the Louisiana Attorney Disciplinary Board, and the local rules and court procedures of the court or agency before which the applicant is seeking to practice.

Dean Omar Branham Shirley LLP

302 N. Market Street, Suite 300

Dallas, Texas. 75202/Telephone: 214-722-5990

Business Address and Phone Number of Applicant

Mark Joseph Buha

Full Name of Applicant

Signature of Applicant

LANDRY & SWARR, LLC
1100 Poydras Street, Suite 2000
New Orleans, LA. 70163
T: 504-299-1214

Business Address, Phone Number, and Bar Roll Number of Louisiana Associated Attorney

Mickey P. Landry – SBN 22817

Full Name of Louisiana Associated Attorney

Signature of Louisiana Associated Attorney

Attachments: Certificate(s) of Good Standing, LADB fee, draft M/Enroll PHV

# LOUISIANA ATTORNEY DISCIPLINARY BOARD

FILED

OFFICE OF THE DISCIPLINARY COUNSEL
?00 S. Sherwood Forest Blvd.
Suite 607
Baton Rouge, Louisiana 70816
(225) 293-3900 • 1-800-326-8022 • FAX (225) 293-3300

CIVIL

June 18, 2020

Mark Joseph Buha, Esq.
Dean, Omar, Branham & Shirley, LLP
302 N. Market Street – Suite 300
Dallas, TX 75202

Re: 20-PHV-227
Lynne L. Roy
vs. Colgate Palmolive Company, et al
Docket # 2020-02718 – Div A

Dear Mr. Buha:

The Louisiana Office of Disciplinary Counsel has received your application for *pro hac vice* admission in the State of Louisiana in connection with the matter of *Lynne L. Roy vs. Colgate Palmolive Company, et al* pending before the *Civil District Court* in *Orleans Parish.* A review of your application indicates that you are supported by your sponsoring attorney *Mickey Patrick Landry,* who is currently licensed and in good standing with the Louisiana State Bar. In all respects it appears that your application is in appropriate format. The Office of Disciplinary Counsel currently possesses no information upon which to base an opposition to your application.

By copy of this correspondence to the presiding District Court Judge and your sponsoring attorney, we are advising them of our approval of your application.

Very truly yours,

CHARLES B. PLATTSMIER
Chief Disciplinary Counsel

CBP/pab
cc: Honorable Helen Hazeur
Mickey Patrick Landry, Esq.

VERIFIED

PLAINTIFF'S EXHIBIT E

FILED
2020 JUL 02 A 11:51
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**
**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION 15** **DIVISION "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

---

**REQUEST FOR NOTICE**

---

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Colgate-Palmolive Company (hereinafter "Colgate") for the limited purpose of requesting written notice, with a full reservation of rights, including, but not limited to, the right to object to the jurisdiction of the Honorable Court, hereby makes the following Request for Notice:

Pursuant to La. C.C.P. Art. 1572, Colgate requests written notice ten (10) days in advance of the date fixed for trial or hearing of any exceptions, motions and rules on the merits of the above-captioned matter and any other suit which has been or may hereafter be consolidated with said suit.

Pursuant to La. C.C.P. Arts. 1913 and 1914, Colgate requests notice of all interlocutory orders, final orders, and judgments on any exceptions, motions or rules on the merits of the above-captioned suit and any other suit which has been or may hereafter be consolidated with said suit.

**WHEREFORE,** Defendant Colgate-Palmolive Company, prays that it be provided the above notices.

[Signature Block on Following Page]

VERIFIED
Yanley Salazar
2020 JUL 02 A 11:53



E-Filed

FILED
2020 JUL 02 A 11:51
CIVIL
DISTRICT COURT

Respectfully submitted,

**MG+M LAW FIRM**

Jeanette S. Riggins (LSBA No. 27056)
Glenn L.M. Swetman (LSBA No. 21904)
B. Adam Hays (LSBA No. 30255)
Meghan B. Senter (LSBA No. 34088)
Erika M. Cunningham (LSBA No. 31890)
Natasha A. Corb (LSBA No. 35720)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax: (504) 535-2886
Email: TalcLitLA@mgmlaw.com
Web: www.mgmlaw.com

**ATTORNEYS FOR COLGATE-PALMOLIVE COMPANY**

## CERTIFICATE OF SERVICE

I do hereby certify that I have this date delivered, via mail, and/or fax and/or email, a true and correct copy of the foregoing document to counsel for Plaintiffs and to all known counsel of record.

SO CERTIFIED, this the 2nd day of July, 2020.

Erika M. Cunningham



E-Filed

FILED
2020 JUL 06 A 10:25
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

## REQUEST FOR NOTICE

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Chanel, Inc. (hereinafter "Chanel") for the limited purpose of requesting written notice, with a full reservation of rights, including, but not limited to, the right to object to the jurisdiction of the Honorable Court, hereby makes the following Request for Notice:

Pursuant to La. C.C.P. Art. 1572, Chanel requests written notice ten (10) days in advance of the date fixed for trial or hearing of any exceptions, motions and rules on the merits of the above-captioned matter and any other suit which has been or may hereafter be consolidated with said suit.

Pursuant to La. C.C.P. Arts. 1913 and 1914, Chanel requests notice of all interlocutory orders, final orders, and judgments on any exceptions, motions or rules on the merits of the above-captioned suit and any other suit which has been or may hereafter be consolidated with said suit.

**WHEREFORE,** Defendant Chanel, Inc., prays that it be provided the above notices.

[Signature Block on Following Page]



E-Filed

VERIFIED
Amber Sheeler
2020 JUL 06 P 12:54

FILED
2020 JUL 06 A 10:25
CIVIL
DISTRICT COURT

Respectfully submitted,

MG+M LAW FIRM

Christopher O. Massenburg (LSBA No. 26989)
Amanda L. Deto (LSBA No. 38190)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax: (504) 535-2886
Email: TalcLitLA@mgmlaw.com
Web: www.mgmlaw.com

**ATTORNEYS FOR CHANEL, INC.**

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this date delivered, via mail, and/or fax and/or email, a true and correct copy of the foregoing document to counsel for Plaintiffs and to all known counsel of record.

SO CERTIFIED, this the 3rd day of July, 2020.

AMANDA L. DETO



E-Filed

FILED
2020 JUL 10 A 09:04
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:__________________

__________________
DEPUTY CLERK

## JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S FIRST MOTION FOR EXTENSION OF TIME

**NOW INTO COURT,** through undersigned counsel, come Defendants, Johnson & Johnson and Johnson & Johnson Consumer Inc., which appear solely for the purposes of an extension of time and reserving all objections, exceptions, and defenses, and upon suggesting to the Court that the above captioned matter has just been referred to undersigned counsel, that additional time will be necessary within which to file responsive pleadings. Mover respectfully shows that this is the first request for extension of time to plead.

**WHEREFORE,** defendants respectfully pray that the Court allow an additional thirty (30) days from the signing of the Order within which to file responsive pleadings.

Respectfully Submitted:

IRWIN FRITCHIE URQUHART & MOORE LLC

________________________
KIM E. MOORE (La. Bar No. 18653)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
CARLOS A. BENACH (La. Bar No. 36797)
GABRIEL J. WINSBERG (Bar No. 38943)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

RECEIVED
DIVISION "A"

VERIFIED
7/23/2020

VERIFIED
Yanley Salazar
2020 JUL 10 P 02:31

FILED
2020 JUL 10 A 09:04
CIVIL
DISTRICT COURT

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of July, 2020, I served a copy of the foregoing pleading on counsel for all parties to this proceeding via e-mail, facsimile, and/or mailing same by United States mail, properly addressed, and first class postage paid



E-Filed

FILED
2020 JUL 10 A 09:04
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:________________ ________________
DEPUTY CLERK

**ORDER**

Considering the foregoing Motion for Extension of Time;

**IT IS ORDERED** that Defendants, Johnson & Johnson and Johnson & Johnson Consumer Inc., be allowed an additional thirty (30) days from the signing of this Order within which to file responsive pleadings.

New Orleans, Louisiana, this ________ day of JUL 14 2020, 2020.

Ellen M Hazeur
JUDGE

(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

VERIFIED
V. West
7/23/2020

00709931



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**COLGATE-PALMOLIVE COMPANY'S ANSWER, EXCEPTION AND AFFIRMATIVE DEFENSES IN RESPONSE TO PLAINTIFF'S PETITION FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes Defendant, Colgate-Palmolive Company (hereinafter "Colgate" or "Defendant"), which responds to Plaintiff's Petition for Damages (hereinafter "Petition") as follows.

**<u>EXCEPTION OF *LIS PENDENS*</u>**

1.

Colgate excepts to Plaintiff's Original Petition for Damages in order to preserve this exception based upon information, as yet undiscovered, that would reveal the Plaintiff has other suits pending against Colgate arising from the same alleged occurrences and injury.

2.

Colgate reserves the right to adopt any and all exceptions asserted by other defendants as though copied herein *in extenso*.

WHEREFORE, Colgate hereby preserves its right to except for *lis pendens* as additional facts are made known in discovery. Colgate does not request a hearing on its exception at this time.

3.

Colgate further responds to Plaintiff's Petition by denying each and every allegation therein contained, except as such as may be hereinafter expressly admitted or qualified.



VERIFIED
Amber Sheeler
2020 JUL 02 P 12:58

E-Filed

JUL 2 3 2020

VERIFIED JUL 2 3 2020
HERBERT SPURLOCK III
DEPUTY CLERK

RECEIVED
JUL 16 2020
DIVISION "A"

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

4.

Further answering the specific numbered paragraphs of Plaintiff's Petition, Colgate avers as follows:

ANSWER TO ORIGINAL PETITION FOR DAMAGES

INTRODUCTION

5.

The allegations contained in Paragraphs 1 and 2 of the Petition, including any and all subparts thereto, are denied as to this Defendant. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

PARTIES, JURISDICTION, AND VENUE

6.

The allegations contained in Paragraph 3 of the Petition, including any and all subparts thereto, are denied for lack of sufficient information to justify a belief therein.

7.

The allegations contained in Paragraph 4 of the Petition, including any and all subparts thereto, are denied except to admit that Colgate is a Delaware corporation. All remaining allegations are denied for lack of sufficient information to justify a belief therein.

8.

To the extent the allegations contained in Paragraph 5 of the Petition, including any and all subparts thereto, contain legal conclusions regarding venue and jurisdiction, they are denied for lack of sufficient information to justify a belief therein. Further, all allegations which attempt to place liability on this Defendant are denied. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff for any alleged damages.

9.

The allegations contained in Paragraphs 6 through 14 of the Petition relating to jurisdiction do not require a response from this Defendant. To the extent a response is deemed necessary, the allegations are denied for lack of sufficient information to justify a belief therein.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

10.

To the extent the allegations contained in Paragraph 15 of the Petition contain legal conclusions regarding venue and jurisdiction, they are denied for lack of sufficient information to justify a belief therein. Further, all allegations which attempt to place liability on this Defendant are denied. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff for any alleged damages.

11.

The allegations contained in Paragraph 16 of the Petition relating to jurisdiction do not require a response from this Defendant. To the extent a response is deemed necessary, the allegations are denied for lack of sufficient information to justify a belief therein.

**BACKGROUND**

12.

The allegations contained in Paragraph 17 of the Petition are denied as to this Defendant for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff for any alleged damages.

13.

The allegations contained in Paragraph 18 of the Petition are denied for lack of sufficient information to justify a belief therein.

14.

The allegations contained in Paragraphs 19 through 25 of the Petition are denied as to this Defendant. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**FACTS COMMON TO ALL COUNTS**

15.

In response to the allegations contained in Paragraph 26 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

16.

The allegations contained in Paragraph 27 of the Petition are denied as to this Defendant. To the extent these allegations directed to defendants other than Colgate, they are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

17.

The allegations contained in Paragraphs 28 through 30 of the Petition are denied as written. To the extent these allegations directed to defendants other than Colgate, they are denied for lack of sufficient information to justify a belief therein.

18.

The allegations contained in Paragraphs 31 through 32 of the Petition are denied. To the extent these allegations directed to defendants other than Colgate, they are denied for lack of sufficient information to justify a belief therein.

19.

The allegations contained in Paragraphs 33 through 35 of the Petition do not require a response from this Defendant. To the extent a response is deemed required, the allegations are denied for lack of sufficient information to justify a belief therein.

20.

The allegations contained in Paragraph 36 are denied. In further response to Paragraph 36 of the Petition, Colgate began manufacturing Cashmere Bouquet cosmetic talcum powder for sale in the United States at its plants as early as the early 1870s and continued manufacturing Cashmere Bouquet cosmetic talcum powder for sale in the United States until the mid-1980s. The Charles Mathieu, Inc. family of companies was the sole supplier of the talc used in Cashmere Bouquet cosmetic talcum powder from at least 1940 to 1979. The talc that Charles Mathieu, Inc. sold to Colgate was sourced from Societa Talco E Grafite Val Chisone, which mined the talc in the Pinerolo region of Italy. Additionally, Charles Mathieu, Inc. may have supplied Colgate with talc that Colgate used to produce Cashmere Bouquet cosmetic talcum powder in the United States from sources in Regal, North Carolina from 1968 to 1970 and from sources in Willow Creek, Montana



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

from 1970 to 1979. Mathieu and/or its assets were acquired by Cyprus Industrial Minerals Co. as early as 1979, and at the latest, by 1981. In or about 1979, Cyprus Industrial Minerals Co. began supplying Colgate with talc that Colgate used to produce Cashmere Bouquet cosmetic talcum powder in the United States. Cyprus Industrial Minerals Co. may have supplied talc from the Beaverhead mine in Montana, in addition to the same source in Italy used by Charles Mathieu, Inc. Colgate stopped manufacturing Cashmere Bouquet cosmetic talcum powder after the mid-1980s. Colgate sold Cashmere Bouquet cosmetic talcum powder in the United States until 1995. In 1995, Colgate licensed the Cashmere Bouquet cosmetic talcum powder product line to The Stephan Company. All remaining allegations in Paragraph 36 of the Petition are denied.

21.

The allegations contained in Paragraphs 37 and 38 of the Petition are denied. In further response, Colgate manufactured Cashmere Bouquet cosmetic talcum powder, which was formulated to contain nothing but cosmetic-grade talc and perfume as well as anti-caking and antibacterial agents. Cashmere Bouquet cosmetic talcum powder did not contain asbestos.

22.

The allegations contained in Paragraph 39 of the Petition are denied for lack of sufficient information to justify a belief therein.

23.

The allegations contained in Paragraph 40 of the Petition are denied for lack of sufficient information to justify a belief therein.

24.

The allegations contained in Paragraph 41 of the Petition are denied for lack of sufficient information to justify a belief therein.

25.

The allegations contained in Paragraphs 42 and 43 of the Petition are directed to defendants other than Colgate, and therefore no response is required from Colgate. To the extent a response is deemed required from Colgate, the allegations are denied for lack of sufficient information to justify a belief therein.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

26.

The allegations contained in Paragraphs 44 through 46 of the Petition are denied for lack of sufficient information to justify a belief therein.

27.

The allegations in Paragraph 47 are directed to Defendants other than Colgate, and thus no response is required from Colgate. To the extent a response is deemed required from Colgate, the allegations are denied for lack of sufficient information to justify a belief therein.

28.

The allegations contained in Paragraphs 48 through 50 of the Petition are denied as to this Defendant. To the extent these allegations are directed to Defendants other than Colgate, the allegations are denied for lack of sufficient information to justify a belief therein.

29.

The allegations contained in Paragraph 51 of the Petition are directed to defendants other than Colgate, and therefore no response is required from Colgate. To the extent a response is deemed required from Colgate, the allegations are denied for lack of sufficient information to justify a belief therein.

30.

The allegations contained in Paragraph 52 of the Petition are denied as to this Defendant. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT ONE: STRICT LIABILITY and NEGLIGENCE**

**(All Defendants)**

31.

In response to the allegations contained in Paragraph 53 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

32.

The allegations contained in Paragraphs 54 and 55 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

33.

The allegations contained in Paragraph 56 of the Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations are directed to defendants other than Colgate, the allegations are denied for lack of sufficient information to justify a belief therein.

34.

The allegations contained in Paragraphs 57 and 58 of the Petition are denied as to this Defendant. To the extent the allegations are directed to defendants other than Colgate, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT TWO: SUPPLIER/DISTRIBUTOR/MANUFACTURER/SELLER LIABILITY**

**(All Defendants)**

35.

In response to the allegations contained in Paragraph 59 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

36.

The allegations contained in Paragraph 60 of the Petition are denied as to this Defendant. The allegations regarding purchase, use, and/or application of Colgate's products by Plaintiff and the allegations regarding defendants other than Colgate are denied for lack of sufficient information to justify a belief therein.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

37.

The allegations contained in Paragraphs 61 through 63 of the Petition are denied as to this Defendant. To the extent the allegations are directed to defendants other than Colgate, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

38.

The allegations contained in Paragraph 64 of the Petition are directed to defendants other than Colgate, and therefore no response is required from Colgate. To the extent a response is deemed required from Colgate, the allegations are denied for lack of sufficient information to justify a belief therein.

39.

The allegations contained in Paragraphs 65 through 71 of the Petition are denied as to this Defendant. To the extent the allegations are directed to defendants other than Colgate, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT THREE: STRICT LIABILITY and NEGLIGENCE**

**(Johnson & Johnson Defendants)**

40.

In response to the allegations contained in Paragraph 72 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

41.

The allegations contained in Paragraphs 73 through 78 of the Petition, including any and all subparts therein, are directed to defendants other than Colgate and thus, do not require a response from Colgate. To the extent a response is deemed required from this Defendant, the allegations are denied for lack of sufficient information to justify a belief therein.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

**COUNT FOUR: FAILURE TO WARN**

**(All Defendants)**

**42.**

In response to the allegations contained in Paragraph 79 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

43.

In response to the allegations contained in Paragraph 80 of the Petition, Colgate admits only that it manufactured Cashmere Bouquet cosmetic talcum powder, which was formulated to contain nothing but cosmetic grade talc and perfume as well as anti-caking and antibacterial agents. Cashmere Bouquet cosmetic talcum powder did not contain asbestos. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

44.

The allegations contained in Paragraphs 81 and 82 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

45.

The allegations contained in Paragraph 83 of the Petition regarding Plaintiff's alleged use of Colgate products are denied for lack of sufficient information to justify a belief therein. All remaining allegations are denied as to this Defendant.

46.

The allegations contained in Paragraphs 84 through 88 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

**COUNT FIVE: BREACH OF WARRANTY**

**(All Defendants)**

47.

In response to the allegations contained in Paragraph 89 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

48.

The allegations contained in Paragraphs 90 through 95 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT SIX: DEFECTIVE DESIGN**

**(All Defendants)**

49.

In response to the allegations contained in Paragraph 96 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

50.

The allegations contained in Paragraphs 97 through 103 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

**COUNT SEVEN: FRAUD**

**(Johnson & Johnson Defendants and Colgate-Palmolive)**

**51.**

In response to the allegations contained in Paragraph 104 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

52.

The allegations contained in Paragraphs 105 and 106 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, the allegations are denied for lack of sufficient information to justify a belief therein.

53.

The allegations contained in Paragraph 107 of the Petition, including any and all subparts therein, do not require a response from Colgate. To the extent a response is deemed required, the allegations are denied for lack of sufficient information to justify a belief therein.

54.

The allegations contained in Paragraph 108 of the Petition, including any and all subparts therein, are denied.

55.

The allegations contained in Paragraph 109 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, the allegations are denied for lack of sufficient information to justify a belief therein.

56.

The allegations contained in Paragraph 110 of the Petition regarding Plaintiff's alleged predicted conduct are denied for lack of sufficient information to justify a belief therein. All remaining allegations, including the factual predicate, are denied as to this Defendant. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

57.

The allegations contained in Paragraphs 111 through 115 of the Petition are denied as to this Defendant. To the extent the allegations relate to other defendants, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT EIGHT: CIVIL CONSPIRACY**

**(All Defendants)**

58.

In response to the allegations contained in Paragraph 116 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

59.

The allegations contained in Paragraphs 117 through 127 of the Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other defendants, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT EIGHT: REDHIBITION**

**(All Defendants)**

60.

In response to the allegations contained in Paragraph 128 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

61.

The allegations contained in Paragraph 129 of the Petition are denied for lack of sufficient information to justify a belief therein.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

62.

To the extent the allegations contained in Paragraphs 130 through 135 of the Petition present legal conclusions, no response is required. To the extent these allegations pertain to Colgate, they are denied. To the extent the allegations are directed to defendants other than Colgate, they are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT NINE: PUNITIVE DAMAGES**

**(All Defendants)**

63.

In response to the allegations contained in Paragraph 136 of the Petition, and the allegations incorporated by reference thereto, Colgate incorporates by reference and adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

64.

The allegations contained in Paragraphs 137 and 138 of the Petition, including any and all subparts therein, are directed to defendants other than Colgate and thus, do not require a response from Colgate. To the extent a response is deemed required from this Defendant, the allegations are denied for lack of sufficient information to justify a belief therein.

65.

The allegations contained in Paragraphs 139 through 143 of the Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations are directed to defendants other than Colgate, they are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

66.

The allegations contained in the unnumbered paragraph beginning with "WHEREFORE" following numbered Paragraph 143 of the Petition are denied as to this Defendant. Defendant



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

**DAMAGES**

67.

The allegations contained in Paragraph 144 of the Petition, including any and all subparts therein, are denied as to this Defendant. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

68.

The allegations contained in the unnumbered Paragraph beginning with "WHEREFORE" following numbered Paragraph 144 of the Petition are denied as to this Defendant. Furthermore, Colgate denies that Plaintiff is entitled to judgment against it, individually, jointly, severally, and/or *in solido* in any amount whatsoever.

**AFFIRMATIVE DEFENSES**

AND NOW FURTHER answering Plaintiff's Petition, Colgate asserts the following affirmative defenses:

1.

Colgate pleads that at all times it acted with due care and reasonableness under the circumstances.

2.

Colgate pleads that at all times it complied with all applicable laws, regulations, rules, specifications, and standards.

3.

Colgate pleads that it owed no duty to Plaintiff. Alternatively, Colgate did not breach any duty owed to Plaintiff. In the further alternative, any breach of any duty owed by Colgate to Plaintiff was not the proximate cause of Plaintiff's alleged injuries, which are denied.

4.

Colgate pleads that Plaintiff's demands must be reduced due to Plaintiff's failure to mitigate, minimize, or abate any damages allegedly sustained, including, but not limited to, the



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

continued inhalation of other substances despite actual and/or constructive knowledge of detrimental health effects. Further, Plaintiff's injuries, if any, were caused by substances other than asbestos.

5.

Colgate pleads that to the extent Plaintiff is allowed to recover damages, if any, such damages were caused by the fault and/or negligence of others for whom Colgate is not responsible, including, but not limited to, any responsible person named or not named as a party in this action. Colgate also avers that it is entitled to indemnity and/or contribution from all responsible defendants named in Plaintiff's Petition, and from any other responsible persons for any sums Colgate must pay to Plaintiff based on the negligence and/or fault of those other persons, or alternatively, for a reduction in any amount Colgate must pay to Plaintiff to the extent of the negligence and/or fault of any other party.

6.

Colgate alternatively pleads that the damages allegedly sustained by Plaintiff resulted, in whole or in part, from the contributory fault, comparative fault, and/or assumption of the risk of Plaintiff, persons acting on her behalf, other parties to this action, and/or nonparties to this action and/or the agents, servants, employees, representatives, and/or independent contractors of the foregoing persons or entities. Colgate avers that it is entitled to a reduction of any amount it may pay to Plaintiff to the extent of any such contributory fault, comparative fault, and/or assumption of the risk.

7.

Colgate further alternatively pleads that the damages allegedly sustained by Plaintiff were caused by the negligence and/or fault of persons with whom Plaintiff has settled her claims. Colgate is entitled to an off-set or reduction of any judgment rendered against it by the percentage of fault or virile share of all persons or entities with whom Plaintiff may have reached settlement.

8.

Colgate pleads accord and satisfaction, discharge, release, *res judicata*, collateral estoppel, informed consent, and/or offset as affirmative defenses to Plaintiff's claims.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

9.

Colgate pleads that Plaintiff's demands are barred by the passage of time, have prescribed, and/or are perempted.

10.

Colgate pleads that Plaintiff's claims are barred by principles of equity, including, but not limited to, laches, unclean hands, waiver, equitable estoppel, legal estoppel, and judicial estoppel.

11.

Colgate pleads that Plaintiff has failed to join all parties necessary for a just adjudication pursuant to Louisiana Code of Civil Procedure article 641.

12.

Colgate pleads that Plaintiff has stated no cause of action nor any right of action against Colgate.

13.

Colgate denies that Plaintiff is entitled to any relief against Colgate sought in her Petition.

14.

Colgate pleads that it has no liability for the claims asserted by Plaintiff because the incidents claimed by Plaintiff directly and proximately resulted from an Act of God, a force majeure (for example, that the incidents resulted from natural and ordinary diseases of life), an intervening and superseding cause, and/or acts, omissions, and other fault of third parties, including Plaintiff, over whom Colgate had no control, right of control, or duty to control, and for which neither responsibility nor liability can be imputed or imposed. Plaintiff's alleged damages were, are, and will be solely and directly caused by such forces, causes, acts, omissions, and fault of third parties for whom Colgate is neither responsible nor liable. Such intervening and superseding causes include the fault of Plaintiff, her employer, and other third parties, who owed a duty to Plaintiff and over whom Colgate had no control, right of control, or duty to control. Colgate could neither anticipate nor reasonably foresee such superseding conduct, which was the sole actual cause of the injuries allegedly sustained by Plaintiff. Those injuries, if any, did not result in any way from acts, omissions, or conduct of any kind on the part of Colgate.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

15.

Colgate pleads that Plaintiff's demands are subject to a setoff for any and all amounts received by Plaintiff pursuant to federal and/or state compensation laws.

16.

Colgate asserts all available defenses relating to limitations of awards, caps on recovery, and set-offs.

17.

Colgate denies that it is liable jointly, severally, and/or *in solido* with any other party, whether named or unnamed, and denies that it is liable for the fault of any party, whether named or unnamed.

18.

Colgate pleads that any alleged damages arose solely as a result of pre-existing medical conditions, causes, injuries, or exposures that are completely unrelated to Plaintiff's alleged exposure to asbestos-containing products.

19.

Colgate pleads that it cannot be held liable for the claims asserted by Plaintiff based on theories of market share liability or enterprise liability.

20.

Colgate denies that the theories of strict liability and strict products liability apply to Plaintiff's claims.

21.

Colgate pleads that it did not mine, manufacture, design, sell, supply, distribute, test, inspect, evaluate, package, market, furnish, store, transport, ship, process, import, convert, compound, handle, use, install, remove, disturb, dispose of, warrant, possess, have custody of, and/or have control of, and was not involved in the chain of any such activities relating to, the asbestos-containing products or materials to which Plaintiff alleges she was exposed. Those products or materials and/or any asbestos contained therein were mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored,

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, and/or controlled by third parties over whom Colgate had no control, right of control, or duty to control.

22.

Colgate denies that Plaintiff ever used any of Colgate's products. Alternatively, if Plaintiff used Colgate's products, such use was only after Plaintiff's examination, approval, and acceptance of such products.

23.

Colgate pleads that any products alleged to be at issue in this litigation that are alleged to be related in any manner to Colgate were at all times reasonably fit and suitable for the purposes for which they were intended, and Colgate denies that any products with which it is allegedly associated were in any way defective for the uses for which they were intended. Any damages allegedly sustained by Plaintiff directly and proximately resulted from misuse, abuse, material modification, and/or alteration of Colgate's products by third parties over whom Colgate had no control, right of control, or duty to control. Any such misuse, abuse, material modification, and/or alteration of those products was not reasonably foreseeable by Colgate.

24.

Colgate pleads that any products that are alleged to be related to Colgate were not defective or unreasonably dangerous because any alleged risk to users of such products was not known, and thus the alleged risk of harm was not reasonably foreseeable. Under applicable law, Colgate is under no duty to warn of a prospective risk of harm in the absence of knowledge, actual or constructive, of the alleged risk in question. Further, none of the alleged injuries or damages was foreseeable at the time of the acts and omissions alleged by Plaintiff.

25.

Colgate pleads that the utility of any products mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed,



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

removed, disturbed, disposed of, warranted, possessed, and/or controlled by it outweigh the risk allegedly involved, and therefore Plaintiff's claims are barred.

26.

Colgate pleads that, at all material times herein, the state of medical and industrial art was such that there was no generally accepted or recognized knowledge of the potential health hazards associated with the use of any of Colgate's products. Further, any and all products mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, and/or controlled by Colgate conformed to the then-existing state of the art with respect to such mining, manufacture, design, sale, supply, distribution, testing, inspection, evaluation, packaging, marketing, furnishing, storage, transportation, shipping, processing, importation, conversion, compounding, handling, use, disposal, warranting, possession, custody, and/or control, including with respect to any warning requirement. Colgate had no knowledge or reason to know of any alleged risks associated with asbestos, any alleged risks associated with asbestos-containing products, any alleged asbestos contamination of cosmetic-grade talc, and/or alleged asbestos contamination of consumer talcum powder products during the periods complained of by Plaintiff. Moreover, the existence of any alternative design was not known or knowable to Colgate from the then-existing reasonably available scientific and technological knowledge. In the alternative, any such alternative design was not feasible.

27.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains to Colgate, is preempted, in whole or in part, by the applicable state and/or federal statutes, rules, standards, and/or regulations.

28.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains to Colgate, is preempted by the Federal Food, Drug, and Cosmetics Act ("FFDCA"), 21 U.S.C. §§ 301-399(f), in that the United States Food and Drug Administration ("FDA") has



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

primary and exclusive jurisdiction over the safety of cosmetic talc-containing products and primary and exclusive jurisdiction to determine whether any warning must accompany cosmetic talc-containing products. The FDA has ruled, on multiple occasions, that cosmetic grade talc is a safe substance when used as intended and further has ruled that manufacturers need not provide any warnings on, or in connection with the sale of, cosmetic grade talc-containing products.

29.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains to Colgate, is subject to the FDA's primary jurisdiction. Consequently, each and every claim, to the extent it pertains to Colgate, should be dismissed or stayed pending further FDA review of whether any warning must accompany, or other restrictions must be placed upon the manufacture and sale of, a cosmetic talc-containing product.

30.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains to Colgate, is an unauthorized and improper attempt to privately enforce a claim under the FFDCA, 21 U.S.C. §§ 301-399(f).

31.

Colgate pleads that any product mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, and/or controlled by Colgate was free of defect, was of merchantable quality, and was fit for the uses and purposes for which it was intended.

32.

Colgate pleads that it gave no special warranties, either express or implied, to Plaintiff or to anyone acting on Plaintiff's behalf. Further, to the extent that Plaintiff alleges any claim based upon a breach or breaches of express or implied warranties (allegations which Colgate specifically denies), such claim is barred because at no time did Colgate enter into any contract with Plaintiff, who was not in privity of contract with Colgate, and Plaintiff failed to give timely and adequate notice of any alleged breach.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

33.

Alternatively, Colgate pleads that if there were express or implied warranties, which is denied, Plaintiff and anyone acting on her behalf were not within the scope of any such alleged warranties.

34.

In the further alternative, Colgate pleads that if there were express or implied warranties, Colgate did not breach such warranties.

35.

In the further alternative, Colgate pleads that if there were express or implied warranties, the remedy for any breach of any such warranties was limited to the replacement of materials. Further, Plaintiff's claims, if any, for breach of warranty are excluded by Colgate's disclaimers of warranties and limitations of remedies.

36.

In the further alternative, Colgate pleads that any warranties, express or implied, have been fully satisfied.

37.

Colgate denies that it made any representations to Plaintiff. Alternatively, Plaintiff did not rely on any representations by Colgate.

38.

Colgate pleads that Plaintiff and anyone acting on her behalf were not third-party beneficiaries with reference to any alleged warranties, express or implied.

39.

Colgate denies that any cosmetic talcum powder product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, had custody of, and/or controlled was defectively designed because the manufacturing specifications for Colgate's talcum powder products did not include asbestos.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

40.

Colgate denies that any cosmetic talcum powder product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, had custody of, and/or controlled had a defect in construction or composition because Colgate's products, at the time they left Colgate's control, conformed to Colgate's specifications and/or performance standards, as well as otherwise identical Colgate products, and the manufacturing specifications for Colgate's talcum powder products did not include asbestos.

41.

Colgate pleads that it did not fail to provide an adequate warning about any cosmetic talcum powder product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, had custody of, and/or controlled. Alternatively, at the time Colgate products left Colgate's control, those products did not possess a characteristic that may cause damage. In the further alternative, if Colgate products possessed a characteristic that may cause damage, Colgate used reasonable care to provide an adequate warning of such characteristic and its danger, which danger is denied, to users and handlers of the products. In the further alternative, if Colgate failed to provide an adequate warning, which is denied, any characteristic of Colgate products that rendered them unreasonably dangerous did not exist at the time the products left Colgate's control. In the further alternative, if an inadequate warning about any Colgate products was provided, any characteristic of those products that rendered them unreasonably dangerous resulted from alterations or modifications that Colgate could not have reasonably anticipated.

42.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

In the further alternative, Colgate pleads that it was not required to provide adequate warnings about its products because they are not dangerous to an extent beyond what would be contemplated by the ordinary user or handler of the products, with the ordinary knowledge common to the community as to the products' characteristics. In the further alternative, the user or handler of any such product already knew or reasonably should be expected to have known of the characteristic of the product that may cause damage and the danger of such characteristic. In the further alternative, at no time after any such product left Colgate's control did Colgate acquire knowledge of any characteristic of the product that may cause damage or knowledge of the danger of such a characteristic, nor would Colgate have acquired such knowledge had it acted as a reasonably prudent manufacturer. Additionally, Colgate pleads that it acted at all times in a reasonably prudent manner. Moreover, in the further alternative, if Colgate did acquire knowledge, or reasonably should have acquired knowledge, of a dangerous characteristic of any such product, Colgate did not subsequently fail to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. In the further alternative, if Plaintiff incurred damage due to a dangerous characteristic of any product, at the time the product left Colgate's control, Colgate did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the characteristic that caused the damage or the danger of such characteristic.

43.

Colgate pleads that it did not make any express warranty about any product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, had custody of, and/or controlled, including, but not limited to, any warranty regarding the product's nature, material, or workmanship. Alternatively, if Colgate made an express warranty, which is denied, the product is not unreasonably dangerous because it conforms to the express warranty. In the further alternative, any express warranty did not induce Plaintiff or any other person or entity to use the product. In



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

the further alternative, Plaintiff's damage, if any, was not proximately caused because any express warranty about the product was true.

44.

Colgate pleads that any damage arose from uses of products by Plaintiff and/or persons acting on Plaintiff's behalf that Colgate could not have reasonably anticipated.

45.

Colgate pleads that its products are not unreasonably dangerous *per se*, including because the Federal Drug Administration has never required the manufacturers of cosmetic talcum powder to include a warning label on the product indicating any asbestos-related risk, and has never prohibited the sale of cosmetic talcum powder products.

46.

Colgate pleads that if Plaintiff was exposed to any asbestos-containing product mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, and/or controlled by Colgate, which is denied, then the amount of any asbestos fibers that may have been released into the air was *de minimis*, well below government standards, and not a substantial contributing factor to any asbestos-related disease that Plaintiff may have developed.

47.

Colgate denies that any material or product it, or one of its suppliers, mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, had custody of, and/or controlled was defective, unreasonably dangerous, or negligently mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, and/or controlled. Alternatively, if there was any defect or negligence on the part of Colgate, which is denied, Colgate nonetheless is not liable because it justifiably relied upon the inspections of its



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

suppliers and certifications provided by those suppliers that the cosmetic grade talc furnished to Colgate was free of asbestos-contamination.

48.

Colgate pleads that to the extent Plaintiff and/or persons acting on her behalf were and/or are smokers and/or consumers of tobacco products, such intentional and/or negligent conduct is the sole cause, or alternatively, a proximate or producing cause and contributing factor, of Plaintiff's alleged damages.

49.

Colgate pleads that Plaintiff is not entitled to punitive damages against Colgate.

50.

Alternatively, Colgate pleads that unless liability for punitive damages and the appropriate amount of punitive damages are each established by clear and convincing evidence under Louisiana law, any award of punitive damages would violate Colgate's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and the Louisiana Constitution. Further, any award of punitive damages without proof of every element beyond a reasonable doubt would violate Colgate's rights under Amendments IV, V, VI, VII, and XIV to the United States Constitution and under analogous provisions of the Louisiana Constitution.

51.

Colgate pleads that any liability based on legal doctrines prior to the date such doctrines were adopted in Louisiana violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

52.

Plaintiff fails to state a cause of action for fraud and/or fraudulent concealment because Plaintiff fails to plead same with particularity.

53.

Plaintiff's claims are barred, in whole or in part, due to spoliation of evidence and/or the failure to preserve evidence necessary to the determination of the claims.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

54.

Except to the extent specifically admitted or modified herein, Colgate denies each and every allegation, statement, and characterization in Plaintiff's Petition against Colgate and demands strict proof.

55.

To the extent consistent with its Answer, Colgate incorporates by reference all other defenses raised or to be raised by any other defendant in this action.

56.

Colgate expressly reserves its right to reevaluate and/or assert additional defenses upon discovery and review of additional documents and information and upon the development of other pertinent facts.

WHEREFORE, Defendant Colgate-Palmolive, Company, prays that, after due proceedings be had, there be judgment rendered herein in its favor and against the Plaintiff, dismissing Plaintiff's suit at their cost and with prejudice.

Respectfully submitted,

MG+M LAW FIRM

Jeanette S. Riggins (LSBA No. 27056)
Glenn L.M. Swetman (LSBA No. 21904)
B. Adam Hays (LSBA No. 30255)
Meghan B. Senter (LSBA No. 34088)
Erika M. Cunningham (LSBA No. 31890)
Natasha A. Corb (LSBA No. 35720)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax: (504) 535-2886
Email: TalcLitLa@mgmlaw.com
Web: www.mgmlaw.com

ATTORNEYS FOR COLGATE-PALMOLIVE COMPANY



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

## CERTIFICATE OF SERVICE

I do hereby certify that I have this date delivered, via mail, fax and/or e-mail, a true and correct copy of the foregoing document to counsel for Plaintiffs and to all known counsel of record.

SO CERTIFIED, this the 2nd day of July 2020.

Erika M. Cunningham



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

---

MEMORANDUM IN SUPPORT OF COLGATE-PALMOLIVE COMPANY'S EXCEPTION OF *LIS PENDENS*

---

NOW INTO COURT, through undersigned counsel, comes Defendant Colgate-Palmolive Company (hereinafter "Colgate") which submits the following memorandum in support of its exception:

***LIS PENDENS***

I.

Colgate pleads the declinatory exception of *lis pendens*. Colgate has not yet determined whether or not the Plaintiff in the instant case has another asbestos personal injury suit pending against it in a different jurisdiction. Nevertheless, due to the huge number of asbestos personal injury suits pending both in this state and nationally, it is often impossible to discover *lis pendens* problems until after discovery. Colgate raises the *lis pendens* exception at this time in order to preserve its right to seek appropriate relief in the event that the Plaintiff in this suit has another asbestos personal injury suit pending.

In accordance with the Louisiana Code of Civil Procedure, "When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

thereto . . . ."[1] Likewise, "[w]hen a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit . . . ."[2] Consequently, Colgate asserts the declinatory exception of *lis pendens* and requests that this Court recognize its right to seek the dismissal of the claims of the Plaintiff, if he is subsequently determined to be involved in any other suit based upon the same transactions or occurrences forming the basis of the instant suit.

II.

Colgate reserves the right to adopt the exceptions pled by any and all other Defendants.

WHEREFORE, Defendant Colgate-Palmolive Company hereby preserves its right to except for *lis pendens* as additional facts are made known in discovery. Colgate does not request a hearing on its exception at this time.

Respectfully submitted,

MG+M LAW FIRM

Jeanette S. Riggins (LSBA No. 27056)
Glenn L.M. Swetman (LSBA No. 21904)
B. Adam Hays (LSBA No. 30255)
Meghan B. Senter (LSBA No. 34088)
Erika M. Cunningham (LSBA No. 31890)
Natasha A. Corb (LSBA No. 35720)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax: (504) 535-2886
Email: TalcLitLa@mgmlaw.com
Web: www.mgmlaw.com

ATTORNEYS FOR COLGATE-PALMOLIVE COMPANY

[1] La. Code Civ. Proc. art. 531.

[2] La. Code Civ. Proc. art. 532.



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this date delivered, via mail, fax and/or e-mail, a true and correct copy of the foregoing document to counsel for Plaintiffs and to all known counsel of record.

SO CERTIFIED, this the 2nd day of July 2020.

Erika M. Cunningham



E-Filed

FILED
2020 JUL 02 A 11:53
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION 16** **DIVISION "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

---

**RULE TO SHOW CAUSE**

---

**IT IS HEREBY ORDERED** that Colgate-Palmolive Company's Exception of *Lis Pendens* shall not be set for hearing and will not be heard until discovery has revealed whether it is meritorious and Colgate-Palmolive Company requests that a hearing be set.

New Orleans, Louisiana, this 14th day of July, 2020.

[signature]
HONORABLE ELLEN M. HAZEUR

Plaintiff will be served pursuant to La. C.C.P. 1313.
Through Counsel of Record:
Mickey P. Landry
Landry & Swarr, LLC
1100 Poydras Street, Suite 2000
New Orleans, LA 70163

VERIFIED JUL 23 2020
HERBERT SPURLOCK III
DEPUTY CLERK
[signature]



E-Filed

FILED
JUL 16 2020
CLERK'S OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2020-02718 DIV/SEC: "A-16"

LYNNE ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:____________________ ____________________

DEPUTY CLERK

**WHITTAKER, CLARK & DANIELS, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL PETITION FOR DAMAGES**

**NOW INTO COURT**, through undersigned counsel, comes Defendant Whittaker, Clark & Daniels, Inc., (hereinafter referred to as "WCD"), who, for Answer to the Petition for Damages filed on behalf of Plaintiff Lynne Roy, avers as follows:

I.

The allegations of Paragraph 1 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

II.

The allegations of Paragraph 2 of the Petition for Damages are denied insofar as they pertain to WCD, other than to admit that WCD has been named as a Defendant in this matter. In all other respects, the allegations of Paragraph 2 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

III.

The allegations of Paragraph 3 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

IV.

The allegations of Paragraph 4 of the Petition for Damages, including all subparts, are denied insofar as they pertain to WCD, other than to admit that WCD has been named as a Defendant in this matter. In all other respects, the allegations of Paragraph 4 of the Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

CLERK, CIVIL DISTRICT COURT
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-407-0000

| | |
|---|---|
| Receipt Date | 7/20/2020 4:20:00 PM |
| Receipt Number | 820111 |
| Cashier | gallen |
| Case Number | 2020-02718 |
| Grand Total | $1112.00 |
| Amount Received | $1112.00 |
| Balance Due | $0.00 |
| OverPayment | $0.00 |
| Check # 2058 | $1112.00 |

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Answer | $272.00 | $272.00 | $0.00 |
| Fax Fees | $60.00 | $60.00 | $0.00 |
| Request for Trial by Jury | $780.00 | $780.00 | $0.00 |

{44344.000009 / W1172291}

VERIFIED

V.

The allegations of Paragraph 5 of the Petition for Damages, including all subparts, are denied insofar as they pertain to WCD. In all other respects, the allegations of Paragraph 5 of the Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

VI.

The allegations of Paragraph 6 through Paragraph 13 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 6 through Paragraph 13 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

VII.

The allegations of Paragraph 14 of the Petition for Damages are denied.

VIII.

The allegations of Paragraph 15 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 15 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

IX.

The allegations of Paragraph 16 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

X.

The allegations of Paragraph 17 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XI.

The allegations of Paragraph 18 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XII.

The allegations of Paragraph 19 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XIII.

The allegations of Paragraph 20 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 20 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XIV.

The allegations of Paragraph 21 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 21 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XV.

The allegations of Paragraph 22 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 22 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XVI.

The allegations of Paragraph 23 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 23 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XVII.

The allegations of Paragraph 24 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 24 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XVIII.

The allegations of Paragraph 25 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 25 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XIX.

The allegations of Paragraph 26 of the Petition for Damages are denied.

XX.

The allegations of Paragraph 27 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 27 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXI.

The allegations of Paragraph 28 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 28 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXII.

The allegations of Paragraph 29 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 29 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXIII.

The allegations of Paragraph 30 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 30 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXIV.

The allegations of Paragraph 31 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 31 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXV.

The allegations of Paragraph 32 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXVI.

The allegations of Paragraph 33 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 33 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXVII.

The allegations of Paragraph 34 through Paragraph 40 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 34 through Paragraph 40 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXI.

The allegations of Paragraph 28 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 28 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXII.

The allegations of Paragraph 29 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 29 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXIII.

The allegations of Paragraph 30 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 30 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXIV.

The allegations of Paragraph 31 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 31 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXV.

The allegations of Paragraph 32 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXVI.

The allegations of Paragraph 33 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 33 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXVII.

The allegations of Paragraph 34 through Paragraph 40 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 34 through Paragraph 40 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXVIII.

The allegations of Paragraph 41 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXIX.

The allegations of Paragraph 42 through Paragraph 43 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 42 through Paragraph 43 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXX.

The allegations of Paragraph 44 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXI.

The allegations of Paragraph 45 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXII.

The allegations of Paragraph 46 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXIII.

The allegations of Paragraph 47 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXIV.

The allegations of Paragraph 48 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 48 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXV.

The allegations of Paragraph 49 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 49 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXVI.

The allegations of Paragraph 50 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 50 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXVII.

The allegations of Paragraph 51 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 51 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXVIII.

The allegations of Paragraph 52 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 52 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XXXIX.

The allegations of Paragraph 53 of the Petition for Damages are denied.

XL.

The allegations of Paragraph 54 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 54 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XLI.

The allegations of Paragraph 55 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 55 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XLII.

The allegations of Paragraph 56 of the Petition for Damages, including all subparts, are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 56 of the Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

XLIII.

The allegations of Paragraph 57 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 57 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XLIV.

The allegations of Paragraph 58 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 58 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XLV.

The allegations of Paragraph 59 of the Petition for Damages are denied.

XLVI.

The allegations of Paragraph 60 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 60 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XLVII.

The allegations of Paragraph 61 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 61 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XLVIII.

The allegations of Paragraph 62 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 62 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XLIX.

The allegations of Paragraph 63 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 63 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

L.

The allegations of Paragraph 64 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 64 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LI.

The allegations of Paragraph 65 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 65 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LII.

The allegations of Paragraph 66 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 66 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LIII.

The allegations of Paragraph 67 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 67 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LIV.

The allegations of Paragraph 68 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 68 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LV.

The allegations of Paragraph 69 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 69 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LVI.

The allegations of Paragraph 70 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 70 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LVII.

The allegations of Paragraph 71 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 71 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LVIII.

The allegations of Paragraph 72 of the Petition for Damages are denied.

LIX.

The allegations of Paragraph 73 through Paragraph 78 of the Petition for Damages, including all subparts, do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 73 through Paragraph 78 of the Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

LX.

The allegations of Paragraph 79 of the Petition for Damages are denied.

LXI.

The allegations of Paragraph 80 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 80 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXII.

The allegations of Paragraph 81 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 81 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXIII.

The allegations of Paragraph 82 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 82 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXIV.

The allegations of Paragraph 83 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 83 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXV.

The allegations of Paragraph 84 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 84 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXVI.

The allegations of Paragraph 85 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 85 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXVII.

The allegations of Paragraph 86 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 86 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXVIII.

The allegations of Paragraph 87 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 87 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXIX.

The allegations of Paragraph 88 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 88 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXX.

The allegations of Paragraph 89 of the Petition for Damages are denied.

LXXI.

The allegations of Paragraph 90 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 90 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXII.

The allegations of Paragraph 91 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 91 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXIII.

The allegations of Paragraph 92 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 92 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXIV.

The allegations of Paragraph 93 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 93 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXV.

The allegations of Paragraph 94 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 94 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXVI.

The allegations of Paragraph 95 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 95 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXVII.

The allegations of Paragraph 96 of the Petition for Damages are denied.

LXXVIII.

The allegations of Paragraph 97 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 97 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXIX.

The allegations of Paragraph 98 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 98 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXX.

The allegations of Paragraph 99 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 99 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

LXXXI.

The allegations of Paragraph 100 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 100 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XC.

The allegations of Paragraph 119 of the Petition for Damages, including all subparts, are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 119 of the Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

XCI.

The allegations of Paragraph 120 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 120 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XCII.

The allegations of Paragraph 121 through Paragraph 124 of the Petition for Damages, including all subparts, do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 121 through Paragraph 124 of the Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

XCIII.

The allegations of Paragraph 125 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 125 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XCIV.

The allegations of Paragraph 126 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 126 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XCV.

The allegations of Paragraph 127 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 127 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XCVI.

The allegations of Paragraph 128 of the Petition for Damages are denied.

XCVII.

The allegations of Paragraph 129 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 129 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XCVIII.

The allegations of Paragraph 130 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 130 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XCIX.

The allegations of Paragraph 131 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 131 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

C.

The allegations of Paragraph 132 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 132 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CI.

The allegations of Paragraph 133 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 133 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CII.

The allegations of Paragraph 134 of the Petition for Damages do not require a response from this Defendant. Out of the abundance of caution and in the event these allegations require a response from this Defendant, the allegations of Paragraph 134 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CIII.

The allegations of Paragraph 135 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 135 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CIV.

The allegations of Paragraph 136 of the Petition for Damages are denied.

CV.

The allegations of Paragraph 137 of the Petition for Damages, including all subparts, are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 137 of the Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

CVI.

The allegations of Paragraph 138 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 138 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CVII.

The allegations of Paragraph 139 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 139 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CVIII.

The allegations of Paragraph 140 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CIX.

The allegations of Paragraph 141 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 141 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CX.

The allegations of Paragraph 142 of the Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 142 of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

CXI.

The allegations of Paragraph 143 of the Petition for Damages are denied.

CXII.

WCD denies the allegations contained in Plaintiff's Prayer for Punitive Damages following Paragraph 143. WCD further denies that Punitive Damages are available by law under the facts plead in this matter.

CXIII.

WCD denies the allegations contained in Paragraph 144 of the Petition for Damages, including all subparts. WCD further denies that the Petitioners are entitled to judgment against it jointly, severally, or collectively for general damages, special damages, punitive and/or exemplary damages, or in any amount for any reason whatsoever.

CXIV.

WCD denies the allegations contained in Plaintiff's Prayer for Damages. WCD again denies that the Petitioners are entitled to judgment against it jointly, severally, or collectively for general damages, special damages, punitive and/or exemplary damages, or in any amount for any reason whatsoever.

CXV.

Any introductory or unnumbered Paragraphs of the Petition for Damages are denied insofar as they pertain to WCD. In all other respects, any introductory or unnumbered Paragraphs of the Petition for Damages are denied for lack of sufficient information to justify a belief therein.

**AND NOW, IN FURTHER ANSWER TO THE PETITION FOR DAMAGES, DEFENDANT, WCD, AVERS AS FOLLOWS:**

**FIRST AFFIRMATIVE DEFENSE**

This Court lacks personal jurisdiction over WCD and/or over the controversy forming the basis of this litigation.

**SECOND AFFIRMATIVE DEFENSE**

There is insufficiency of process and service of process against WCD.

**THIRD AFFIRMATIVE DEFENSE**

This Court lacks venue as alleged in the Petition for Damages.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's Petition for Damages fails to state a claim against WCD upon which relief may be granted. If relief were granted in the absence of product identification, it would contravene WCD's constitutional rights to substantive and due process of law and equal protection under the Fourteenth Amendment of the United States Constitution.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the applicable statute of limitations and/or prescription.

SIXTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate her damages.

SEVENTH AFFIRMATIVE DEFENSE

WCD denies that Plaintiff ever used products manufactured or distributed by WCD and further denies that Plaintiff was in close proximity to products manufactured or distributed by WCD.

EIGHTH AFFIRMATIVE DEFENSE

WCD avers that any injury or damage suffered by Plaintiff in connection with a product manufactured or distributed by WCD, which injury or damage is specifically denied, did not result from the normal use of the product. Further, Plaintiff or other third parties for whom WCD is not responsible, materially altered or modified the alleged product manufactured by WCD, if any, subsequent to their release from the control of WCD.

NINTH AFFIRMATIVE DEFENSE

Alternatively, WCD pleads the contributory and/or comparative negligence or fault and assumption of the risk of the Plaintiff. Said negligence, fault and/or assumption of the risk acts as a complete bar to or, alternatively, in mitigation of Plaintiff's recovery.

TENTH AFFIRMATIVE DEFENSE

WCD owed no duty in this matter. In the alternative, if any duty was owed, that duty was not breached by WCD.

ELEVENTH AFFIRMATIVE DEFENSE

WCD manufactured its products with the highest degree of skill and care and in conformity with the knowledge and skills available to the industry at all times in question and adhered to all appropriate government and industry standards.

TWELFTH AFFIRMATIVE DEFENSE

If Plaintiff sustained injuries or damages, which is specifically and categorically denied, Plaintiff's injuries and damages are the result of negligence or fault on the part of others over whom WCD has no responsibility or control. If it is determined that Plaintiff is entitled to recover against WCD, which is denied, that recovery shall be reduced in proportion to the degree or virile share of negligence, fault, or exposure to products attributable to any co-defendant or non-party, including those entities presently immune due to bankruptcy, regardless of whether or not Plaintiff has settled or will settle with such parties in the future.

THIRTEENTH AFFIRMATIVE DEFENSE

WCD specifically pleads the "state-of-the-art" defense to each and every allegation of the Plaintiff. WCD denies any defects in its products and avers that at all pertinent times, its products were reasonably fit and suited for the purpose(s) for which they were manufactured and intended, and were delivered with such advises as were consistent with the state of the existing medical and industrial art.

FOURTEENTH AFFIRMATIVE DEFENSE

WCD denies existence of or breach of any actual or implied warranty.

FIFTEENTH AFFIRMATIVE DEFENSE

WCD avers that as a result of the provisions of certain statutes including 11 U.S.C. Section 362(a), Plaintiff is prohibited from proceeding against certain parties liable for the damages and injuries complained of and WCD reserves its right to so proceed.

SIXTEENTH AFFIRMATIVE DEFENSE

Further, alternatively, WCD avers that Plaintiff did not inhale asbestos fibers or dust emitted by the normal use of said products, proximately causing the results and/or related abnormalities or alternatively, any other asbestos related injury.

SEVENTEENTH AFFIRMATIVE DEFENSE

Further, alternatively, WCD avers that Plaintiff's lung injury, if any, was caused by substances other than asbestos.

EIGHTEENTH AFFIRMATIVE DEFENSE

WCD further adopts all affirmative defenses, if any, not specifically set out in this answer but asserted by other defendant in this case.

NINETEENTH AFFIRMATIVE DEFENSE

WCD affirmatively avers the affirmative defenses of La. R.S. 9:2800.51, *et seq.*, the Louisiana Products Liability Act.

TWENTIETH AFFIRMATIVE DEFENSE

If Plaintiff has heretofore settled or should hereafter settle for any of his alleged injuries and damages with any parties, then WCD is entitled to a credit for any such settlement.

TWENTY-FIRST AFFIRMATIVE DEFENSE

WCD asserts that the manufacturers of end line consumer products owed a duty to consumers, and that those manufacturers were knowledgeable and sophisticated users and/or purchasers of minerals.

TWENTY-SECOND AFFIRMATIVE DEFENSE

WCD asserts that Plaintiff has never used any product manufactured or sold by WCD. Defendant denies that Plaintiff was ever in proximity to any product manufactured or sold by WCD. Defendant further asserts that Plaintiff was never exposed to asbestos from any product manufactured or sold by WCD.

TWENTY-THIRD AFFIRMATIVE DEFENSE

Any claim for punitive damages against any defendant in this matter is proscribed under Louisiana law. An award of punitive damages would be unconstitutional and in violation of the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States. Further, any claim for punitive damages is barred by the "double jeopardy" clause of the Fifth Amendment to the United States Constitution.

TWENTY-FOURTH AFFIRMATIVE DEFENSE

WCD avers that the injuries allegedly sustained, which are denied, occurred as a result of pre-existing medical and/or subsequent exposures or conditions, causes, or injuries, which are completely unrelated to WCD, and the existence of these pre-existing medical and/or subsequent exposures or conditions, causes, or injuries bar and/or mitigate recovery herein.

TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations, res judicata, prescription, preemption, equitable estoppel, collateral estoppel, informed consent, release, laches, and/or waiver.

TWENTY-SIXTH AFFIRMATIVE DEFENSE

WCD specifically pleads the "sophisticated user" defense.

TWENTY-SEVENTH AFFIRMATIVE DEFENSE

There is no causal relationship between the conduct of WCD and the injuries and damages alleged by Plaintiff.

TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the product at issue was at all times properly prepared, packaged, and distributed and was not defective or unreasonably dangerous.

TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, by misuse or unintended use of the product in question.

THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries, if any, were a direct and proximate result of superseding and/or intervening causes.

THIRTY-FIRST AFFIRMATIVE DEFENSE

WCD acted at all times relevant in the instant matter with due care. As such, WCD is free of any and all negligence and at all times complied with all applicable laws, regulations, and standards.

THIRTY-SECOND AFFIRMATIVE DEFENSE

WCD adopts all applicable defenses, if any, not specifically set out in this Answer, but asserted by any other defendant or third party defendant.

THIRTY-THIRD AFFIRMATIVE DEFENSE

At all relevant times, the alleged product or products in question were manufactured and distributed with proper warnings, information, cautions, and instructions in conformity with generally recognized and prevailing standards in existence at the time.

THIRTY-FOURTH AFFIRMATIVE DEFENSE

The claims of the Plaintiff may be barred, in whole or in part, from recovery, due to spoliation of evidence and the failure to preserve evidence necessary to the determination of the claims.

THIRTY-FIFTH AFFIRMATIVE DEFENSE

The products at issue were altered after the products left the control, custody, and possession of WCD, and said alteration relieves WCD of any and all liability.

THIRTY-SIXTH AFFIRMATIVE DEFENSE

The state-of-the-art defense is applicable to each and every allegation for the reason that the alleged hazards were neither known nor reasonably discoverable on the basis of the research

and scientific information then available; and WCD acted reasonably prudent and at all times in compliance with all applicable state and federal regulations and industry custom and practice.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's injuries and damages, if any, did not occur as a result of exposure to asbestos fibers, but rather were proximately caused by other factors, including, but not limited to, a history of voluntarily smoking cigarettes, which other factors are affirmatively pleaded, and are legally and factually imputable to Plaintiff to serve as a bar and/or reduction of any and all recovery by Plaintiff.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

WCD contends that Plaintiff has failed to join all parties necessary for a just adjudication of this matter.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

WCD contends that each and every claim asserted by Plaintiff, to the extent the claim pertains to WCD, is preempted by the Federal Food and Drug and Cosmetic Act ("FFDCA"), 21 USC 301 – 399(f), in that the United States Food and Drug Administration ("FDA") had primary and exclusive jurisdiction to determine whether any warning must accompany cosmetic talc-containing products. The FDA has ruled, on multiple occasions, that cosmetic grade talc is a safe substance when used as intended and further has ruled that the manufacturers need not provide any warnings on, or in connection with the sale of, cosmetic grade talc containing products.

**FORTIETH AFFIRMATIVE DEFENSE**

WCD reserves the right to rely upon other defenses as they may become available and apparent during the course of discovery and thus reserves the right to amend this Answer to assert any such defenses.

**REQUEST FOR JURY TRIAL**

Defendant WCD hereby demands a trial by jury.

**WHEREFORE**, Defendant, Whittaker, Clark & Daniels, Inc., prays that its Answer be deemed good and sufficient and that after all legal delays and due proceeding had, there be judgment herein in favor of Defendant, Whittaker, Clark & Daniels, Inc., and against Plaintiff, dismissing the Petition for Damages, , with prejudice and at Plaintiff's costs. Defendant further prays for all general and equitable relief.

FILED
JUL 16 2020
CLERK'S OFFICE
CIVIL DISTRICT COURT

Respectfully submitted,

MARON MARVEL BRADLEY ANDERSON & TARDY LLC

RICHARD M. CRUMP (#30460)
SHELLEY K. NAPOLITANO (#34692)
Place St. Charles
201 St. Charles Ave.
New Orleans, Louisiana 70170
Telephone: (504) 684-5100
Facsimile: (504) 613-0067

*Attorneys for Whittaker, Clark & Daniels, Inc.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all known counsel of parties to this proceeding by mailing a copy of same to each via hand, facsimile, electronic mail, Federal Express or by First Class U.S. mail, properly addressed and postage prepaid on this 15th day of June, 2020.

SHELLEY K. NAPOLITANO

FILED
2020 AUG 13 PM 2:44
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:__________________ __________________
DEPUTY CLERK

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S EXCEPTIONS**

NOW INTO COURT, through undersigned counsel, come Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc. (collectively, "the Johnson & Johnson Defendants"), who assert the peremptory exception of no cause of action and dilatory exceptions of lack of procedural capacity and vagueness and ambiguity of the petition.

Plaintiff Lynne Roy filed suit against the Johnson & Johnson Defendants, among others, alleging that the use of talcum powder products and Kaiser Gypsum joint compound caused Plaintiff's mesothelioma.[1] Plaintiff's Original Petition for Damages (hereinafter "Petition") alleges that Plaintiff used Cashmere Bouquet, Coty talcum powder products, Chanel talcum powder products, Kaiser Gypsum joint compound, and Johnson & Johnson Consumer Inc.'s Johnson's® Baby Powder and Shower to Shower® products.[2]

Plaintiff's claim for civil conspiracy (count eight) is not recognized under Louisiana law, and therefore should be dismissed. The petition also seeks punitive damages (count five), which are barred under Louisiana law, with limited exceptions not applicable here. Because none of Plaintiff's allegations fall within the exceptions where punitive damages are authorized, her claims seeking punitive damages should be dismissed for failure to state a cause of action.

[1] Ex. A, Petition for Damages at ¶¶ 1-2.

[2] *Id.*

VERIFIED

Additionally, the allegations directed to the Johnson & Johnson Defendants are impermissibly vague and ambiguous. The petition sets forth various counts applicable (allegedly) to all of the defendants collectively or to a subset of defendants. For the most part, the allegations are impermissibly vague and are directed to "defendants" collectively without specifying which facts and conclusory allegations apply to which of the defendants. As such, the Court should sustain the exceptions of vagueness and ambiguity and require Plaintiff to amend her petition to comply with Louisiana Code of Civil Procedure Articles 856 and 891.

Plaintiff has not filed a motion for leave to file a supplemental and amending petition seeking to substitute a proper party plaintiff in place of Ms. Roy, who is deceased. Therefore, the Johnson & Johnson Defendants assert the dilatory exception of lack of procedural capacity. The Court should sustain the exception of lack of procedural capacity and order Plaintiff to amend her petition to substitute a proper party plaintiff in place of the decedent.

WHEREFORE, the Johnson & Johnson Defendants respectfully pray that this Honorable Court sustain their exception of no cause of action as to Plaintiff's punitive damages and civil conspiracy claims, and sustain their exceptions of lack of procedural capacity and vagueness and ambiguity of the petition and require Plaintiff to amend her petition.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

KIM E. MOORE (La. Bar No. 18653)
JOHN W. SINNOTT (La. Bar No. 23943)
LEILA A. D'AQUIN (La. Bar No. 18884)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served on counsel for all parties to this proceeding by electronic mail and/or mailing the same to each by first-class mail, properly addressed and postage prepaid, on the 13th day of August, 2020.

FILED 2020 AUG 13 PM 2:14 CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**No. 20-2718** **SECTION 16** **DIVISION A**

**LYNNE L. ROY**

**versus**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:**____________________

____________________
**DEPUTY CLERK**

**MEMORANDUM IN SUPPORT OF DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S EXCEPTIONS**

Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (hereinafter, "the Johnson & Johnson Defendants") file this memorandum in support of their peremptory exception of no cause of action, and dilatory exceptions of lack of procedural capacity and vagueness and ambiguity of the petition.[1]

**SUMMARY OF THE ARGUMENT**

Plaintiff Lynne Roy filed suit against the Johnson & Johnson Defendants, among others, alleging that the use of talcum powder products and Kaiser Gypsum joint compound caused Plaintiff's mesothelioma.[2] Plaintiff's Original Petition for Damages (hereinafter "Petition") alleges that Plaintiff used Cashmere Bouquet, Coty talcum powder products, Chanel talcum powder products, Kaiser Gypsum joint compound, and Johnson & Johnson Consumer Inc.'s Johnson's® Baby Powder and Shower to Shower® products.[3]

Plaintiff's claims for civil conspiracy (count eight) and "supplier/distributor/manufacturer/seller liability" (count two) are not cognizable under Louisiana law, and therefore, should be dismissed. The Petition also seeks punitive damages (count ten), which are barred under Louisiana law, with limited exceptions not applicable here. Thus, Plaintiff's claims seeking punitive damages should be dismissed.

[1] Pursuant to Uniform District Court Rule 9.8, the Johnson & Johnson Defendants state that this case is not set for trial and that the Johnson & Johnson Defendants do not anticipate offering live testimony at the hearing on these exceptions.

[2] Ex. A, Petition for Damages at ¶¶ 1-2.

[3] *Id.*



VERIFIED

The Johnson & Johnson Defendants also assert the dilatory exception of lack of procedural capacity on the grounds that Plaintiff has not filed a supplemental and amending petition seeking to substitute a proper party plaintiff in place of Ms. Roy, who is deceased. Therefore, the Court should sustain the exception of lack of procedural capacity and order Plaintiff to amend her petition to substitute a proper party plaintiff in place of the decedent.

Additionally, the allegations directed to the Johnson & Johnson Defendants fail to conform to the pleading requirements under Louisiana law and are impermissibly vague and ambiguous. The petition sets forth various counts applicable (allegedly) to all of the defendants collectively. For the most part, the allegations are impermissibly vague and are directed to "defendants" collectively without specifying which facts and conclusory allegations apply to which of the defendants. As such, the Court should sustain the exceptions of non-conformity and vagueness and ambiguity and require Plaintiff to amend her petition to comply with Louisiana Code of Civil Procedure Articles 856 and 891.

## LAW AND ARGUMENT

### I. PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION

#### A. The Exception of No Cause of Action

The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged. *Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission*, 94-2015 (La. 11/30/94), 646 So.2d 885; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234 (La. 1993); *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1018 (La. 1993). For purposes of an exception of no cause of action, a "cause of action" is defined as the state of facts that gives rise to a plaintiff's right to assert an action against a defendant. A "cause of action" is the conduct of the defendant that gives rise to a particular cause or complaint, and it is a set of facts upon which a plaintiff's specific right is based. *Trahan v. Liberty Mutual Ins. Co.*, 314 So.2d 350, 353 (La. 1975).

#### B. "Supplier/Distributor/Manufacturer/Seller Liability" and Civil Conspiracy Are Not Causes of Action Under Louisiana Law.

Count two of the Petition is entitled "supplier/distributor/manufacturer/seller liability." This is not a cause of action under Louisiana law. Accordingly, Plaintiff cannot state a cause of

action for "supplier/distributor/manufacturer/seller liability," and this count should be dismissed.

Similarly, conspiracy is not an independent cause of action under Louisiana law. *See Ames v. Ohle*, 97 So. 3d 386, 393 (La. App. 4th Cir. 2012) ("The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law."). "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Id.*; *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001) ("The actionable element under [Louisiana Civil Code] article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury."). Thus, Plaintiff's conspiracy claim fails as a matter of law and should be dismissed. *See Hardy v. Easterling*, 47,950 (La. App. 2d Cir. 4/10/13), 113 So. 3d 1178, 1184 ("An independent cause of action for civil conspiracy does not exist in Louisiana; rather the actionable element of article 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing plaintiff's injury.").

### C. Plaintiff Has No Claim For Punitive Damages Under Louisiana Law.

Under Louisiana law, punitive or other "penalty" damages are ***not allowable unless expressly authorized by statute***. *McCoy v. Arkansas Nat. Gas Co.*, 175 La. 487, 497, 143 So. 383, 385–86 (1932) ("There is no authority in the law of Louisiana for allowing punitive damages in any case, unless it be for some particular wrong for which a statute expressly authorizes the imposition of some such penalty."); *see also Int'l Harvester Credit Corp. v. Seale*, 518 So. 2d 1039, 1041 (La. 1988), citing *Ricard v. State*, 390 So. 2d 882 (La.1980); *Killebrew v. Abbott Laboratories*, 359 So. 2d 1275 (La.1978); *Alexander v. Burroughs Corp.*, 359 So. 2d 607 (La. 1978). The Louisiana Legislature has passed only a handful of statutes allowing for punitive damages awards. John W. deGravelles & J. Neale deGravelles, *Louisiana Punitive Damages—A Conflict of Traditions*, 70 LA. L. REV. 579, 586–87 (2010). Currently, the Louisiana Civil Code and Revised Statutes only allow for punitive damages in instances which Plaintiff will concede do not apply here.[4]

[4] Punitive damages are allowed under the following statutes: (1) La. Civ. Code Art. 2315.4: additional damages; intoxicated defendant; (2) La. Civ. Code Art. 2315.7: criminal sexual activity during childhood; (3) La. Rev. Stat. §§ 9:2800.61 to 9:2800.76: Drug Dealer Liability Act; and (4) La. Civ. Code Art. 2315.8(A): domestic abuse caused by

Plaintiff suggests that former Civil Code Article 2315.3, which permitted punitive damages "if it [was] proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances," applies. *Lester v. Exxon Mobil Corp.*, 10-473 (La. App. 5th Cir. 5/31/12); 102 So. 3d 148, 149. The Johnson & Johnson Defendants are manufacturers of talcum powder. In *Williams v. A.C. & S., Inc.*, the court held that, although plaintiff's employment with defendants "required him to ***handle*** asbestos products," he could not recover punitive damages because "Defendants' fault, if any, arises from the manufacture, design, and labelling of the products—conduct which, although within the realm of products liability, lies outside the scope of article 2315.3." *Williams*, 700 F.Supp. 309, 310 (M.D. La.1988) (emphasis added). No Louisiana court has ever held that the manufacture of talcum powder falls within the ambit of former La. Civ. Code art. 2315.3.

In *Ross v. Conoco, Inc.*, the Louisiana Supreme Court held that defendants could not "be brought within the ambit of former [La. Civ. Code.] Article 2315.3 because the parties did not store, handle, or transport … vinyl chloride." *Ross v. Conoco*, Inc., 2002-0299 (La. 10/15/02), 828 So. 2d 546, 557. In so holding, the Court stated the following:

> [T]he plain language of former Article 2315.3 does not indicate that the legislature intended for parties engaged in activities ***beyond direct*** storage, handling, or transportation of a hazardous or toxic substance to fall within the ambit of the Article. ***Considering that this court's policy is to construe punitive statutes strictly, we see no reason to infer a legislative intent beyond the plain language of the statute.*** The legislature could easily have phrased the statute to encompass parties ***not engaged in the physical acts of storage, handling, or transportation***. It has phrased other penal statutes to encompass a wide range of participants, and not merely those directly engaged in the unlawful conduct.

*Id.* at 553 (emphasis added). The Court went on to explain that the legislative history of former Article 2315.3 supports the conclusion that only parties directly engaged in the prohibited conduct are targeted by the statute. *Id.* The court explained:

> The minutes of the June 4, 1984 meeting of the House Committee on Civil Law and Procedure reflect that the legislature passed this statute because it was troubled with the pro-defendant result in a particular case, *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, rendered by the United States Fifth Circuit Court of Appeals in 1982. 678 F.2d 1293 (5th Cir.1982). In that case, Rollins, Inc., a hazardous waste disposal company intentionally arranged for two million gallons of dichlorobutadiene, an extremely hazardous chemical waste product, to be deposited into a crude oil pipeline. *Id.* at 1300. Rollins, being aware of the potential danger

a wanton and reckless disregard for the rights and safety of a family or household member and resulting in serious bodily injury or severe emotional and mental distress.

> and resulting liability, hoped that the chemical's origin could not be traced when mixed with the oil. *Id.* When the hazardous chemical entered the pipeline, an explosion and fire occurred. *Id.* at 1303. Even though the company's conduct was intentional and egregious, the Fifth Circuit noted that Louisiana law only permitted the court to award the plaintiffs compensatory damages. *Id.* at 1319. The legislature thereupon decided to create a statute allowing punitive damages for the wanton or reckless storage, handling, or transportation of hazardous or toxic substances. . . .
>
> This history and the language of the article indicate a legislative determination that the public interest is adequately protected by punishing ***parties who wantonly or recklessly pollute our state and harm our citizens while storing, handling, or transporting hazardous or toxic substances.***

*Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02, 10–11); 828 So.2d 546, 553–54 (emphasis added). The Louisiana Supreme Court made clear in *Ross* that former article 2315.3 was enacted to address a very specific form of conduct not present in this case. Former article 2315.3 was intended to prevent parties from "recklessly pollut[ing] our state" with pollutants such as hazardous chemical waste. *Id.* The article was not targeted at manufacturing, design, and labeling of consumer products, and thus, it is not applicable as to the Johnson & Johnson Defendants.

Punitive damages statutes ***must be strictly construed***. *Ross v. Conoco*, Inc., 2002-0299 (La. 10/15/02), 828 So. 2d 546, 557 ("Considering that this court's policy is to construe punitive statutes strictly, we see no reason to infer a legislative intent beyond the plain language of the statute."). As the Johnson & Johnson Defendants were not engaged in the storage, handling, or transportation of hazardous or toxic substances targeted by the former La. Civ. Code art. 2315.3, Plaintiff cannot recover punitive damages against the Johnson & Johnson Defendants, and her claim for punitive damages should be dismissed.

## II. DECLINATORY EXCEPTION OF LACK OF PROCEDURAL CAPACITY

Plaintiff has not filed a motion for leave to file a supplemental and amending petition seeking to substitute a proper party plaintiff in place of Ms. Roy, who is deceased. Therefore, pursuant to Louisiana Code of Civil Procedure Article 926, the Johnson & Johnson Defendants assert the dilatory exception of lack of procedural capacity. The Court should sustain the exception of lack of procedural capacity and order Plaintiff to amend her petition to substitute a proper party plaintiff in place of the decedent.

## III. THE PETITION IS IMPERMISSIBLY VAGUE AND AMBIGUOUS

The petition "shall set forth … the material facts of the transaction or occurrence that is the

subject matter of the litigation." La. Code Civ. Proc. Art. 891(A). Louisiana's fact pleading system requires a plaintiff "to advise the opposing party of the material facts constituting the cause of action so that he will not be taken by surprise or be unprepared for trial and, therefore, at a disadvantage." *Barker v. Loxco, Inc.*, 432 So.2d 975, 976 (La. App. 1st Cir. 1983). The petition must "fairly inform the defendant of the nature of the cause of action alleged and include sufficient particulars to enable the defendant to prepare a defense." *Whipple v. Whipple*, 408 So.2d 390, 392 (La. App. 1st Cir. 1981).

In this case, the petition sets forth various counts applicable (allegedly) to all of the defendants collectively or to a subset of defendants. For the most part, the allegations are directed to "Defendants" collectively and do not specify which facts and conclusory allegations apply to which of the defendants. For example, count one is entitled "strict liability and negligence" and applies, allegedly, to "all defendants."[5] It alleges that the "Defendants were miners, sellers, users, distributors, suppliers, manufacturers, and/or held themselves out as manufacturers of the talcum powder PRODUCTS and/or were professional vendors of the talcum powder PRODUCTS that were purchased by, used by, and applied by Plaintiff."[6] Similarly, count two is entitled "supplier/distributor/manufacturer/seller liability" and applies, allegedly, to "all defendants."[7] It alleges that all defendants are liable for a laundry list of things, without enumerating which allegations apply to which defendant individually. It is unclear exactly which causes of action are being asserted and to which defendants those causes of action are directed.

The Johnson & Johnson Defendants should not have to guess which causes of action are being asserted and what the factual bases for those causes of action are. Nor should they have to guess which allegations apply to them and which allegations apply to other defendants. Moreover, the Johnson & Johnson Defendants should not have to waste the Court and the parties' resources filing dispositive motions to dismiss allegations that should never have been directed to the Johnson & Johnson Defendants in the first place. The petition must "fairly inform the defendant of the nature of the cause of action alleged and include sufficient particulars to enable the defendant

[5] Ex. A, Petition at p. 14.

[6] *Id.* at ¶ 54.

[7] *Id.* at p. 15.

to prepare a defense." *Whipple v. Whipple*, 408 So.2d 390, 392 (La. App. 1st Cir. 1981).

Count two enumerated in the petition is entitled "supplier/distributor/manufacturer/seller liability." This claim is vague and ambiguous, and Plaintiff should amend and set forth her allegations with greater specificity. Similarly, if there is any basis for asserting causes of action for strict liability, negligence, and/or civil conspiracy, Plaintiff needs to provide more specificity than provided in the petition.

Plaintiff's allegations are impermissibly vague. Under Article 891, the petition must contain specific facts explaining how Plaintiff alleges the Johnson & Johnson Defendants caused or contributed to her injuries. Plaintiff has failed to meet this standard. The Court should sustain the exception of vagueness and ambiguity and require Plaintiff to amend her petition to comply with Article 891.

**CONCLUSION**

The Johnson & Johnson Defendants respectfully pray that this Honorable Court sustain their exception of no cause of action as to Plaintiff's punitive damages claim, civil conspiracy claim, and "supplier/distributor/manufacturer/seller liability" claim, and sustain their exceptions of lack of procedural capacity and vagueness and ambiguity of the petition and require Plaintiff to amend her petition.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

KIM E. MOORE (LA Bar No. 18653)
JOHN W. SINNOTT (LA Bar No. 23943)
LEILA A. D'AQUIN (LA Bar No. 18884)
MEERA U. SOSSAMON (LA Bar No. 34797)
CLAIRE A. NOONAN (LA Bar No. 35940)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served on counsel for all parties to this proceeding by electronic mail and/or mailing the same to each by first-class mail, properly addressed and postage prepaid, on the 13th day of August, 2020.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

Case No. 2020-02718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:________________ ________________
DEPUTY CLERK

**RULE TO SHOW CAUSE**

Considering the foregoing Peremptory Exception of No Cause of Action and Dilatory Exceptions of Lack of Procedural Capacity and Vagueness and Ambiguity of the Petition filed by Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.;

**IT IS HEREBY ORDERED** that Plaintiff Lynne Roy show cause on the 6th day of November, 2020 at 11:00 a.m. via Zoom why the exception should not be sustained.

New Orleans, Louisiana, this _____ day of AUG 20 2020, 2020.

Ellen M. Hazeur
JUDGE

(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

**PLEASE SERVE:**

Plaintiff Lynne Roy, through her counsel of record:

Mickey Landry
Frank Swarr
Philip C. Hoffman
Matthew C. Clark
Landry & Swarr, LLC
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
T: (504) 299-1214
F: (504) 299-1215

and

**SERVICE WILL BE VIA LOUISIANA LONG ARM STATUTE**

Mark J. Buha
Dean Omar Branham Shirley, LLP
302 N. Market Street, Suite 300
Dallas, Texas 75202
T: (214) 722-5990
F: (214) 722-5991

VERIFIED

ATTORNEY'S NAME: Hoffman, Philip C 32277
AND ADDRESS: 1010 Common Street, Suite 2050 , New Orleans, LA 70112

FILED 2020 AUG 13 PM 2:45 CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY

RECEIVED MAY 1 3 2020 Law Department

CITATION - LONG ARM

TO: JOHNSON & JOHNSON

THROUGH: THE LOUISIANA LONG ARM STATUTE THE AGENT, STEVEN M. ROSENBURG
ONE JOHNSON & JOHNSON PLAZA, NEW BRUNSWICK , NJ 08933

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within thirty (30) days after the filing in the record of the affidavit of the individual attesting to the manner of delivery made through the "Long Arm Statute" under penalty of default.

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA April 13, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** [signature]
**Amber Darby, Deputy Clerk**

**SHERIFF'S RETURN**
(for use of process servers only)

PERSONAL SERVICE

On this ______ day of ______________ served a copy of the within

**Petition for Damages**

ON **JOHNSON & JOHNSON**

THROUGH: **THE LOUISIANA LONG ARM STATUTE THE AGENT, STEVEN M. ROSENBURG**

Returned the same day

______________ No. ______

Deputy Sheriff of ______________

Mileage: $ ______________

______ / ENTERED / ______

PAPER RETURN

______ / ______ / ______

SERIAL NO. DEPUTY PARISH

DOMICILIARY SERVICE

On this ______ day of ______________ served a copy of the within

**Petition for Damages**

ON **JOHNSON & JOHNSON**

THROUGH: **THE LOUISIANA LONG ARM STATUTE THE AGENT, STEVEN M. ROSENBURG**

by leaving same at the dwelling house, or usual place of abode, in the hands of ______________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said **JOHNSON & JOHNSON** being absent from the domicile at time of said service.

Returned the same day

______________ No. ______

Deputy Sheriff of ______________

VERIFIED



EXHIBIT A

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. SECTION DIVISION " "

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**ORIGINAL PETITION FOR DAMAGES**

COMES NOW Petitioner, Lynne L. Roy (also referred to herein as Plaintiff), by and through undersigned counsel, who respectfully represents as follows:

**INTRODUCTION**

1. This action arises out of Plaintiff, Lynne L. Roy's, diagnosis of malignant epithelioid mesothelioma and resulting injuries and damages, which were directly and proximately caused by her regular use and prolonged exposure to various asbestos-containing/contaminated talc- or talcum-power products and other products, including without limitation Johnson & Johnson Baby Powder, Cashmere Bouquet talcum powder product(s), Coty talcum powder product(s), Chanel talcum powder products and Kaiser Gypsum joint compound, that were mined, researched, designed, developed, tested, manufactured, produced, packaged, distributed, promoted, marketed, supplied, and/or sold by the Defendants named herein.

2. All claims in this action arise out of the Defendants' negligent, willful, and wrongful conduct in connection with mining, researching, designing, developing, testing, manufacturing, producing, packaging, distributing, transporting, storing, handling, promoting, marketing, supplying and/or selling of asbestos-containing/contaminated talcum powder and joint compound products, and other products, including without limitation Johnson & Johnson Baby Powder, Cashmere Bouquet talcum powder product(s), Coty talcum powder product(s), Chanel talcum powder products and Kaiser Gypsum joint compound, which were purchased by and used by Plaintiff and/or were used in close proximity to Plaintiff.



E-Filed

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

PARTIES, JURISDICTION, AND VENUE

3. Plaintiff, Lynne L. Roy, is resident person of the full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

4. Made Defendants herein are:

A. **COLGATE-PALMOLIVE COMPANY**, a Delaware corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

B. **CHANEL, INC.**, a New York corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: CT Corporation System, 28 Liberty Street, New York, NY 10005.

C. **COTY, INC., individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY**, a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Corporation Service Company, 80 State Street, Albany, NY 12207.

D. **CYPRUS AMAX MINERALS COMPANY, individually, d/b/a, and as successor-in-interest to SIERRA TALC COMPANY, UNITED SIERRA DIVISION OF CYPRUS MINES, CYPRUS INDUSTRIAL MINERALS COMPANY, AMERICAN TALC COMPANY, METROPOLITAN TALC COMPANY, INC., CHARLES MATHIEU INC., RESOURCE PROCESSORS, INC., and WINDSOR MINERALS, INC.**, a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Registered Agent Solutions, Inc., 300 W. Clarendon Avenue, Suite 240, Phoenix, AZ 85013.

E. **CYPRUS MINES CORPORATION, individually, d/b/a, and successor to SIERRA TALC COMPANY, AMOCO MINERALS CO., CYPRUS INDUSTRIAL MINERALS CO., and CYPRUS GEORESEARCH CO. a wholly-owned subsidiary of CYPRUS MINES CORP. and successor to CHARLES MATHIEU INC. (d/b/a CHARLES MATHIEU & CO. and CHAS. MATHIEU INC.), AMERICAN TALC COMPANY INC., METROPOLITAN TALC COMPANY INC., IMPERIAL PRODUCTS CO. INC., and RESOURCE PROCESSORS INC.**, a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Registered Agent Solutions, Inc., 300 W. Clarendon Avenue, Suite 240, Phoenix, AZ 85013.

F. **JOHNSON & JOHNSON**, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Steven M. Rosenberg, One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

G. **JOHNSON & JOHNSON CONSUMER INC., f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC.**, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

H. **K&B LOUISIANA CORPORATION (d/b/a RITE AID CORPORATION), individually and as successor-in-interest to KATZ & BESTHOFF, INC.**, a Louisiana corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.



E-Filed

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

I. **KAISER GYPSUM COMPANY, INC.**, a North Carolina corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Corporate Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

J. **PFIZER INC.**, a Delaware corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

K. **WHITTAKER CLARK & DANIELS, INC.**, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Joe Cobuzio, Esq., Tompkins, McGuire, Wachenfeld & Barry, LLP, 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068.

5. Orleans Parish is the proper venue for this action based on the following:

A. Venue is proper in Orleans Parish pursuant to Louisiana Civil Code of Civil Procedure Article 42(4) because Defendant Colgate-Palmolive Company is a foreign corporation licensed to do business in Louisiana and maintains its principal business establishment in Louisiana in Orleans Parish according to its Louisiana Secretary of State business filings.

B. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 74 because Orleans Parish is the parish where the wrongful conduct occurred ***and*** the parish where the Plaintiff sustained injuries and damages. Specifically:

i. Defendant **Colgate-Palmolive Company**, Defendant **Chanel, Inc.**, Defendant **Coty, Inc.**, Defendant **Cyprus Amax Minerals Company**, Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division Of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc., Defendant **Cyprus Mines Corporation**, individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., Defendant **Johnson & Johnson**, and Defendant **Johnson & Johnson Consumer, Inc.**, f/k/a Johnson & Johnson Consumer Companies, Inc., Defendant **K&B Louisiana Corporation** (d/b/a RiteAid Corporation) individually and as successor-in-interest to Katz & Besthoff, Inc., Defendant **Kaiser Gypsum Company, Inc.**, Defendant **Pfizer Inc.**, Defendant **Whittaker Clark & Daniels, Inc.**, (all of the above-listed Defendants collectively referred to as "Defendants") each committed and engaged in wrongful conduct in Orleans Parish by distributing, promoting, marketing, supplying, and selling defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish to the Plaintiff.

ii. As a result of each of the Defendants' aforementioned wrongful conduct, Plaintiff purchased the Defendants' defective talcum powder products from various K&B pharmacy locations in Orleans Parish, then applied to her person and was exposed to the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products while she was situated in and/or living in Orleans Parish.



E-Filed

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

iii. Plaintiff suffered injuries and damages in Orleans Parish each and every time she used and applied to her person the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish.

C. Venue is proper in Orleans Parish pursuant to Louisiana Revised Statute §22:1269(B)(1) because Orleans Parish is the parish where Plaintiff's injury occurred.

D. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 73 because each of the Defendants named herein caused and/or contributed to Plaintiff's purchase, use, and application of defective talcum powder products (specifically Avon talcum powder products, Cashmere Bouquet talcum powder, Chanel talcum powder products, Coty talcum powder products, Desert Flower talcum powder products, Elizabeth Arden talcum powder products, Faberge talcum powder products, Johnson & Johnson Baby Powder, Johnson & Johnson Shower-to-Shower talcum powder, K&B talcum powder products, Revlon talcum powder products, and Kaiser Gypsum joint compound) and her resulting injuries and damages (i.e., malignant epithelioid mesothelioma) as a result of these Defendants' negligent, willful, and wrongful conduct in connection with mining, researching, designing, developing, testing, manufacturing, producing, packaging, distributing, transporting, storing, handling, promoting, marketing, supplying and/or selling of their defective talcum powder products. Each of the Defendants named herein are therefore jointly and/or solidarily liable to the Plaintiff.

6. This Court has jurisdiction over Defendant **K&B Louisiana Corporation** (d/b/a RiteAid Corporation) individually and as successor-in-interest to Katz & Besthoff, Inc. (hereafter, "K&B") because K&B is domiciled in, and is a resident of, Louisiana.

7. This Court has jurisdiction over Defendant **Chanel, Inc.** (hereafter, "Chanel") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Chanel transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Chanel could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Chanel's marketing practices.

8. This Court has jurisdiction over Defendant **Coty, Inc.**, individually and as successor-in-interest to Noxzema Chemical Company (hereafter, "Coty") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Coty transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or



E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Coty could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Coty's marketing practices.

9. This Court has jurisdiction over Defendants **Cyprus Amax Minerals Company,** Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division Of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc. (hereinafter, "CAMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CAMC transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CAMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and CAMC's marketing practices.

10. **Cyprus Mines Corporation,** individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., (hereafter, "CMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CMC transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the CMC's marketing practices.

11. This Court has jurisdiction over Defendants **Johnson & Johnson** and **Johnson & Johnson Consumer, Inc.,** f/k/a Johnson & Johnson Consumer Companies, Inc., (hereafter, "Johnson & Johnson" or "Johnson & Johnson Defendants") pursuant to Louisiana Revised Statute

§13:3201(A)(1)-(3) and (8) because the Johnson & Johnson Defendants transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the Johnson & Johnson Defendants could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the Johnson & Johnson Defendants' marketing practices.

12. This Court has jurisdiction over Defendant **Kaiser Gypsum Company, Inc.** (hereafter, "Kaiser Gypsum") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Kaiser Gypsum transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Kaiser Gypsum could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Kaiser Gypsum's marketing practices.

13. This Court has jurisdiction over Defendant **Pfizer, Inc.** (hereafter, "Pfizer") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Pfizer transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Pfizer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Pfizer's marketing practices.

14. This Court has jurisdiction over Defendant **Whittaker Clark & Daniels, Inc.** (hereafter, "WC&D") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because WC&D transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, WC&D could have

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and WC&D's marketing practices.

15. This Court has jurisdiction over Defendant **Colgate-Palmolive Company** (hereafter, "Colgate-Palmolive") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Colgate-Palmolive transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Colgate-Palmolive could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Colgate-Palmolive's marketing practices.

16. The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

**BACKGROUND**

17. Ms. Roy was born on or around August 24, 1943. From as early as she can understand and remember until at least the 1990s, Ms. Roy used Johnson & Johnson Baby Powder talc or talcum powder products on herself on a regular basis and she also used the products on her three children during their upbringing. At other times, and on a regular basis during those times, Ms. Roy purchased, used, applied, and was exposed to Colgate-Palmolive's Cashmere Bouquet talcum powder, Chanel's talcum powder products and Coty's talcum powder products. On several remodeling projects between mid-1960s and mid-1970s, she (and others around her) purchased, used, applied, and was exposed to Kaiser Gypsum joint compound. Hereinafter, the products referred to above are referred to as the "PRODUCTS". These PRODUCTS were often purchased by the Plaintiff in Orleans Parish and used by the Plaintiff in Orleans Parish.

18. Plaintiff has spent much all of her life as a resident of Louisiana. She has lived nearly all of her life in the greater New Orleans area, including substantial parts of her life in Orleans Parish.

19. During the time Plaintiff lived in the greater New Orleans area, Plaintiff purchased Johnson & Johnson, Cashmere Bouquet, Coty and Chanel talc or talcum powder products from K&B pharmacy locations in Orleans Parish, subsequently used and applied said products to her



E-Filed

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

person and her children in Orleans Parish, and consequently became exposed to said PRODUCTS in Orleans Parish.

20. From the 1940s to at least the 1990s, Plaintiff used, applied, and/or was exposed to the Defendants' PRODUCTS on a consistent basis through the normal and foreseeable use and application of the PRODUCTS based on the Defendants' advertising, marketing, and labeling of said PRODUCTS.

21. Plaintiff sustained significant tortious exposures to the Defendants' PRODUCTS prior to 1988.

22. On or about January 7, 2020, Plaintiff was diagnosed with malignant mesothelioma, which was proximately caused by her regular use of, application of and exposure to Johnson & Johnson, Colgate-Palmolive, Coty, Chanel and Kaiser Gypsum PRODUCTS at various times from the 1940s to at least the 1990s.

23. As a direct and proximate result of Plaintiff's purchase, use, and application of the Defendants' unreasonably dangerous and defective talcum powder and joint compound PRODUCTS—which resulted in her unavoidable exposure to and resultant ingestion of talcum powder fibers and asbestos and asbestiform substances contained therein—and the Defendants' wrongful, willful, and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, supply and/or sale of such PRODUCTS, Plaintiff developed malignant mesothelioma and has suffered mentally, emotionally, financially, and physically.

24. Because of the latency period between Plaintiff's use of and exposure to Johnson & Johnson, Colgate-Palmolive, Coty, Chanel and Kaiser Gypsum PRODUCTS and the onset of malignant mesothelioma, and because of these Defendants' active concealment of the causes and effects of exposure to their PRODUCTS as well as the Defendants' continued representations that their PRODUCTS are safe for use, Plaintiff only recently discovered her injuries and the cause thereof, less than one year preceding this filing of this suit.

25. Plaintiff alleges that her exposure to the Defendants' PRODUCTS caused and/or contributed to her injuries, such that the Defendants' are jointly, severally, and *in solido* liable to Plaintiff for her resultant malignant mesothelioma diagnosis and damages alleged herein.



E-Filed

FACTS COMMON TO ALL COUNTS

26. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

27. At all times relevant hereto, including but not limited to, before, during, and even after Plaintiff's exposure period, the Defendants were in the business of mining, researching, designing, developing, testing, manufacturing, packaging, distributing, promoting, marketing, supplying and/or selling talcum powder for use in their talcum powder-based PRODUCTS, and introduced such PRODUCTS into the stream of interstate commerce knowing that such PRODUCTS possessed unreasonably dangerous qualities in the manner that they were marketed, advertised, and used.

28. At all times relevant hereto, the Johnson & Johnson Defendants, CAMC, CMC, Colgate-Palmolive Defendants, Coty Defendants, Chanel Defendants, K&B Defendants, WC&D Defendants and Kaiser Gypsum Defendants regularly transacted, solicited, and conducted business in all States of the United States, including in the State of Louisiana.

29. At all times relevant hereto, Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, K&B, Colgate-Palmolive and Kaiser Gypsum sold large volumes of defective talcum powder and joint compound PRODUCTS throughout the State of Louisiana.

30. At all times relevant hereto, Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, Colgate-Palmolive and Kaiser Gypsum manufactured and/or held themselves out as manufacturers of the PRODUCTS, and upon information and belief, the K&B Defendant repackaged, rebranded and/or sold the Johnson & Johnson Defendants' talcum powder products and sold them as its own, which Plaintiff purchased from K&B pharmacy stores in Orleans Parish.

31. For many years, CAMC, Pfizer, WC&D, Johnson & Johnson and Colgate-Palmolive mined the talc contained in their PRODUCTS. Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. Talc is regularly contaminated with asbestos and/or asbestiform contaminants that distinctly give rise to an increased risk in the potential for cancer. However, each of the Defendants continually advertised and marketed talc and their talcum PRODUCTS as safe for human use.

32. At all times relevant hereto, a feasible alternative to the Defendants' PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

no known health effects. Cornstarch powders have been sold and marketed for the same uses with the same, or nearly the same, effectiveness.

33. Certain raw talc miners and suppliers provided customers, which included CAMC, CMC, Pfizer Defendants, WC&D Defendants and Johnson & Johnson Defendants, with material safety data sheets for raw mineral talc. These material safety data sheets were supposed to convey adequate health and warning information to its customers.

34. Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Johnson & Johnson Defendants induced women through advertisements to dust themselves with this product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

35. During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan: "A sprinkle a day keeps odor away"; through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day"; and "SHOWER to SHOWER can be used all over your body."

36. Historically, Colgate-Palmolive's Cashmere Bouquet talcum powder was advertised as healthy for babies, children and adults to be applied at least once daily to maintain freshness, keep skin soft, mask odors with a floral fragrance, prevent chaffing and absorb moisture. Colgate-Palmolive manufactured Cashmere Bouquet talcum powder from approximately 1871 through and including 1985, and continued marketing the product until at least 1995, which is approximately when the United States Environmental Protection Agency reported that the presence of asbestos in talc makes it a human carcinogen. Based on present information and belief, the raw mineral talc that Defendant Colgate-Palmolive used in its Cashmere Bouquet talcum powder came from three different sources: the Val Chisone mine in Italy; a mine in Regal, North Carolina; and the Willow Creek mine, in Montana. Any individual using and/or applying Colgate-Palmolive's Cashmere Bouquet talc from the mid-1940s through at least 1985 would have used


E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

and been exposed to talc that originated from one or all of those locations. Numerous releaseability tests have been performed with Cashmere Bouquet talcum powder, and those tests have repeatedly demonstrated that significant concentrations of airborne asbestos, including the same three asbestos mineral species that have been historically identified, chrysotile, anthophyllite, and tremolite asbestos, are released when these historic products were used/applied in the same manner as they were used/applied by Plaintiff.

37. Colgate-Palmolive did not begin to test its products to determine whether asbestos was present until an FDA inquiry began in the 1970s, and by 1976, its own internal testing, conducted at the behest of Joseph Simko, head of Colgate-Palmolive's Research and Development Analytical Department, concluded that samples of its finished product Cashmere Bouquet as well as "preshipment" samples from suppliers, contained anthophyllite, tremolite and chrysotile in varying amounts. Colgate-Palmolive failed to report to the FDA tests performed both internally and by an outside laboratory confirming the presence of asbestos in both their finished products as well as talc shipments from their suppliers and other sources that were used to produce finished products, including Cashmere Bouquet talcum powder.

38. After 1976, Colgate-Palmolive continued to obtain results of testing performed internally and externally indicating the presence of asbestos in talc being used to manufacture the talcum powder product Cashmere Bouquet. Colgate-Palmolive received such a result regarding one of the sources of its talc in 1977, yet continued to use the contaminated source of this talc in its Cashmere Bouquet products. While infrequently performing its own testing after 1978, Colgate-Palmolive nevertheless received positive results for asbestos in samples it labeled "finished product" as late as 1984. Shortly after this result, Colgate-Palmolive delegated the entire manufacturing process for its Cashmere Bouquet brand to an outside contractor who continued to produce Cashmere Bouquet brand talcum powder on behalf and for the profit of Colgate-Palmolive using the same asbestos-containing talc sources from the same suppliers until the brand was sold in 1995.

39. In 1971, the first study was conducted that suggested an association between talc and cancer. This study was conducted by Dr. W. J. Henderson and others in Cardiff, Wales. In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk



E-Filed

of cancer in women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson visited Dr. Cramer to speak about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the cancer risks so that women could make an informed decision about their health. The Johnson and Johnson Defendants failed to do so.

40. Johnson & Johnson began receiving results of tests showing tremolite, anthophyllite, actinolite and/or chrysotile asbestos and/or fibers in its own talc products and the talc ore from which the talc came from since at least the 1950s.

41. Since; 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and cancer. Nearly all of these studies have reported an elevated risk for cancer associated with genital talc use in women.

42. In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers. In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to cancer.

43. On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O. Ralph Larson, informing his company that studies as far back as the 1960s "...show[ ] conclusively that the frequent use of talcum powder in the genital area pose[ ] a

2020-02718
A
Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

serious health risk" of cancer. The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about the cancer risk they pose.

44. In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of cancer.

45. In February of 2006, the International Association for the Research of Cancer (IARC)— part of the World Health Organization—published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of cancer in women from perineal use of talc.

46. In 2006, the Canadian government, under The Hazardous Products Act and associated Controlled Products Regulations, classified talc as a "D2A," "very toxic," "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

47. In 2006, a miner/supplier of raw mineral talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to customers, including the Johnson & Johnson Defendants, regarding the talc it sold for use in the Defendants' PRODUCTS. These MSDSs not only provided the warning information about the IARC classifications, but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc.

48. The Defendants knew or should have known through industry and medical studies, the existence of which were unknown to Plaintiff, of the health hazards inherent in the PRODUCTS they were manufacturing, marketing, testing, promoting, distributing and/or selling.

49. The Defendants had a duty to warn about the health hazards associated with the use of their PRODUCTS, but failed to inform customers and the end users of their PRODUCTS of



E-Filed

known catastrophic health hazards, including but not limited to the development of cancers like malignant mesothelioma, associated with the use of their PRODUCTS.

50. Instead of warning Plaintiff and the general public about these dangers, the Defendants ignored and/or actively concealed such information, and/or condoned such concealment, in order to sell their PRODUCTS and to avoid litigation by those who were injured from use of their PRODUCTS.

51. In addition, the Johnson & Johnson Defendants took a step further and procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding the safety of talc, with or without asbestos or asbestiform mineral content.

52. Because of the latency period between exposure and use of these PRODUCTS, and the onset of malignant mesothelioma, and because of the active and intentional concealment of their PRODUCTS's defects by the Defendants; Defendants' suppression of reports and adverse information; procurement and dissemination of false, misleading, and biased information regarding the safety of their PRODUCTS; and the fact that Defendants' continue to refute and deny reports and studies questioning the safety of its PRODUCTS and fail to warn about the health hazards inherent in their PRODUCTS, Defendants are estopped from relying on any statute of limitations defense.

**<u>COUNT ONE: STRICT LIABILITY and NEGLIGENCE</u>**
**(All Defendants)**

53. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein;

54. At all times relevant hereto, the Defendants were miners, sellers, users, distributors, suppliers, manufacturers, and/or held themselves out as manufacturers of the talcum powder PRODUCTS and/or were professional vendors of the talcum powder PRODUCTS that were purchased by, used by, and applied by Plaintiff.

55. At all times relevant hereto, the talcum powder PRODUCTS were expected to and did reach the retailer/supplier Defendants including, but not limited to, the K&B Defendant, from which Plaintiff purchased said PRODUCTS in Louisiana, including in Orleans Parish.

2020-02718
A
Section 16
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

56. The PRODUCTS manufactured, distributed, used, sold and/or supplied by the Defendants were defective, unreasonably dangerous, and unreasonably dangerous per se to Plaintiff who was an intended and foreseeable user and who was exposed to said PRODUCTS. These defects include, without limitation, the following:

a. the mining, manufacture, sale, supply, distribution and use of the PRODUCTS that are unreasonably dangerous, or unreasonably dangerous per se;

b. the mining, manufacture, sale, supply, distribution and use of the PRODUCTS that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as gynecological disease, cancer, and other health problems to the Plaintiff who would be foreseeably exposed in her regular use of said PRODUCTS;

c. lack of warning or of sufficient warning of the hazards these PRODUCTS would present in the course of their normal foreseeable use or intended use;

d. The Defendants' failure to warn consumers that if their PRODUCTS are used for a specific purpose, that purpose may have risks associated with that use such as illness or even death that were not obvious to consumers;

e. The Defendants' failure to provide a warning on their PRODUCTS that was and/or is understandable to the average user of the product, and is visible in such a way that an expected user would see the warning on their PRODUCTS;

f. The Defendants' failure to stay knowledgeable about a product that it is selling by failing to do reasonable research, testing, and investigation;

g. The Defendants' failure to recall their PRODUCTS once put on notice of the increased health risks associated with their use; and

h. Other defects or fault as may be revealed in discovery or at trial.

57. The Defendants are each liable to Plaintiff in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to the Plaintiff.

58. The defective conditions of the Defendants' PRODUCTS and their negligent acts and omissions as noted above, are a proximate cause of Plaintiff's injuries and damaged complained of herein.

**COUNT TWO: SUPPLIER/DISTRIBUTOR/MANUFACTURER/SELLER LIABILITY**
**(All Defendants)**

59. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:


E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

60. At all times relevant hereto, were each distributors, suppliers, sellers, manufacturers and/or facilitated the manufacture of, and/or held itself out as a manufacturer of the talcum powder PRODUCTS and/or were each a professional vendor of the talcum powder PRODUCTS that were purchased, used and applied by Plaintiff.

61. At all times relevant hereto, the Defendants each owed a duty to consumers, including Plaintiff herein, to exercise reasonable care in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, supply and/or sale of their PRODUCTS.

62. At all times relevant hereto, the Defendants each knew or should have known that the use of its talcum powder-based PRODUCTS in the perineal area significantly increases the risk of various cancers, including malignant mesothelioma, based upon scientific knowledge dating back to at least the 1960s, if not earlier.

63. At all times relevant hereto, the Defendants each knew or should have known that their raw mineral talc would be used in their PRODUCTS, and failed to take adequate steps to ensure that ultimate consumers of their PRODUCTS, including Plaintiff, received the information that the Defendants possessed on the carcinogenic properties of talc, including its risk of causing cancer, whether contaminated with asbestos (and/or asbestiform mineral content) or not.

64. At all times relevant hereto, the K&B Defendant knew or should have known that the Johnson & Johnson Defendants (directly and/or through subsidiaries) and Colgate-Palmolive were mining/producing raw mineral talc, and were not providing (and still has not provided) warnings to consumers of the PRODUCTS of the risk of cancer posed by talc contained therein.

65. At all times relevant hereto, the K&B Defendant knew or should have known that Colgate-Palmolive's Cashmere Bouquet and Johnson & Johnson's talcum powder products, which K&B distributed, manufactured and/or held itself out as the manufacturer of, marketed, and sold were defective and unreasonably dangerous.

66. The Defendants are each liable to Plaintiff as a professional vendor of the PRODUCTS, and as such, because of each Defendant's size, volume of business and merchandising practices, each Defendant knew or should have known of the defects of the PRODUCTS they sold, and are strictly liable and negligent for failing to warn the users, including Plaintiff, of potential health hazards from the use of their PRODUCTS.


E-Filed

67. Further, the Defendants each knew the specific use for which their refined talc products would be incorporated into other products and had unique expertise into the physical and chemical properties of their specially refined talc products as well as the health hazards presented by exposure to such talc products.

68. While the Defendants marketed their talcum PRODUCTS as uniquely safe and non-carcinogenic, they knew or should have known such claims were false and/or without adequate scientific support.

69. At all times relevant hereto, the Defendants knew or should have known that their PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use, and their failure to communicate this information constitutes negligence and are therefore liable to Plaintiff.

70. As a direct and proximate result of the Defendants' fraudulent misrepresentations, which were detrimentally relied upon by Plaintiff, and Defendants' negligent acts and omissions, Plaintiff was deceived as to the true nature and extent of the health hazards posed by their PRODUCTS and consequently purchased, used and was exposed to said PRODUCTS which caused her to develop malignant mesothelioma and to incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

71. Each and all of the above-mentioned acts and omissions by the Defendants, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

**COUNT THREE: STRICT LIABILITY and NEGLIGENCE**
**(Johnson & Johnson Defendants)**

72. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

73. The Johnson & Johnson Defendants were miners, manufacturers, sellers, distributers and/or suppliers of asbestiform and asbestos-containing/contaminated talc PRODUCTS, and were engaged in the business of using, manufacturing and/or facilitating the manufacturing of said talc PRODUCTS, or was a professional vendor of talc PRODUCTS in and around the State of Louisiana.

74. The Johnson & Johnson Defendants sold and/or supplied for sale the asbestiform and asbestos-containing/contaminated talc PRODUCTS that were defective, unreasonably

2020-02718
A
Section 16
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

dangerous, and unreasonably dangerous per se to Plaintiff who was an intended and foreseeable user and who was exposed to said PRODUCTS. The defects include, without limitation, the following:

a. The mining, manufacture, sale, supply, distribution and use of the PRODUCTS, including talc/talcum powder products, that are unreasonably dangerous and/or unreasonably dangerous per se;

b. The mining, manufacture, sale, supply, distribution and use of PRODUCTS that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as gynecological disease, cancer, and other health problems to Plaintiff, who would be foreseeably exposed to them as a result of their intended use;

c. Lack of warning or of sufficient warning of the hazards these PRODUCTS would present in the course of their normal foreseeable or intended use;

d. Lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these PRODUCTS;

e. Failure by the Johnson & Johnson Defendants to inspect these PRODUCTS to assure sufficiency and adequacy of warnings and safety cautions;

f. Failure to test or adequately test these PRODUCTS for defects or hazards that the Johnson & Johnson Defendants could have shown/presented the intended or foreseeable users;

g. Failure to truthfully report or adequately report the results of product testing and medical studies associated with the foreseeable hazards of these PRODUCTS by intended or foreseeable users;

h. Failure to properly design the PRODUCTS when the nature of the product did not require the use of asbestos minerals or where alternatively, equally suitable substitutes were readily available;

i. Defects in the composition and construction of the PRODUCTS;

j. Failure to recall these PRODUCTS mined, manufactured, sold, distributed and/or supplied;

k. Failure to properly package the PRODUCTS so that they could be safely transported, handled, stored, and/or disposed of;

l. Over warranting the safety of PRODUCTS that were manufactured, sold, supplied, and/or used by the Johnson & Johnson Defendants;

m. Liability to Plaintiff in strict liability for things in the Johnson & Johnson Defendants' garde, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to Plaintiff;

n. Knowing that the Johnson & Johnson Defendants' PRODUCTS caused harm, and failing to remove them from sale;

o. Knowing that the Johnson & Johnson Defendants' PRODUCTS contain(ed) asbestiform and asbestos-contaminated material and failing to remove the product from sale;



E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

p. Knowing that the Johnson & Johnson Defendants' PRODUCTS cause(d) harm to the end user, and failing to remove the PRODUCTS from sale for the purpose of financial gain;

q. Knowing that the Johnson & Johnson Defendants' PRODUCTS cause(d) harm to the end user, and hiding that information from the general public, which resulted in the end user failing to know of the harmful nature of the Johnson & Johnson Defendants' PRODUCTS; and

r. Other defects or fault that may be revealed during discovery or at trial.

75. Each and every act and omission above, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

76. At all times relevant hereto, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

77. The Johnson & Johnson Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of the Johnson & Johnson Defendants' failure to exercise ordinary care in developing, designing, testing, manufacturing, marketing, and/or selling their PRODUCTS.

78. As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop malignant mesothelioma, and her resulting injuries and damages.

**COUNT FOUR: FAILURE TO WARN**
**(All Defendants)**

79. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

80. At all times relevant hereto, the Defendants were engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

81. At all times relevant hereto, the Defendants each knew or should have known that the use of and exposure to their PRODUCTS significantly increased the risk of cancer based upon scientific knowledge dating back until the 1960s.

82. At all times relevant hereto, the Defendants' PRODUCTS were defective and unreasonably dangerous because, despite the Defendants' knowledge that their PRODUCTS were



E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

carcinogenic and could lead to an increased risk of cancer when applied to the body, including the female perineal area, which was and is a reasonably foreseeable use of the PRODUCTS, the Defendants failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk of cancer when their PRODUCTS are applied to the body, including to the female perineal area.

83. At all times relevant hereto, Plaintiff used the Defendants' PRODUCTS to powder her body, including her perineal area, a use that was reasonably foreseeable and for which the PRODUCTS were marketed, supplied, and sold. Plaintiff also used the Defendants' PRODUCTS to powder her children and her boots/shoes.

84. At all times relevant hereto, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of cancer associated with the use of the PRODUCTS by women to powder their perineal, area. The Defendants failed to properly and adequately warn and instruct the public, including Plaintiff as to the risks and benefits of the PRODUCTS given the public's need for this information.

85. Had Plaintiff received warning and/or instruction from the Defendants regarding the increased risk of cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

86. The Defendants had a continuing duty to warn consumers and the public, including Plaintiff, of the dangers associated with its PRODUCTS, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, said Defendants breached their state law duty.

87. Due to the absence of any warning or instruction by the Defendants as to the significant health and safety risks posed by their PRODUCTS as described herein, Plaintiff was unaware that said Defendants' PRODUCTS created an increased risk of cancer, as this danger was not known to the general public.

88. As a direct and proximate result of the Defendants' failure to warn Plaintiff of the increased risk of cancer, including malignant mesothelioma, associated with their PRODUCTS when used and applied in a foreseeable manner, despite their actual knowledge of this material

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

fact, Plaintiff developed malignant mesothelioma and has suffered injuries and damages, including pain, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**COUNT FIVE: BREACH OF WARRANTY**
**(All Defendants)**

89. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

90. At all times relevant hereto, the Defendants impliedly warranted that the talc and talcum-powder PRODUCTS in which they mined, manufactured, marketed, labeled, promoted, distributed and/or sold, and which the Plaintiff purchased and used, to be of merchantable quality and fit for its ordinary and intended uses, including for use by women, such as Plaintiff, in the perineal area.

91. At all times relevant hereto, the Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that their PRODUCTS were safe and effective for reasonably anticipated uses, including for use by women such as the Plaintiff, on their person. Moreover, each of the Defendants expressly warranted to consumers, including Plaintiff, that their PRODUCTS were safe and fit for the use intended; were well tested; were of merchantable quality, and that any side effects said PRODUCTS did produce were accurately reflected in the warnings.

92. In purchasing and using the Defendants' PRODUCTS, Plaintiff reasonably relied on these Defendants' express and implied warranties that their PRODUCTS were of merchantable quality and safe for their intended and foreseeable uses.

93. The Defendants breached the implied and express warranties of their PRODUCTS which were sold to and used by Plaintiff because the aforementioned warranties for said PRODUCTS were false, misleading, and inaccurate in that the said PRODUCTS were unsafe, unreasonably dangerous, not of merchantable quality, and not fit for their common, ordinary and intended uses.

94. The Defendants each knew or should have known that their implied and express warranties were false, misleading, and inaccurate because their PRODUCTS were in fact unsafe, unreasonably dangerous, and not fit for their common, ordinary and intended uses.

95. As a direct, foreseeable and proximate result of the Defendants' breaches of implied and express warranties as to the merchantable quality and safety of their PRODUCTS, Plaintiff

purchased and used said PRODUCTS which directly and proximately caused Plaintiff to develop malignant mesothelioma and suffer injuries and damages as alleged herein.

**COUNT SIX: DEFECTIVE DESIGN**
**(All Defendants)**

96. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

97. At all times relevant and material hereto, the Defendants each owed a duty of reasonable care to consumers, including Plaintiff, to design a reasonably safe product.

98. At all times relevant hereto, the Defendants each had a continuing duty to provide consumers, including Plaintiff, with warnings and other relevant information and data regarding the risks and dangers associated with the design of their PRODUCTS as it became or could have become available to said Defendants.

99. At all times relevant hereto, the Defendants' PRODUCTS were defectively designed by said Defendants in that, when the PRODUCTS left the hands of said Defendants, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

100. At all times relevant hereto, the PRODUCTS were defectively designed by the Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

101. At all times relevant hereto, the Defendants' PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

102. At all times relevant hereto, a reasonable and safer alternative design existed, which could have feasibly been employed by the Defendants to design a product with the same therapeutic purpose as the PRODUCTS. Despite knowledge of this reasonable and safer alternative design, J the Defendants failed to alter their PRODUCTS' design and formulation. The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

103. As a direct and proximate result of the defective design the Defendants' PRODUCTS, Plaintiff developed malignant mesothelioma and suffered injuries and damages alleged herein.

2020-02718
A
Section 16
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

**COUNT SEVEN: FRAUD**
**(Johnson & Johnson Defendants and Colgate-Palmolive)**

104. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

105. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive intentionally, willfully, and/or recklessly, with the intent to deceive, fraudulently misrepresented and/or fraudulently concealed material facts to consumers and users, including Plaintiff, with respect to their PRODUCTS.

106. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive fraudulently misrepresented and/or concealed material facts, concerning the increased risks of cancer posed by their talc PRODUCTS, from Plaintiff.

107. The fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a. The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "A sprinkle a day keeps the odor away," "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

b. The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c. The Johnson & Johnson Defendants, through the advertisements described above, among others, misrepresented to consumers, including Plaintiff, that the PRODUCTS were safe for use all over the body, including the female perineal area.

d. Despite actual knowledge of the health risks of the PRODUCTS, The Johnson & Johnson Defendants failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer. The Johnson & Johnson Defendants failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled, and sold the PRODUCTS as safe for



E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

public consumption and usage, including for use by women to powder their perineal areas.

108. The fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by Colgate-Palmolive include, but are not limited to the following:

a. Colgate-Palmolive, through the advertisements described above, among others, mispresented to consumers, including Plaintiff, that the PRODUCTS, were safe for use all over the body, including the female perineal area.

b. Despite actual knowledge of the health risks of the PRODUCTS, Colgate-Palmolive failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

c. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer, the Colgate-Palmolive failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

d. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, Colgate-Palmolive falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

109. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use their talc PRODUCTS.

110. Plaintiff would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS to her person, including in the perineal area, if she had been informed of the increased health risks associated with the use of the PRODUCTS in the perineal area.

111. The Johnson & Johnson Defendants' and Colgate-Palmolive's fraudulent conduct violates Louisiana Civil Code Article 1953, which states that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

112. At all times relevant hereto, Plaintiff relied on the Johnson & Johnson Defendants' and Colgate-Palmolive's misrepresentations concerning the safety of the talc PRODUCTS when purchasing the PRODUCTS and using them on her person, including on her perineal area, and her reliance was reasonable and justified.


E-Filed

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

113. As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' and Colgate-Palmolive's fraudulent conduct, Plaintiff purchased, used, applied, and was exposed to said Defendants' talcum powder PRODUCTS.

114. The Johnson & Johnson Defendants' and Colgate-Palmolive's wrongful conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

115. As a proximate result of the Johnson & Johnson Defendants' and Colgate-Palmolive's fraudulent and deceitful conduct, upon which Plaintiff reasonably relied, Plaintiff suffered injuries and damages as alleged herein.

**COUNT EIGHT: CIVIL CONSPIRACY**
**(All Defendants)**

116. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

117. The Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiff's injuries, disease, and/or illnesses by exposing the Plaintiff to harmful and dangerous PRODUCTS. Additionally, the Defendants knowingly agreed, contrived, confederated and conspired to deprive the Plaintiff of the opportunity of informed free choice as to whether to use the PRODUCTS or to expose her to said dangers.

118. The Defendants willfully misrepresented and suppressed the truth as to the risks and dangers associated with the normal and foreseeable use of and exposure to their PRODUCTS.

119. In furtherance of said conspiracies, the Defendants performed the following overt acts:

a. For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

i. Withheld, concealed and suppressed said medical information regarding the increased risk of cancer from Plaintiff; In addition, on July 27, 2005 Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the



E-Filed

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

ii. The Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, "...we believe these strategies paid off";

iii. Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicology consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c. By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose her to the dangers inherent in the use of and exposure to the PRODUCTS.

120. Plaintiff reasonably and in good faith relied upon the aforementioned false and fraudulent representations, omissions, and concealments made by the Defendants regarding the nature of their PRODUCTS and was deprived of an opportunity to make an informed decision concerning her use of, exposure to and contact with, Defendants' PRODUCTS.

121. Additionally, the fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a. The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

b. The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c. The Johnson & Johnson Defendants, through the advertisements described above, among others, misrepresented to consumers, including Plaintiff, that the PRODUCTS were safe for use all over the body, including the female perineal area.



E-Filed

2020-02718

A

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

d. Despite actual knowledge of the health risks of the PRODUCTS, the Johnson & Johnson Defendants failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer, the Johnson & Johnson Defendants failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

122. At all times relevant hereto, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use the talc PRODUCTS in the female perineal area.

123. Johnson & Johnson Defendants' fraudulent conduct violates Louisiana Civil Code Article 1953, which states that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

124. At all times relevant hereto, Plaintiff reasonably relied on Johnson & Johnson, Colgate-Palmolive, and K&B's fraudulent and deceitful conduct and misrepresentations concerning the safety of their PRODUCTS when purchasing the PRODUCTS and using said PRODUCTS.

125. Plaintiff would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS to her person, on her children, or in her shoes/boots if she had been informed of the increased health risks associated with the use of and exposure to the PRODUCTS.

126. By reason of the above, the Defendants are jointly and solidarily liable to Plaintiff for the injuries and damages sustained by virtue of industry-wide or enterprise liability. Alternatively, the Defendants are liable to Plaintiff for the injuries and damages sustained by virtue of their substantial share of the talcum products market within the area in which Plaintiff resides.

127. As a direct, foreseeable and proximate result of the Defendants' fraudulent and deceitful conduct and misrepresentations concerning the safety of their PRODUCTS, Plaintiff purchased, used, and was exposed to the Defendants' PRODUCTS, which directly and



E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

proximately caused her to develop malignant mesothelioma, and consequently incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

**COUNT NINE: REDHIBITION**
**(All Defendants)**

128. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

129. Plaintiff purchased, used, and was exposed to the Defendants' PRODUCTS in the State of Louisiana.

130. The Defendants' talcum powder PRODUCTS contained a vice or defect which render(ed) it useless or its use so inconvenient that buyers would not have purchased it.

131. The Defendants placed into the stream of commerce, promoted, and sold their talcum powder PRODUCTS. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520.

132. The talcum powder PRODUCTS placed into the stream of commerce, promoted, and sold by Defendants possessed a redhibitory defect because they were not manufactured and marketed in accordance with industry standards and/or were (and still are) unreasonably dangerous, as described above, which rendered their talc PRODUCTS useless or so inconvenient that it must be presumed that a buyer would not have bought the them had she known of the defect. Pursuant to La. C.C. art. 2520, Plaintiff is entitled to obtain a rescission of the sale of the Defendants PRODUCTS.

133. The Defendants' talcum powder PRODUCTS alternatively possessed a redhibitory defect because the they were not manufactured and marketed in accordance with industry standards and/or are/were unreasonably dangerous, as described above, which diminished the value of the their talc PRODUCTS so that it must be presumed that a buyer would still have bought it but for a lesser price.

134. As a manufacturer of these PRODUCTS, under Louisiana law, the Johnson & Johnson Defendants; the K&B Defendant; and the Colgate-Palmolive Defendant are deemed to know that their PRODUCTS possess(ed) a redhibitory defect. La. C.C. art. 2545.

135. The Defendants are liable as bad faith sellers for selling defective PRODUCTS with knowledge of the defect(s), and thus, are liable to Plaintiff for the price of their PRODUCTS, with


E-Filed

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

interest from the purchase date, as well as reasonable expenses occasioned by the sale of the PRODUCTS, namely their cosmetic talc PRODUCTS, and attorneys' fees.

**COUNT TEN: PUNITIVE DAMAGES**
**(All Defendants)**

136. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

137. The Defendants all acted maliciously, wantonly and recklessly, and demonstrated a conscious indifference and utter disregard of the health, safety and rights of others, by acting with an improper motive or vindictiveness and with outrageous or oppressively intentional misconduct, such actions representing a high degree of immorality and showing wanton dishonesty as to imply a criminal indifference to civil obligations, in one or more of the following ways:

a. The Defendants acted with a wanton and reckless disregard for public safety in the storage, handling and transportation of hazardous or toxic substances, namely asbestos-containing talcum powder PRODUCTS;

b. The Defendants knew of the unreasonably high risk of cancer posed by its PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action; and

c. Despite their knowledge of the high risk of cancer associated with the PRODUCTS and the hazardous and toxic nature of asbestos, the Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling.

138. The Defendants' conduct was wanton and reckless because they proceeded in disregard of a high and excessive degree of danger known to them or that would have been apparent to a reasonable person in their position.

139. The danger created by the Defendants' wanton and reckless conduct threatened or endangered public safety, including the Plaintiff's safety.

140. Asbestos and asbestos-contaminated talc, as well as talc with or without the presence of asbestos are hazardous or toxic substances.

141. The Defendants' wanton and reckless conduct occurred, inter alia, in their storage, handling and/or transportation of hazardous or toxic substances.

142. Plaintiff's injuries were caused by Defendants' wanton and reckless conduct and disregard for public safety in the storage, handling and transportation of their asbestos-containing talcum powder PRODUCTS to which Plaintiff was exposed and which resulted in her injuries.



E-Filed

143. An award of punitive damages is therefore warranted against the Defendants pursuant to former Louisiana Civil Code Article 2315.3, which applies to Plaintiff's exposures to the Defendants' asbestos-containing talcum powder PRODUCTS that occurred between September 1, 1984 and April 16, 1996.

**WHEREFORE**, Plaintiff prays for a judgment for punitive damages against the Defendants in a fair and reasonable amount sufficient to punish each of said Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

**DAMAGES**

144. **WHEREFORE**, on the basis of all of the foregoing premises set out in the above paragraphs, Plaintiff requests that each of the Defendants be served with this Petition and that there be judgment against these Defendants jointly, severally and in solido in a sum sufficient to compensate Plaintiff for the following:

a. all past, present and future medical costs or expenses related thereto;

b. all past, present and future lost earnings;

c. all past, present and future mental suffering, anguish, and pain;

d. all past, present and future physical pain and suffering;

e. loss of quality of life;

f. exemplary damages;

g. punitive damages; and

h. all other forms of relief provided by law or equity together with interest from the date of judicial demand until paid, and costs of these proceedings.

[THIS SPACE INTENTIONALLY LEFT BLANK]

2020-02718

**A**

Section 16

FILED
2020 MAR 19 A 11:12
CIVIL
DISTRICT COURT

WHEREFORE, Plaintiff demands judgment against each of the Defendants, and each of them, jointly and severally, for Damages, Special/Punitive Damages, for their costs expended herein, and for pre-judgment interest from the date of Plaintiff's filing this lawsuit, and for post-judgment interest at the rate allowed by law, and for such other relief, both at law and in equity, to which Plaintiff shows herself justly entitled.

Respectfully submitted,

Mickey P. Landry, Bar No. 22817
Frank J. Swarr, Bar No. 23322
Philip C. Hoffman, Bar No. 32277
Matthew C. Clark, Bar No. 31102
**LANDRY & SWARR, LLC**
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
T: (504) 299-1214
F: (504) 299-1215
Email: mlandry@landryswarr.com
Email: fswarr@landryswarr.com
Email: phoffman@landryswarr.com
Email: mclark@landryswarr.com
Other Email: fhernandez@landryswarr.com

and

Mark J. Buha (MO No. 63737)
To Be Admitted *Pro Hac Vice*
**DEAN OMAR BRANHAM SHIRLEY, LLP**
302 N. Market Street, Suite 300
Dallas, Texas 75202
T: (214) 722-5990
F: (214) 722-5991
Email: mbuha@dobslegal.com
Other Email: tgilliland@dobslegal.com

**ATTORNEYS FOR PLAINTIFF**

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA



E-Filed

2020-02718

A

Section 16

FILED

2020 MAR 19 A 11:12

CIVIL

DISTRICT COURT

**PLEASE SERVE THE FOLLOWING:**

**COLGATE-PALMOLIVE COMPANY**
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**CHANEL, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
CT Corporation System
28 Liberty Street
New York, NY 10005

**COTY, INC.**
(individually and as successor-in-interest to Noxzema Chemical Company)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Corporation Service Company
80 State Street
Albany, NY 12207

**CYPRUS AMAX MINERALS COMPANY**
(individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

**CYPRUS MINES CORPORATION**
(individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

**JOHNSON & JOHNSON**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**JOHNSON & JOHNSON CONSUMER INC.**
(f/k/a Johnson & Johnson Consumer Companies, Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX 75201



E-Filed

**K&B LOUISIANA CORPORATION**
(d/b/a RITE AID CORPORATION), (individually and as successor-in-interest to KATZ & BESTHOFF, INC.)
A Louisiana Corporation
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**KAISER GYPSUM COMPANY, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Corporate Service Company
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

**PFIZER INC.**
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**WHITTAKER CLARK & DANIELS, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Joe Cobuzio, Esq.
Tompkins, McGuire, Wachenfeld & Barry, LLP
3 Becker Farm Road, 4th Floor
Roseland, NJ 07068

FILED
2020 AUG 13 PM 2:45
CIVIL DISTRICT COURT

# SHERIFF'S RETURN COVER LETTER
## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

**MARLIN N. GUSMAN, SHERIFF ORLEANS PARISH**
421 Loyola Avenue, Suite 403 Civil Courts Bldg, New Orleans, LA 70112
Phone: (504) 679-6380 FAX: (504) 525-4912
Web: http://OPSO.us E-Mail: Info@opso.us

Case No.: 2020-02718 Division: A-16

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

PARTY TO BE SERVED: Plaintiff Lynne Roy

THROUGH: attorney of record Mickey Landry, Frank Swarr, Philip Hoffman and Matthew Clark

ADDRESS: Landry & Swarr, LLC, 1100 Poydras Street

SUITE/ROOM: Suite 2000

CITY: New Orleans, LA 70163

SPECIAL SERVICE INSTRUCTIONS:

DOCUMENT TYPE: Peremptory Exception of No Cause of Action and Dilatory Exceptions of Lack of Procedural Capacity and Vagueness and Ambiguity of the Petition

FILED BY ATTORNEY: John W. Sinnott BAR NO. 23943

DATE OF FILING: August 13, 2020

ATTACHMENTS/EXHIBITS: Memo and Rule to Show Cause

RECEIVED
2020 AUG 25 AM 9:46
CIVIL SHERIFF'S OFFICE ORLEANS PARISH

**RETURN FOR PERSONAL SERVICE**

On the ______ day of ______ 20 ______ served a copy of the within ______ On ______ in person ______

Return same day

______
Deputy Sheriff of Orleans Parish

00 2020-2718 / 4 / 9105
00 / TJ Badge # 526

SERIAL NO. DEPUTY PARISH

**DOMICILIARY SERVICE**

On this ______ day of ______ 20 ______ served a copy of the within ______ on ______ by leaving same at ______ domicile or usual place of abode ______ in the hand of ______ a person of suitable age and discretion, residing therein as a member of ______ domiciliary establishment, whose name and other facts connected with this service I learned by interrogating the said ______ the said ______ being absent from ______ domicile at time of said service.

Returned same day

______
Deputy Sheriff of Orleans Parish

Revised: July 17, 2020
Form 95

OPSO



Veronica Heymann 8/26/20 10:40

VERIFIED
09-10-2020

FILED BY
OPUS LEGALIS, LLC

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT**

**COME NOW** Petitioner, by and through undersigned counsel, who respectfully represents as follows:

1. Original Petitioner, Lynne L. Roy, died on May 29, 2020 as a result of mesothelioma, leaving the following Petitioners (surviving adult children) as her heirs, legal successors and survivors:

A. Melissa Lynne Roy Kaiser, daughter, an adult resident citizen and domiciliary of East Baton Rouge Parish, State of Louisiana;

B. Melanie C. Roy, an adult resident citizen and domiciliary of Jefferson Parish, State of Louisiana.

2. Petitioners Melissa Lynne Roy Kaiser and Melanie C. Roy substitute in the stead of Lynne Roy ("Decedent") as heirs, legal successors and survivors for the purpose of pursuing a survival action on her behalf to the full extent of Louisiana law, including without limitation Article 2315.1 of the Louisiana Civil Code.

3. As a direct and proximate result of the delictual conduct of the defendants, as set forth in Plaintiff's Petition for Damages, Decedent's heirs, Petitioners Melissa Lynne Roy Kaiser and Melanie C. Roy, have lost the love, affection, society, support, services and all other damages due pursuant to Louisiana Civil Code Article 2315.2, and asserts this wrongful death action against the defendants.

4. Petitioner reiterates all matters set forth in the original Petition for Damages, and allege same against each of the above defendants, as if set forth herein. All paragraphs, prayers

VERIFIED

and allegations contained in the original Petition for Damages are incorporated by reference in this First Supplemental and Amended Petition for Damages *in extenso,* and by supplementation or amendment indicated with Roman numbered sections below:

3. Petitioners now include Heirs of Lynne L. Roy, who died of mesothelioma on May 29, 2020 in the State of Louisiana, including daughters Melanie C. Roy and Melissa Lynne Roy Kaiser, who all bring wrongful death claims herein.

5. Orleans Parish is the proper venue for this action based on the following:

A. Venue is proper in Orleans Parish pursuant to Louisiana Civil Code of Civil Procedure Article 42(4) because Defendant Colgate-Palmolive Company is a foreign corporation licensed to do business in Louisiana and maintains its principal business establishment in Louisiana in Orleans Parish according to its Louisiana Secretary of State business filings.

B. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 74 because Orleans Parish is the parish where the wrongful conduct occurred ***and*** the parish where the Plaintiff sustained injuries and damages. Specifically:

i. Defendant **Colgate-Palmolive Company**, Defendant **Chanel, Inc.**, Defendant **Coty, Inc.**, Defendant **Cyprus Amax Minerals Company**, Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc., Defendant **Cyprus Mines Corporation**, individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., Defendant **Johnson & Johnson**, and Defendant **Johnson & Johnson Consumer, Inc.**, f/k/a Johnson & Johnson Consumer Companies, Inc., Defendant **K&B Louisiana Corporation** (d/b/a RiteAid Corporation) individually and as successor-in-interest to Katz & Besthoff, Inc., Defendant **Kaiser Gypsum Company, Inc.**, Defendant **Pfizer Inc.**, Defendant **Whittaker Clark & Daniels, Inc.**, (all of the above-listed Defendants collectively referred to as "Defendants") each committed and engaged in wrongful conduct in Orleans Parish by distributing, promoting, marketing, supplying, and selling defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish to the Plaintiff.

ii. As a result of each of the Defendants' aforementioned wrongful conduct, Plaintiff purchased the Defendants' defective talcum powder products from various K&B pharmacy locations in Orleans Parish, then applied to her person and was exposed to the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products while she was situated in and/or living in Orleans Parish.

iii. Plaintiff suffered injuries and damages in Orleans Parish each and every time she used and applied to her person the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish.

C. Venue is proper in Orleans Parish pursuant to Louisiana Revised Statute §22:1269(B)(1) because Orleans Parish is the parish where Plaintiff's injury occurred.

D. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 73 because each of the Defendants named herein caused and/or contributed to Plaintiff's purchase, use, and application of defective asbestos-containing products (specifically Cashmere Bouquet talcum powder products, Chanel talcum powder products, Coty talcum powder products, Johnson & Johnson talcum powder products, and Kaiser Gypsum joint compound) and her resulting injuries and damages (i.e., malignant epithelioid mesothelioma) as a result of these Defendants' negligent, willful, and wrongful conduct in connection with mining, researching, designing, developing, testing, manufacturing, producing, packaging, distributing, transporting, storing, handling, promoting, marketing, supplying and/or selling of their defective talcum powder products. Each of the Defendants named herein are therefore jointly and/or solidarily liable to the Plaintiff.

10. This Court has jurisdiction over Defendant **Cyprus Amax Minerals Company,** Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division Of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc. (hereinafter, "CAMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CAMC transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CAMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and CAMC's marketing practices.

11. This Court has jurisdiction over Defendant **Cyprus Mines Corporation,** individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., (hereafter, "CMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CMC transacted business in this state;

contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the CMC's marketing practices.

A. Cyprus Mines Corporation was incorporated in the State of New York ("CMC-NY") in March 1916. In 1919, Inyo Talc Company formed and then changed its name to Sierra Talc Company in about 1922. Up through 1964, the Sierra Talc Company was involved in the mining, processing and sale of talc. In July 1964, CMC-NY acquired Sierra Talc Company and it became a division of CMC-NY. Shortly thereafter, the division changed its name to Sierra Talc & Chemical Company. Around the same time, CMC-NY acquired the assets of United Clay Mines Corporation and it merged with Sierra Talc & Chemical Company to create United Sierra. United Sierra was a division of CMC-NY and an incorporated wholly-owned subsidiary of CMC-NY. United Sierra continued to mine, process and sell talc thereafter. In 1974, United Sierra changed its name to Cyprus Industrial Minerals Company ("CIMC"). CIMC was a division of CMC-NY and, initially, a wholly-owned subsidiary of CMC-NY. CIMC continued to mine, process and sell talc thereafter.

B. In 1979, Standard Oil Company created Amoco CYM Corporation, a Delaware Corporation, for the purpose of acquiring CMC-NY by merger. CMC-NY merged into Amoco CYM Corporation in September 1979. Amoco CYM Corporation changed its name to Cyprus Mines Corporation of Delaware ("CMC-DE"). Standard Oil of Indiana gave its capital of CMC-DE to Amoco Minerals Company and CMC-DE became a wholly-owned subsidiary of Amoco Minerals Company in September 1980. Standard Oil of Indiana became Amoco Corporation. In 1985, Amoco Minerals Company changed its name to Cyprus Minerals Company. Cyprus Minerals Company transferred some of its assets to its wholly-owned subsidiary CMC-DE. In July 1985, Amoco Corporation spun off Cyprus Minerals Company. In 1985, CIMC was still a division of CMC-DE involved in the mining, processing and sale of talc and continued to do so until at least June 1992.

C. In 1993, Cyprus Minerals Company merged with Amax, Incorporated and changed its name to Cyprus Amax Minerals Company of Delaware. CMC-DE was thereafter a wholly-owned subsidiary of Cyprus Amax Minerals Company.

D. In 1933, Charles Mathieu Inc. ("Mathieu") was incorporated in the State of New Jersey. From 1933 to 1979, Mathieu was the exclusive importer and agent for Italian talc mined in the Val Chisone region. Mathieu owned three subsidiaries: American Talc Company, Metropolitan Talc Company and Resource Processors, Inc. They assisted in the import, mining and processing of Mathieu's talc products, including Italian talc. After CMC-NY initially entered an agreement to acquire Mathieu and its subsidiaries through a stock purchase agreement in May 1979, CMC-DE learned of potential liability of Mathieu in a mesothelioma case and, as a result, authorized its wholly-owned subsidiary Cyprus Georesearch Company ("Cyprus Geo") to negotiate with Mathieu. In August 1979, Cyprus Geo entered a purchase agreement with Mathieu and its subsidiaries. As part of

this agreement, Mathieu sold the asset of the exclusive right to import, process and sell Italian talc in the United States. Mathieu sold Cyprus Geo its entire inventory of crude Italian talc. Metropolitan Talc Company transferred all of its real property and equipment to Cyprus Geo. In October 1979, Cyprus Geo merged with and into CMC-DE. Cyprus Geo and then CMC-DE assumed all talc operations of Mathieu, continued to employ Mathieu's employees and continued to sell the same talc products. All of Mathieu's liability insurance (with the exception of fire and mining reclamation) lapsed shortly after this agreement.

E. In the 1990s, Cyprus Mines Corporation and Cyprus Amax Minerals Company have given sworn statements that they formerly went by the names Sierra Talc Company, United Sierra and Cyprus Industrial Minerals Company. In multiple lawsuits in the 2000s, Cyprus Mines Corporation and Cyprus Amax Minerals Company affirmatively asserted that they were entitled to insurance coverage for claims alleging asbestos-related injury caused by exposure to talc sold by Sierra Talc Company, United Sierra and Cyprus Industrial Minerals Company.

F. In 1965, Docrom, Inc. ("Docrom"), a wholly-owned subsidiary of Johnson & Johnson, was incorporated to purchase the assets and liabilities of Eastern Magnesia Talc Company, Inc. ("EMT"). After doing so, Docrom changed its name to EMT in September 1965. In 1967, EMT changed its name to Windsor Minerals, Inc. ("WMI"). From 1967 to 2003, WMI sold and supplied Vermont talc to Johnson & Johnson to make Johnson's Baby Powder and Shower-to-Shower talc products. In January 1989, CMC-DE acquired WMI. CMC and WMI entered into an agreement whereby Johnson & Johnson sold all of its stock in WMI to CMC and CMC's WMI would continue deliver Vermont talc for use in Johnson's Baby Powder and Shower-to-Shower. In April 1989, WMI changed its name to Cyprus Windsor Minerals Corporation ("CWMC"). CMC-DE, through CWMC, took over the talc mining and milling operation of the former WMI completely. From early 1989 to June 1992, CWMC sold thousands of tons of Vermont talc to Johnson & Johnson.

G. Mathieu supplied Italian talc to Johnson & Johnson for use in Johnson's Baby Powder from 1946 to 1966. From 1967 to 1979, WMI was the sole supplier of talc for Johnson's baby powder. In 1980, CMC-DE sold hundreds of tons of Italian talc to Johnson & Johnson. Thereafter, Johnson & Johnson resumed the use of Vermont talc supplied by WMI and subsequently CWMC until about 2003. CMC-NY and CMC-DE through United Sierra and/or CIMC sold Italian talc and other talc products to Pfizer's Coty division for use in its facial powder products, Chanel for use in its dusting powders and Colgate-Palmolive for use in Cashmere Bouquet during periods in which Ms. Roy used the respective products. CMC-NY and CMC-DE knew, and it was foreseeable, that Johnson & Johnson, Coty, Chanel and Colgate-Palmolive sold and would sell their talcum powder products throughout the United States, including Louisiana. Sierra Talc Company, United Sierra and CIMC sold talc in the State of Louisiana throughout the 1940s to 1990s.

WHEREFORE, Petitioner prays that the Petition for Damages be supplemented in the above particulars and that, after due proceedings had, there be judgment herein in favor of Petitioner in appropriate amounts to be determined by the fact finder, said judgments against all defendants, jointly, severally, and *in solido*, said amounts to bear legal interest from the date of judicial demand until paid, for all costs of these proceedings, and for all general and equitable

relief.

Respectfully submitted,

**LANDRY & SWARR, LLC**
Mickey P. Landry, Bar No. 22817
Frank J. Swarr, Bar No. 23322
Philip C. Hoffman, Bar No. 32277
Matthew C. Clark, Bar No. 31102
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
T: (504) 299-1214
F: (504) 299-1215
Email: mlandry@landryswarr.com
Email: fswarr@landryswarr.com
Email: phoffman@landryswarr.com
Email: mclark@landryswarr.com
Other Email: thernandez@landryswarr.com

and

Mark J. Buha (MO No. 63737)
Admitted *Pro Hac Vice*
**DEAN OMAR BRANHAM SHIRLEY, LLP**
302 N. Market Street, Suite 300
Dallas, Texas 75202
T: (214) 722-5990
F: (214) 722-5991
Email: mbuha@dobslegal.com
Other Email: mfurino@dobslegal.com

**ATTORNEYS FOR PETITIONERS**

**SERVICE INSTRUCTIONS ON THE FOLLOWING PAGE**

**PLEASE SERVE THE FOLLOWING:**

**COTY, INC.**
(individually and as successor-in-interest to Noxzema Chemical Company)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Corporation Service Company
80 State Street
Albany, NY 12207

**K&B LOUISIANA CORPORATION**
(d/b/a RITE AID CORPORATION), (individually and as successor-in-interest to KATZ & BESTHOFF, INC.)
A Louisiana Corporation
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**PFIZER INC.**
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**PETITIONERS WILL SERVE ALL OTHER DEFENDANTS THROUGH COUNSEL OF RECORD PURSUANT TO LA. C. C .P. 1313.**

FILED

2020 AUG 19 PM 3:21

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

DISTRICT COURT

STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**ORDER**

Let the above and foregoing *First Supplement and Amendment* to the original *Petition for Damages* be filed as prayed for.

SO ORDERED this the ____ day of AUG 19 2020, 2020.

Ellen M. Hazeur
DISTRICT JUDGE – DIVISION "A"

(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

VERIFIED
8-20-20

FILED
SEP 11 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2020-02718 DIV/SEC: "A-15"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL

FILED:______________________ ______________________
DEPUTY CLERK

**WHITTAKER, CLARK & DANIELS, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Whittaker Clark & Daniels, Inc. ("WCD" or "Defendant"), who answers the First Supplemental and Amended Petition for Damages filed by Plaintiffs as follows:

I.

The allegations of Paragraph 1 of the First Supplemental and Amended Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

II.

The allegations of Paragraph 2 of the First Supplemental and Amended Petition for Damages are denied for lack of sufficient information to justify a belief therein.

III.

The allegations of Paragraph 3 of the First Supplemental and Amended Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 3 of the First Supplemental and Amended Petition for Damages are denied for lack of sufficient information to justify a belief therein.

IV.

The allegations of Paragraph 4 of the First Supplemental and Amended Petition for Damages are denied insofar as they may pertain to WCD. In all other respects, the allegations of

VERIFIED 09/21/20

Paragraph 4 of the First Supplemental and Amended Petition for Damages are denied for lack of sufficient information to justify a belief therein.

V.

The allegations of the mis-numbered, second Paragraph 3 of the First Supplemental and Amended Petition for Damages are denied for lack of sufficient information to justify a belief therein.

VI.

The allegations of Paragraph 5 of the First Supplemental and Amended Petition for Damages, including all subparts, are denied insofar as they may pertain to WCD. In all other respects, the allegations of Paragraph 5 of the First Supplemental and Amended Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

VII.

The First Supplemental and Amended Petition for Damages does not include Paragraph 6 through Paragraph 9. As such, no response is required.

VIII.

The allegations of Paragraph 10 of the First Supplemental and Amended Petition for Damages do not require a response from this Defendant. In the abundance of caution and in the event a response is required, the allegations of Paragraph 10 of the First Supplemental and Amended Petition for Damages are denied for lack of sufficient information to justify a belief therein.

IX.

The allegations of Paragraph 11 of the First Supplemental and Amended Petition for Damages, including all subparts, do not require a response from this Defendant. In the abundance of caution and in the event a response is required, the allegations of Paragraph 11 of the First Supplemental and Amended Petition for Damages, including all subparts, are denied for lack of sufficient information to justify a belief therein.

X.

WCD denies the allegations contained in Plaintiffs' Prayer for Damages. WCD further denies that the Petitioners are entitled to judgment against it jointly, severally, or collectively for

FILED
SEP 11 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

general damages, special damages, punitive and/or exemplary damages, or in any amount for any reason whatsoever.

XI.

Any introductory or unnumbered Paragraphs of the First Supplemental and Amended Petition for Damages are denied insofar as they pertain to WCD. In all other respects, any introductory or unnumbered Paragraphs of the First Supplemental and Amended Petition for Damages are denied for lack of sufficient information to justify a belief therein.

XII.

WCD re-asserts, re-avers, and re-alleges each and every response, denial, defense, claim, allegation, and exception previously set forth in its Answers and Affirmative Defenses to the Original Petition for Damages and pleads same as if copied in extenso.

**WHEREFORE**, Defendant, Whittaker Clerk & Daniels, Inc., prays that its Answer be deemed good and sufficient and that after all legal delays and due proceeding had, there be judgment herein in favor of Defendant, WCD, and against Plaintiffs, dismissing the Petition for Damages and First Supplemental and Amended Petition for Damages, with prejudice and at Plaintiffs' costs. Defendant further prays for all general and equitable relief.

Respectfully Submitted,

MARON MARVEL BRADLEY ANDERSON & TARDY LLC

[signature]
RICHARD M. CRUMP (#30460)
SHELLEY K. NAPOLITANO (#34692)
Place St. Charles
201 St. Charles Avenue, Suite 2411
New Orleans, LA 70170
Telephone: (504) 684-5100
Facsimile: (504) 613-0067
*Attorneys for Attorneys for Defendant, Whittaker Clark & Daniels, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all known counsel for all parties to this proceeding by telecopier, federal express, courier, electronic mail and/or mailing a copy of same to each by First Class United States mail, properly addressed and postage prepaid on this 11th day of September, 2020.

[signature]
SHELLEY K. NAPOLITANO

FILED

2020 AUG 22 PM 10: 48

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION: 16 DIVISION: "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________

DEPUTY CLERK

**K&B'S PEREMPTORY EXCEPTIONS**
**OF NO CAUSE OF ACTION AND PRESCRIPTION**

**NOW INTO COURT**, through undersigned counsel, comes Defendant K&B Louisiana Corporation (hereinafter "K&B"), with peremptory exceptions of no cause of action and prescription seeking dismissal of several claims set forth against it in the Original Petition and First Supplemental Amending Petition filed on behalf of Lynne L. Roy ("Plaintiff").

Plaintiff's claims of strict liability (Count One), failure to warn (Count Four), breach of implied warranty (Count Five), and defective design (Count Six) fail to state a cause of action against K&B because Plaintiff does not allege K&B was the "manufacturer" of any product that allegedly harmed Plaintiff.

Plaintiff's claim for civil conspiracy (Count Eight) should be dismissed because a civil cause of action for conspiracy is not a valid claim under Louisiana law. Alternatively, even if the Court upholds the civil conspiracy claim generally, the claim fails against K&B because there is no underlying tortious conduct to predicate the claim on.

Plaintiff's claim for redhibition (Count Nine) has expired because K&B has not sold anything in over two decades LA. CODE CIV. PROC. art. 2534 (a claim for redhibition expires the earlier of four years from the day of delivery of the thing to the buyer or one year from the day the defect was discovered by the buyer).

Finally, Plaintiff's claim for punitive damages (Count Ten) should be dismissed because the remedy is generally unavailable in Louisiana and none of the limited grounds for punitive damages are alleged here.

RECEIVED
DIVISION "A"

VERIFIED
8-28-20

Respectfully submitted,

Madison Sharko

Kyle W. Siegel, 35367
Madison A. Sharko, 36670
Shaun P. McFall, 37225
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
ksiegel@barrassousdin.com
msharko@barrassousdin.com
smcfall@barrassousdin.com

-and-

Lambert J. Hassinger, Jr., 21683
Jeffrey J. Siemann, 34765
Ravi P. Varma, 38472
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
4040 One Shell Square
701 Poydras Street
New Orleans, LA 70139
Telephone: (504) 525-6802
Facsimile: (504) 525-2456

*Attorneys for K&B Louisiana Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel by electronic mail and facsimile and/or by placing same in the United States Mail, postage prepaid and properly addressed, this 28th day of August, 2020.

Madison Sharko

*1753416_1*

FILED

2020 AUG 28 AM 10:48

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CIVIL DISTRICT COURT

NO. 2020-02718 SECTION: 16 DIVISION: "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________

DEPUTY CLERK

**RULE TO SHOW CAUSE**

Considering the foregoing Peremptory Exceptions of No Cause of Action and Prescription filed by the Defendant K&B Louisiana Corporation,

**IT IS ORDERED** that the Plaintiff appear and show cause on the 6th day of November, 2020 at 11:00 A.M. via Zoom why the Peremptory Exception of No Cause of Action and Prescription should not be granted and Plaintiff's claims against Defendant K&B Louisiana Corporation dismissed with prejudice.

**NEW ORLEANS, LOUISIANA,** this ____ day of SEP 0 2 2020, 2020.

JUDGE
Division C

APPROVED DATE ONLY

DIVISION "A"

VERIFIED

FILED

2020 AUG 28 AM 10: 48

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION: 16 DIVISION: "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________

DEPUTY CLERK

**K&B'S MEMORANDUM IN SUPPORT OF ITS**
**PEREMPTORY EXCEPTIONS OF NO CAUSE OF ACTION AND PRESCRIPTION**

Defendant K&B Louisiana Corporation ("K&B") respectfully submits this Memorandum in support of its Peremptory Exceptions of No Cause of Action and Prescription. Plaintiffs Melissa Kaiser and Melanie Roy's ("Plaintiffs") First Supplemental and Amending Petition for Damages, Survival, and Wrongful Death With Incorporated Motion for Leave of Court ("Amended Petition") fails to state any actionable claim against the retailer, K&B.[1] The Amended Petition fails to allege K&B has done anything harmful besides selling talcum powder products manufactured by other Defendants. Without particularized factual allegations regarding a retailer's knowledge of the alleged dangers of talcum powder products—which are absent from the pleadings—such conduct cannot be a basis for liability in Louisiana as a matter of law. Thus, K&B should be dismissed with prejudice from this matter.

**INTRODUCTION**

The Court should dismiss K&B from this case for a simple reason: K&B did not make the things Plaintiffs claim harmed Ms. Roy.

In the present product liability action, Plaintiffs allege that Ms. Roy developed malignant mesothelioma from decades-long use of certain talcum powder products purchased from K&B

[1] Original Petitioner, Lynne Roy, passed away on May 29, 2020. On August 14, 2020, Plaintiffs filed the Amended Petition, substituting themselves as petitioners in the action as heirs and legal successors to Ms. Roy, and reiterating all matters set forth in the original Petition for Damages ("Petition"). *See* Amended Petition ¶ 4 ("All paragraphs, prayers, and allegations contained in the original Petition for Damages are incorporated by reference in this First Supplemental and Amended Petition for Damages *in extenso*[.]"). The Amended Petition alleges no new facts regarding K&B and only references K&B twice, repeating the venue allegations set forth in the Petition. *Compare* Amended Petition at ¶ 5(B) *and* Petition at ¶ 5(B).



VERIFIED

stores in Louisiana. (*See, e.g.*, Petition ¶ 22). K&B was a regional retailer that operated retail stores in and around Louisiana and the southeast until 1997. Plaintiffs allege that Ms. Roy used talcum powder products purchased from K&B that were manufactured by Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, and Kaiser Gypsum. *Id.* Plaintiffs do not allege that Ms. Roy used any K&B-brand talcum powder. Therefore, Plaintiffs cannot recover against K&B in strict product liability, which is reserved for claims against the manufacturers of defective products. Plaintiffs instead can only try to recover against K&B for claims of negligence or redhibition premised on its sale of the allegedly defective products of others. But Plaintiffs' allegations on this point are deficient as well. Because Plaintiffs wholly have failed to allege facts that would show K&B knew or should have known any of the products it sold were defective, their negligence claim fails as a matter of law and their redhibition claim is untimely. Based on their pleadings, Plaintiffs have no claim against K&B, which should be dismissed from this suit.

## ARGUMENT

K&B's peremptory exceptions of no cause of action and prescription should be maintained. "The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition." *Becnel v. Grodner*, 2007-1041, p. 2 (La. App. 4 Cir. 4/2/08), 982 So. 2d 891, 894. Because Louisiana is a fact-pleading state, "it is insufficient to state a cause of action where the petition simply states legal or factual conclusions without setting forth facts that support the conclusions." *Brookewood Invs. Co., L.L.C. v. Sixty-Three Twenty-Four Chef Menteur Highway, L.L.C.*, 07-0050, pp. 3-4 (La. App. 4 Cir. 5/16/07), 958 So. 2d 1200, 1201.

Furthermore, Louisiana law is well-settled that "[n]o evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action." *Becnel*, 2007-1041 at p. 2, 982 So. 2d at 894; *see also Fink v. Bryant*, 2001-0987, pp. 3–4 (La. 11/28/01), 801 So. 2d 346, 349 (same). This is because "[t]he peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading." *Becnel*, 2007-1041 at p. 2, 982 So. 2d at 894. As a result, "[t]he exception is triable on the face of the papers." *Id.* Moreover, a plaintiff cannot defeat an exception of no cause of action by seeking discovery. As the Fourth Circuit

explained, a plaintiff "is not permitted to take discovery and go on a fishing expedition in the mere hope [she] might find something of substance to overcome the objection raised by the peremptory exception." *NOLA 180 v. Harrah's Operating Co.*, 2012-0072, p. 6 (La. App. 4 Cir. 5/16/12), 94 So. 3d 886, 890 (quoting *Gates v. Hanover Ins. Co.*, 2018 So. 2d 648, 653 (La. App. 4 Cir. 1969)), *writ denied*, 2012-1391 (La. 10/8/12), 98 So. 3d 855.

A defendant may raise the peremptory exception of prescription at "any stage of the proceeding in the trial court prior to a submission of the case for a decision." LA. CODE CIV. PROC. art. 928(B). If prescription is evident on the face of the pleadings, then the plaintiff—not the movant—bears the burden of showing the action is timely. *See Scott v. Zaheri*, 2014-0726, pp. 7–8 (La. App. 4 Cir. 12/3/14), 157 So. 3d 779, 785. Unlike the exception of no cause of action, "[t]he trial court is not bound to accept as true the allegations of a plaintiff's petition in its trial of the peremptory exception [of prescription]," and evidence may be introduced regarding the timeliness of the action. *Zaheri*, 2014-0726 at pp. 7–8, 785.

## I. <u>The Court Must Determine the Applicable Product Liability Law.</u>

Under current law, suits for injuries caused by products are governed by the Louisiana Product Liability Act (La. R.S. 9:2800.51, *et seq.*) (the "LPLA"), which provides the exclusive theories of liability against product manufacturers for injuries caused by their products. La. R.S. 9:2800.52 ("A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."). But the LPLA "alters substantive rights" and therefore is "not retroactive." *Gilboy v. Am. Tobacco Co.*, 582 So. 2d 1263, 1264 (La. 1991). Thus, pre-LPLA law applies to actions that accrued prior to the law's enactment on September 1, 1988. *Brown v. R.J. Reynolds Tobacco Co.*, 52 F. 3d 524, 527 (5th Cir. 1995). Louisiana courts have adopted the "exposure rule" to determine when a cause of action accrues in a long-latency disease case such as this. *See Kemp v. Armstrong World Indus.*, 02-1293, pp. 4–5 (La. App. 1 Cir. 5/28/03), 855 So. 2d 774, 777. Under the "exposure rule," a plaintiff's claim accrues when the plaintiff experiences repeated, tortious exposures resulting in continuous and on-going damages. *See Cole v. Celotex Corp.*, 599 So. 2d 1058, 1066 (La. 1992).

Plaintiffs allege Ms. Roy was repeatedly exposed to talcum powder products before 1988. Specifically, Plaintiffs alleges that Ms. Roy used talcum powder products "on a consistent basis"

from "the 1940s to a least the 1990s." (Petition ¶ 20; *see also id.* at ¶ 17 (alleging Ms. Roy—who was born in 1943—used talcum powder products "[f]rom as early as she can understand and remember until at least the 1990s"). Indeed, Plaintiffs expressly have alleged as much. (*Id.* at ¶ 21 (alleging "Plaintiff sustained significant tortious exposures to the Defendants' PRODUCTS prior to 1988."). Thus, pre-LPLA law should apply here. Out of an abundance of caution, however, K&B analyzes Plaintiffs' pleading under both pre- and post-LPLA law. Neither provides Plaintiffs with a viable claim against K&B under the facts alleged.

## II. The Court Should Dismiss Counts One, Four, Five, and Six As To K&B Because Plaintiffs Have Failed To Plead Facts That Can Establish Under Either Pre Or Post-LPLA Law That K&B Is A Manufacturer Of Any Product Alleged To Have Harmed Plaintiff.

Plaintiffs attempt to hold K&B liable for the manufacture of allegedly defective products under four theories: strict liability (Count One), failure to warn (Count Four), breach of implied warranty (Count Five), and defective design (Count Six). But Plaintiffs have failed to allege facts that would show that K&B was the "manufacturer" of any product that allegedly harmed Ms. Roy, as that term is used under both pre- and post-LPLA law. Because according to Plaintiffs' own pleadings, K&B is not the legal manufacturer of any product alleged to have harmed Ms. Roy, the Court should dismiss Counts One, Four, Five, and Six.

### A. K&B is not a "Manufacturer" of the Products under Pre-LPLA Law.

Prior to the LPLA, manufacturers of defective products faced strict liability: "If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by ***the maker*** in its manufacture or processing; for the manufacturer is presumed to know of the vices ***in the things he makes***, whether or not he has actual knowledge of them." *Weber v. Fidelity & Cas. Ins. Co. of New York*, 250 So. 2d 754, 755 (La. 1971) (emphasis added). A central justification of this approach was that the ***makers*** of products were in the best position to avoid the harm associated with their products. *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 117 (La. 1986) ("One of the reasons for strict products liability is similar to that underlying the codal strict liability: The person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating thing bears the loss resulting from creation of the risk.") (*superseded by statute*). Thus, the principal way a party could face strict liability for a defective product under

pre-LPLA law was to be the maker of the product—or, in other words, be the product's manufacturer in fact.

Without evidence that it designed or manufactured the product, a retailer could be held liable as a manufacturer for injuries caused by an unreasonably dangerous product it sold only if two requirements were met: first, that the retailer "held the product out to the public as its own," and second, that the "size, volume, and merchandising practices" of the retailer bring it "within the class of 'professional vendors' who are presumed to know of the defects in their wares." *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926, 930 (La. 1978); *see also Hoerner v. ANCO Insulations, Inc.*, 2000-2333, p. 16 (La. App. 4 Cir. 1/23/02), 812 So. 2d 45, 60 (confirming that a court considers two factors in determining if retailers are liable as professional vendors: "(1) whether they held the products out to the public as their own, and (2) their size, volume, and merchandising practices"). "[A] professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that the courts are justified in treating the retailer like a manufacturer." *Nelton v. Astro-Lounger Mfg.*, 542 So. 2d 128, 132 (La. App. 1 Cir. 1989) (emphasis added).

Plaintiffs' allegations against K&B fail in each respect. First, Plaintiffs have not alleged that Ms. Roy used any talcum powder product made by K&B. The Petition defines the "PRODUCTS" that Ms. Roy allegedly used and which allegedly resulted in her mesothelioma diagnosis as Johnson & Johnson Baby Powder talc or talcum powder products, Colgate-Palmolive's Cashmere Bouquet talcum powder Chanel's talcum powder products, Coty's talcum powder products, and Kaiser Gypsum joint compound. (Petition ¶ 17). Plaintiffs then base their purported right to recovery on Ms. Roy's use of these as-defined upper case "P" "PRODUCTS." (*See, e.g., id.* at ¶¶ 20, 23, 56). Because K&B is not alleged to have made any of the "PRODUCTS" Plaintiffs allege Ms. Roy used and to which they attributes her injury, K&B is not the manufacturer of any product that allegedly harmed Ms. Roy.

Second, Plaintiffs have not alleged that Ms. Roy used or was harmed by any product that K&B held out "as its own." Without such allegations, as a matter of law K&B cannot be held liable as a manufacturer under pre-LPLA law.

**B. K&B is not a "Manufacturer" as that Term is Used in the LPLA.**

The LPLA governs the liability of manufacturers of defective products. It defines "Manufacturer" as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who **labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.**
>
> (b) A seller of a product who **exercises control over or influences a characteristic of the design, construction or quality of the product** that causes damage.

La. R.S. 9:2800.53(1)(a)-(b) (emphasis added).

As the statute provides, the most straightforward way to be held liable as a manufacturer of a product under the LPLA is to make, fabricate, construct, design, remanufacture, recondition, or refurbish a defective product. But K&B is not alleged to have done any of this regarding the "PRODUCTS" that are alleged to have harmed Ms. Roy. For the very same reasons outlined in Section II(A) above, K&B is not the manufacturer of any "PRODUCT" under the LPLA.

Moreover, there are no allegations that fit the statute's exception for when a seller can be held liable as a manufacturer. Again, Plaintiffs have not alleged that Ms. Roy used any talcum powder that K&B held out as its own. Nor have Plaintiffs alleged any facts that would show K&B "exercis[ed] control over or influenc[ed] a characteristic of the design, construction or quality of" any of the "PRODUCTS." La. R.S. 9:2800.53(1)(b). Thus, Plaintiffs have failed to state a cause of action against K&B under the LPLA.

**III. Count Two (Seller Liability) Is Deficient Under Both Pre- And Post-LPLA Law Because Plaintiffs Have Failed To Plead The Requisite Facts As to K&B's Purported Knowledge.**

Because K&B is not the manufacturer of any product alleged to have harmed Ms. Roy, it is liable for harms allegedly associated with products it sold only if: (1) the product sold is defective; (2) K&B had actual or constructive knowledge that the product sold was defective; and (3) K&B failed to declare the defect. *See, e.g., Alexander v. Toyota Motor Sales, U.S.A.*, 2013-0756, pp. 3-4 (La. 9/27/13), 123 So. 3d 712, 714; *see also Reaux v. Deep South Equip. Co.*, 2002-1571, pp. 5-6 (La. App. 4 Cir. 2/5/03), 840 So. 2d 20, 23-24 ("A non-manufacturing seller who

does not vouch for the product by holding it out as his own does not incur strict manufacturer's liability under the LPLA, but is responsible for damages in tort only if he knew or should have known that the product sold was defective, and failed to declare it.") (*quotation marks and citations omitted*). These rules for non-manufacturing sellers pre-date the enactment of the LPLA and have been consistent throughout Louisiana jurisprudence. *See, e.g., Spillers v. Montgomery Ward & Co., Inc.*, 294 So. 2d 803, 807 (La. 1974) ("Louisiana has consistently applied the provisions of [Louisiana Civil Code article 2531] in limiting the liability of a seller 'who knew not the vices of the thing' to a restoration of the purchase price and expenses of the sale."). These narrow grounds on which a non-manufacturing seller can be held liable for defects in the products it sells are not present here.

The only allegation related to K&B's knowledge of alleged defects in any of the "PRODUCTS" is a form recitation of the elements of the claim: "At all times relevant hereto, the K&B Defendant knew or should have known that Colgate-Palmolive's Cashmere Bouquet and Johnson & Johnson's talcum powder products . . . were defective and unreasonably dangerous." (Petition ¶ 65). At no point do Plaintiffs allege any facts from which a reasonable trier of fact could infer such knowledge, as they must to satisfy Louisiana's fact-pleading regime. *Tuban Petroleum, L.L.C. v. SIARC, Inc.*, 2009-0302, p. 3 (La. App. 4 Cir. 4/15/09), 11 So. 3d 519, 522 (noting under Louisiana's fact-pleading regime the "mere conclusion of the pleader unsupported by facts does not set forth a cause of right of action.") (quotation marks omitted). Without such facts, Plaintiffs have failed to plead a cause of action for negligence against K&B as a non-manufacturing seller.

## IV. Plaintiffs Have Failed to State a Claim For Civil Conspiracy (Count Eight) Against K&B Because Plaintiffs Have Not Adequately Alleged a Predicate Tort as the Subject Of Any Purported Conspiracy.

Plaintiffs purports to allege "Civil Conspiracy" as a separate count against all Defendants, including K&B. (Petition ¶¶ 116–27). But conspiracy is not a cause of action under Louisiana law. *Ames v. Ohle*, 2011-1540, p. 12 (La. App. 4 Cir. 5/23/12), 97 So. 3d 386, 393 ("The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law."). Instead, "[t]he actionable element of a conspiracy claim is not the conspiracy itself; it is the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Thomas v. North*

*40 Land Development, Inc.*, 04-0610, p. 23 (La. App. 4 Cir. 1/26/05), 894 So. 2d 1160, 1174. Therefore, to succeed on a conspiracy claim a "plaintiff must allege and prove that an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result." *Crutcher-Tufts Resources, Inc. v. Tufts*, 07-1556, pp. 3–4 (La. App. 4 Cir. 9/17/08), 992 So. 2d 1091, 1094. In other words, without an underlying tort there is no conspiracy.

Plaintiffs' conspiracy claim fails with their other substantive claims. Because Plaintiffs have failed to state a cause of action against K&B for any underlying tort that can serve as the predicate subject of their purported conspiracy, the Court must dismiss Count Eight as to K&B.

## V. <u>Plaintiffs' Purported Claim For Redhibition (Count Nine) Has Prescribed.</u>

Although the LPLA's exclusivity provisions do not preempt liability in redhibition—*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002)—Plaintiffs' claim for redhibition here is untimely. "The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first." LA. CODE CIV. PROC. art. 2534. As discussed above, Plaintiffs have pled no facts from which a reasonable trier of fact could infer that K&B had knowledge of any defects in the talcum powder products they allegedly sold. Therefore, Ms. Roy needed to bring her claim for redhibition no later than four years after her purchase of the products. But Plaintiffs allege Ms. Roy stopped purchasing products from K&B in the 1990s (Petition ¶ 17), and K&B ceased operating retail stores in Louisiana in 1997 when it was acquired by Rite Aid Corporation. *See* Exh. A (July 21, 1997 Acquisition Announcement). Plaintiffs' purported claim for redhibition against K&B has prescribed on the face of the Petition.

## VI. <u>Punitive Damages (Count Ten) Are Not Available Against K&B As A Matter Of Law.</u>

Even if Plaintiffs had successfully pled a predicate cause of action against K&B—which they have not—punitive damages against K&B are not available in this case as a matter of law. Former Louisiana Civil Code article 2315.3 allowed for such damages only "if it [were] proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." *Lester v. Exxon*

*Mobil Corp.*, 10-473 (La. App. 5th Cir. 5/31/12), 102 So. 3d 148, 149. Louisiana courts interpret punitive statutes strictly. *Int'l Harvester Credit Corp. v. Seale*, 518 So. 2d 1039, 1041 (La. 1988). The clear legislative intent of former article 2315.3 was to punish parties who "reckless[ly] pollute our state" with hazardous chemicals. *Ross v. Conoco, Inc.*, 2002-0299, p. 11 (La. 10/15/02), 828 So. 2d 546, 553. Consistent with this objective, our Supreme Court has found that "the plain language of former Article 2315.3 does not indicate that the legislature intended for parties engaged in activities beyond direct storage, handling, or transportation of a hazardous or toxic substance to fall within the ambit of the Article." *Id.* Consistent with that strict interpretation, the Middle District of Louisiana found in dismissing a punitive damages claim that the "manufacture, design, and labelling of products . . . lies outside the scope of article 2315.3." *Williams v. A.C. & S.*, 700 F. Supp. 309, 310 (M.D. La. 1988).

K&B was a retailer that sold national-brand consumer products, including talcum powder products, in its stores. No Louisiana court has held that the sale of consumer products is actionable under the narrow scope of former article 2315.3. Indeed, Louisiana courts have expressly declined to find a cause of action under former article 2315.3 in such circumstances. In *Badon v. R.J. Reynolds Tobacco Co.*, Ms. Badon sued cigarette manufacturers and distributors for causing lung cancer, seeking punitive damages under former article 2315.3. 2005-1048, p. 4 (La. App. 3 Cir. 7/12/06), 934 So. 2d 927, 931. Ms. Badon relied on jurisprudence suggesting "a manufacturer is not automatically insulated from punitive damages under La. Civ. Code art. 2315.3 simply due to its status as a manufacturer" to suggest that the cigarette manufacturers and distributors could be liable to her for "handling" the product in such a manner as to have contributed to her addiction and cancer. *Id.* at 2005-1048, pp. 4–5, 934 So. 2d at 931–32. Rejecting such "semantics," the Third Circuit held that:

> [I]n order for a manufacturer to be subject to punitive damages under La. Civ. Code art. 2315.3, the manufacturer's fault must have arisen out of the storage, handling, or transportation of toxic or hazardous substances. As set forth above, ***Ms. Badon's allegations pertain to causation of her cancer due to the manufacture, design, and labeling activities of the tobacco defendants, and not to the storage, handling or transportation of the cigarettes***. In fact, Ms. Badon's own expert, Dr. K. Michael Cummings, acknowledged that cigarettes are not hazardous unless they are smoked.

*Id.* at 2005-1048, p. 5, 934 So. 2d at 931–32 (emphasis added).

The Court is presented with the same scenario here. Like a cigarette that becomes hazardous when smoked, Plaintiffs allege talcum powder becomes hazardous only when applied to the body. Plaintiffs have not alleged that talcum powder poses any threat on the shelf, or in transit from warehouse to a retail store. As a result, Plaintiffs allege Ms. Roy's mesothelioma was caused by the manufacture, design and labeling of talcum products, not how those products were stored, handled, or transported. Louisiana courts are clear that the former activities are not actionable under former article 2315.3; thus, Plaintiffs' punitive damages claim fails against K&B.

Plaintiffs' punitive damages claim likewise is deficient as to K&B because the Amended Petition fails to adequately allege wanton or reckless conduct attributable to K&B. As the Fourth Circuit explains, "[t]he terms wantonness or recklessness applies to conduct which is so far from a proper state of mind that it is treated in many respects as if harm was intended or so obvious that defendant must have been aware of the high probability that harm would follow." *Williams v. Asbestos Defendants*, 2011-0716, p. 9 (La. App. 4 Cir. 5/16/12), 95 So. 3d 497, 504; *see also Bonnette v. Conoco, Inc.*, 2001-2767, p. 30, 837 So. 2d 1219, 1238 (holding wanton and reckless conduct for punitive damages under the former article must be "highly unreasonable or that it involved an extreme departure from ordinary care.").

Plaintiffs have not alleged a single factual allegation against K&B in the Petition to suggest "wanton and reckless" conduct. Indeed, Plaintiffs have specifically ***excluded*** K&B from their claim for Fraud (Count 7)—a count that requires intentional or reckless misconduct—instead, focusing those allegations solely against Johnson & Johnson and Colgate-Palmolive. (*See* Petition ¶¶ 104–115). While several paragraphs in the Petition contain particularized factual allegations against Johnson & Johnson (¶¶ 39–47; 51) and Colgate-Palmolive (¶¶ 37–38) regarding what they knew about the possibility of asbestos contamination in their talcum powder products, and when they knew it, there are ***no*** such allegations against K&B. The only allegation against K&B pertinent to its alleged "wanton and reckless" conduct is that it acted "with a wanton and reckless disregard for public safety in the storage, handling, and transportation of hazardous or toxic substances," namely its talcum-powder product. (Petition ¶ 137(a)). Merely restating the requirements of a punitive damages claim under former article 2315.3, however, is precisely what Louisiana's fact pleading system does not allow. *See, e.g., Ramey v. DeCaire*, 2003-1299, p.7 (La.

3/19/04), 869 So. 2d 114, 118 ("[T]he mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action."); *Hamilton v. Baton Rouge Health Care*, 2009-0849, p.4 (La. App. 1 Cir. 12/8/10), 52 So. 3d 330, 333 ("[T]he plaintiff must allege more than mixed questions of fact and law, such as, in a delictual action, that the defendant acted unreasonably."). It is not enough to say the words "wanton" and "reckless"; rather, Plaintiffs must plead specific allegations demonstrating the "disregard of a high and excessive degree of danger known to [K&B] or that would have been apparent to a reasonable person in [K&B's] position." (Petition at ¶ 138). *See also Fitzgerald v. Tucker*, 98–2313, p. 7 (La. 6/29/99), 737 So.2d 706, 713 ("Fact pleading advances several goals of the petition, such as satisfying the defendant's constitutional guarantee of due process by providing the defendant with fair notice, limiting the issues before the court, and notifying the defendant of the facts upon which the plaintiff bases his claims."). Plaintiffs have pled no specific allegations against K&B that would meet this high bar, but instead try to shoehorn generalized claims against K&B together with their more particularized allegations against the other Defendants.

Considering similar pleadings, the Fourth Circuit held a district court erred in denying an exception of no cause of action in the matter of *In re Harvey Term Litigation*, 2004-0005, p. 7 (La. App. 4 Cir. 4/7/04), 872 So. 2d 1214, 1218. In that case, the plaintiffs pled "Defendants were guilty of willful, wanton and reckless disregard for public safety in the storage, handling and transportation of toxic, hazardous, and/or radioactive substances, entitling plaintiffs to recover exemplary damages in addition to their compensatory damages." *In re Harvey Term Litigation*, 2004-0005, p. 3, 872 So. 2d at 1216. Because these allegations were "so lacking in specificity and so conclusory and vague," and because "[t]he petition simply tracks the language of the statute and fails to suggest any facts relative to the actions of the [defendant] which could give rise to the application of the statute," the Fourth Circuit held the petition failed to state a cause of action under former article 2315.3. *In re Harvey Term Litigation*, 2004-0005, p. 4, 872 So. 2d at 1216–17.

Recently, the Honorable Judge Christopher J. Bruno considered an identical punitive damages claim where, as here, plaintiff sought punitive damages for injuries she attributed to long-term exposure to talcum powder, arguing that the commercial distribution of talcum powder constituted "handling" under former article 2315.3. Judge Bruno rejected this argument and

dismissed the punitive damages claim with prejudice, finding "as a matter of law that the term 'handling' as used in former La. C.C.P. 2315.3 was not intended to apply nor will this Court expand its application to a product liability claim based upon a failure to warn." (Exh. B, Judgment on Motion for New Trial, *Biermann et al. v. Colgate-Palmolive Co., et al.*, No. 2019-7989 (Civ. Dist. Ct. Orleans, La. 5/22/2020)). Because this punitive damages claim is premised on the same misinterpretation of former article 2315, the Court should likewise grant K&B's exception and dismiss Plaintiffs' punitive damages claim with prejudice.

This Court should dismiss the punitive damages claim against K&B, because there is no difference between the deficient allegations in *In re Harvey Term Litigation* and the present allegations as to K&B. The Petition's general, conclusory pleading of its punitive damages claim against K&B frustrates the purpose of the Louisiana fact-pleading system by failing to set forth any facts upon which it is based. Such pleading routinely is held deficient. This claim—like the others—should be dismissed.

**CONCLUSION**

Plaintiffs wholly fail to allege that Ms. Roy ever used a product made by K&B or which K&B held out as its own. Without such an allegation, Plaintiffs cannot make out a cause of action in strict product liability against K&B. Thus, Counts One, Four, Five, and Six all must be dismissed. Moreover, Plaintiffs' purported claim against K&B for selling allegedly defective talcum powder products made by others (Count Two) fails a matter of law because Plaintiffs have alleged no facts whatsoever that would allow a reasonable trier of fact to infer that K&B knew of or should have known of the purported defect in such products. With no viable tort alleged, Plaintiffs' purported claim for civil conspiracy (Count Eight) also must fail. Finally, Plaintiffs' claim for redhibition (Count Nine) is untimely and their claim for punitive damages (Count Ten) is contrary to settled law. For these reasons, K&B's exceptions of no cause of action and prescription should be maintained and K&B dismissed from this lawsuit.

Respectfully submitted,

Madison Sharko

Kyle W. Siegel, 35367
Madison A. Sharko, 36670
Shaun P. McFall, 37225
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
ksiegel@barrassousdin.com
msharko@barrassousdin.com
smcfall@barrassousdin.com

*Attorneys for K&B Louisiana Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel by electronic mail and facsimile and/or by placing same in the United States Mail, postage prepaid and properly addressed, this 28th day of August, 2020.

Madison Sharko

*1753418_2*

FILED
2020 JUL 17 PM 3:42
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2020-02718 DIV/SEC: "A-16"

LYNNE ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**WHITTAKER, CLARK & DANIELS, INC.'S MOTION AND ORDER FOR EXTENSION OF TIME**

MOOT

**NOW INTO COURT**, through undersigned counsel, comes Whittaker, Clark & Daniels, Inc., (hereinafter referred to as "WCD"), who moves for an Order extending the time within which it must file pleadings responsive to Plaintiff's Petition for Damages, for a period of thirty (30) days or until July 15, 2020, upon showing that WCD requires additional time to formulate a response. WCD has not previously requested an extension of time to answer.

**ORDER**

**IT IS HEREBY ORDERED** that the Motion for Extension of Time filed by WCD be and is hereby granted, allowing an extension of thirty (30) days, or until July 15, 2020, in which to file responsive pleadings.

AUG 04 2020

______________________
JUDGE

(Sgd.) E[illegible] M. HAZEUR
Judge - Division "A"

[SIGNATURE BLOCK ON FOLLOWING PAGE]

{44344.000009 / W1162365}

RECEIVED
DIVISION "A"

VERIFIED

Respectfully submitted,

MARON MARVEL BRADLEY ANDERSON & TARDY, LLC

Shelley K. Napolitano
RICHARD M. CRUMP (#30460)
SHELLEY K. NAPOLITANO (#34692)
Place St. Charles
201 St. Charles Ave.
New Orleans, Louisiana 70170
Telephone: (504) 684-5100
Facsimile: (504) 613-0067

*Attorneys for Whittaker, Clark & Daniels, Inc.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all known counsel of parties to this proceeding by mailing a copy of same to each via hand, facsimile, electronic mail, Federal Express or by First Class U.S. mail, properly addressed and postage prepaid on this 15th day of June, 2020.

Shelley K. Napolitano
SHELLEY K. NAPOLITANO

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**CHANEL INC.'S ANSWER, EXCEPTION, AND AFFIRMATIVE DEFENSES IN RESPONSE TO PLAINTIFF'S ORIGINAL PETITION FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes Defendant, Chanel, Inc. (hereinafter "Chanel" or "Defendant"), which responds to Plaintiff's Petition for Damages (hereinafter "Petition") as follows.

**EXCEPTION OF *LIS PENDENS***

1.

Chanel excepts to Plaintiff's Petition in order to preserve the exception of *lis pendens* based upon information, as yet undiscovered, that would reveal Plaintiff has other suits pending against this Defendant arising from the same alleged occurrences and injury.

2.

Chanel reserves the right to adopt any and all exceptions asserted by other defendants as though copied herein *in extenso*.

3.

Chanel further responds to Plaintiff's Petition by denying each and every allegation therein contained, except as such as may be hereinafter expressly admitted or qualified.

4.

Further answering the specific numbered paragraphs of Plaintiff's Petition, Chanel avers as follows:

RECEIVED
2020
DIVISION "A"

1

VERIFIED
Yanley Salazar
2020 JUL 06 P 02:32

E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

## ANSWER TO PLAINTIFF'S ORIGINAL PETITION FOR DAMAGES

### INTRODUCTION

5.

The allegations contained in Paragraph 1 of Plaintiff's Petition, including any and all subparts therein, regarding Plaintiff's diagnosis are denied for lack of sufficient information to justify a belief therein. All remaining allegations in Paragraph 1 are denied as to this Defendant. Defendant denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

6.

The allegations contained in Paragraph 2 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. Defendant denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

### PARTIES, JURISDICTION, AND VENUE

7.

The allegations contained in Paragraph 3 of Plaintiff's Petition, including any and all subparts therein, are denied for lack of sufficient information to justify a belief therein.

8.

The allegations contained in Paragraph 4 of Plaintiff's Petition, including any and all subparts therein, are denied except to admit that Chanel is a foreign corporation. All remaining allegations are denied for lack of sufficient information to justify a belief therein.

9.

To the extent the allegations contained in Paragraph 5 of Plaintiff's Petition, including any and all subparts therein, contain legal conclusions regarding venue and jurisdiction, they are denied for lack of sufficient information to justify a belief therein. All remaining allegations in Paragraph 5 are denied as to this Defendant. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

10.

The allegations contained in Paragraph 6 of Plaintiff's Petition, including any and all subparts therein, do not appear to require a response from this Defendant. To the extent a response



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

is deemed necessary, the allegations are denied for lack of sufficient information to justify a belief therein.

11.

The allegations contained in Paragraph 7 of Plaintiff's Petition, including any and all subparts therein, are denied. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

12.

The allegations contained in Paragraphs 8 through 15 of Plaintiff's Petition, including any and all subparts therein, do not require a response from this Defendant. To the extent a response is deemed necessary, the allegations are denied for lack of sufficient information to justify a belief therein.

13.

The allegations contained in Paragraph 16 of Plaintiff's Petition pertaining to jurisdiction are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

**BACKGROUND**

14.

The allegations contained in Paragraph 17 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

15.

The allegations contained in Paragraph 18 of Plaintiff's Petition, including any and all subparts therein, are denied for lack of sufficient information to justify a belief therein.

16.

The allegations contained in Paragraphs 19 through 25 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent these allegations are directed



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

to defendants other than Chanel, they are denied for lack of sufficient information to justify a belief therein. Further, Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**FACTS COMMON TO ALL COUNTS**

**17.**

In response to the allegations contained in Paragraph 26 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this Answer. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**18.**

The allegations contained in Paragraphs 27 through 30 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent these allegations are directed to defendants other than Chanel, they are denied for lack of sufficient information to justify a belief therein.

**19.**

The allegations contained in Paragraph 31 of Plaintiff's Petition, including any and all subparts therein, do not appear to require a response from Chanel. To the extent a response is deemed required from Chanel, the allegations are denied for lack of sufficient information to justify a belief therein.

**20.**

The allegations contained in Paragraph 32 of Plaintiff's Petition, including any and all subparts therein, are denied. To the extent these allegations directed to defendants other than Chanel, they are denied for lack of sufficient information to justify a belief therein.

**21.**

The allegations contained in Paragraphs 33 through 40 of Plaintiff's Petition, including any and all subparts therein, do not appear to require a response from Chanel. To the extent a response is deemed required from Chanel, the allegations are denied for lack of sufficient information to



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

justify a belief therein. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

22.

The allegations contained in Paragraphs 41 of Plaintiff's Petition, including any and all subparts therein, are denied for lack of sufficient information to justify a belief therein. To the extent these allegations attempt to place liability on this Defendant, they are denied.

23.

The allegations contained in Paragraphs 42 and 43 of Plaintiff's Petition, including any and all subparts therein, appear to be directed to defendants other than Chanel, and therefore no response is required from Chanel. To the extent a response is deemed required from Chanel, the allegations are denied for lack of sufficient information to justify a belief therein. Further, to the extent these allegations attempt to place liability on this Defendant, they are denied.

24.

The allegations contained in Paragraphs 44 through 46 of Plaintiff's Petition, including any and all subparts therein, are denied for lack of sufficient information to justify a belief therein. To the extent these allegations attempt to place liability on this Defendant, they are denied.

25.

The allegations in Paragraph 47 of Plaintiff's Petition, including any all subparts therein, appear to be directed to Defendants other than Chanel, and thus no response is required from Chanel. To the extent a response is deemed required from Chanel, the allegations are denied for lack of sufficient information to justify a belief therein. Further, to the extent these allegations attempt to place liability on this Defendant, they are denied.

26.

The allegations contained in Paragraphs 48 through 50 of the Petition, including any and all subparts therein, are denied as to this Defendant. To the extent these allegations are directed to Defendants other than Chanel, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

27.

The allegations contained in Paragraph 51 of Plaintiff's Petition, including any and all subparts therein, are directed to defendants other than Chanel, and therefore no response is required from Chanel. To the extent a response is deemed required from Chanel, the allegations are denied for lack of sufficient information to justify a belief therein. Further, to the extent these allegations attempt to place liability on this Defendant, they are denied.

28.

The allegations contained in Paragraph 52 of the Petition, including any and all subparts therein, are denied as to this Defendant. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT ONE: STRICT LIABILITY and NEGLIGENCE**

**(All Defendants)**

29.

In response to the allegations contained in Paragraph 53 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this Answer. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

30.

The allegations contained in Paragraphs 54 and 55 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

31.

The allegations contained in Paragraph 56 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations are directed to defendants other than Chanel, the allegations are denied for lack of sufficient information to justify a belief therein.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

32.

The allegations contained in Paragraphs 57 and 58 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations are directed to defendants other than Chanel, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT TWO: SUPPLIER/DISTRIBUTOR/MANUFACTURER/SELLER LIABILITY**

**(All Defendants)**

33.

In response to the allegations contained in Paragraph 59 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this pleading. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

34.

The allegations contained in Paragraph 60 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. The allegations regarding defendants other than Chanel are denied for lack of sufficient information to justify a belief therein.

35.

The allegations contained in Paragraphs 61 through 63, including any and all subparts therein, are denied as to this Defendant. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

36.

The allegations contained in Paragraphs 64 and 65 of Plaintiff's Petition, including any and all subparts therein, do not appear to require a response from this Defendant. To the extent a response is deemed required from Chanel, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

37.

The allegations contained in Paragraphs 66 through 71 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations are directed to defendants other than Chanel, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT THREE: STRICT LIABILITY and NEGLIGENCE**
**(Johnson & Johnson Defendants)**

38.

In response to the allegations contained in Paragraph 72 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this Answer. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

39.

The allegations contained in Paragraphs 73 through 78 of Plaintiff's Petition, including any and all subparts therein, do not require a response from this Defendant. To the extent a response is deemed required from this Defendant, the allegations are denied for lack of sufficient information to justify a belief therein. Further, to the extent these allegations attempt to place liability on this Defendant, they are denied.

**COUNT FOUR: FAILURE TO WARN**
**(All Defendants)**

40.

In response to the allegations contained in Paragraph 79 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this Answer. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

41.

The allegations contained in Paragraph 80 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

42.

The allegations contained in Paragraphs 81 and 82 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

43.

The allegations contained in Paragraph 83 of Plaintiff's Petition regarding alleged product usage(s) are denied for lack of sufficient information to justify a belief therein. All remaining allegations are denied as to this Defendant.

44.

The allegations contained in Paragraphs 84 through 88 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT FIVE: BREACH OF WARRANTY**
**(All Defendants)**

45.

In response to the allegations contained in Paragraph 89 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

46.

The allegations contained in Paragraphs 90 through 95 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

defendants, those allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT SIX: DEFECTIVE DESIGN**
**(All Defendants)**

47.

In response to the allegations contained in Paragraph 96 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

48.

The allegations contained in Paragraphs 97 through 103 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT SEVEN: FRAUD**
**(Johnson & Johnson Defendants and Colgate-Palmolive)**

49.

In response to the allegations contained in Paragraph 104 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this pleading. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

50.

The allegations contained in Paragraphs 105 and 115 of Plaintiff's Petition, including any and all subparts therein, do not appear to require a response from this Defendant. To the extent a response is deemed required, the allegations are denied for lack of sufficient information to justify a belief therein. Further, to the extent these allegations seek to place liability on this Defendant, they are denied.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

**COUNT EIGHT: CIVIL CONSPIRACY**
**(All Defendants)**

51.

In response to the allegations contained in Paragraph 116 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this Answer. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

52.

The allegations contained in Paragraphs 117 through 120 of the Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other defendants, the allegations are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

53.

The allegations contained in Paragraphs 121 through 124 of Plaintiff's Petition, including any and all subparts therein, are directed at defendants other than Chanel and do not appear to require a response from Chanel. To the extent a response is deemed required, the allegations are denied for lack of sufficient information to justify a belief therein. To the extent the allegations seek to place liability upon this Defendant, they are denied.

54.

The allegations contained in Paragraphs 125 through 127 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations relate to other defendants, they are denied for lack of sufficient information to justify a belief therein. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT EIGHT: REDHIBITION**
**(All Defendants)**

55.

In response to the allegations contained in Paragraph 128 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

adopts its response to each individual allegation as laid out through this Answer. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

56.

The allegations contained in Paragraph 129 of Plaintiff's Petition, including any and all subparts therein, are denied for lack of sufficient information to justify a belief therein.

57.

To the extent the allegations contained in Paragraphs 130 through 135 of Plaintiff's Petition, including any and all subparts therein, present legal conclusions, no response is required. To the extent these allegations pertain to Chanel, they are denied. To the extent the allegations are directed to defendants other than Chanel, they are denied for lack of sufficient information to justify a belief therein. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

**COUNT NINE: PUNITIVE DAMAGES**
**(All Defendants)**

58.

In response to the allegations contained in Paragraph 136 of Plaintiff's Petition, and the allegations incorporated by reference therein, Chanel hereby incorporates by reference and fully adopts its response to each individual allegation as laid out through this Answer. Defendant further denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff.

59.

The allegations contained in Paragraphs 137 through 143 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. To the extent the allegations are directed to defendants other than Chanel, they are denied for lack of sufficient information to justify a belief therein. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

60.

The allegations contained in the unnumbered paragraph beginning with "WHEREFORE" following numbered Paragraph 143 of Plaintiff's Petition are denied as to this Defendant.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

**DAMAGES**

61.

The allegations contained in Paragraph 144 of Plaintiff's Petition, including any and all subparts therein, are denied as to this Defendant. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiff in any amount whatsoever.

62.

The allegations contained in the unnumbered Paragraph beginning with "WHEREFORE" following numbered Paragraph 144 of Plaintiff's Petition are denied as to this Defendant. Furthermore, Chanel denies that it is liable to Plaintiff, or that Plaintiff is entitled to judgment against it, individually, jointly, severally, and/or *in solido* in any amount whatsoever.

**AFFIRMATIVE DEFENSES**

FURTHER answering Plaintiff's Petition, Chanel asserts the following affirmative defenses:

1.

Plaintiff's Petition has failed to state a cause of action upon which relief can be granted against Chanel. Chanel denies that Plaintiff is entitled to any relief sought against it through the Petition.

2.

Chanel avers that all claims alleged in Plaintiff's Petition against it are barred, in whole or in part, by prescription, peremption, laches, res judicata, estoppel, and/or a statute of limitations.

3.

Chanel denies that Plaintiff ever used any product manufactured or sold by Chanel, or that she was ever in the vicinity of same. Chanel denies that Plaintiff was ever exposed to an asbestos-containing product, or harmful product, that it manufactured and/or supplied, or otherwise has legal responsibility for.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

4.

Chanel denies that it is liable to Plaintiff in strict liability, and further denies that strict products liability applies to any or all of Plaintiff's claims.

5.

Chanel pleads that at all times it complied with all applicable laws, regulations, rules, specifications, and standards.

6.

Chanel pleads that at all times it acted with due care and reasonableness under the circumstances.

7.

Chanel pleads that it owed no duty to Plaintiff. Alternatively, Chanel did not breach any duty owed to Plaintiff. In the further alternative, any such breach was not the proximate cause of Plaintiff's alleged injuries (if any).

8.

Chanel avers that Plaintiff has failed to join all parties necessary for a just adjudication.

9.

Chanel pleads the contributory and/or comparative negligence or fault, or assumption of the risk of Plaintiff or others, with same acting as a complete bar to and/or mitigation to potential recovery (if any). Chanel further pleads that Plaintiff's claims must be reduced due to Plaintiff's failure to mitigate, minimize, or abate any damages allegedly sustained.

10.

Chanel avers that to the extent Plaintiff is allowed to recover damages, which is denied, such damages were caused by the fault and/or negligence of others for whom Chanel is not responsible, nor has any legal relationship, whether or not same is included as a party in this action. Such conduct constituted a supervening cause of Plaintiff's alleged injuries (if any). Such intervening and superseding causes include the fault of Plaintiff, or any other party who owed a duty to Plaintiff and over whom Chanel had no control, right of control, or duty to control. Further,



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

Chanel could neither anticipate nor reasonably foresee such superseding conduct, which was the sole actual cause of the injuries allegedly sustained by Plaintiff.

11.

Chanel is entitled to indemnity and/or contribution from all liable defendants named in Plaintiff's Petition, and from any other responsible persons for any sums Chanel must pay to Plaintiff (if any) due to the negligence and/or fault of those other persons. Alternatively, Chanel is entitled to a reduction of any amount Chanel must pay to Plaintiff (if any) to the extent of the negligence and/or fault of any other party.

12.

Chanel denies that it is liable jointly, severally, and/or *in solido* with any other party, regardless of whether same is a named party in this action, and denies that it is liable for the fault of any party.

13.

Chanel pleads that it cannot be held liable based on theories of market share liability and/or enterprise liability.

14.

Chanel alternatively pleads that the damages allegedly sustained by Plaintiff were caused by the negligence and/or fault of persons with whom Plaintiff has settled her claims. Chanel is entitled to an off-set and/or reduction of any judgment rendered against it by the percentage of fault or virile share of all persons or entities with whom Plaintiff may have reached settlement.

15.

Chanel pleads that Plaintiff's demands are subject to a setoff for any amounts received by Plaintiff pursuant to federal and state compensation laws.

16.

Chanel asserts all available defenses relating to limitations of limitations of damages and recovery. Moreover, any claim or imposition of punitive damages against Chanel is improper under Louisiana law, and further would be unconstitutional and in violation of the due process,

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

equal protection, and "double jeopardy" protections provided through the Fourteenth and Fifth Amendments of the United States Constitution.

17.

Chanel pleads that Plaintiff's injuries, if any, were caused from natural causes and/or by substances other than asbestos.

18.

Chanel pleads that Plaintiff's alleged damages (if any) resulted solely from pre-existing medical conditions, causes, injuries, and/or exposures that are completely unrelated to Plaintiff's alleged exposure to a Chanel product.

19.

Chanel denies the existence and/or breach of any express or implied warranty. Chanel pleads that it gave no special warranties, either express or implied, to Plaintiff or to anyone acting on Plaintiff's behalf.

20.

Chanel denies that it made any representations to Plaintiff or to anyone acting on Plaintiff's behalf. Alternatively, Plaintiff did not rely on any representations by Chanel.

21.

Alternatively, Chanel pleads that if there were express or implied warranties, which is denied, Plaintiff and/or anyone acting on her behalf were not within the scope of any such alleged warranties. In the further alternative, Chanel pleads that if there were express or implied warranties, Chanel did not breach any warranties.

22.

Chanel avers that it did not make any express warranty about any of its products alleged to be at issue in this lawsuit including, but not limited to, any warranty regarding the product's nature, material, or workmanship. Alternatively, if Chanel made an express warranty, which is denied, the product is not unreasonably dangerous because it conforms to said express warranty. In the further alternative, any express warranty did not induce Plaintiff or any other person or entity to use the



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

product. Further, in the alternative, Plaintiff's damage (if any) was not proximately caused due to the alleged inaccuracy of any express warranty.

23.

Chanel pleads that if there were express or implied warranties, which is denied, the remedy for any breach of same is limited to the replacement of materials.

24.

Additionally, Plaintiff's claims, if any, for breach of warranty are excluded by Chanel's disclaimers of warranties and limitations of remedies.

25.

Chanel pleads that any authentic products alleged to be at issue in this litigation were at all times, of merchantable quality and reasonably fit and suitable for the purposes and uses for which they were intended, and Chanel denies that any authentic products were in any way defective for the uses for which they were intended.

26.

Chanel pleads that any authentic products were not defective or unreasonably dangerous because any alleged risk to users of such products was not known, and thus the alleged risk of harm was not reasonably foreseeable. Under applicable law, Chanel is under no duty to warn of a prospective risk of harm in the absence of knowledge, actual or constructive, of the alleged risk in question. Further, none of the alleged injuries or damages was foreseeable at the time of the acts and omissions alleged by Plaintiff.

27.

Chanel pleads that, at all material times herein, the state of medical and industrial art was such that there was no generally accepted or recognized knowledge of the potential health hazards associated with the use of any of Chanel's products. Chanel further pleads the state of the art defense to each and every allegation, and denies any defects in its products existed, including with respect to any warning requirement. Chanel had no knowledge or reason to know of any alleged risks associated with asbestos, any alleged risks associated with asbestos-containing products, any



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

alleged asbestos contamination of cosmetic-grade talc, and/or alleged asbestos contamination of products incorporating same within the periods complained of by Plaintiff. Moreover, Chanel denies the existence of a feasible alternative design for its products.

28.

Chanel denies that any authentic products were defectively designed because the manufacturing specifications for Chanel's talcum powder products did not include asbestos.

29.

Chanel denies that any authentic products had a defect in construction or composition because Chanel's products, at the time they left Chanel's control, conformed to Chanel's specifications and/or performance standards, and that the manufacturing specifications for Chanel's products did not include asbestos.

30.

Chanel pleads that it did not fail to provide an adequate warning about any of its cosmetic talcum powder product as, at the time Chanel products left Chanel's control, those products did not possess a characteristic that may cause damage. In the further alternative, if Chanel failed to provide an adequate warning, which is denied, any characteristic of Chanel products that rendered them unreasonably dangerous did not exist at the time the products left Chanel's control. In the further alternative, if an inadequate warning about any Chanel products was provided, any characteristic of those products that rendered them unreasonably dangerous resulted from alterations or modifications that Chanel could not have reasonably anticipated.

31.

Chanel pleads that if Plaintiff was exposed to any asbestos through the use of any Chanel talcum powder product, which is denied, then the amount of such exposure was *de minimis*, well below government standards, and not a substantial contributing factor to any asbestos-related disease that Plaintiff may have developed.

32.

Chanel denies that its products alleged to be at issue in this suit were defective, unreasonably dangerous, or negligently mined, manufactured, designed, sold, supplied,



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, disposed of, warranted, possessed, and/or controlled. Alternatively, if there was any defect or negligence on the part of Chanel, which is denied, Chanel is not liable because it reasonably relied upon the inspections of its suppliers and certifications provided by those suppliers which certified the material was free of asbestos-contamination.

33.

Chanel pleads that to the extent Plaintiff and/or persons acting on her behalf were and/or are smokers and/or users of tobacco products, such intentional and/or negligent conduct is the sole cause, or alternatively, a proximate or producing cause and contributing factor, of Plaintiff's alleged damages.

34.

Plaintiff's claims are barred, in whole or in part, due to spoliation of evidence and/or the failure to preserve evidence necessary to the determination of the claims.

35.

To the extent consistent with its Answer, Chanel hereby adopts by reference all defenses raised or to be raised by any other defendant in this action.

36.

Chanel expressly reserves its right to assert additional defenses upon discovery and review of additional documents and information and upon the development of other pertinent facts.

WHEREFORE, Defendant Chanel, Inc. prays that, after due proceedings be had, there be judgment rendered herein in its favor and against the plaintiff, dismissing Plaintiff's suit at their cost and with prejudice.

[Signature Block on Following Page]



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

Respectfully submitted,

MG+M LAW FIRM

Christopher O. Massenburg (LSBA No. 26989)
Amanda L. Deto (LSBA No. 38190)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax: (504) 535-2886
Email: TalcLitLa@mgmlaw.com
Web: www.mgmlaw.com

**ATTORNEYS FOR CHANEL, INC.**

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this date delivered, via mail, fax and/or e-mail, a true and correct copy of the foregoing document to counsel for Plaintiff and to all known counsel of record.

SO CERTIFIED, this the 3rd day of July, 2020.

AMANDA L. DETO



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ____________________ ____________________
DEPUTY CLERK

RULE TO SHOW CAUSE

**IT IS HEREBY ORDERED** that the Exception of *Lis Pendens* shall not be set for hearing and will not be heard until discovery has revealed whether it is meritorious and Chanel, Inc. requests that a hearing be set.

New Orleans, Louisiana, this ______ day of SEP 0 8 2020, 2020.

HONORABLE ELLEN M. HAZEUR

**Plaintiff will be served pursuant to La. C.C.P. 1313.**

VERIFIED



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION 16 DIVISION "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

## CHANEL, INC.'S MEMORANDUM IN SUPPORT OF ITS EXCEPTIONS

NOW INTO COURT, through undersigned counsel, comes Defendant, Chanel, Inc. (hereinafter "Chanel" or "Defendant"), which submits the following memorandum in support of its exception:

I.

***LIS PENDENS***

Chanel pleads the declinatory exception of *lis pendens*. Chanel has not yet determined whether or not Plaintiff in the instant case has another asbestos personal injury suit pending against it in a different jurisdiction. Nevertheless, due to the huge number of asbestos personal injury suits pending both in this state and nationally, it is often impossible to discover *lis pendens* problems until after discovery. On several prior occasions, parties have been a plaintiff in more than one such suit. Chanel raises the *lis pendens* exception at this time in order to preserve its right to seek appropriate relief in the event that Plaintiff in this suit has another asbestos personal injury suit pending.

In accordance with the Louisiana Code of Civil Procedure, "When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

thereto . . . ."[1] Likewise, "[w]hen a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit . . . ."[2] Consequently, Chanel asserts the declinatory exception of *lis pendens* and requests that this Court recognize its right to seek the dismissal of the claims of Plaintiff, if they are subsequently determined to be involved in any other suit based upon the same transactions or occurrences forming the basis of the instant suit.

II.

Chanel reserves the right to adopt the exceptions pled by any and all other defendants.

**WHEREFORE,** Chanel, Inc. prays that the Court maintain its exceptions, dismissing plaintiff's suit, at plaintiff's cost.

Respectfully submitted,

**MG+M LAW FIRM**

Christopher O. Massenburg (LSBA No. 26989)
Amanda L. Deto (LSBA No. 38190)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax: (504) 535-2886
Email: TalcLitLa@mgmlaw.com
Web: www.mgmlaw.com

**ATTORNEYS FOR CHANEL, INC.**

[1] La. Code Civ. Proc. art. 531.

[2] La. Code Civ. Proc. art. 532.



E-Filed

FILED
2020 JUL 06 A 09:29
CIVIL
DISTRICT COURT

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this date delivered, via mail, fax and/or e-mail, a true and correct copy of the foregoing document to counsel for Plaintiffs and to all known counsel of record.

SO CERTIFIED, this the 3rd day of July, 2020.

AMANDA L. DETO



E-Filed

FILED
AUG 3 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No.: 2020-02718 DIV/SEC.: A-16

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, et al

FILED: ______________________ ______________________
DEPUTY CLERK

**KAISER GYPSUM COMPANY, INC.'S ANSWER TO FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURVIVAL AND WRONGFUL DEATH**

**NOW INTO COURT**, through undersigned counsel, comes Kaiser Gypsum Company, Inc. ("Kaiser" or "Defendant"), who answers the First Supplemental and Amended Petition for Damages, Survival and Wrongful Death ("First Supplemental Petition") filed on behalf of Plaintiffs as follows:

**ANSWER TO FIRST SUPPLEMENTAL PETITION**

1.

The allegations contained within Paragraph 1, including Subparagraphs A through B, of the First Supplemental Petition are denied for lack of sufficient information to justify a belief therein.

2.

The allegations contained within Paragraph 2 of the First Supplemental Petition call for a legal conclusion, and thus, the allegations do not require a response from Defendant. To the extent a response is required to the allegations contained within Paragraph 2 of the First Supplemental Petition and to the extent the allegations pertain to Defendant, the allegations are denied. The remaining allegations contained within Paragraph 2 of the First Supplemental Petition are denied for lack of sufficient information to justify a belief therein.

3.

The allegations contained within Paragraph 3 of the First Supplemental Petition call for a legal conclusion, and thus, the allegations do not require a response from Defendant. To the extent a response is required to the allegations contained within Paragraph 3 of the First Supplemental Petition and to the extent the allegations pertain to Defendant, the allegations are



VERIFIED
9/9/2020

denied. The remaining allegations contained within Paragraph 3 of the First Supplemental Petition are denied for lack of sufficient information to justify a belief therein.

4.

In response to Paragraph 4 of the First Supplemental Petition, Defendant re-asserts, re-avers and re-alleges each and every response, denial, defense, claim, allegation, and exception set forth in its previously filed Answer and Affirmative Defenses to the Original Petition for Damages and pleads same as if copied herein *in extenso*.

5.

The allegations contained within Paragraph 4, Subparagraph 3 of the First Supplemental Petition are denied for lack of sufficient information to justify a belief therein.

6.

The allegations contained within Paragraph 4, Subparagraph 5, including Sub-Subparagraphs A, B.i. through B.iii., C, and D, of the First Supplemental Petition call for a legal conclusion, and thus, the allegations do not require a response from Defendant. To the extent a response is required to the allegations contained within Paragraph 4, Subparagraph 5, including Sub-Subparagraphs A, B.i. through B.iii., C, and D, of the First Supplemental Petition and to the extent the allegations pertain to Defendant, the allegations are denied. The remaining allegations contained within Paragraph 4, Subparagraph 5, including Sub-Subparagraphs A, B.i. through B.iii., C, and D, of the First Supplemental Petition are denied for lack of sufficient information to justify a belief therein.

7.

The allegations contained within Paragraph 4, Subparagraph 10 of the First Supplemental Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraph 4, Subparagraph 10 of the First Supplemental Petition are denied for lack of sufficient information to justify a belief therein.

8.

The allegations contained within Paragraph 4, Subparagraph 11, including Sub-Subparagraphs A through G, of the First Supplemental Petition do not pertain to Defendant, and thus the allegations do not require a response from Defendant. To the extent a response is required, the allegations contained within Paragraph 4, Subparagraph 11, including Sub-

Subparagraphs A through G, of the First Supplemental Petition are denied for lack of sufficient information to justify a belief therein.

9.

To the extent the allegations contained within the unnumbered prayer for relief Paragraph of the First Supplemental Petition beginning with "WHEREFORE" pertain to Defendant, these allegations are denied, and Defendant denies that it is liable jointly, severally, or otherwise to Plaintiffs. The remaining allegations contained within the unnumbered prayer for relief Paragraph of the First Supplemental Petition beginning with "WHEREFORE" are denied for lack of sufficient information to justify a belief therein.

10.

Any and all allegations contained within the First Supplemental Petition that are not specifically admitted herein are denied for lack of sufficient information to justify a belief therein.

**AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST SUPPLEMENTAL PETITION**

**AND NOW, IN FURTHER ANSWER TO THE FIRST SUPPLEMENTAL PETITION, DEFENDANT AVERS AS FOLLOWS:**

**FIRST AFFIRMATIVE DEFENSE**

This Court lacks jurisdiction over Defendant and over the controversy forming the basis of this litigation. This Court lacks both general personal jurisdiction and specific personal jurisdiction over Kaiser in this matter. Kaiser does not have a sufficient presence in Louisiana to warrant the exercise of general personal jurisdiction over it. Furthermore, Plaintiffs fail to allege any conduct by Kaiser in Louisiana that caused Plaintiffs and/or Lynne Roy's alleged injury. Therefore, the exercise of specific personal jurisdiction is not warranted.

**SECOND AFFIRMATIVE DEFENSE**

There is insufficiency of process and service of process against Defendant.

**THIRD AFFIRMATIVE DEFENSE**

This Court lacks venue as alleged in the First Supplemental Petition.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' First Supplemental Petition against Defendant fails to state a cause of action upon which relief may be granted. Plaintiffs have failed to plead facts sufficient to give rise to a

cause of action against Kaiser. Further, Plaintiffs have no cause of action to recover attorney fees or punitive damages from Kaiser.

FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations and/or prescription.

SIXTH AFFIRMATIVE DEFENSE

Kaiser asserts that the First Supplemental Petition is impermissibly vague and ambiguous. Specifically, the First Supplemental Petition fails to identify a particular product allegedly manufactured or distributed by Kaiser and/or a location where their alleged use occurred which may have contributed to Plaintiffs and/or Lynne Roy's purported injuries.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their damages, if any.

EIGHTH AFFIRMATIVE DEFENSE

Defendant denies that Plaintiffs and/or Lynne Roy ever used products manufactured by Defendant and further denies that Plaintiffs and/or Lynne Roy were ever in proximity to products manufactured by Defendant.

NINTH AFFIRMATIVE DEFENSE

Defendant avers that any injury or damage suffered by Plaintiffs and/or Lynne Roy in connection with a product manufactured by Defendant, which injury or damage is specifically denied, did not result from the normal use of the product.

TENTH AFFIRMATIVE DEFENSE

Alternatively, Defendant pleads the contributory and/or comparative negligence or fault and assumption of the risk of Plaintiffs and/or Lynne Roy with said negligence, fault and/or assumption of the risk acting as a complete bar to or, alternatively, in mitigation to Plaintiffs' and/or Lynne Roy's recovery.

ELEVENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiffs and/or Lynne Roy failed to observe warnings and instructions that were provided for their safety and protection and failed to use protective and safety equipment.

TWELFTH AFFIRMATIVE DEFENSE

Defendant manufactured its products with the highest degree of skill and care and in conformity with the knowledge and skills available to the industry at all times in question and adhered to all appropriate government and industry standards.

THIRTEENTH AFFIRMATIVE DEFENSE

If Plaintiffs and/or Lynne Roy sustained injuries or damages, which is specifically and categorically denied, their injuries and damages are the result of negligence or fault on the part of others over whom Defendant has no responsibility or control.

FOURTEENTH AFFIRMATIVE DEFENSE

Defendant specifically pleads the "state-of-the-art" defense to each and every allegation of the Plaintiffs and/or Lynne Roy. Defendant denies any defects in its products and avers that at all pertinent times, its products were reasonably fit and suited for the purpose for which they were manufactured and intended and were delivered with such advises as were consistent with the state of the existing medical and industrial art.

FIFTEENTH AFFIRMATIVE DEFENSE

Defendant denies the existence of or breach of any actual or implied warranty.

SIXTEENTH AFFIRMATIVE DEFENSE

Defendant avers that as a result of the provisions of certain statutes, including 11 U.S.C. Section 362(a), Plaintiffs and/or Lynne Roy are prohibited from proceeding against certain parties liable for the damages and injuries complained of, and Defendant reserves its right to so proceed.

SEVENTEENTH AFFIRMATIVE DEFENSE

Further, alternatively, Defendant avers that Lynne Roy did not inhale asbestos fibers or dust emitted by the normal use of said products, proximately causing the results and/or related abnormalities or alternatively, any other asbestos related injury.

EIGHTEENTH AFFIRMATIVE DEFENSE

Further, alternatively, Defendant avers that Lynne Roy's lung injury, if any, was caused by substances other than asbestos.

NINETEENTH AFFIRMATIVE DEFENSE

Defendant further adopts all affirmative defenses, if any, not specifically set out in this answer but asserted by any other defendant in this case.

TWENTIETH AFFIRMATIVE DEFENSE

Defendant affirmatively avers the affirmative defenses of La. R. S. 9:2800.51 *et seq.*, the Louisiana Products Liability Act.

TWENTY-FIRST AFFIRMATIVE DEFENSE

If Plaintiffs and/or Lynne Roy have heretofore settled or should hereafter settle for any of their alleged injuries and damages with any parties, then this Defendant is entitled to a credit for any such settlement.

TWENTY-SECOND AFFIRMATIVE DEFENSE

In the alternative, to the extent that Plaintiffs and/or Lynne Roy allege exposure to products manufactured by Defendant for a government contract, the government had a contractual right to specify how the contract would be complied with; the government exercised that right and Defendant complied with those specifications; Defendant specifically asserts the "government contractor defense."

TWENTY-THIRD AFFIRMATIVE DEFENSE

Defendant asserts that Lynne Roy's employers were responsible for her safety. Lynne Roy's employers were knowledgeable and sophisticated users and/or purchasers of asbestos-containing products. A manufacturer or distributor of a product has no duty to warn a sophisticated user and/or purchaser of a danger in its product of which the user/purchaser knows or should have known.

TWENTY-FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs and/or Lynne Roy seek to recover punitive damages against this Defendant, these damages are improper, unwarranted, not authorized by law, and unconstitutional in the context of this litigation.

TWENTY-FIFTH AFFIRMATIVE DEFENSE

Defendant reserves the right to aver and allege any other affirmative defenses which may become known as discovery proceeds.

REQUEST FOR JURY TRIAL

Defendant hereby demands a trial by jury.

**WHEREFORE**, Defendant, Kaiser Gypsum Company, Inc., prays that its Answer to the First Supplemental and Amended Petition for Damages, Survival and Wrongful Death be deemed good and sufficient and that after all legal delays and due proceeding had, there be

FILED
AUG 3 1 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

judgment herein in favor of Defendant, Kaiser Gypsum Company, Inc., and against Plaintiffs, dismissing the Original Petition for Damages, First Supplemental and Amended Petition for Damages, Survival and Wrongful Death, and all subsequent supplemental and amended petitions for damages, with prejudice and at Plaintiffs' costs. Defendant further prays for all general and equitable relief.

Respectfully submitted,

MARON MARVEL BRADLEY ANDERSON & TARDY LLC

ROBERT E. DILLE (#23037)
REBECCA A. ZOTTI (#33446)
201 St. Charles Avenue, Suite 2411
New Orleans, Louisiana 70170
Telephone: (504) 684-5100
Facsimile: (504) 613-0067
*Attorneys for Kaiser Gypsum Company, Inc.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all known counsel of parties to this proceeding by mailing a copy of same to each via hand, facsimile, electronic mail, Federal Express or by First Class U.S. mail, properly addressed and postage prepaid on this 31st day of August, 2020.

REBECCA A. ZOTTI

ATTORNEY'S NAME: Landry, Mickey P 22817
AND ADDRESS: 1010 Common Street, Suite 2050, New Orleans, LA 70112-1791

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**
**STATE OF LOUISIANA**

**NO: 2020-02718** **DIVISION: A** **SECTION: 16**

**ROY, LYNNE**

**Versus**

**COLGATE-PALMOLIVE COMPANY ET AL**

**CITATION**

TO: PFIZER INC.

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORATION SYSTEM
3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

SEP 29 2020

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA September 2, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** Kasie Jiles
**Kasie Jiles, Deputy Clerk**

**SHERIFF'S RETURN**
(for use of process servers only)

PERSONAL SERVICE

On this ______ day of ______ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON PFIZER INC.

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORATION SYSTEM

Returned the same day

No. ______

Deputy Sheriff of ______

Mileage: $ ______

/ ENTERED /

PAPER RETURN

SERIAL NO. DEPUTY PARISH

DOMICILIARY SERVICE

On this ______ day of ______ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON PFIZER INC.

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORATION SYSTEM

by leaving same at the dwelling house, or usual place of abode, in the hands of ______ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said PFIZER INC. being absent from the domicile at time of said service.

Returned the same day

No. ______

Deputy Sheriff of ______

I made service on the named party through the CT Corporation
SEP 29 2020
by tendering a copy of this document to
Ashley Linville
E. CUMMINS
Deputy Sheriff, Parish of East Baton Rouge, Louisiana

10/20/2020

RECEIVED
2020 SEP 17 PM 4:54
ORLEANS PARISH SHERIFF'S OFFICE

ID: 10524460

ATTORNEY'S NAME: Landry, Mickey P 22817
AND ADDRESS: 1010 Common Street, Suite 2050 , New Orleans, LA 70112-1791

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY ET AL

SEP 29 2020

## CITATION

TO: K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN -INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORA TION SYSTEM
3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA September 2, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

I made service on the named party through the CT Corporation SEP 29 2020 by tendering a copy of this document to [signature] ... Minvielle

**CHELSEY RICHARD NAPOLEON, Clerk of The Civil District Court for the Parish of Orleans State of LA**
by [signature]
**Kasie Jiles, Deputy Clerk**

## SHERIFF'S RETURN
(for use of process servers only)

**PERSONAL SERVICE**

On this ____ day of ____________ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN - INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORA TION SYSTEM

Returned the same day
________ No. ________
Deputy Sheriff of ________
Mileage: $ ________
/ ENTERED /
PAPER RETURN
/ /
SERIAL NO. DEPUTY PARISH

**DOMICILIARY SERVICE**

On this ____ day of ____________ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN - INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORA TION SYSTEM

by leaving same at the dwelling house, or usual place of abode, in the hands of ____________ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN - INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION being absent from the domicile at time of said service.

Returned the same day
No. ________
Deputy Sheriff of ________

RECEIVED 2020 SEP 17 PM 4:54 ORLEANS PARISH SHERIFF'S OFFICE

10/1/2020 [signature]

ID: 10524459

FILED
OCT 12 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION 16** **DIVISION "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

**DEFENDANT, COTY INC.'S, ANSWER TO FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT**

COMES NOW Defendant Coty Inc., individually and as successor-in-interest to Noxzema Chemical Company (hereinafter referred to as "Defendant"), by and through its counsel, and hereby responds to the specific allegations of Plaintiffs' First Supplemental and Amended Petition for Damages, Survival and Wrongful Death with Incorporated Motion for Leave of Court (hereinafter referred to as "Petition") and any and all Cross-Claims, if any, filed in this matter as follows:

**EXCEPTIONS**

Defendant adopts and incorporates by reference as if fully set forth herein the exceptions and memoranda in support filed by the other defendants in this action unless and until it opts out of a particular exception.

**ANSWER TO FIRST SUPPLEMENTAL AND AMENDED PETITION**

**1-2.**

Defendant denies the allegations contained in paragraphs 1 and 2, including all subparagraphs contained therein, of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 1 and 2, including all subparagraphs contained therein, of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

VERIFIED
10-20-2020

**3.**

Defendant denies the allegations contained in paragraph 3 of the Petition as they apply to Defendant. To the extent that the allegations in paragraph 3 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same. Defendant further denies that Plaintiffs' are entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever.

**4.**

Defendant reiterates and adopts its answer and affirmative defenses to the Original Petition as though fully set forth herein. Defendant denies that Plaintiffs' are entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever. Defendant further denies that Plaintiffs' are entitled to any relief as against Defendant.

Defendant denies all allegations of any and all cross-complaints, cross-actions and third-party complaints filed against it by other defendants in this case, or which may be filed by such other defendants or additional parties in the future, and states that it is not liable to any party in this case.

**3. (Misnumbered)**

Defendant is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 3 (Misnumbered) of the Petition and accordingly denies same.

**5.**

Defendant denies the allegations contained in paragraph 5, including all subparagraphs contained therein, of the Petition, as they apply to Defendant. To the extent that the allegations in paragraph 5, including all subparagraphs contained therein, of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**6-9. (Omitted)**

FILED
OCT 12 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**10-11.**

The allegations contained in paragraphs 10 and 11, including all subparagraphs contained therein, of the Petition are not directed toward Defendant, and therefore no response is required. To the extent any of the allegations in paragraphs 10 and 11, including all subparagraphs contained therein, require a response from Defendant, such allegations are denied.

To the extent that Plaintiffs reiterate the allegations contained in the Original Petition and First Supplemental and Amending Petition, Defendant denies the allegations, incorporates, and adopts by reference its responses, defenses and affirmative defenses thereto as if copied herein, *in extenso*. The allegations contained within any unnumbered or mis-numbered paragraphs of the Supplemental Petition, as well as any paragraphs or allegations not specifically answered or admitted, are denied as to Defendant. The allegations contained within the preamble paragraph and the prayer for relief of the Original Petition and Supplemental Petition are also denied. Defendant denies that Plaintiffs are entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever. Defendant adopts and asserts all applicable defenses, and affirmative defenses asserted by all other defendants and third party defendants herein and reserves its right to supplement and amend its Answer and Defenses as discovery progresses.

**WHEREFORE,** Defendant Coty Inc. having responded to the Petition, requests that the Petition be dismissed, judgment be entered in its favor against Plaintiffs', with costs assessed against Plaintiffs'.

Respectfully submitted, this the 12th day of October 2020.

Respectfully submitted:

**COSMICH SIMMONS & BROWN, PLLC**

FORREST REN WILKES (LSBA No. 22897)
JASON K. ELAM (LSBA No. 34533)
650 Poydras Street, Suite 2215
New Orleans, Louisiana 70130
Telephone: (504) 262-0040
Facsimile: (504) 262-0041
Email: ren@cs-law.com

AND

FILED
OCT 12 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**COSMICH SIMMONS & BROWN, PLLC**
Clint Hagaman
100 East River Center Blvd. Suite 480
Covington, KY 41011
Telephone: (859) 878-2502
Facsimile: (859) 261-0848
Email: clint@cs-law.com

***Attorneys for Coty Inc.***

**CERTIFICATE OF SERVICE**

I do hereby certify that I have served a copy of the foregoing pleading to all known counsel of record via United States mail, postage prepaid, facsimile transmission and/or electronic mail on this 12th day of October 2020.

JASON K. ELAM

FILED
2020 SEP 08 A 09:57
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:_________________ _________________
DEPUTY CLERK

**JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S MOTION FOR EXTENSION OF TIME**

**NOW INTO COURT**, through undersigned counsel, come Defendants, Johnson & Johnson and Johnson & Johnson Consumer Inc., which appear solely for the purposes of an extension of time and reserving all objections, exceptions, and defenses, and upon suggesting to the Court that additional time will be necessary within which to file responsive pleadings to Plaintiff's First Supplemental and Amended Petition for Damages.

**WHEREFORE**, defendants respectfully pray that the Court allow an additional thirty (30) days from the signing of the Order within which to file responsive pleadings to Plaintiff's First Supplemental and Amended Petition for Damages.

Respectfully Submitted:

IRWIN FRITCHIE URQUHART & MOORE LLC

KIM E. MOORE (La. Bar No. 18653)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
CARLOS A. BENACH (La. Bar No. 36797)
GABRIEL J. WINSBERG (Bar No. 38943)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

***Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.***

RECEIVED
SEP 2020
DIVISION "A"

FILED
2020 SEP 08 A 09:57
CIVIL
DISTRICT COURT

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of September, 2020, I served a copy of the foregoing pleading on counsel for all parties to this proceeding via e-mail, facsimile, and/or mailing same by United States mail, properly addressed, and first class postage paid.



E-Filed

FILED
2020 SEP 08 A 09:57
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:_______________ _______________
DEPUTY CLERK

ORDER

Considering the foregoing Motion for Extension of Time;

**IT IS ORDERED** that Defendants, Johnson & Johnson and Johnson & Johnson Consumer Inc., be allowed an additional thirty (30) days from the signing of this Order within which to file responsive pleadings to Plaintiff's First Supplemental and Amended Petition for Damages.

New Orleans, Louisiana, this ________ day of SEP 2 1 2020, 2020.

Ellen M. Hazeur
JUDGE
(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

00723167



E-Filed

FILED
2020 OCT 06 P 01:46
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION 16** **DIVISION "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

**DEFENDANT CHANEL INC.'S ANSWER IN RESPONSE TO PLAINTIFFS' FIRST SUPPLEMENTAL AND AMENDED PETITION**

NOW INTO COURT, through undersigned counsel, comes Defendant, Chanel, Inc. (hereinafter "Chanel" or "Defendant"), which responds to Plaintiffs' First Supplemental and Amended Petition for Damages, Survival and Wrongful Death (hereinafter "First Amended Petition") as follows.

Chanel expressly adopts its answers and defenses filed in response to Plaintiff's Original Petition for Damages, as if copied *in extenso*, and reserves the right to adopt the defenses pled by any other defendant that may be applicable to it. Chanel further reserves its right to supplement and amend its response as investigation and discovery may warrant.

Chanel responds to Plaintiffs' First Amended Petition by denying each and every allegation therein contained, except as such as may be hereinafter expressly admitted or qualified. Further answering the specific numbered paragraphs of Plaintiffs' First Amended Petition, Chanel avers as follows:

**ANSWER TO PLAINTIFF'S FIRST AMENDED PETITION**

I.

The allegations contained in Paragraphs 1 and 2 of the First Amended Petition, including any and all subparts thereto, are denied for lack of sufficient information to justify a belief therein.



VERIFIED
Yanley Salazar
2020 OCT 07 P 02:22

E-Filed

FILED
2020 OCT 06 P 01:46
CIVIL
DISTRICT COURT

II.

The allegations contained in Paragraph 3 of the First Amended Petition, including any and all subparts therein, are denied as to this Defendant. Further, to the extent the allegations contained in Paragraph 3 contain legal conclusions, they are denied for lack of sufficient information to justify a belief therein. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiffs for any alleged damages.

III.

In response to the allegations contained in Paragraph 4 of the First Amended Petition, Chanel expressly adopts its answers and defenses filed in response to Plaintiff's Original Petition for Damages, as if copied *in extenso*, and reserves the right to adopt the defenses pled by any other defendant that may be applicable to it. Defendant expressly denies that it is liable individually, jointly, severally, and/or in *solido* to Plaintiffs for any alleged damages.

IV.

The allegations in mis-numbered Paragraph "3" following Paragraph 4 of the First Amended Petition, are denied for lack of sufficient information to justify a belief therein. Further, all allegations which attempt to place liability on this Defendant are denied. Defendant expressly denies that it is liable individually, jointly, severally, and/or *in solido* to Plaintiffs for any alleged damages.

V.

The allegations contained in Paragraph 5 of the First Amended Petition, including any and all subparts thereto, containing legal conclusions regarding venue and jurisdiction, are denied for lack of sufficient information to justify a belief therein. Further, all allegations which attempt to place liability on this Defendant are denied. Defendant expressly denies that it is liable individually, jointly, severally, and/or in *solido* to Plaintiffs for any alleged damages.

VI.

The allegations contained in Paragraphs 10 the First Amended Petition, including any and all subparts thereto, do not require a response from this Defendant. To the extent a response is



E-Filed

FILED
2020 OCT 06 P 01:46
CIVIL
DISTRICT COURT

deemed necessary, the allegations are denied for lack of sufficient information to justify a belief therein.

VII.

The allegations contained in Paragraphs 11 of the First Amended Petition, including any and all subparts thereto, are denied as to this Defendant. To the extent these allegations concern other Defendants, they are denied for lack of sufficient information to justify a belief therein.

VIII.

The allegations contained in the unnumbered Paragraph beginning with "WHEREFORE" following numbered Paragraph 11 of the First Amended Petition are denied as to this Defendant. Furthermore, Chanel denies that Plaintiffs are entitled to judgment against it, individually, jointly, severally, and/or *in solido* in any amount whatsoever.

WHEREFORE, Defendant Chanel, Inc., prays that, after due proceedings be had, there be judgment rendered herein in its favor and against the Plaintiffs, dismissing Plaintiffs' suit at their cost and with prejudice.

Respectfully submitted,

**MG+M LAW FIRM**

Christopher O. Massenburg (LSBA No. 26989)
Meghan B. Senter (LSBA No. 34088)
Amanda L. Deto (LSBA No. 38190)
One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax: (504) 535-2886
Email: TalcLitLa@mgmlaw.com
Web: www.mgmlaw.com

**ATTORNEYS FOR CHANEL, INC.**



E-Filed

FILED
2020 OCT 06 P 01:46
CIVIL
DISTRICT COURT

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this date delivered, via mail, fax and/or e-mail, a true and correct copy of the foregoing document to counsel for Plaintiff and to all known counsel of record.

SO CERTIFIED, this the 6th day of October, 2020.

AMANDA L. DETO



E-Filed

ATTORNEY'S NAME: Landry, Mickey P 22817
AND ADDRESS: 1010 Common Street, Suite 2050, New Orleans, LA 70112-1791

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY ET AL

## CITATION

TO: PFIZER INC.

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORATION SYSTEM
3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

SEP 29 2020

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA September 2, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** Kasie Jiles
**Kasie Jiles, Deputy Clerk**

## SHERIFF'S RETURN
(for use of process servers only)

**PERSONAL SERVICE**

On this ______ day of ______ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON PFIZER INC.

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORATION SYSTEM

Returned the same day

______ No. ______

Deputy Sheriff of ______

Mileage: $ ______

______ / ENTERED / ______

PAPER RETURN 01

______ / ______ / ______

SERIAL NO. DEPUTY PARISH

**DOMICILIARY SERVICE**

On this ______ day of ______ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON PFIZER INC.

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORATION SYSTEM

by leaving same at the dwelling house, or usual place of abode, in the hands of ______ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said PFIZER INC. being absent from the domicile at time of said service.

Returned the same day

No. ______

Deputy Sheriff of ______

I made service on the named through the CT Corporation SEP 29 2020 by tendering a copy of this document to Ashley Mayville
E. CUMMINS
Deputy Sheriff, Parish of East Baton Rouge, Louisiana

9/29/2020

RECEIVED
2020 SEP 17 PM 4:54
ORLEANS PARISH SHERIFF'S OFFICE

ID: 10524460

ATTORNEY'S NAME: Landry, Mickey P 22817
AND ADDRESS: 1010 Common Street, Suite 2050, New Orleans, LA 70112-1791

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2020-02718 DIVISION: A SECTION: 16

ROY, LYNNE

Versus

COLGATE-PALMOLIVE COMPANY ET AL

SEP 29 2020

## CITATION

TO: K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN -INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORA TION SYSTEM
3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE**********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA September 2, 2020**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of The Civil District Court for the Parish of Orleans State of LA**
by- Kasie Jiles
**Kasie Jiles, Deputy Clerk**

I made service on the named party through the CT Corporation SEP 29 2020 by tendering a copy of this document ... Minvielle ... Louisiana

## SHERIFF'S RETURN
(for use of process servers only)

**PERSONAL SERVICE**

On this ____ day of ____ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN - INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORA TION SYSTEM

Returned the same day
No. ____
Deputy Sheriff of ____
Mileage: $ ____
/ ENTERED /
PAPER ____ RETURN ____
SERIAL NO. DEPUTY PARISH

**DOMICILIARY SERVICE**

On this ____ day of ____ served a copy of the within

FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURIVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT

ON K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN - INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION

THROUGH: ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA: CT CORPORA TION SYSTEM

by leaving same at the dwelling house, or usual place of abode, in the hands of ____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said K&B LOUISIANA CORPORATION(D/B/A RITE AID CORPORATION), (INDIVIDUALLY AND AS SUCCESSOR-IN - INTEREST TO KATZ & BESTHOFF, INC.) A LOUISIANA CORPORATION being absent from the domicile at time of said service.

Returned the same day
No. ____
Deputy Sheriff of ____

RECEIVED
2020 SEP 17 PM 4:54
ORLEANS PARISH SHERIFF'S OFFICE

10/1/2020

ID: 10524459

FILED
OCT 12 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO. 2020-02718** **SECTION 16** **DIVISION "A"**

**LYNNE L. ROY**

**VERSUS**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:** ______________________ ______________________
**DEPUTY CLERK**

**DEFENDANT, COTY INC.'S, ANSWER TO FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES, SURVIVAL AND WRONGFUL DEATH WITH INCORPORATED MOTION FOR LEAVE OF COURT**

COMES NOW Defendant Coty Inc., individually and as successor-in-interest to Noxzema Chemical Company (hereinafter referred to as "Defendant"), by and through its counsel, and hereby responds to the specific allegations of Plaintiffs' First Supplemental and Amended Petition for Damages, Survival and Wrongful Death with Incorporated Motion for Leave of Court (hereinafter referred to as "Petition") and any and all Cross-Claims, if any, filed in this matter as follows:

**EXCEPTIONS**

Defendant adopts and incorporates by reference as if fully set forth herein the exceptions and memoranda in support filed by the other defendants in this action unless and until it opts out of a particular exception.

**ANSWER TO FIRST SUPPLEMENTAL AND AMENDED PETITION**

**1-2.**

Defendant denies the allegations contained in paragraphs 1 and 2, including all subparagraphs contained therein, of the Petition as they apply to Defendant. To the extent that the allegations in paragraphs 1 and 2, including all subparagraphs contained therein, of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

VERIFIED
10-26-2020

3.

Defendant denies the allegations contained in paragraph 3 of the Petition as they apply to Defendant. To the extent that the allegations in paragraph 3 of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same. Defendant further denies that Plaintiffs' are entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever.

4.

Defendant reiterates and adopts its answer and affirmative defenses to the Original Petition as though fully set forth herein. Defendant denies that Plaintiffs' are entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever. Defendant further denies that Plaintiffs' are entitled to any relief as against Defendant.

Defendant denies all allegations of any and all cross-complaints, cross-actions and third-party complaints filed against it by other defendants in this case, or which may be filed by such other defendants or additional parties in the future, and states that it is not liable to any party in this case.

**3. (Misnumbered)**

Defendant is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 3 (Misnumbered) of the Petition and accordingly denies same.

5.

Defendant denies the allegations contained in paragraph 5, including all subparagraphs contained therein, of the Petition, as they apply to Defendant. To the extent that the allegations in paragraph 5, including all subparagraphs contained therein, of the Petition pertain to other defendants, Defendant lacks sufficient knowledge or information to form a belief as to the truth of these allegations, and therefore, denies same.

**6-9. (Omitted)**

FILED
OCT 12 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**10-11.**

The allegations contained in paragraphs 10 and 11, including all subparagraphs contained therein, of the Petition are not directed toward Defendant, and therefore no response is required. To the extent any of the allegations in paragraphs 10 and 11, including all subparagraphs contained therein, require a response from Defendant, such allegations are denied.

To the extent that Plaintiffs reiterate the allegations contained in the Original Petition and First Supplemental and Amending Petition, Defendant denies the allegations, incorporates, and adopts by reference its responses, defenses and affirmative defenses thereto as if copied herein, *in extenso*. The allegations contained within any unnumbered or mis-numbered paragraphs of the Supplemental Petition, as well as any paragraphs or allegations not specifically answered or admitted, are denied as to Defendant. The allegations contained within the preamble paragraph and the prayer for relief of the Original Petition and Supplemental Petition are also denied. Defendant denies that Plaintiffs are entitled to judgment against it, individually, jointly, severally and/or *in solido* in any amount whatsoever. Defendant adopts and asserts all applicable defenses, and affirmative defenses asserted by all other defendants and third party defendants herein and reserves its right to supplement and amend its Answer and Defenses as discovery progresses.

**WHEREFORE,** Defendant Coty Inc. having responded to the Petition, requests that the Petition be dismissed, judgment be entered in its favor against Plaintiffs', with costs assessed against Plaintiffs'.

Respectfully submitted, this the 12th day of October 2020.

Respectfully submitted:

**COSMICH SIMMONS & BROWN, PLLC**

FORREST REN WILKES (LSBA No. 22897)
JASON K. ELAM (LSBA No. 34533)
650 Poydras Street, Suite 2215
New Orleans, Louisiana 70130
Telephone: (504) 262-0040
Facsimile: (504) 262-0041
Email: ren@cs-law.com

AND

FILED
OCT 12 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**COSMICH SIMMONS & BROWN, PLLC**
Clint Hagaman
100 East River Center Blvd. Suite 480
Covington, KY 41011
Telephone: (859) 878-2502
Facsimile: (859) 261-0848
Email: clint@cs-law.com

***Attorneys for Coty Inc.***

**CERTIFICATE OF SERVICE**

I do hereby certify that I have served a copy of the foregoing pleading to all known counsel of record via United States mail, postage prepaid, facsimile transmission and/or electronic mail on this 12th day of October 2020.

JASON K. ELAM

FILED
2020 AUG 27 P 01:17
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION: 16 DIVISION: "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL

FILED: ______________________ ______________________
DEPUTY CLERK

MOTION FOR EXTENSION OF TIME IN WHICH TO FILE RESPONSIVE PLEADINGS

Now into court, through undersigned counsel, come defendants, **Cyprus Amax Minerals Company (improperly named as "d/b/a and as successor-in-interest to Sierra Talc Company, Untied Sierra Division of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu, Inc., Resource Processors, Inc. and Windsor Minerals, Inc.") and Cyprus Mines Corporation (improperly named as "d/b/a and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Chas. Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company, Inc., Imperial Products Co. Inc. and Resource Processors Inc.)**, through undersigned counsel, appearing solely for the purpose of obtaining an extension of time within which to file responsive pleadings to Plaintiffs' First Supplemental and Amended Petition ordered filed by this court on August 19, 2020, and on suggesting to the court that defendant requires additional time to file responsive pleadings herein,

RECEIVED
2020
DIVISION "A"

{SIGNATURE PAGE AND CERTIFICATE OF SERVICE FOLLOWS}

VERIFIED
Yanley Salazar
2020 AUG 27 P 01:40

VERIFIED

VERIFIED 8-28-2020

E-Filed

FILED
2020 AUG 27 P 01:17
CIVIL
DISTRICT COURT

Respectfully submitted:

John D. Person, La. Bar No. 10531
W. Glenn Burns, La Bar No. 03698
Lezly L. Petrovich, La. Bar No. 25825
Anna A. Rainer, La. Bar No. 31531
*AARON & GIANNA, PLC*
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

*Attorneys for Cyprus Amax Minerals Company and Cyprus Mines Corporation*

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on the 27th day of August, 2020, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first-class postage prepaid and/or e-mail transmission.

John D. Person

E-Filed

FILED
2020 AUG 27 P 01:17
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-02718 SECTION: 16 DIVISION: "A"

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL

FILED: ______________________ ______________________
DEPUTY CLERK

## ORDER

Considering the Foregoing Motion:

**IT IS ORDERED** by the court that defendants, **Cyprus Amax Minerals Company and Cyprus Mines Corporation**, be granted an additional thirty (30) days within which to file responsive pleadings herein.

New Orleans, Louisiana, this _____ day of SEP 2 1 2020, 2020.

DISTRICT COURT JUDGE

(Sgd.) ELLEN M. HAZEUR
Judge - Division "A"

VERIFIED
10/22/2020

FILED
2020 OCT 12 P 01:35
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:_______________ _______________
DEPUTY CLERK

**UNOPPOSED MOTION TO CONTINUE HEARING ON JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER, INC.'S EXCEPTIONS**

NOW INTO COURT, through undersigned counsel, come defendants, ***Johnson & Johnson and Johnson & Johnson Consumer Inc.***, who respectfully move the Court to continue the November 6, 2020 hearing on their Exceptions to Plaintiff's Petition without date.

1.

On August 13, 2020, ***Johnson & Johnson and Johnson & Johnson Consumer Inc.*** filed Exceptions to Plaintiff' Petition. The exceptions are set for hearing on November 6, 2020.

2.

***Johnson & Johnson and Johnson & Johnson Consumer Inc.*** request that the Court continue the hearing on their exceptions without date.

3.

Defendants have contacted counsel for Plaintiff and they have no opposition to the continuance of these Exceptions.

WHEREFORE, defendants, ***Johnson & Johnson and Johnson & Johnson Consumer Inc.***, pray that the hearing on their exceptions be continued without date.

[SIGNATURE PAGE TO FOLLOW]

RECEIVED
DIVISION "A"
11/4/2020

VERIFIED
Yanley Salazar
2020 OCT 14 A 08:42

00731720



E-Filed

FILED
2020 OCT 12 P 01:35
CIVIL
DISTRICT COURT

Respectfully Submitted:

IRWIN FRITCHIE URQUHART & MOORE LLC

KIM E. MOORE (La. Bar No. 18653)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
CARLOS A. BENACH (La. Bar No. 36797)
GABRIEL J. WINSBERG (Bar No. 38943)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

***Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of October, 2020, I served a copy of the foregoing pleading on counsel for all parties to this proceeding via e-mail, facsimile, and/or mailing same by United States mail, properly addressed, and first class postage paid.

FILED
2020 OCT 12 P 01:35
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**No. 20-2718** **SECTION 16** **DIVISION A**

**LYNNE L. ROY**

**versus**

**COLGATE-PALMOLIVE COMPANY, ET AL.**

**FILED:**________________ ________________
**DEPUTY CLERK**

**ORDER**

Considering the foregoing Motion to Continue Hearing on ***Johnson & Johnson and Johnson & Johnson Consumer Inc.***'s Exceptions;

IT IS HEREBY ORDERED that the motion is hereby GRANTED and ***Johnson & Johnson and Johnson & Johnson Consumer Inc.'s*** Exceptions to Plaintiff's Petition are hereby continued without date.

New Orleans, Louisiana, this ____ day of OCT 19 2020, 2020.

Ellen M. Hazeur
JUDGE
(sgd.) ELLEN M. HAZEUR
Judge - Division "A"

Kori Jules
11/4/2020

00731720



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:___________________ ___________________
DEPUTY CLERK

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S EXCEPTIONS**

NOW INTO COURT, through undersigned counsel, come Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc. (collectively, "the Johnson & Johnson Defendants"), who assert the peremptory exception of no cause of action and dilatory exception of vagueness and ambiguity of the petition.

Plaintiff Lynne Roy filed suit against the Johnson & Johnson Defendants, among others, alleging that the use of talcum powder products and Kaiser Gypsum joint compound caused Plaintiff's mesothelioma.[1] Plaintiff's Original Petition for Damages (hereinafter "Petition") alleges that Plaintiff used Cashmere Bouquet, Coty talcum powder products, Chanel talcum powder products, Kaiser Gypsum joint compound, and Johnson & Johnson Consumer Inc.'s Johnson's® Baby Powder and Shower to Shower® products.[2] Plaintiff's First Supplemental and Amended Petition for Damages substitutes Decedent Lynne Roy's heirs, Melissa Lynne Roy Kaiser and Melanie C. Roy, in the stead of Decedent Lynne Roy, and incorporates by reference all of the allegations set forth in the original Petition for Damages.

Plaintiff's claim for civil conspiracy (count eight) is not recognized under Louisiana law, and therefore should be dismissed. The petition also seeks punitive damages (count five), which are barred under Louisiana law, with limited exceptions not applicable here. Because none of

---

[1] Ex. A, Petition for Damages at ¶¶ 1-2.

[2] *Id.*

80733753



VERIFIED
Yanley Salazar
2020 OCT 22 A 11:44

E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

Plaintiff's allegations fall within the exceptions where punitive damages are authorized, her claims seeking punitive damages should be dismissed for failure to state a cause of action.

Additionally, the allegations directed to the Johnson & Johnson Defendants are impermissibly vague and ambiguous. The petition sets forth various counts applicable (allegedly) to all of the defendants collectively or to a subset of defendants. For the most part, the allegations are impermissibly vague and are directed to "defendants" collectively without specifying which facts and conclusory allegations apply to which of the defendants. As such, the Court should sustain the exceptions of vagueness and ambiguity and require Plaintiff to amend her petition to comply with Louisiana Code of Civil Procedure Articles 856 and 891.

WHEREFORE, the Johnson & Johnson Defendants respectfully pray that this Honorable Court sustain their exception of no cause of action as to Plaintiff's punitive damages and civil conspiracy claims, and sustain their exception of vagueness and ambiguity of the petition and require Plaintiff to amend her petition.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

KIM E. MOORE (La. Bar No. 18653)
JOHN W. SINNOTT (La. Bar No. 23943)
LEILA A. D'AQUIN (La. Bar No. 18884)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served on counsel for all parties to this proceeding by electronic mail and/or mailing the same to each by first-class mail, properly addressed and postage prepaid, on the 21st day of October, 2020.



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 20-2718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:____________________ ____________________
DEPUTY CLERK

**MEMORANDUM IN SUPPORT OF DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S EXCEPTIONS**

Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (hereinafter, "the Johnson & Johnson Defendants") file this memorandum in support of their peremptory exception of no cause of action, and dilatory exceptions of vagueness and ambiguity of the petition.[1]

**SUMMARY OF THE ARGUMENT**

Plaintiff Lynne Roy filed suit against the Johnson & Johnson Defendants, among others, alleging that the use of talcum powder products and Kaiser Gypsum joint compound caused Plaintiff's mesothelioma.[2] Plaintiff's Original Petition for Damages (hereinafter "Petition") alleges that Plaintiff used Cashmere Bouquet, Coty talcum powder products, Chanel talcum powder products, Kaiser Gypsum joint compound, and Johnson & Johnson Consumer Inc.'s Johnson's® Baby Powder and Shower to Shower® products.[3] Plaintiff's First Supplemental and Amended Petition for Damages substitutes Decedent Lynne Roy's heirs, Melissa Lynne Roy Kaiser and Melanie C. Roy, in the stead of Decedent Lynne Roy, and incorporates by reference all of the allegations set forth in the original Petition for Damages.

Plaintiff's claims for civil conspiracy (count eight) and "supplier/distributor/manufacturer/seller liability" (count two) are not cognizable under Louisiana law, and therefore, should be dismissed.

---

1 Pursuant to Uniform District Court Rule 9.8, the Johnson & Johnson Defendants state that this case is not set for trial and that the Johnson & Johnson Defendants do not anticipate offering live testimony at the hearing on these exceptions.

2 Ex. A, Petition for Damages at ¶¶ 1-2.

3 *Id.*

00733751



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

Plaintiff's claims for punitive damages (count ten) fail as a matter of law. Punitive damages are the exception and not the rule under Louisiana law, and said limited exceptions do not apply to Plaintiff's product liability claims. Therefore, Plaintiff's claims for punitive damages must be dismissed.

Additionally, the allegations directed to the Johnson & Johnson Defendants fail to conform to the pleading requirements under Louisiana law and are impermissibly vague and ambiguous. The petition sets forth various counts applicable (allegedly) to all of the defendants collectively. For the most part, the allegations are impermissibly vague and are directed to "defendants" collectively without specifying which facts and conclusory allegations apply to which of the defendants. As such, the Court should sustain the exceptions of non-conformity and vagueness and ambiguity and require Plaintiff to amend her petition to comply with Louisiana Code of Civil Procedure Articles 856 and 891.

## LAW AND ARGUMENT

## I. PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION

### A. The Exception of No Cause of Action

The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged. *Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission*, 94-2015 (La. 11/30/94), 646 So.2d 885; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234 (La. 1993); *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1018 (La. 1993). For purposes of an exception of no cause of action, a "cause of action" is defined as the state of facts that gives rise to a plaintiff's right to assert an action against a defendant. A "cause of action" is the conduct of the defendant that gives rise to a particular cause or complaint, and it is a set of facts upon which a plaintiff's specific right is based. *Trahan v. Liberty Mutual Ins. Co.*, 314 So.2d 350, 353 (La. 1975).

### B. "Supplier/Distributor/Manufacturer/Seller Liability" and Civil Conspiracy Are Not Causes of Action Under Louisiana Law.

Count two of the Petition is entitled "supplier/distributor/manufacturer/seller liability." This is not a cause of action under Louisiana law. Accordingly, Plaintiff cannot state a cause of action for "supplier/distributor/manufacturer/seller liability," and this count should be dismissed.



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

Similarly, conspiracy is not an independent cause of action under Louisiana law. *See Ames v. Ohle*, 97 So. 3d 386, 393 (La. App. 4th Cir. 2012) ("The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law."). "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Id.*; *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001) ("The actionable element under [Louisiana Civil Code] article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury."). Thus, Plaintiff's conspiracy claim fails as a matter of law and should be dismissed. *See Hardy v. Easterling*, 47,950 (La. App. 2d Cir. 4/10/13), 113 So. 3d 1178, 1184 ("An independent cause of action for civil conspiracy does not exist in Louisiana; rather the actionable element of article 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing plaintiff's injury.").

**C. Plaintiff Has No Claim For Punitive Damages Under Louisiana Law.**

"There is no authority in the law of Louisiana for allowing punitive damages in any case, unless it be for some particular wrong for which a statute expressly authorizes the imposition of some such penalty." *McCoy v. Arkansas Nat. Gas Co.*, 175 La. 487, 497, 143 So. 383, 385–86 (1932). "**In Louisiana, there is a general public policy against punitive damages**; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute." *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02), 828 So. 2d 546, 555, citations omitted, emphasis added. **Product liability claims "lie[] outside the scope of article 2315.3."** *Williams v. A.C. & S., Inc.*, 700 F. Supp. 309, 310 (M.D. La. 1988) (emphasis added). *See Galjour v. Gen. Am. Tank Car Corp.*, 769 F. Supp. 953, 956 (E.D. La. 1991) (explaining that a defendant who manufactured butadiene but was not "engaged in" the storing, handling, or transportation of butadiene was not liable for punitive damages); *see also Williams*, 700 F. Supp. at 310 ("Defendants' fault, if any, arises from the manufacture, design, and labelling of the products—conduct which, although within the realm of products liability, lies outside the scope of article 2315.3."). Accordingly, it is well-settled law in Louisiana that punitive damages are the exception and not the rule, and that punitive damages are not applicable to the type of product liability claims asserted here.



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

Plaintiff here claims she suffered personal injury through her use of the Johnson & Johnson Defendants' allegedly defective product. This a products liability claim. It is undisputed that no current or former Louisiana law authorizes punitive damages on product liability claims. Instead, Plaintiff's Amended Petition proposes an impermissible expansion of repealed Louisiana Civil Code Article 2315.3, which permitted punitive damages "if it [was] proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." However, every court to address this issue has squarely rejected an expansion of former Article 2315.3 to product liability claims as contrary to the principles of Louisiana law and the Supreme Court's holding. *See* e.g. *Badon v. R.J. Reynolds Tobacco Co.*, 2005-1048 (La. App. 3 Cir. 7/12/06), 934 So. 2d 927, 931. As recently as May 22, 2020, a district court in Louisiana rejected a plaintiff's attempt to apply former Article 2315.3 to product liability claims similar to those asserted here as an impermissible expansion of Louisiana law, stating "This Court finds as a matter of law that the term "handling" as used in the former La. C.C.P. art. 2315.3 was not intended to apply nor will this Court expand its application to a product liability claim based upon a failure to warn."[4] This Court must do the same and sustain the exception of no cause of action as to Plaintiff's claim for punitive damages.

Plaintiff can cite no jurisprudence in which a manufacturer has been held liable for punitive damages on claims sounding in products liability. In fact, every case which Plaintiff cites and which has addressed the issue of whether a manufacturer can be held liable for punitive damages has clearly and definitively drawn the distinction that a manufacturer can only be held liable for punitive damages for claims which do **not** arise out of manufacturing activities and do **not** sound in products liability.

The legislative intent behind former Article 2315.3 is narrow and clear, and it did not target product liability claims. *See Ross*, 828 So. 2d at 553 (noting the House Committee notes reflecting that the legislation was passed after a troubling case in which "a hazardous waste disposal company intentionally arranged for two million gallons of dichlorobutadiene, an extremely hazardous

[4] Ex. B: Judgment, *Linda Biermann v. Colgate-Palmolive, et al.*, No. 2019-7989 (Civ. Dist. Ct. Orleans, LA.). This ruling was subsequently reversed on procedural grounds, not substantive grounds, on a supervisory writ to the Louisiana Fourth Circuit Court of Appeals.

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

chemical waste product, to be deposited into a crude oil pipeline. . . .When the hazardous chemical entered the pipeline, an explosion and fire occurred . . . The legislature thereupon decided to create a statute allowing punitive damages for the wanton or reckless storage, handling, or transportation of hazardous or toxic substances.")

In *Badon*, the Third Circuit affirmed dismissal of the plaintiff's punitive damages claims, holding that former article 2315.3 did not apply to plaintiff's product liability claims against cigarette manufacturers "as a matter of law because Ms. Badon's allegations of liability do not pertain to the tobacco defendants' conduct in storing, handling, or transporting the cigarettes." 934 So. 2d at 931. In doing so, the Third Circuit expressly rejected the plaintiff's argument that the definition of "handling" within former Article 2315.3 could be expanded to include manufacturing activities:

> Ms. Badon cites jurisprudence wherein summary judgment was precluded due to a genuine issue of material fact as to whether a defendant "handled" a product, and she contends that the tobacco defendants in the instant case "handled their product in such a manner as to increase its addictive propensity." However, semantics is insufficient to create a genuine issue of material fact. **Regardless of the term she used, Ms. Badon's allegation sounds in the design of the cigarettes, and not the handling of the cigarettes as the term is used in La.Civ.Code art. 2315.3. Importantly, Ms. Badon has failed to cite any case in which a court has imposed punitive damages under La.Civ.Code art. 2315.3 upon a manufacturer/distributor of cigarettes in favor of a plaintiff who has sustained injury from smoking cigarettes.** Accordingly, we affirm the trial court's grant of summary judgment as to the La.Civ.Code art. 2315.3 claim.

*Id.* at 932, emphasis added. Even in *Williams v. Asbestos Defendants*, a case where the Fourth Circuit Court of Appeal reversed a trial court's dismissal of punitive damages claims, critical to the Court's ruling was a finding that the plaintiff had claims against the defendant separate and apart from its role as a manufacturer – the defendant also performed contracting work at the premises where the alleged exposure caused plaintiff's injury. 2011-0716 (La. App. 4 Cir. 5/16/12), 95 So. 3d 497, 505, *writ denied*, 2012-1322 (La. 12/14/12), 104 So. 3d 430, and *writ denied*, 2012-1368 (La. 12/14/12), 104 So. 3d 431, and *writ denied*, 2012-1375 (La. 12/14/12), 104 So. 3d 432, and *writ denied*, 2012-1377 (La. 12/14/12), 104 So. 3d 432, and *writ denied*, 2012-1378 (La. 12/14/12), 104 So. 3d 433, and *writ denied*, 2012-1385 (La. 12/14/12), 104 So. 3d 433, and *writ denied*, 2012-1390 (La. 12/14/12), 104 So. 3d 434.

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

As in *Badon*, Plaintiff's claims in this case "do not pertain to the [] defendants' conduct in storing, handling, or transporting" their products. *See id.* at 932. Just as in *Badon*, Plaintiff here alleges that use of the Johnson & Johnson Defendants' products caused her cancer. She does not claim that reckless or wanton storage, handling of transport of the talc caused her harm – there is no allegation that an improperly secured tanker car containing talc caused her injury, or that an explosion of a silo of talc caused damages to her or her property; there is no allegation as to the types of claims former Article 2315.3 was drafted to address. To accept Plaintiff's position that the language of former Article 2315.3 was intended to address product liability claims would contradict the clear distinction that every court to address the issue has clearly drawn, that "product liability claims are outside the scope of 2315.3."

Because Plaintiff's claims against the Johnson & Johnson Defendants sound in products liability, they are outside the scope of 2315.3. Plaintiff's attempt to expand former Article 2315.3 to apply to products liability claims fails as a matter of law because: (1) every court to address the issue has made clear that manufacturing activities do not fall under the definition of storage, handling, or transportation as contemplated by former Article 2315.3; (2) any expansion of the law would contradict the plain language and legislative intent of 2315; and (3) go against the Louisiana Supreme Court's clear mandate that punitive damages statutes be strictly construed, as well as Louisiana's general public policy against punitive damages. Accordingly, Plaintiff has no cause of action for punitive damages under Louisiana law and the Johnson & Johnson's exception should be sustained.

## II. THE PETITION IS IMPERMISSIBLY VAGUE AND AMBIGUOUS

The petition "shall set forth … the material facts of the transaction or occurrence that is the subject matter of the litigation." La. Code Civ. Proc. Art. 891(A). Louisiana's fact pleading system requires a plaintiff "to advise the opposing party of the material facts constituting the cause of action so that he will not be taken by surprise or be unprepared for trial and, therefore, at a disadvantage." *Barker v. Loxco, Inc.*, 432 So.2d 975, 976 (La. App. 1st Cir. 1983). The petition must "fairly inform the defendant of the nature of the cause of action alleged and include sufficient particulars to enable the defendant to prepare a defense." *Whipple v. Whipple*, 408 So.2d 390, 392 (La. App. 1st Cir. 1981).

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

In this case, the petition sets forth various counts applicable (allegedly) to all of the defendants collectively or to a subset of defendants. For the most part, the allegations are directed to "Defendants" collectively and do not specify which facts and conclusory allegations apply to which of the defendants. For example, count one is entitled "strict liability and negligence" and applies, allegedly, to "all defendants."[5] It alleges that the "Defendants were miners, sellers, users, distributors, suppliers, manufacturers, and/or held themselves out as manufacturers of the talcum powder PRODUCTS and/or were professional vendors of the talcum powder PRODUCTS that were purchased by, used by, and applied by Plaintiff."[6] Similarly, count two is entitled "supplier/distributor/manufacturer/seller liability" and applies, allegedly, to "all defendants."[7] It alleges that all defendants are liable for a laundry list of things, without enumerating which allegations apply to which defendant individually. It is unclear exactly which causes of action are being asserted and to which defendants those causes of action are directed.

The Johnson & Johnson Defendants should not have to guess which causes of action are being asserted and what the factual bases for those causes of action are. Nor should they have to guess which allegations apply to them and which allegations apply to other defendants. Moreover, the Johnson & Johnson Defendants should not have to waste the Court and the parties' resources filing dispositive motions to dismiss allegations that should never have been directed to the Johnson & Johnson Defendants in the first place. The petition must "fairly inform the defendant of the nature of the cause of action alleged and include sufficient particulars to enable the defendant to prepare a defense." *Whipple v. Whipple*, 408 So.2d 390, 392 (La. App. 1st Cir. 1981).

Count two enumerated in the petition is entitled "supplier/distributor/manufacturer/seller liability." This claim is vague and ambiguous, and Plaintiff should amend and set forth her allegations with greater specificity. Similarly, if there is any basis for asserting causes of action for strict liability, negligence, and/or civil conspiracy, Plaintiff needs to provide more specificity than provided in the petition.

---

[5] Ex. A, Petition at p. 14.

[6] *Id.* at ¶ 54.

[7] *Id.* at p. 15.



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

Plaintiff's allegations are impermissibly vague. Under Article 891, the petition must contain specific facts explaining how Plaintiff alleges the Johnson & Johnson Defendants caused or contributed to her injuries. Plaintiff has failed to meet this standard. The Court should sustain the exception of vagueness and ambiguity and require Plaintiff to amend her petition to comply with Article 891.

## CONCLUSION

The Johnson & Johnson Defendants respectfully pray that this Honorable Court sustain their exception of no cause of action as to Plaintiff's punitive damages claim, civil conspiracy claim, and "supplier/distributor/manufacturer/seller liability" claim, and sustain their exception of vagueness and ambiguity of the petition and require Plaintiff to amend her petition.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

KIM E. MOORE (LA Bar No. 18653)
JOHN W. SINNOTT (LA Bar No. 23943)
LEILA A. D'AQUIN (LA Bar No. 18884)
MEERA U. SOSSAMON (LA Bar No. 34797)
CLAIRE A. NOONAN (LA Bar No. 35940)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on counsel for all parties to this proceeding by electronic mail and/or mailing the same to each by first-class mail, properly addressed and postage prepaid, on the 21st day of October, 2020.

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

Case No. 2020-02718 SECTION 16 DIVISION A

LYNNE L. ROY

versus

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:____________________ ____________________
DEPUTY CLERK

**RULE TO SHOW CAUSE**

Considering the foregoing Peremptory Exception of No Cause of Action and Dilatory Exception of Vagueness and Ambiguity of the Petition filed by Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.;

**IT IS HEREBY ORDERED** that Plaintiff Lynne Roy show cause on the ________ day of __________________, 2020 at _______ a.m. why the exception should not be sustained.

New Orleans, Louisiana, this _____ day of _______________, 2020.

____________________________________
JUDGE

**PLEASE SERVE:**

Plaintiff Lynne Roy, through her counsel of record:

Mickey Landry
Frank Swarr
Philip C. Hoffman
Matthew C. Clark
Landry & Swarr, LLC
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
T: (504) 299-1214
F: (504) 299-1215

and

**SERVICE WILL BE VIA LOUISIANA LONG ARM STATUTE**

Mark J. Buha
Dean Omar Branham Shirley, LLP
302 N. Market Street, Suite 300
Dallas, Texas 75202
T: (214) 722-5990
F: (214) 722-5991

2020-02718

A

Section 16

FILED
2020 OCT 29 A 11:02
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. SECTION DIVISION " "

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

## ORIGINAL PETITION FOR DAMAGES

COMES NOW Petitioner, Lynne L. Roy (also referred to herein as Plaintiff), by and through undersigned counsel, who respectfully represents as follows:

## INTRODUCTION

1. This action arises out of Plaintiff, Lynne L. Roy's, diagnosis of malignant epithelioid mesothelioma and resulting injuries and damages, which were directly and proximately caused by her regular use and prolonged exposure to various asbestos-containing/contaminated talc- or talcum-power products and other products, including without limitation Johnson & Johnson Baby Powder, Cashmere Bouquet talcum powder product(s), Coty talcum powder product(s), Chanel talcum powder products and Kaiser Gypsum joint compound, that were mined, researched, designed, developed, tested, manufactured, produced, packaged, distributed, promoted, marketed, supplied, and/or sold by the Defendants named herein.

2. All claims in this action arise out of the Defendants' negligent, willful, and wrongful conduct in connection with mining, researching, designing, developing, testing, manufacturing, producing, packaging, distributing, transporting, storing, handling, promoting, marketing, supplying and/or selling of asbestos-containing/contaminated talcum powder and joint compound products, and other products, including without limitation Johnson & Johnson Baby Powder, Cashmere Bouquet talcum powder product(s), Coty talcum powder product(s), Chanel talcum powder products and Kaiser Gypsum joint compound, which were purchased by and used by Plaintiff and/or were used in close proximity to Plaintiff.

EXHIBIT A

VERIFIED
Amber Darby
2020 APR 13 A 10:34

E-Filed

**A**

Section 16

FILED

2020 MAR 29 A 11:08

CIVIL

DISTRICT COURT

PARTIES, JURISDICTION, AND VENUE

3. Plaintiff, Lynne L. Roy, is resident person of the full age of majority, domiciled in the Parish of Jefferson, State of Louisiana.

4. Made Defendants herein are:

A. COLGATE-PALMOLIVE COMPANY, a Delaware corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

B. CHANEL, INC., a New York corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: CT Corporation System, 28 Liberty Street, New York, NY 10005.

C. COTY, INC., individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY, a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Corporation Service Company, 80 State Street, Albany, NY 12207.

D. CYPRUS AMAX MINERALS COMPANY, individually, d/b/a, and as successor-in-interest to SIERRA TALC COMPANY, UNITED SIERRA DIVISION OF CYPRUS MINES, CYPRUS INDUSTRIAL MINERALS COMPANY, AMERICAN TALC COMPANY, METROPOLITAN TALC COMPANY, INC., CHARLES MATHIEU INC., RESOURCE PROCESSORS, INC., and WINDSOR MINERALS, INC., a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Registered Agent Solutions, Inc., 300 W. Clarendon Avenue, Suite 240, Phoenix, AZ 85013.

E. CYPRUS MINES CORPORATION, individually, d/b/a, and successor to SIERRA TALC COMPANY, AMOCO MINERALS CO., CYPRUS INDUSTRIAL MINERALS CO., and CYPRUS GEORESEARCH CO. a wholly-owned subsidiary of CYPRUS MINES CORP. and successor to CHARLES MATHIEU INC. (d/b/a CHARLES MATHIEU & CO. and CHAS. MATHIEU INC.), AMERICAN TALC COMPANY INC., METROPOLITAN TALC COMPANY INC., IMPERIAL PRODUCTS CO. INC., and RESOURCE PROCESSORS INC., a Delaware corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Registered Agent Solutions, Inc., 300 W. Clarendon Avenue, Suite 240, Phoenix, AZ 85013.

F. JOHNSON & JOHNSON, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Steven M. Rosenberg, One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

G. JOHNSON & JOHNSON CONSUMER INC., f/k/a JOHNSON & JOHNSON CONSUMER COMPANIES, INC., a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

H. K&B LOUISIANA CORPORATION (d/b/a RITE AID CORPORATION), individually and as successor-in-interest to KATZ & BESTHOFF, INC., a Louisiana corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.



E-Filed

I. **KAISER GYPSUM COMPANY, INC.**, a North Carolina corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Corporate Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

J. **PFIZER INC.**, a Delaware corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

K. **WHITTAKER CLARK & DANIELS, INC.**, a New Jersey corporation, which may be served via the Louisiana Long-Arm Statute on its registered agent for service of process: Joe Cobuzio, Esq., Tompkins, McGuire, Wachenfeld & Barry, LLP, 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068.

5. Orleans Parish is the proper venue for this action based on the following:

A. Venue is proper in Orleans Parish pursuant to Louisiana Civil Code of Civil Procedure Article 42(4) because Defendant Colgate-Palmolive Company is a foreign corporation licensed to do business in Louisiana and maintains its principal business establishment in Louisiana in Orleans Parish according to its Louisiana Secretary of State business filings.

B. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 74 because Orleans Parish is the parish where the wrongful conduct occurred ***and*** the parish where the Plaintiff sustained injuries and damages. Specifically:

i. Defendant **Colgate-Palmolive Company**, Defendant **Chanel, Inc.**, Defendant **Coty, Inc.**, Defendant **Cyprus Amax Minerals Company**, Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division Of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc., Defendant **Cyprus Mines Corporation**, individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., Defendant **Johnson & Johnson**, and Defendant **Johnson & Johnson Consumer, Inc.**, f/k/a Johnson & Johnson Consumer Companies, Inc., Defendant **K&B Louisiana Corporation** (d/b/a RiteAid Corporation) individually and as successor-in-interest to Katz & Besthoff, Inc., Defendant **Kaiser Gypsum Company, Inc.**, Defendant **Pfizer Inc.**, Defendant **Whittaker Clark & Daniels, Inc.**, (all of the above-listed Defendants collectively referred to as "Defendants") each committed and engaged in wrongful conduct in Orleans Parish by distributing, promoting, marketing, supplying, and selling defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish to the Plaintiff.

ii. As a result of each of the Defendants' aforementioned wrongful conduct, Plaintiff purchased the Defendants' defective talcum powder products from various K&B pharmacy locations in Orleans Parish, then applied to her person and was exposed to the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products while she was situated in and/or living in Orleans Parish.

2020-02718
A
Section 16
FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

iii. Plaintiff suffered injuries and damages in Orleans Parish each and every time she used and applied to her person the Defendants' defective asbestos-containing/contaminated talcum powder products and joint compound products in Orleans Parish.

C. Venue is proper in Orleans Parish pursuant to Louisiana Revised Statute §22:1269(B)(1) because Orleans Parish is the parish where Plaintiff's injury occurred.

D. Venue is proper in Orleans Parish pursuant to Louisiana Code of Civil Procedure Article 73 because each of the Defendants named herein caused and/or contributed to Plaintiff's purchase, use, and application of defective talcum powder products (specifically Avon talcum powder products, Cashmere Bouquet talcum powder, Chanel talcum powder products, Coty talcum powder products, Desert Flower talcum powder products, Elizabeth Arden talcum powder products, Faberge talcum powder products, Johnson & Johnson Baby Powder, Johnson & Johnson Shower-to-Shower talcum powder, K&B talcum powder products, Revlon talcum powder products, and Kaiser Gypsum joint compound) and her resulting injuries and damages (i.e., malignant epithelioid mesothelioma) as a result of these Defendants' negligent, willful, and wrongful conduct in connection with mining, researching, designing, developing, testing, manufacturing, producing, packaging, distributing, transporting, storing, handling, promoting, marketing, supplying and/or selling of their defective talcum powder products. Each of the Defendants named herein are therefore jointly and/or solidarily liable to the Plaintiff.

6. This Court has jurisdiction over Defendant **K&B Louisiana Corporation** (d/b/a RiteAid Corporation) individually and as successor-in-interest to Katz & Besthoff, Inc. (hereafter, "K&B") because K&B is domiciled in, and is a resident of, Louisiana.

7. This Court has jurisdiction over Defendant **Chanel, Inc.** (hereafter, "Chanel") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Chanel transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Chanel could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Chanel's marketing practices.

8. This Court has jurisdiction over Defendant **Coty, Inc.**, individually and as successor-in-interest to Noxzema Chemical Company (hereafter, "Coty") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Coty transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or



E-Filed

component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Coty could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Coty's marketing practices.

9. This Court has jurisdiction over Defendants **Cyprus Amax Minerals Company,** Individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division Of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc. (hereinafter, "CAMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CAMC transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CAMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and CAMC's marketing practices.

10. **Cyprus Mines Corporation**, individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc., (hereafter, "CMC") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because CMC transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the CMC could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the CMC's marketing practices.

11. This Court has jurisdiction over Defendants **Johnson & Johnson** and **Johnson & Johnson Consumer, Inc.**, f/k/a Johnson & Johnson Consumer Companies, Inc., (hereafter, "Johnson & Johnson" or "Johnson & Johnson Defendants") pursuant to Louisiana Revised Statute

A
Section 16



§13:3201(A)(1)-(3) and (8) because the Johnson & Johnson Defendants transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, the Johnson & Johnson Defendants could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the Johnson & Johnson Defendants' marketing practices.

12. This Court has jurisdiction over Defendant **Kaiser Gypsum Company, Inc.** (hereafter, "Kaiser Gypsum") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Kaiser Gypsum transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Kaiser Gypsum could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Kaiser Gypsum's marketing practices.

13. This Court has jurisdiction over Defendant **Pfizer, Inc.** (hereafter, "Pfizer") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Pfizer transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Pfizer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Pfizer's marketing practices.

14. This Court has jurisdiction over Defendant **Whittaker Clark & Daniels, Inc.** (hereafter, "WC&D") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because WC&D transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, WC&D could have

2020-02718
A
Section 16
FILED
2020 MAY 29 A 11:03
CIVIL
DISTRICT COURT

foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and WC&D's marketing practices.

15. This Court has jurisdiction over Defendant Colgate-Palmolive Company (hereafter, "Colgate-Palmolive") pursuant to Louisiana Revised Statute §13:3201(A)(1)-(3) and (8) because Colgate-Palmolive transacted business in this state; contracted to supply services or things in this state; caused injury and damage by an offense or quasi offense committed through an act or omission in this state; and manufactured a product or component thereof which caused damage and injury in this state when, at the time of placing the product into the stream of commerce, Colgate-Palmolive could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and Colgate-Palmolive's marketing practices.

16. The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

## BACKGROUND

17. Ms. Roy was born on or around August 24, 1943. From as early as she can understand and remember until at least the 1990s, Ms. Roy used Johnson & Johnson Baby Powder talc or talcum powder products on herself on a regular basis and she also used the products on her three children during their upbringing. At other times, and on a regular basis during those times, Ms. Roy purchased, used, applied, and was exposed to Colgate-Palmolive's Cashmere Bouquet talcum powder, Chanel's talcum powder products and Coty's talcum powder products. On several remodeling projects between mid-1960s and mid-1970s, she (and others around her) purchased, used, applied, and was exposed to Kaiser Gypsum joint compound. Hereinafter, the products referred to above are referred to as the "PRODUCTS". These PRODUCTS were often purchased by the Plaintiff in Orleans Parish and used by the Plaintiff in Orleans Parish.

18. Plaintiff has spent much all of her life as a resident of Louisiana. She has lived nearly all of her life in the greater New Orleans area, including substantial parts of her life in Orleans Parish.

19. During the time Plaintiff lived in the greater New Orleans area, Plaintiff purchased Johnson & Johnson, Cashmere Bouquet, Coty and Chanel talc or talcum powder products from K&B pharmacy locations in Orleans Parish, subsequently used and applied said products to her



E-Filed

FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

person and her children in Orleans Parish, and consequently became exposed to said PRODUCTS in Orleans Parish.

20. From the 1940s to at least the 1990s, Plaintiff used, applied, and/or was exposed to the Defendants' PRODUCTS on a consistent basis through the normal and foreseeable use and application of the PRODUCTS based on the Defendants' advertising, marketing, and labeling of said PRODUCTS.

21. Plaintiff sustained significant tortious exposures to the Defendants' PRODUCTS prior to 1988.

22. On or about January 7, 2020, Plaintiff was diagnosed with malignant mesothelioma, which was proximately caused by her regular use of, application of and exposure to Johnson & Johnson, Colgate-Palmolive, Coty, Chanel and Kaiser Gypsum PRODUCTS at various times from the 1940s to at least the 1990s.

23. As a direct and proximate result of Plaintiff's purchase, use, and application of the Defendants' unreasonably dangerous and defective talcum powder and joint compound PRODUCTS—which resulted in her unavoidable exposure to and resultant ingestion of talcum powder fibers and asbestos and asbestiform substances contained therein—and the Defendants' wrongful, willful, and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, supply and/or sale of such PRODUCTS, Plaintiff developed malignant mesothelioma and has suffered mentally, emotionally, financially, and physically.

24. Because of the latency period between Plaintiff's use of and exposure to Johnson & Johnson, Colgate-Palmolive, Coty, Chanel and Kaiser Gypsum PRODUCTS and the onset of malignant mesothelioma, and because of these Defendants' active concealment of the causes and effects of exposure to their PRODUCTS as well as the Defendants' continued representations that their PRODUCTS are safe for use, Plaintiff only recently discovered her injuries and the cause thereof, less than one year preceding this filing of this suit.

25. Plaintiff alleges that her exposure to the Defendants' PRODUCTS caused and/or contributed to her injuries, such that the Defendants' are jointly, severally, and *in solido* liable to Plaintiff for her resultant malignant mesothelioma diagnosis and damages alleged herein.



E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

## FACTS COMMON TO ALL COUNTS

26. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

27. At all times relevant hereto, including but not limited to, before, during, and even after Plaintiff's exposure period, the Defendants were in the business of mining, researching, designing, developing, testing, manufacturing, packaging, distributing, promoting, marketing, supplying and/or selling talcum powder for use in their talcum powder-based PRODUCTS, and introduced such PRODUCTS into the stream of interstate commerce knowing that such PRODUCTS possessed unreasonably dangerous qualities in the manner that they were marketed, advertised, and used.

28. At all times relevant hereto, the Johnson & Johnson Defendants, CAMC, CMC, Colgate-Palmolive Defendants, Coty Defendants, Chanel Defendants, K&B Defendants, WC&D Defendants and Kaiser Gypsum Defendants regularly transacted, solicited, and conducted business in all States of the United States, including in the State of Louisiana.

29. At all times relevant hereto, Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, K&B, Colgate-Palmolive and Kaiser Gypsum sold large volumes of defective talcum powder and joint compound PRODUCTS throughout the State of Louisiana.

30. At all times relevant hereto, Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, Colgate-Palmolive and Kaiser Gypsum manufactured and/or held themselves out as manufacturers of the PRODUCTS, and upon information and belief, the K&B Defendant repackaged, rebranded and/or sold the Johnson & Johnson Defendants' talcum powder products and sold them as its own, which Plaintiff purchased from K&B pharmacy stores in Orleans Parish.

31. For many years, CAMC, Pfizer, WC&D, Johnson & Johnson and Colgate-Palmolive mined the talc contained in their PRODUCTS. Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. Talc is regularly contaminated with asbestos and/or asbestiform contaminants that distinctly give rise to an increased risk in the potential for cancer. However, each of the Defendants continually advertised and marketed talc and their talcum PRODUCTS as safe for human use.

32. At all times relevant hereto, a feasible alternative to the Defendants' PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with



E-Filed

2020-02718
A
Section 16
FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

no known health effects. Cornstarch powders have been sold and marketed for the same uses with the same, or nearly the same, effectiveness.

33. Certain raw talc miners and suppliers provided customers, which included CAMC, CMC, Pfizer Defendants, WC&D Defendants and Johnson & Johnson Defendants, with material safety data sheets for raw mineral talc. These material safety data sheets were supposed to convey adequate health and warning information to its customers.

34. Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Johnson & Johnson Defendants induced women through advertisements to dust themselves with this product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

35. During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan "A sprinkle a day keeps odor away"; through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day"; and "SHOWER to SHOWER can be used all over your body."

36. Historically, Colgate-Palmolive's Cashmere Bouquet talcum powder was advertised as healthy for babies, children and adults to be applied at least once daily to maintain freshness, keep skin soft, mask odors with a floral fragrance, prevent chafing and absorb moisture. Colgate-Palmolive manufactured Cashmere Bouquet talcum powder from approximately 1871 through and including 1985, and continued marketing the product until at least 1995, which is approximately when the United States Environmental Protection Agency reported that the presence of asbestos in talc makes it a human carcinogen. Based on present information and belief, the raw mineral talc that Defendant Colgate-Palmolive used in its Cashmere Bouquet talcum powder came from three different sources: the Val Chisone mine in Italy; a mine in Regal, North Carolina; and the Willow Creek mine, in Montana. Any individual using and/or applying Colgate-Palmolive's Cashmere Bouquet talc from the mid-1940s through at least 1985 would have used



E-Filed

and been exposed to talc that originated from one or all of those locations. Numerous releaseability tests have been performed with Cashmere Bouquet talcum powder, and those tests have repeatedly demonstrated that significant concentrations of airborne asbestos, including the same three asbestos mineral species that have been historically identified, chrysotile, anthophyllite, and tremolite asbestos, are released when these historic products were used/applied in the same manner as they were used/applied by Plaintiff.

37. Colgate-Palmolive did not begin to test its products to determine whether asbestos was present until an FDA inquiry began in the 1970s, and by 1976, its own internal testing, conducted at the behest of Joseph Simko, head of Colgate-Palmolive's Research and Development Analytical Department, concluded that samples of its finished product Cashmere Bouquet as well as "preshipment" samples from suppliers, contained anthophyllite, tremolite and chrysotile in varying amounts. Colgate-Palmolive failed to report to the FDA tests performed both internally and by an outside laboratory confirming the presence of asbestos in both their finished products as well as talc shipments from their suppliers and other sources that were used to produce finished products, including Cashmere Bouquet talcum powder.

38. After 1976, Colgate-Palmolive continued to obtain results of testing performed internally and externally indicating the presence of asbestos in talc being used to manufacture the talcum powder product Cashmere Bouquet. Colgate-Palmolive received such a result regarding one of the sources of its talc in 1977, yet continued to use the contaminated source of this talc in its Cashmere Bouquet products. While infrequently performing its own testing after 1978, Colgate-Palmolive nevertheless received positive results for asbestos in samples it labeled "finished product" as late as 1984. Shortly after this result, Colgate-Palmolive delegated the entire manufacturing process for its Cashmere Bouquet brand to an outside contractor who continued to produce Cashmere Bouquet brand talcum powder on behalf and for the profit of Colgate-Palmolive using the same asbestos-containing talc sources from the same suppliers until the brand was sold in 1995.

39. In 1971, the first study was conducted that suggested an association between talc and cancer. This study was conducted by Dr. W. J. Henderson and others in Cardiff, Wales. In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk

FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

of cancer in women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson visited Dr. Cramer to speak about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the cancer risks so that women could make an informed decision about their health. The Johnson and Johnson Defendants failed to do so.

40. Johnson & Johnson began receiving results of tests showing tremolite, anthophyllite, actinolite and/or chrysotile asbestos and/or fibers in its own talc products and the talc ore from which the talc came from since at least the 1950s.

41. Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and cancer. Nearly all of these studies have reported an elevated risk for cancer associated with genital talc use in women.

42. In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers. In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc. and Luzenac were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to cancer.

43. On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O. Ralph Larson, informing his company that studies as far back as the 1960s "...show[ ] conclusively that the frequent use of talcum powder in the genital area pose[ ] a



E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

serious health risk" of cancer. The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about the cancer risk they pose.

44. In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of cancer.

45. In February of 2006, the International Association for the Research of Cancer (IARC)— part of the World Health Organization—published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of cancer in women from perineal use of talc.

46. In 2006, the Canadian government, under The Hazardous Products Act and associated Controlled Products Regulations, classified talc as a "D2A," "very toxic," "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

47. In 2006, a miner/supplier of raw mineral talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to customers, including the Johnson & Johnson Defendants, regarding the talc it sold for use in the Defendants' PRODUCTS. These MSDSs not only provided the warning information about the IARC classifications, but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc.

48. The Defendants knew or should have known through industry and medical studies, the existence of which were unknown to Plaintiff, of the health hazards inherent in the PRODUCTS they were manufacturing, marketing, testing, promoting, distributing and/or selling.

49. The Defendants had a duty to warn about the health hazards associated with the use of their PRODUCTS, but failed to inform customers and the end users of their PRODUCTS of



E-Filed

FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT


known catastrophic health hazards, including but not limited to the development of cancers like malignant mesothelioma, associated with the use of their PRODUCTS.

50. Instead of warning Plaintiff and the general public about these dangers, the Defendants ignored and/or actively concealed such information, and/or condoned such concealment, in order to sell their PRODUCTS and to avoid litigation by those who were injured from use of their PRODUCTS.

51. In addition, the Johnson & Johnson Defendants took a step further and procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding the safety of talc, with or without asbestos or asbestiform mineral content.

52. Because of the latency period between exposure and use of these PRODUCTS, and the onset of malignant mesothelioma, and because of the active and intentional concealment of their PRODUCTS's defects by the Defendants; Defendants' suppression of reports and adverse information; procurement and dissemination of false, misleading, and biased information regarding the safety of their PRODUCTS; and the fact that Defendants' continue to refute and deny reports and studies questioning the safety of its PRODUCTS and fail to warn about the health hazards inherent in their PRODUCTS. Defendants are estopped from relying on any statute of limitations defense.

## COUNT ONE: STRICT LIABILITY and NEGLIGENCE
(All Defendants)

53. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

54. At all times relevant hereto, the Defendants were miners, sellers, users, distributors, suppliers, manufacturers, and/or held themselves out as manufacturers of the talcum powder PRODUCTS and/or were professional vendors of the talcum powder PRODUCTS that were purchased by, used by, and applied by Plaintiff.

55. At all times relevant hereto, the talcum powder PRODUCTS were expected to and did reach the retailer/supplier Defendants including, but not limited to, the K&B Defendant, from which Plaintiff purchased said PRODUCTS in Louisiana, including in Orleans Parish.



E-Filed

2020-02718
A
Section 16
FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

56. The PRODUCTS manufactured, distributed, used, sold and/or supplied by the Defendants were defective, unreasonably dangerous, and unreasonably dangerous per se to Plaintiff who was an intended and foreseeable user and who was exposed to said PRODUCTS. These defects include, without limitation, the following:

a. the mining, manufacture, sale, supply, distribution and use of the PRODUCTS that are unreasonably dangerous, or unreasonably dangerous per se;

b. the mining, manufacture, sale, supply, distribution and use of the PRODUCTS that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as gynecological disease, cancer, and other health problems to the Plaintiff who would be foreseeably exposed in her regular use of said PRODUCTS;

c. lack of warning or of sufficient warning of the hazards these PRODUCTS would present in the course of their normal foreseeable use or intended use;

d. The Defendants' failure to warn consumers that if their PRODUCTS are used for a specific purpose, that purpose may have risks associated with that use such as illness or even death that were not obvious to consumers;

e. The Defendants' failure to provide a warning on their PRODUCTS that was and/or is understandable to the average user of the product, and is visible in such a way that an expected user would see the warning on their PRODUCTS;

f. The Defendants' failure to stay knowledgeable about a product that it is selling by failing to do reasonable research, testing, and investigation;

g. The Defendants' failure to recall their PRODUCTS once put on notice of the increased health risks associated with their use; and

h. Other defects or fault as may be revealed in discovery or at trial.

57. The Defendants are each liable to Plaintiff in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to the Plaintiff.

58. The defective conditions of the Defendants' PRODUCTS and their negligent acts and omissions as noted above, are a proximate cause of Plaintiff's injuries and damaged complained of herein.

## COUNT TWO: SUPPLIER/DISTRIBUTOR/MANUFACTURER/SELLER LIABILITY
**(All Defendants)**

59. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:


E-Filed

2020-02718
A
Section 16
FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

60. At all times relevant hereto, were each distributors, suppliers, sellers, manufacturers and/or facilitated the manufacture of, and/or held itself out as a manufacturer of the talcum powder PRODUCTS and/or were each a professional vendor of the talcum powder PRODUCTS that were purchased, used and applied by Plaintiff.

61. At all times relevant hereto, the Defendants each owed a duty to consumers, including Plaintiff herein, to exercise reasonable care in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, supply and/or sale of their PRODUCTS.

62. At all times relevant hereto, the Defendants each knew or should have known that the use of its talcum powder-based PRODUCTS in the perineal area significantly increases the risk of various cancers, including malignant mesothelioma, based upon scientific knowledge dating back to at least the 1960s, if not earlier.

63. At all times relevant hereto, the Defendants each knew or should have known that their raw mineral talc would be used in their PRODUCTS, and failed to take adequate steps to ensure that ultimate consumers of their PRODUCTS, including Plaintiff, received the information that the Defendants possessed on the carcinogenic properties of talc, including its risk of causing cancer, whether contaminated with asbestos (and/or asbestiform mineral content) or not.

64. At all times relevant hereto, the K&B Defendant knew or should have known that the Johnson & Johnson Defendants (directly and/or through subsidiaries) and Colgate-Palmolive were mining/producing raw mineral talc, and were not providing (and still has not provided) warnings to consumers of the PRODUCTS of the risk of cancer posed by talc contained therein.

65. At all times relevant hereto, the K&B Defendant knew or should have known that Colgate-Palmolive's Cashmere Bouquet and Johnson & Johnson's talcum powder products, which K&B distributed, manufactured and/or held itself out as the manufacturer of, marketed, and sold were defective and unreasonably dangerous.

66. The Defendants are each liable to Plaintiff as a professional vendor of the PRODUCTS, and as such, because of each Defendant's size, volume of business and merchandising practices, each Defendant knew or should have known of the defects of the PRODUCTS they sold, and are strictly liable and negligent for failing to warn the users, including Plaintiff, of potential health hazards from the use of their PRODUCTS.



E-Filed

FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

67. Further, the Defendants each knew the specific use for which their refined talc products would be incorporated into other products and had unique expertise into the physical and chemical properties of their specially refined talc products as well as the health hazards presented by exposure to such talc products.

68. While the Defendants marketed their talcum PRODUCTS as uniquely safe and non-carcinogenic, they knew or should have known such claims were false and/or without adequate scientific support.

69. At all times relevant hereto, the Defendants knew or should have known that their PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use, and their failure to communicate this information constitutes negligence and are therefore liable to Plaintiff.

70. As a direct and proximate result of the Defendants' fraudulent misrepresentations, which were detrimentally relied upon by Plaintiff, and Defendants' negligent acts and omissions, Plaintiff was deceived as to the true nature and extent of the health hazards posed by their PRODUCTS and consequently purchased, used and was exposed to said PRODUCTS which caused her to develop malignant mesothelioma and to incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

71. Each and all of the above-mentioned acts and omissions by the Defendants, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

## COUNT THREE: STRICT LIABILITY and NEGLIGENCE
**(Johnson & Johnson Defendants)**

72. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

73. The Johnson & Johnson Defendants were miners, manufacturers, sellers, distributers and/or suppliers of asbestiform and asbestos-containing/contaminated talc PRODUCTS, and were engaged in the business of using, manufacturing and/or facilitating the manufacturing of said talc PRODUCTS, or was a professional vendor of talc PRODUCTS in and around the State of Louisiana.

74. The Johnson & Johnson Defendants sold and/or supplied for sale the asbestiform and asbestos-containing/contaminated talc PRODUCTS that were defective, unreasonably

A
Section 16

FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

dangerous, and unreasonably dangerous per se to Plaintiff who was an intended and foreseeable user and who was exposed to said PRODUCTS. The defects include, without limitation, the following:

a. The mining, manufacture, sale, supply, distribution and use of the PRODUCTS, including talc/talcum powder products, that are unreasonably dangerous and/or unreasonably dangerous per se;

b. The mining, manufacture, sale, supply, distribution and use of PRODUCTS that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as gynecological disease, cancer, and other health problems to Plaintiff, who would be foreseeably exposed to them as a result of their intended use;

c. Lack of warning or of sufficient warning of the hazards these PRODUCTS would present in the course of their normal foreseeable or intended use;

d. Lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these PRODUCTS;

e. Failure by the Johnson & Johnson Defendants to inspect these PRODUCTS to assure sufficiency and adequacy of warnings and safety cautions;

f. Failure to test or adequately test these PRODUCTS for defects or hazards that the Johnson & Johnson Defendants could have shown/presented the intended or foreseeable users;

g. Failure to truthfully report or adequately report the results of product testing and medical studies associated with the foreseeable hazards of these PRODUCTS by intended or foreseeable users;

h. Failure to properly design the PRODUCTS when the nature of the product did not require the use of asbestos minerals or where alternatively, equally suitable substitutes were readily available;

i. Defects in the composition and construction of the PRODUCTS;

j. Failure to recall these PRODUCTS mined, manufactured, sold, distributed and/or supplied;

k. Failure to properly package the PRODUCTS so that they could be safely transported, handled, stored, and/or disposed of;

l. Over warranting the safety of PRODUCTS that were manufactured, sold, supplied, and/or used by the Johnson & Johnson Defendants;

m. Liability to Plaintiff in strict liability for things in the Johnson & Johnson Defendants' garde, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to Plaintiff;

n. Knowing that the Johnson & Johnson Defendants' PRODUCTS caused harm, and failing to remove them from sale;

o. Knowing that the Johnson & Johnson Defendants' PRODUCTS contain(ed) asbestiform and asbestos-contaminated material and failing to remove the product from sale;



E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

p. Knowing that the Johnson & Johnson Defendants' PRODUCTS cause(d) harm to the end user, and failing to remove the PRODUCTS from sale for the purpose of financial gain;

q. Knowing that the Johnson & Johnson Defendants' PRODUCTS cause(d) harm to the end user, and hiding that information from the general public, which resulted in the end user failing to know of the harmful nature of the Johnson & Johnson Defendants' PRODUCTS; and

r. Other defects or fault that may be revealed during discovery or at trial.

75. Each and every act and omission above, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

76. At all times relevant hereto, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

77. The Johnson & Johnson Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of the Johnson & Johnson Defendants' failure to exercise ordinary care in developing, designing, testing, manufacturing, marketing, and/or selling their PRODUCTS.

78. As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused Plaintiff to develop malignant mesothelioma, and her resulting injuries and damages.

**COUNT FOUR: FAILURE TO WARN**
**(All Defendants)**

79. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

80. At all times relevant hereto, the Defendants were engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

81. At all times relevant hereto, the Defendants each knew or should have known that the use of and exposure to their PRODUCTS significantly increased the risk of cancer based upon scientific knowledge dating back until the 1960s.

82. At all times relevant hereto, the Defendants' PRODUCTS were defective and unreasonably dangerous because, despite the Defendants' knowledge that their PRODUCTS were



E-Filed

FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

carcinogenic and could lead to an increased risk of cancer when applied to the body, including the female perineal area, which was and is a reasonably foreseeable use of the PRODUCTS, the Defendants failed to provide adequate warning or instruction to consumers, including Plaintiff, regarding the increased risk of cancer when their PRODUCTS are applied to the body, including to the female perineal area.

83. At all times relevant hereto, Plaintiff used the Defendants' PRODUCTS to powder her body, including her perineal area, a use that was reasonably foreseeable and for which the PRODUCTS were marketed, supplied, and sold. Plaintiff also used the Defendants' PRODUCTS to powder her children and her boots/shoes.

84. At all times relevant hereto, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of cancer associated with the use of the PRODUCTS by women to powder their perineal. area. The Defendants failed to properly and adequately warn and instruct the public, including Plaintiff as to the risks and benefits of the PRODUCTS given the public's need for this information.

85. Had Plaintiff received warning and/or instruction from the Defendants regarding the increased risk of cancer associated with the PRODUCTS when applied to the perineal area, Plaintiff would not have used the PRODUCTS in this manner.

86. The Defendants had a continuing duty to warn consumers and the public, including Plaintiff, of the dangers associated with its PRODUCTS, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, said Defendants breached their state law duty.

87. Due to the absence of any warning or instruction by the Defendants as to the significant health and safety risks posed by their PRODUCTS as described herein, Plaintiff was unaware that said Defendants' PRODUCTS created an increased risk of cancer, as this danger was not known to the general public.

88. As a direct and proximate result of the Defendants' failure to warn Plaintiff of the increased risk of cancer, including malignant mesothelioma, associated with their PRODUCTS when used and applied in a foreseeable manner, despite their actual knowledge of this material



E-Filed

FILED
2020 MAY 29 A 11:08
CIVIL
DISTRICT COURT



fact, Plaintiff developed malignant mesothelioma and has suffered injuries and damages, including pain, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

**COUNT FIVE: BREACH OF WARRANTY**
**(All Defendants)**

89. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

90. At all times relevant hereto, the Defendants impliedly warranted that the talc and talcum-powder PRODUCTS in which they mined, manufactured, marketed, labeled, promoted, distributed and/or sold, and which the Plaintiff purchased and used, to be of merchantable quality and fit for its ordinary and intended uses, including for use by women, such as Plaintiff, in the perineal area.

91. At all times relevant hereto, the Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that their PRODUCTS were safe and effective for reasonably anticipated uses, including for use by women such as the Plaintiff, on their person. Moreover, each of the Defendants expressly warranted to consumers, including Plaintiff, that their PRODUCTS were safe and fit for the use intended; were well tested; were of merchantable quality, and that any side effects said PRODUCTS did produce were accurately reflected in the warnings.

92. In purchasing and using the Defendants' PRODUCTS, Plaintiff reasonably relied on these Defendants' express and implied warranties that their PRODUCTS were of merchantable quality and safe for their intended and foreseeable uses.

93. The Defendants breached the implied and express warranties of their PRODUCTS which were sold to and used by Plaintiff because the aforementioned warranties for said PRODUCTS were false, misleading, and inaccurate in that the said PRODUCTS were unsafe, unreasonably dangerous, not of merchantable quality, and not fit for their common, ordinary and intended uses.

94. The Defendants each knew or should have known that their implied and express warranties were false, misleading, and inaccurate because their PRODUCTS were in fact unsafe, unreasonably dangerous, and not fit for their common, ordinary and intended uses.

95. As a direct, foreseeable and proximate result of the Defendants' breaches of implied and express warranties as to the merchantable quality and safety of their PRODUCTS, Plaintiff



E-Filed

2020-02718
A
Section 16
FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

purchased and used said PRODUCTS which directly and proximately caused Plaintiff to develop malignant mesothelioma and suffer injuries and damages as alleged herein.

**COUNT SIX: DEFECTIVE DESIGN**
**(All Defendants)**

96. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

97. At all times relevant and material hereto, the Defendants each owed a duty of reasonable care to consumers, including Plaintiff, to design a reasonably safe product.

98. At all times relevant hereto, the Defendants each had a continuing duty to provide consumers, including Plaintiff, with warnings and other relevant information and data regarding the risks and dangers associated with the design of their PRODUCTS as it became or could have become available to said Defendants.

99. At all times relevant hereto, the Defendants' PRODUCTS were defectively designed by said Defendants in that, when the PRODUCTS left the hands of said Defendants, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

100. At all times relevant hereto, the PRODUCTS were defectively designed by the Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

101. At all times relevant hereto, the Defendants' PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

102. At all times relevant hereto, a reasonable and safer alternative design existed, which could have feasibly been employed by the Defendants to design a product with the same therapeutic purpose as the PRODUCTS. Despite knowledge of this reasonable and safer alternative design, J the Defendants failed to alter their PRODUCTS' design and formulation. The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

103. As a direct and proximate result of the defective design the Defendants' PRODUCTS, Plaintiff developed malignant mesothelioma and suffered injuries and damages alleged herein.



E-Filed

2020-02718

A

Section 16

FILED

2020 MAR 29 A 11:08

CIVIL

DISTRICT COURT

**COUNT SEVEN: FRAUD**

**(Johnson & Johnson Defendants and Colgate-Palmolive)**

104. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

105. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive intentionally, willfully, and/or recklessly, with the intent to deceive, fraudulently misrepresented and/or fraudulently concealed material facts to consumers and users, including Plaintiff, with respect to their PRODUCTS.

106. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive fraudulently misrepresented and/or concealed material facts, concerning the increased risks of cancer posed by their talc PRODUCTS, from Plaintiff.

107. The fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

a. The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "A sprinkle a day keeps the odor away," "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

b. The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c. The Johnson & Johnson Defendants, through the advertisements described above, among others, misrepresented to consumers, including Plaintiff, that the PRODUCTS were safe for use all over the body, including the female perineal area.

d. Despite actual knowledge of the health risks of the PRODUCTS, The Johnson & Johnson Defendants failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer, The Johnson & Johnson Defendants failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled, and sold the PRODUCTS as safe for



E-Filed

FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

public consumption and usage, including for use by women to powder their perineal areas.

108. The fraudulent misrepresentations and/or concealments concerning the PRODUCTS made by Colgate-Palmolive include, but are not limited to the following:

a. Colgate-Palmolive, through the advertisements described above, among others, mispresented to consumers, including Plaintiff, that the PRODUCTS, were safe for use all over the body, including the female perineal area.

b. Despite actual knowledge of the health risks of the PRODUCTS, Colgate-Palmolive failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

c. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer, the Colgate-Palmolive failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

d. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, Colgate-Palmolive falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

109. At all times relevant hereto, the Johnson & Johnson Defendants and Colgate-Palmolive actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use their talc PRODUCTS.

110. Plaintiff would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS to her person, including in the perineal area, if she had been informed of the increased health risks associated with the use of the PRODUCTS in the perineal area.

111. The Johnson & Johnson Defendants' and Colgate-Palmolive's fraudulent conduct violates Louisiana Civil Code Article 1953, which states that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

112. At all times relevant hereto, Plaintiff relied on the Johnson & Johnson Defendants' and Colgate-Palmolive's misrepresentations concerning the safety of the talc PRODUCTS when purchasing the PRODUCTS and using them on her person, including on her perineal area, and her reliance was reasonable and justified.



E-Filed

2020-02718
A
Section 16
FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

d. Despite actual knowledge of the health risks of the PRODUCTS, the Johnson & Johnson Defendants failed to disclose to the consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e. Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of cancer, the Johnson & Johnson Defendants failed to disclose to consumers and Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f. Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

122. At all times relevant hereto, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff, and with the intent that the consumers would purchase and use the talc PRODUCTS in the female perineal area.

123. Johnson & Johnson Defendants' fraudulent conduct violates Louisiana Civil Code Article 1953, which states that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

124. At all times relevant hereto, Plaintiff reasonably relied on Johnson & Johnson, Colgate-Palmolive, and K&B's fraudulent and deceitful conduct and misrepresentations concerning the safety of their PRODUCTS when purchasing the PRODUCTS and using said PRODUCTS.

125. Plaintiff would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS to her person, on her children, or in her shoes/boots if she had been informed of the increased health risks associated with the use of and exposure to the PRODUCTS.

126. By reason of the above, the Defendants are jointly and solidarily liable to Plaintiff for the injuries and damages sustained by virtue of industry-wide or enterprise liability. Alternatively, the Defendants are liable to Plaintiff for the injuries and damages sustained by virtue of their substantial share of the talcum products market within the area in which Plaintiff resides.

127. As a direct, foreseeable and proximate result of the Defendants' fraudulent and deceitful conduct and misrepresentations concerning the safety of their PRODUCTS, Plaintiff purchased, used, and was exposed to the Defendants' PRODUCTS, which directly and



E-Filed

FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

proximately caused her to develop malignant mesothelioma, and consequently incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

**COUNT NINE: REDHIBITION**
**(All Defendants)**

128. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein:

129. Plaintiff purchased, used, and was exposed to the Defendants' PRODUCTS in the State of Louisiana.

130. The Defendants' talcum powder PRODUCTS contained a vice or defect which render(ed) it useless or its use so inconvenient that buyers would not have purchased it.

131. The Defendants placed into the stream of commerce, promoted, and sold their talcum powder PRODUCTS. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520.

132. The talcum powder PRODUCTS placed into the stream of commerce, promoted, and sold by Defendants possessed a redhibitory defect because they were not manufactured and marketed in accordance with industry standards and/or were (and still are) unreasonably dangerous, as described above, which rendered their talc PRODUCTS useless or so inconvenient that it must be presumed that a buyer would not have bought the them had she known of the defect. Pursuant to La. C.C. art. 2520. Plaintiff is entitled to obtain a rescission of the sale of the Defendants PRODUCTS.

133. The Defendants' talcum powder PRODUCTS alternatively possessed a redhibitory defect because the they were not manufactured and marketed in accordance with industry standards and/or are/were unreasonably dangerous, as described above, which diminished the value of the their talc PRODUCTS so that it must be presumed that a buyer would still have bought it but for a lesser price.

134. As a manufacturer of these PRODUCTS, under Louisiana law, the Johnson & Johnson Defendants; the K&B Defendant; and the Colgate-Palmolive Defendant are deemed to know that their PRODUCTS possess(ed) a redhibitory defect. La. C.C. art. 2545.

135. The Defendants are liable as bad faith sellers for selling defective PRODUCTS with knowledge of the defect(s), and thus, are liable to Plaintiff for the price of their PRODUCTS, with



E-Filed

2020-02718
A
Section 16
FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

interest from the purchase date, as well as reasonable expenses occasioned by the sale of the PRODUCTS, namely their cosmetic talc PRODUCTS, and attorneys' fees.

**COUNT TEN: PUNITIVE DAMAGES**
**(All Defendants)**

136. Plaintiff repeats, reiterates and re-alleges every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

137. The Defendants all acted maliciously, wantonly and recklessly, and demonstrated a conscious indifference and utter disregard of the health, safety and rights of others, by acting with an improper motive or vindictiveness and with outrageous or oppressively intentional misconduct, such actions representing a high degree of immorality and showing wanton dishonesty as to imply a criminal indifference to civil obligations, in one or more of the following ways:

a. The Defendants acted with a wanton and reckless disregard for public safety in the storage, handling and transportation of hazardous or toxic substances, namely asbestos-containing talcum powder PRODUCTS;

b. The Defendants knew of the unreasonably high risk of cancer posed by its PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action; and

c. Despite their knowledge of the high risk of cancer associated with the PRODUCTS and the hazardous and toxic nature of asbestos, the Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling.

138. The Defendants' conduct was wanton and reckless because they proceeded in disregard of a high and excessive degree of danger known to them or that would have been apparent to a reasonable person in their position

139. The danger created by the Defendants' wanton and reckless conduct threatened or endangered public safety, including the Plaintiff's safety.

140. Asbestos and asbestos-contaminated talc, as well as talc with or without the presence of asbestos are hazardous or toxic substances.

141. The Defendants' wanton and reckless conduct occurred, inter alia, in their storage, handling and/or transportation of hazardous or toxic substances.

142. Plaintiff's injuries were caused by Defendants' wanton and reckless conduct and disregard for public safety in the storage, handling and transportation of their asbestos-containing talcum powder PRODUCTS to which Plaintiff was exposed and which resulted in her injuries.



E-Filed

A
Section 16

FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

143. An award of punitive damages is therefore warranted against the Defendants pursuant to former Louisiana Civil Code Article 2315.3, which applies to Plaintiff's exposures to the Defendants' asbestos-containing talcum powder PRODUCTS that occurred between September 1, 1984 and April 16, 1996.

WHEREFORE, Plaintiff prays for a judgment for punitive damages against the Defendants in a fair and reasonable amount sufficient to punish each of said Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

## DAMAGES

144. WHEREFORE, on the basis of all of the foregoing premises set out in the above paragraphs, Plaintiff requests that each of the Defendants be served with this Petition and that there be judgment against these Defendants jointly, severally and in solido in a sum sufficient to compensate Plaintiff for the following:

a. all past, present and future medical costs or expenses related thereto;

b. all past, present and future lost earnings;

c. all past, present and future mental suffering, anguish, and pain;

d. all past, present and future physical pain and suffering;

e. loss of quality of life;

f. exemplary damages;

g. punitive damages; and

h. all other forms of relief provided by law or equity together with interest from the date of judicial demand until paid, and costs of these proceedings.

[THIS SPACE INTENTIONALLY LEFT BLANK]



E-Filed

FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

WHEREFORE, Plaintiff demands judgment against each of the Defendants, and each of them, jointly and severally, for Damages, Special/Punitive Damages, for their costs expended herein, and for pre-judgment interest from the date of Plaintiff's filing this lawsuit, and for post-judgment interest at the rate allowed by law, and for such other relief, both at law and in equity, to which Plaintiff shows herself justly entitled.

Respectfully submitted,

Mickey P. Landry, Bar No. 22817
Frank J. Swarr, Bar No. 23322
Philip C. Hoffman, Bar No. 32277
Matthew C. Clark, Bar No. 31102
LANDRY & SWARR, LLC
1100 Poydras Street, Suite 2000
New Orleans, LA 70163
T: (504) 299-1214
F: (504) 299-1215
Email: mlandry@landryswarr.com
Email: fswarr@landryswarr.com
Email: phoffman@landryswarr.com
Email: mclark@landryswarr.com
Other Email: thernandez@landryswarr.com

and

Mark J. Buha (MO No. 63737)
To Be Admitted *Pro Hac Vice*
DEAN OMAR BRANHAM SHIRLEY, LLP
302 N. Market Street, Suite 300
Dallas, Texas 75202
T: (214) 722-5990
F: (214) 722-5991
Email: mbuha@dobslegal.com
Other Email: tgilliland@dobslegal.com

ATTORNEYS FOR PLAINTIFF



E-Filed

FILED
2020 OCT 29 A 11:08
CIVIL
DISTRICT COURT

A

Section 16

PLEASE SERVE THE FOLLOWING:

COLGATE-PALMOLIVE COMPANY
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

CHANEL, INC.
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
CT Corporation System
28 Liberty Street
New York, NY 10005

COTY, INC.
(individually and as successor-in-interest to Noxzema Chemical Company)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Corporation Service Company
80 State Street
Albany, NY 12207

CYPRUS AMAX MINERALS COMPANY
(individually, d/b/a, and as successor-in-interest to Sierra Talc Company, United Sierra Division of Cyprus Mines, Cyprus Industrial Minerals Company, American Talc Company, Metropolitan Talc Company, Inc., Charles Mathieu Inc., Resource Processors, Inc., and Windsor Minerals, Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

CYPRUS MINES CORPORATION
(individually, d/b/a, and successor to Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co. a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Registered Agent Solutions, Inc.
300 W. Clarendon Avenue, Suite 240
Phoenix, AZ 85013

JOHNSON & JOHNSON
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

JOHNSON & JOHNSON CONSUMER INC.
(f/k/a Johnson & Johnson Consumer Companies, Inc.)
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX 75201



E-Filed

FILED
2020 MAR 29 A 11:08
CIVIL
DISTRICT COURT

**A**

Section 16

**K&B LOUISIANA CORPORATION**
(d/b/a RITE AID CORPORATION), (individually and as successor-in-interest to KATZ & BESTHOFF, INC.)
A Louisiana Corporation
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**KAISER GYPSUM COMPANY, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Corporate Service Company
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

**PFIZER INC.**
Through its registered agent for service of process in Louisiana:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**WHITTAKER CLARK & DANIELS, INC.**
Through the Louisiana Long-Arm Statute on its registered agent for service of process:
Joe Cobuzio, Esq.
Tompkins, McGuire, Wachenfeld & Barry, LLP
3 Becker Farm Road, 4th Floor
Roseland, NJ 07068



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2019-7989 DIVISION "F" SECTION 7

LINDA BIERMANN

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED: ______________________ ______________________
DEPUTY CLERK

**JUDGMENT**

This matter came before the Court on May 22, 2020 for a hearing on the **Motion for New Trial on the Claim of Punitive Damages** raised by the Court on its own Motion as well as Johnson and Johnson's Motion for Summary Judgment on fraud and misrepresentation, which was taken under advisement.

Present in Court were:

**Lance Unglesby**
**Attorneys for the Biermann Family**

**Meera Sossamon**
**Attorney for Johnson & Johnson and Johnson & Johnson Consumer, Inc.**

Considering the pleadings, applicable law, exhibits, evidence and oral reasons, the Court rules as follows:

**IT IS ORDERED ADJUDGED AND DECREED** that the Motion for New Trial on the claim of Punitive Damages is hereby **GRANTED**. This Court finds as a matter of law that the term "handling" as used in the former La. C.C.P art. 2315.3 was not intended to apply nor will this Court expand its application to a product liability claim based upon a failure to warn. The cause of action for punitive damages is dismissed with prejudice;

**IT IS FURTHER ORDERED ADJUDGED AND DECREED** that the Motion for Summary Judgment filed by Johnson & Johnson and Johnson & Johnson Consumer, Inc. on the claims of fraud and intentional misrepresentation is **GRANTED** dismissing these claims with prejudice.

EXHIBIT B

VERIFIED
Malik Haley
2020 JUL 01 P 12:26



E-Filed

FILED
2020 OCT 21 A 11:08
CIVIL
DISTRICT COURT

JUDGMENT READ, RENDERED, AND SIGNED in New Orleans, Louisiana, this 22nd day of May, 2020.

CHRISTOPHER J. BRUNO, CHIEF JUDGE

THE PARTIES ACKNOWLEDGE RECEIPT OF THE JUDGMENT IN THE ABOVE CAPTIONED MATTER AND HEREBY WAIVE NOTICE OF JUDGMENT

Attorney(s) for Plaintiff(s)

07/29/2020
Attorney(s) for Defendant(s)

VERIFIED
Malik Haley
2020 JUL 01 P 12:27

E-Filed

FILED
NOV 05 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO.: 2020-02718 DIVISION A-16

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:_______________________ _______________________
DEPUTY CLERK

**PFIZER INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND REQUEST FOR JURY TRIAL**

NOW INTO COURT, through undersigned counsel, comes defendant, Pfizer Inc. ("Pfizer"), who, in response to Plaintiff's Original Petition for Damages, hereby sets forth the following Answer and Affirmative Defenses. Pfizer demands trial by jury.

**ANSWER**

Pfizer responds to each of the paragraphs of the Petition as follows:

1.

The allegations of Paragraph 1 are denied for lack of sufficient information to justify a belief therein.

2.

The allegations of Paragraph 2 are denied for lack of sufficient information to justify a belief therein.

3.

The allegations of Paragraph 3 are denied for lack of sufficient information to justify a belief therein.

4.

The allegations of Paragraph 4(J) are admitted only to say that Pfizer is a Delaware corporation with its principal place of business in New York. The remainder of the allegations of Paragraph 4 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

VERIFIED 11/23/2020

5.

The allegations of Paragraph 5 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations, including all subparts, are denied for lack of sufficient information to justify a belief therein. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and therefore, denies any and all liability to Plaintiff for the claims asserted.

6.

The allegations of Paragraph 6 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

7.

The allegations of Paragraph 7 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

8.

The allegations of Paragraph 8 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

9.

The allegations of Paragraph 9 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

10.

The allegations of Paragraph 10 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

FILED
NOV 05 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO.: 2020-02718 DIVISION A-16

LYNNE L. ROY

VERSUS

COLGATE-PALMOLIVE COMPANY, ET AL.

FILED:______________________ ______________________
DEPUTY CLERK

**PFIZER INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND REQUEST FOR JURY TRIAL**

NOW INTO COURT, through undersigned counsel, comes defendant, Pfizer Inc. ("Pfizer"), who, in response to Plaintiff's Original Petition for Damages, hereby sets forth the following Answer and Affirmative Defenses. Pfizer demands trial by jury.

**ANSWER**

Pfizer responds to each of the paragraphs of the Petition as follows:

1.

The allegations of Paragraph 1 are denied for lack of sufficient information to justify a belief therein.

2.

The allegations of Paragraph 2 are denied for lack of sufficient information to justify a belief therein.

3.

The allegations of Paragraph 3 are denied for lack of sufficient information to justify a belief therein.

4.

The allegations of Paragraph 4(J) are admitted only to say that Pfizer is a Delaware corporation with its principal place of business in New York. The remainder of the allegations of Paragraph 4 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.



VERIFIED
11/23/2020

5.

The allegations of Paragraph 5 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations, including all subparts, are denied for lack of sufficient information to justify a belief therein. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and therefore, denies any and all liability to Plaintiff for the claims asserted.

6.

The allegations of Paragraph 6 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

7.

The allegations of Paragraph 7 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

8.

The allegations of Paragraph 8 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

9.

The allegations of Paragraph 9 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

10.

The allegations of Paragraph 10 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

11.

The allegations of Paragraph 11 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

12.

The allegations of Paragraph 12 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

13.

The allegations of Paragraph 13 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and therefore, denies any and all liability to Plaintiff for the claims asserted.

14.

The allegations of Paragraph 14 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

15.

The allegations of Paragraph 15 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

16.

The allegations of Paragraph 16 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Further answering, Pfizer denies any and all liability to Plaintiff for the claims asserted.

17.

The allegations of Paragraph 17, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to

Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

18.

The allegations of Paragraph 18 are denied for lack of sufficient information to justify a belief therein.

19.

The allegations of Paragraph 19, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

20.

The allegations of Paragraph 20, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

21.

The allegations of Paragraph 21, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

22.

The allegations of Paragraph 22, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed,

promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

23.

The allegations of Paragraph 23, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

24.

The allegations of Paragraph 24, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

25.

The allegations of Paragraph 25, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

26.

The allegations of Paragraph 26, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

27.

The allegations of Paragraph 27, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to

Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

28.

The allegations of Paragraph 28, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

29.

The allegations of Paragraph 29, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

30.

The allegations of Paragraph 30, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

31.

The allegations of Paragraph 31, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

32.

The allegations of Paragraph 32, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

33.

The allegations of Paragraph 33, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

34.

The allegations of Paragraph 34 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

35.

The allegations of Paragraph 35 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

36.

The allegations of Paragraph 36 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

37.

The allegations of Paragraph 37 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

38.

The allegations of Paragraph 38 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

39.

The allegations of Paragraph 39, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

40.

The allegations of Paragraph 40 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

41.

The allegations of Paragraph 41 are denied for lack of sufficient information to justify a belief therein.

42.

The allegations of Paragraph 42 are denied for lack of sufficient information to justify a belief therein.

43.

The allegations of Paragraph 43 are denied for lack of sufficient information to justify a belief therein.

44.

The allegations of Paragraph 44 are denied for lack of sufficient information to justify a belief therein.

45.

The allegations of Paragraph 45 are denied for lack of sufficient information to justify a belief therein.

46.

The allegations of Paragraph 46 are denied for lack of sufficient information to justify a belief therein.

47.

The allegations of Paragraph 47, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed,

promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

48.

The allegations of Paragraph 48, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

49.

The allegations of Paragraph 49, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

50.

The allegations of Paragraph 50, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

51.

The allegations of Paragraph 51 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

52.

The allegations of Paragraph 52 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

53.

The allegations of Paragraph 53, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

54.

The allegations of Paragraph 54 are denied.

55.

The allegations of Paragraph 55 are denied.

56.

The allegations of Paragraph 56 are denied.

57.

The allegations of Paragraph 57 are denied.

58.

The allegations of Paragraph 58 are denied.

59.

The allegations of Paragraph 59 are denied.

60.

The allegations of Paragraph 60 are denied.

61.

The allegations of Paragraph 61 are denied.

62.

The allegations of Paragraph 62 are denied.

63.

The allegations of Paragraph 63 are denied.

64.

The allegations of Paragraph 64 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

65.

The allegations of Paragraph 65 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

66.

The allegations of Paragraph 66, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it is a professional vendor under Louisiana law.

67.

The allegations of Paragraph 67 are denied.

68.

The allegations of Paragraph 68 are denied.

69.

The allegations of Paragraph 69 are denied.

70.

The allegations of Paragraph 70 are denied.

71.

The allegations of Paragraph 71 are denied.

72.

The allegations of Paragraph 72 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

73.

The allegations of Paragraph 73 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

74.

The allegations of Paragraph 74 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

75.

The allegations of Paragraph 75 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

76.

The allegations of Paragraph 76 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

77.

The allegations of Paragraph 77 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

78.

The allegations of Paragraph 78 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

79.

The allegations of Paragraph 79 are denied.

80.

The allegations of Paragraph 80, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

81.

The allegations of Paragraph 81, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

82.

The allegations of Paragraph 82, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

83.

The allegations of Paragraph 83, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

84.

The allegations of Paragraph 84, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

85.

The allegations of Paragraph 85 are denied for lack of sufficient information to justify a belief therein.

86.

The allegations of Paragraph 86, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

87.

The allegations of Paragraph 87, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

88.

The allegations of Paragraph 88, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

89.

The allegations of Paragraph 89 are denied.

90.

The allegations of Paragraph 90, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

91.

The allegations of Paragraph 91, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

92.

The allegations of Paragraph 92 are denied for lack of sufficient information to justify a belief therein.

93.

The allegations of Paragraph 90, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

94.

The allegations of Paragraph 94, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

95.

The allegations of Paragraph 95, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

96.

The allegations of Paragraph 96, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

97.

The allegations of Paragraph 97 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

98.

The allegations of Paragraph 98 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

99.

The allegations of Paragraph 99, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed,

promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

100.

The allegations of Paragraph 100, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

101.

The allegations of Paragraph 101, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

102.

The allegations of Paragraph 102, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Further answering, Pfizer denies that it mined, manufactured, designed, distributed, promoted, marketed, supplied, or sold the alleged asbestos products at issue in this case, and, therefore, denies any and all liability to Plaintiff for the claims asserted.

103.

The allegations of Paragraph 103, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

104.

The allegations of Paragraph 104 are denied.

105.

The allegations of Paragraph 105 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

106.

The allegations of Paragraph 106 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

107.

The allegations of Paragraph 107 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

108.

The allegations of Paragraph 108 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

109.

The allegations of Paragraph 109 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

110.

The allegations of Paragraph 110 are denied for lack of sufficient information to justify a belief therein.

111.

The allegations of Paragraph 111 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

112.

The allegations of Paragraph 112 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

113.

The allegations of Paragraph 113 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

114.

The allegations of Paragraph 114 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

115.

The allegations of Paragraph 115 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

116.

The allegations of Paragraph 116 are denied.

117.

The allegations of Paragraph 117 are denied.

118.

The allegations of Paragraph 118 are denied.

119.

The allegations of Paragraph 119 are denied.

120.

The allegations of Paragraph 120 are denied.

121.

The allegations of Paragraph 121 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

122.

The allegations of Paragraph 122 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

123.

The allegations of Paragraph 123 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

124.

The allegations of Paragraph 124 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

125.

The allegations of Paragraph 125 are denied for lack of sufficient information to justify a belief therein.

126.

The allegations of Paragraph 126 are denied.

127.

The allegations of Paragraph 127 are denied.

128.

The allegations of Paragraph 128 are denied.

129.

The allegations of Paragraph 129 are denied.

130.

The allegations of Paragraph 130 are denied.

131.

The allegations of Paragraph 131 are denied.

132.

The allegations of Paragraph 132 are denied.

133.

The allegations of Paragraph 133 are denied.

134.

The allegations of Paragraph 134 are not directed at Pfizer, and are therefore denied for lack of sufficient information to justify a belief therein.

135.

The allegations of Paragraph 135 are denied.

136.

The allegations of Paragraph 136, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

137.

The allegations of Paragraph 137, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

138.

The allegations of Paragraph 138, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

139.

The allegations of Paragraph 139, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

140.

The allegations of Paragraph 140, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

141.

The allegations of Paragraph 141, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

142.

The allegations of Paragraph 142, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

143.

The allegations of Paragraph 143, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer.

144.

The allegations of the Paragraph beginning with "WHEREFORE" immediately following Paragraph 143, insofar as they relate to other Defendants, are denied for lack of sufficient information to justify a belief therein, and are specifically denied as to Pfizer. Pfizer specifically denies any liability for punitive damages.

145.

The allegations of Paragraph 144 are denied. Pfizer specifically denies any and all liability to Plaintiff.

146.

The allegations of the Paragraph beginning with "WHEREFORE" immediately following Paragraph 144 are denied. Pfizer denies any and all liability to Plaintiff.

147.

Out of an abundance of caution, Pfizer denies all allegations of the Petition not specifically herein admitted, denied, or responded to for lack of information or belief.

## AFFIRMATIVE DEFENSES

Having answered the allegations in Plaintiff's Petition and having denied any liability whatsoever, Defendant Pfizer further denies any allegations that have not been expressly admitted and asserts the following defenses. By asserting the matters set forth below, Defendant Pfizer does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters. Defendant Pfizer asserts as follows:

### First Defense

Pfizer is not liable to Plaintiff in strict liability and further denies any breach of any alleged warranties, either expressed or implied.

### Second Defense

The Petition fails to state a cause of action or claim upon which relief may be granted.

### Third Defense

Pfizer owed no duty in this matter. In the alternative, if any duty was owed, that duty was not breached by Pfizer.

### Fourth Defense

Pfizer denies that Plaintiff ever used any product manufactured or sold by Pfizer. Pfizer denies that Plaintiff was ever in proximity to any product manufactured or sold by Pfizer. Pfizer further denies that Plaintiff was ever exposed to asbestos from any product manufactured or sold by Pfizer.

Fifth Defense

Pfizer avers that any alleged injury or damage suffered by Plaintiff in connection with any product manufactured by Pfizer, which injury or damage is specifically denied, did not result from the normal use of the product. Furthermore, Plaintiff or other persons for whom Pfizer is not responsible materially altered or modified the alleged product manufactured by Pfizer, if any, subsequent to their release from the control of Pfizer.

Sixth Defense

Pfizer pleads the contributory and/or comparative negligence or fault and/or assumption of the risk of Plaintiff or others, with said negligence, fault and/or assumption of the risk acting as a complete bar to or, alternatively, in mitigation to recovery.

Seventh Defense

Any claim for punitive damages against any of the defendants in this case is proscribed under Louisiana law. An award of punitive damages would be unconstitutional and in violation of the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States. Also, Plaintiff's claims for punitive damages are barred by the "double jeopardy" clause of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

Eighth Defense

Plaintiff's claims against Pfizer are barred and/or preempted by La. R.S. 9:2771 and 9:2772 as well as C.C. Art. 3500.

Ninth Defense

Pfizer avers that to the extent any product liability claims against it are governed by the negligence standard existing prior to *Weber v. Fidelity & Casualty Ins. Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971), Pfizer is not legally responsible to Plaintiff under any theory of strict liability for any injury, loss or damages as a result of Plaintiff's contact with, or exposure to, or use of any asbestos product prior to June 28, 1971, when the Louisiana Supreme Court decided *Weber v. Fidelity and Casualty Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971).

Tenth Defense

In the further alternative, should Louisiana Products Liability law be applicable, defendant specifically aver that this matter is governed by La. R.S. 9:2800.51-2800.59, the "Louisiana Products Liability Act" and Pfizer affirmatively avers the defenses of La. R.S. 9:2800.51 et seq., the Louisiana Products Liability Act.

Eleventh Defense

Pfizer avers that it is immune from any and all liability herein by virtue of the complete defense afforded to it as a party that contracted with independent contractors.

Twelfth Defense

If Pfizer actually supplied or sold any product containing asbestos, which is specifically denied, it was merely a user and/or conduit of such product and, therefore, has no liability.

Thirteenth Defense

If Plaintiff has heretofore settled or should hereafter settle for any of the alleged injuries and damages with any parties, then Pfizer is entitled to a credit, off-set or reduction of any judgment rendered against it for any such settlement. Pfizer further pleads all defenses entitled to it based on any past or future settlement with Plaintiff including, but not limited to, accord and satisfaction.

Fourteenth Defense

If injuries or damages were sustained, which is specifically and categorically denied, those injuries and damages are the result of negligence or fault on the part of others over whom Pfizer had no responsibility or control. If it is determined Plaintiff is entitled to recover against Pfizer, which is denied, that recovery should be reduced in proportion to the degree or percentage of negligence or fault, or exposure to products, or virile share of negligence, fault or exposure to products attributable to any co-defendant or any other entity, including those entities presently immune because bankruptcy renders them immune from further litigation, as well as any party, co-defendant or non-parties regardless of whether or not Plaintiff has settled or may settle with such parties in the future.

Fifteenth Defense

Pfizer specifically pleads the "state-of-the-art" defense to each and every allegation. Pfizer denies any defects in its product or equipment and avers that at all pertinent times, its product or equipment was reasonably fit and suited for the purpose for which it was manufactured and intended and was delivered with such advises as were consistent with the state of the existing medical and industrial art.

Sixteenth Defense

Alternatively, should Louisiana Products Liability law be applicable, Pfizer avers that at the time the product left the defendants' control, the existence of an alternative design was not known or knowable to this defendant from the then-existing, reasonably available scientific and technological knowledge.

Seventeenth Defense

In the further alternative, should Louisiana Products Liability law be applicable, defendants aver that an alternative design was not feasible from the reasonably available scientific and technological knowledge which existed at the time the product left the defendants control.

Eighteenth Defense

Pfizer avers that the injuries allegedly sustained, which are denied, occurred as a result of pre-existing medical and/or subsequent exposures or conditions, causes, or injuries which are completely unrelated to Pfizer, and the existence of these pre-existing medical and/or subsequent exposures or conditions, causes, or injuries bar and/or mitigate recovery herein.

Nineteenth Defense

Plaintiff's claims are barred by the applicable statute of limitations, res judicata, prescription, preemption, equitable estoppel, collateral estoppel, informed consent, release, unclean hands, laches and/or waiver. Additionally, if Plaintiff had or has filed bankruptcy during the relevant time period of the events alleged in the Complaint or files for bankruptcy at some point in the future, the claims of Plaintiff may be "property of the bankruptcy estate" which should be prosecuted by the bankruptcy trustee rather than Plaintiff, or, if not disclosed by

Plaintiff on the schedules and/or statement of financial affairs, may be barred by the doctrine of judicial estoppel.

Twentieth Defense

There is no liability on the part of Pfizer because the alleged incidents in question were brought about or caused by transitory conditions arising in the course of the work in which Plaintiff was engaged and ordinarily incident thereto, using the employers' own manner, method and means of doing work for which Pfizer owes no duty.

Twenty-First Defense

Plaintiff failed to state a cause of action because if relief were granted in the absence of product identification it would contravene Pfizer's constitutional rights to substantive and due process of law and equal protection as preserved by the Fourteenth Amendment to the United States Constitution.

Twenty-Second Defense

Pfizer avers that its alleged liability, which it denies, is purely passive and/or technical, and the liability of other parties herein is active and actual, thus entitling Pfizer to full indemnification and contribution from those parties that are actively negligent or at fault.

Twenty-Third Defense

If Pfizer supplied asbestos-containing products or equipment, which it denies, such products or equipment conformed to the specifications of its customer and/or the Plaintiff's employers. Furthermore, said customers and employers were knowledgeable and sophisticated as to the use and risks of asbestos containing products or equipment so that Pfizer had no duty to warn. Pfizer specifically pleads the "sophisticated user" defense.

Twenty-Fourth Defense

Plaintiff failed to mitigate, minimize or abate any alleged damages.

Twenty-Fifth Defense

Plaintiff failed to state a cause of action for fraud. Louisiana Code of Civil Procedure Article 856 requires that, when fraud is alleged, the circumstances constituting fraud must be alleged with particularity. Plaintiff's allegations broadly allege that all defendants in general committed intentional misrepresentations and fraudulently concealed and suppressed the truth

about asbestos products and/or equipment. These allegations are inadequate because they do not describe the specific misrepresentations nor do they identify who made such misrepresentations, nor when and where the misrepresentations were made. Therefore, all fraud allegations should be dismissed.

Twenty-Sixth Defense

Pfizer pleads that Plaintiff's damages must be reduced by the contributory and/or comparative negligence of Plaintiff in the following non-elusive particulars:

A. Failing to avoid known obvious dangers and dangers about which she was aware;

B. Failing generally to exercise due care under the circumstances;

C. Failing to comply with the duty of care of persons and positions similar to her; and

D. Any and all other negligent and/or wrongful acts or omissions which may be discovered or proven at the trial of this matter.

Twenty-Seventh Defense

Pfizer avers that as a result of the provisions of certain statutes, including 11 U.S.C. 362(a), plaintiff is prohibited from proceeding to get certain parties liable for the damages and injuries complained of and defendants preserve their rights to so proceed.

Twenty-Eighth Defense

Further answering, Pfizer avers that Plaintiff did not inhale asbestos fibers emitted by the normal use of said products, proximately causing the results and/or related abnormalities or alternatively, any other asbestos-related injury.

Twenty-Ninth Defense

Further, alternatively, Pfizer avers that Plaintiff's injuries, if any, were caused by substances other than asbestos.

Thirtieth Defense

There is no causal relationship between Pfizer's conduct and the injuries and damages alleged by Plaintiff.

Thirty-First Defense

Plaintiff's claims are barred in whole or in part because the product at issue was at all times properly prepared, packaged, and distributed and was not defective or unreasonably dangerous.

Thirty-Second Defense

Plaintiff may be barred from bringing some of the claims alleged in the Petition because Plaintiff may lack standing and/or capacity to bring such claims.

Thirty-Third Defense

The claims set forth in the Petition are barred because the alleged injuries and damages, if any, were caused by medical conditions, disease, illness, or processes (whether pre-existing or contemporaneous) unrelated to the product.

Thirty-Fourth Defense

Plaintiff's claims may be barred, in whole or in part, by misuse or unintended use of the product in question.

Thirty-Fifth Defense

Plaintiff's injuries or damages sustained, if any, were a direct and proximate result of a responsible, superseding, intervening cause.

Thirty-Sixth Defense

The product in question is useful and desirable, and any risk claimed by Plaintiff with its use and the alleged injury, to the extent it exists, is unavoidable. Plaintiff's purported action is, therefore, barred by Comment K of J 402A of the Restatement (Second) of Torts and/or Restatement (Third) of Torts: Products Liability § 6 and/or other applicable law.

Thirty-Seventh Defense

Plaintiff's claims of product defects are barred by Sections 2, 4, and 6(c) and (d) of the Restatement (Third) of Torts: Products Liability.

Thirty-Eighth Defense

Pfizer, at all times acted with due care, are free of any and all negligence and at all times complied with all applicable laws, regulations and standards.

Thirty-Ninth Defense

Pfizer further adopts all applicable defenses, if any, not specifically set out in this Answer but asserted by any other defendant or third party defendant.

Fortieth Defense

Plaintiff's claims are barred because the risks, if any, associated with the use of the product are outweighed by the device's utility.

Forty-First Defense

Plaintiff's claims for breach of express and implied warranties are barred because Plaintiff did not reasonably rely on any alleged express or implied warranty, and because Plaintiff did not give Pfizer adequate notice of any alleged breach of warranty, express or implied and for lack of privity with Pfizer.

Forty-Second Defense

At all relevant times herein, the product in question was manufactured and distributed with proper warnings, information, cautions, and instructions in conformity with generally recognized and prevailing standards in existence at the time.

Forty-Third Defense

The claims of Plaintiff may be barred, in whole or in part, from recovery, due to spoliation of evidence and the failure to preserve evidence necessary to the determination of the claims.

Forty-Fourth Defense

The products at issue were altered after the products left the control, custody and possession of Pfizer, and said alteration relieves Pfizer of any and all liability.

Forty-Fifth Defense

The "state-of-the-art" defense is applicable to each and every allegation for the reason that the alleged hazards were neither known nor reasonably discoverable on the basis of the research and scientific information then available; and Pfizer acted reasonably, prudent and at all times in compliance with all applicable state and federal regulations and industry custom and practice.

Forty-Sixth Defense

Plaintiff's injuries and damages, if any, did not occur as a result of exposure to asbestos fibers, but rather were proximately caused by other factors, including, but not limited to, a history of voluntarily smoking cigarettes which other factors are affirmatively pleaded and are legally and factually imputable to Plaintiff to serve as a bar and/or reduction of any and all recovery by Plaintiff.

Forty-Seventh Defense

Plaintiff having been warned or otherwise made aware of the alleged hazards of the materials to which she claims exposure is now estopped and/or barred from any recovery for the alleged injuries.

Forty-Eighth Defense

Plaintiff's injuries, if any, resulted from the voluntary and knowing submission by Plaintiff to hazards associated with her exposure to materials alleged to be causative of her injuries and, therefore, the doctrine of assumption of the risk is applicable.

Forty-Ninth Defense

Pfizer denies that it is liable *in solido* with any other party, named or unnamed, and denies that it is liable for the fault of any party, named or unnamed.

Fiftieth Defense

Pfizer pleads that at all times material herein, it complied with all applicable laws, regulations, rules, specifications and standards.

Fifty-First Defense

Pfizer contends that the plaintiff has failed to join all parties necessary for a just adjudication.

Fifty-Second Defense

Pfizer contends that each and every claim asserted by plaintiff, to the extent the claim pertains to Pfizer is pre-empted by the Federal Food and Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301-399(f), in that the United States Food and Drug Administration ("FDA") had primary and exclusive jurisdiction over the safety of cosmetic talc containing products and primary and exclusive jurisdiction to determine whether any warning must accompany

FILED
NOV 05 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

cosmetic talc-containing products. The FDA has ruled, on multiple occasions, that cosmetic grade talc is a safe substance when used as intended and further has ruled that the manufacturers need not provide any warnings on, or in connection with the sale of, cosmetic grade talc containing products.

Fifty-Third Defense

Pfizer contends that Plaintiff's fraud and conspiracy claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine.

Pfizer hereby gives notice that it intends to rely upon such other Defenses as may become apparent during the course of discovery and thus reserves the right to amend this Answer to assert any such defenses.

**REQUEST FOR JURY TRIAL**

Defendant Pfizer hereby demands trial by jury.

WHEREFORE, Defendant Pfizer prays that this Answer to the Petition for Damages be deemed good and sufficient and, after due proceedings are had, that there be judgment herein in favor of Defendant Pfizer, and against the Plaintiff, dismissing Plaintiff's Petition for Damages, at Plaintiff's cost, and for all general and equitable relief to which Defendant may be entitled in the premises. Defendant further demands trial by jury as to all claims.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

BY: ______________________
QUENTIN F. URQUHART (Bar No. 14475)
CHRISTOPHER T. WHELEN (Bar No. 36079)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101

*Counsel for Defendants Pfizer, Inc.*

FILED
NOV 05 2020
CLERKS OFFICE
CIVIL DISTRICT COURT

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties to this proceeding by mailing a copy of same to each by U.S. Mail, properly addressed and postage prepaid, and/or via electronic mail on this 5th day of November, 2020.

______________________