# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LYNNE ROY, ET AL.**                              **CIVIL ACTION**

**VERSUS**                                         **NO. 20-3433**

**COLGATE PALMOLIVE CO., ET AL.**                  **SECTION D (5)**

## <u>ORDER AND REASONS</u>

Before the Court is Plaintiffs' Motion to Remand.[1]  Defendants Johnson &

Johnson and Johnson & Johnson Consumer, Inc. have filed an Opposition.[2]  Various

Defendants have joined and adopted Johnson & Johnson's and Johnson & Johnson

Consumer, Inc.'s Opposition.[3]  After careful review of the parties' memoranda, the

record, and the applicable law, the Court grants the Motion.

## I.    FACTUAL BACKGROUND

This case arises from Lynne Roy's purported use of asbestos-containing

products and subsequent diagnosis with mesothelioma.  Lynne Roy was a Louisiana

resident who used various talc products on herself and her three children throughout

her life until "at least the 1990s."[4]  On January 7, 2020, Roy was diagnosed with

malignant mesothelioma.[5]  Following her diagnosis, Roy filed suit in the Civil District

Court for the Parish of Orleans.[6]  Roy's state-court Petition named a variety of

---

[1] R. Doc. 19.
[2] R. Doc. 38.
[3] R. Doc. 41 (Pfizer); R. Doc. 49 (Cyprus Amax Mineral Company and Cyprus Mine Corporation); R. Doc. 53 (Whittaker, Charles & Daniels, Inc.); R. Doc. 57 (Coty, Inc.); R. Doc. 58 (Chanel, Inc.); R. Doc. 61 (Kaiser Gypsum Company, Inc.).
[4] R. Doc. 19-4 at 8 ¶ 17.
[5] *Id.* at 9 ¶ 22.
[6] *See generally id.*

Defendants, including Johnson & Johnson and Johnson & Johnson Consumer, Inc. (collectively, "J&J").[7]  The state-court Petition named only one in-state Defendant: K&B Louisiana Corporation.[8]  In her state-court Petition, Roy alleged that she used talc products produced by J&J, Colgate-Palmolive, Chanel, Coty, and Kaiser Gypsum.[9]  The Petition also included the following allegation:

> At all times relevant hereto, Johnson & Johnson, Colgate-Palmolive, Coty, Chanel, Colgate-Palmolive and Kaiser Gypsum manufactured and/or held themselves out as manufactures of the PRODUCTS, and upon information and belief, the K&B Defendant repackaged, rebranded and/or sold the Johnson & Johnson Defendants' talcum powder products and sold them as its own, which Plaintiff purchased from K&B pharmacy stores in Orleans Parish.[10]

Plaintiff asserts strict liability, negligence, professional vendor liability, failure to warn, breach of warranty, defective design, civil conspiracy, and redhibition claims against all defendants.[11]  Lynne Roy was deposed on May 22, 2020.[12]  She passed away a week later, on May 29, 2020.[13]  Her daughters, Melissa Kaiser and Melanie Roy, brought survival and wrongful death actions.[14]  At her November 10, 2020 deposition, Kaiser testified that her mother did not use K&B-brand talcum powder.[15]

---

[7] *See id.* at 3 ¶ 4.
[8] *Id.*
[9] *See id.* at 8 ¶ 17.
[10] *Id.* at 10 ¶ 30.
[11] R. Doc. 1-2. Plaintiff asserts additional claims against the Johnson & Johnson Defendants and Colgate-Palmolive which are not relevant for purposes of this motion.
[12] R. Doc. 19-9.
[13] R. Doc. 19-10.
[14] R. Doc. 19-11.
[15] *See* R. Doc. 1-13 at 12 ("Q. If K&B made a talc [powder] under the K&B brand, your mother didn't use that?  A. No she did not.").

On December 21, 2020, J&J removed this matter to federal court.[16]   J&J alleged diversity jurisdiction, arguing that K&B—the only in-state Defendant—was improperly joined.  Specifically, J&J argued that because Roy never used a K&B-branded talc product, K&B cannot be held liable.  J&J also stated that removal was timely, as the notice of removal was filed within 30 days of receipt of Melissa Kaiser's deposition transcript.

Plaintiffs now move to remand this matter to state court.[17]   Plaintiffs' primary argument is that K&B is a properly-joined Defendant.  Plaintiffs argue that the state-court Petition alleges sufficient facts with respect to K&B to survive a Rule 12(b)(6) analysis because K&B would be liable if it should have known that the products that it sold Roy were defective.  Plaintiffs also argue that the state-court Petition includes sufficient facts to establish that K&B was a professional vendor.  Plaintiffs point to three cases that they argue are on all fours with this case, each of which remanded an asbestos matter to state court.  In the event the Court pierces the pleadings, Plaintiffs point to a myriad of evidence which they argue prove that products sold at K&B caused Roy's mesothelioma and that K&B was a professional vendor which should have researched the hazards inherent in talc use.

Plaintiffs further argue that even if they cannot state a cause of action against K&B because Roy never used a K&B-branded product, Defendants' removal is untimely because Defendants have known that fact for months, including well before Melissa Kaiser's deposition.  Plaintiffs argue the Complaint does not allege that Roy

---

[16] R. Doc. 1.
[17] R. Doc. 19.

used a K&B product, because the term "PRODUCTS" was defined in the Petition to include five products, and did not include any K&B product.  Regarding the untimely filing of the removal, Plaintiffs further argue that it was clear from Roy's testimony at her deposition which took place on May 22, 2020 and written discovery responses that Roy never used a K&B-branded product.

Defendants oppose the Motion to Remand.[18]  Defendants first argue that removal was timely because the Petition alleges use of a K&B product, and there was no "other paper" that made "unequivocally clear and certain" that Roy did not use a K&B product until Melissa Kaiser's deposition.  Defendants further argue that K&B is improperly joined because Plaintiffs cannot state a claim against K&B unless Roy used a K&B-branded product.  Defendants next argue that the affidavits of Derreck Shaffer and James LeBlanc refute the allegations in the state-court Petition that K&B labeled and repackaged other talc products and sold them as its own.  Finally, Defendants attempt to distinguish various cases cited by Plaintiffs in support of their Motion.

## II.    LEGAL STANDARD

The instant dispute centers around a question of improper joinder.  A defendant can establish improper joinder by demonstrating either "(1) actual fraud in the pleadings of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[19]  When a defendant alleges improper joinder under the second element, the Court considers "whether the

---

[18] R. Doc. 38.
[19] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[20]   "In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'"[21]   When conducting this inquiry, if a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," the Court may "pierce the pleadings and conduct a summary inquiry."[22]   The Court must resolve all "contested issues of fact" and all "ambiguities of state law" in favor of the party opposing removal.[23]   The burden of persuasion on those who claim fraudulent joinder is a heavy one.[24]

## III.   ANALYSIS

This matter turns on whether K&B is properly joined.  Because Defendants do not argue that there was actual fraud in the pleadings, the Court must consider whether Plaintiffs may establish a cause of action against K&B.  Put another way, the operative question is whether there is "no possibility of recovery" by Plaintiffs against K&B.

---

[20] *Id.* at 573.
[21] *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010) (quoting *Smallwood*, 385 F.3d at 573).
[22] *Smallwood*, 385 F.3d at 573.
[23] *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).
[24] *Id.* (quoting *B. Inc., v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir. 1981)).

Because the vast majority of Roy's talc powder usage occurred before 1988, all parties look to the law as it stood before the 1988 Louisiana Products Liability Act to determine whether Roy may state a claim against K&B.  Under the legal regime, liability attaches to the manufacturer of a defective product and to retailers who: (1) hold out the product as their own; or (2) are "professional vendors" who are presumed to know the defects of their wares.[25]  A professional vendor "is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that courts are justified in treating the retailer like a manufacturer."[26]  In considering whether a Defendant is a professional vendor, the fact finder must "consider the size, volume, and merchant practices of the seller."[27]  Louisiana courts have also held that a "non-manufacturer/seller can be held liable for damages in tort only if he knew or should have known that the product was defective and failed to declare the defect to the purchaser."[28]

On these facts, the Court does not find that there exists "no possibility of recovery" from K&B by Plaintiffs.  A fact-finder could find that K&B was a professional vendor or that K&B "should have known" of the defects in the talc powder it sold.  Because Defendants argue that Plaintiffs' state-court Petition "misstates or omits discrete facts"[29] related to the propriety of joinder, and Plaintiffs

---

[25] *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926, 929-30 (La. 1978).

[26] *Nelton v. Astro-Lounger Mfg. Co., Inc.*, 542 So. 2d 128, 132 (La. App. 1 Cir. 1989).

[27] *Young v. Louge*, 660 So. 2d 32, 49 (La. App. 4 Cir. 1995).

[28] *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 123 (La. App. 1 Cir. 2005); *See also Pitman v. Crane Co.*, No. 13-83, 2013 WL 1403326, at *3 (E.D. La. Apr. 5, 2013).

[29] *Flagg v. Stryker Corp.*, 819 F.3d 132, 136-37 (5th Cir. 2016) (en banc).

themselves admit that relevant assertions in the state-court Petition are "awkwardly phrased,"[30] the Court finds it appropriate to pierce the pleadings in this case. In doing so, the Court finds that Plaintiffs have provided sufficient evidence by which a fact-finder could find that K&B was a professional vendor.[31] This evidence includes a book describing K&B stores and their practices,[32] as well as K&B advertising materials promoting the sale of their talc products.[33] Similarly, Plaintiffs have also provided evidence by which a fact-finder could find that K&B "should have known" of the defects in the talc powder. This evidence includes studies demonstrating the presence of asbestos in talc powder,[34] as well as evidence that K&B's suppliers knew of asbestos in baby power and the risks asbestos posed.[35] Accordingly, K&B is properly joined, and its presence destroys this Court's diversity jurisdiction. This matter must therefore be remanded to state court.

---

[30] R. Doc. 19-1 at 8.

[31] Defendants argue that the Court may not consider Plaintiffs' evidence attached to their Motion to Remand. Defendants argument seems to be that the Court may consider only affidavits and deposition testimony in an improper joinder case. Interestingly, Defendants attach to their own Opposition evidence which does not fall into these categories. *See* R. Doc. 38-1 (Patent). The Fifth Circuit's more recent cases discussing improper joinder speak only of "summary judgment-type evidence." Indeed, the Fifth Circuit has approved of considering evidence other than deposition testimony and affidavits. *See Guillory v. PPG Indus. Inc.*, 434 F.3d 303 (5th Cir. 2005).

[32] R. Doc. 19-21 (describing the importance of cosmetics to K&B's business).

[33] *See* R. Doc. 19-33.

[34] *See, e.g.*, R. Doc. 19-17 (L. Paoletti, et al., *Evaluation by Electron Microscopy Techniques of Asbestos Contamination in Industrial, Cosmetic, and Pharmaceutical Talcs*, Regulatory Toxicology and Pharmacology, Vol. 4, 222-235 (1984)), R. Doc. 19-52 (David Snider, et al., *Asbestosform Impurities in Commercial Talcum Powders*); and R. Doc. 19-50 (L.J. Cralley, et al., *Fiberous and Mineral Content of Cosmetic Talcum Products*, Am. Indus. Hyg. Ass'n, 350-354 (July-Aug. 1968)).

[35] *See, e.g.*, R. Doc. 19-58 (August 1976 "History and Review of Research and Development" paper indicating that J&J used New Orleans to pioneer a program replacing talc with corn starch to avoid health risks); R. Doc. 19-63 (Memorandum from the Mine Safety Health Association to Cyprus Mines Corporation regarding asbestos in talc); R. Doc. 19-65 (Demonstrative exhibit summarizing J&J testing of talc for asbestos), *see also* R. Doc. 19-66 at 149 (Trial testimony of John Hopkins, J&J's corporate representative, noting the accuracy of the demonstrative exhibit).

Relevant caselaw supports this finding.  In an almost perfectly analogous case, another section of this court found that K&B was properly joined as "the Court cannot conclude with any degree of certainty that Plaintiff has no possibility of recovery against K&B."[36]  The judge also dismissed the notion that affidavits of K&B officers altered this conclusion, and noted that the plaintiff would require discovery to flesh out claims dealing with facts from decades past.[37]  Defendants attempt to distinguish that case by arguing that *Rousseau* dealt with the fact that an allegation was lacking from the plaintiff's petition that the plaintiff used K&B talc products, whereas here an issue is whether removal was timely based on Defendants' later understanding that Roy never used K&B-branded products.  That distinction does not address the *Rousseau* Court's improper joinder analysis, or its finding that the plaintiff could state a claim against K&B.  Notedly, upon remand in *Rousseau* K&B moved for summary judgment on the claims against it, and the Court denied K&B's motion.[38] This indicates that Louisiana courts agree with the Court's finding here—that on these facts, a plaintiff alleging claims against K&B based on the talc it sold may have a reasonable basis for recovery against K&B.

Because the Court finds that K&B is properly joined, the Court does not reach Plaintiffs' arguments regarding timeliness.

---

[36] *Rousseau v. Johnson & Johnson*, No. 18-2922, 2018 WL 2253506, at *2 (E.D. La. May 17, 2018).
[37] *Id.*
[38] *Rousseau v. American Talc Co.*, No. 2018-01136, 2019 WL 7816971 (La. Civ. D. Ct. Mar. 14, 2019).

IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand is **GRANTED**.

New Orleans, Louisiana, April 22, 2021.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**